**JUDGE ABRAMS**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

Plaintiffs,

-against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State; Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

Defendants.

**18 CV 10933**

**CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

## INTRODUCTION AND SUMMARY

1.      The Plaintiff, Manuel P. Asensio, files this pleading individually and on behalf of his daughter, Eva Asensio, born October 14, 2004. It is an indisputable and undeniable fact that New York State Chief Judge Janet Marie DiFiore ("Defendant DiFiore") retaliated against the Plaintiffs as a direct response to the Plaintiff's investigations into Defendant DiFiore's ongoing malicious use of the federal courts' so-called "domestic relations exception to Article III or federal subject matter jurisdiction." The Plaintiffs define the acronym "DRE" as the "domestic relations exception." Defendant DiFiore uses the DRE to protect her ability to use her powers[1] wantonly, as she has done in the Plaintiff's post-divorce judgment actions against Emilie Marie Bosak ("Defendant Bosak") and to protect her impermissible 'use tax' scheme and her malicious domestic relations process. The process is entirely based on deliberate and malicious fabrications that are created without legitimate jurisdiction, rules, controls, standards, or codes. The process' central purpose is the fabrication of charges, evidence, fees and judgments based on concealed impermissible ideological rules. The Plaintiff defines the acronym "PIDRP" to mean Defendant DiFiore's "prohibited and impermissible domestic relations process." The DRE is a counterintuitive, counterfactual, prejudicial and unsupported blind sanctioning of Defendant DiFiore's wanton crimes against the public.

---

[1] Defendant DiFiore is the Chief Judge of the State and the Court of Appeals. She is also the Chair of the Administrative Board of the Courts, which sets the state's judicial standards and policies, the Head of the Office of Court Administration, and the sole state official responsible for the supervision of the Justice Department's ethics and judicial conduct education. She holds the state's only power under Judiciary Law §212(1) (h) to directly investigate judicial misconduct, while controlling, along with the governor, the state's commission for the adjudication of judicial misconduct.

2.      Under the existing circumstances, the DRE becomes an absolute repression of US citizens' rights in the Plaintiff's New York State domestic relations related cases and makes it impossible for the Plaintiff's citizenship rights to exist in New York State. Constitutional scholars have focused on the fact that the DRE is a judicial creation with no convincing basis in law, fact, or acceptable policy, nor any basis in the Constitution or federal statutes. The consensus is that it exists only because the federal courts have no desire to hear domestic relations cases and that the solution is to abandon and abolish the DRE. The federal courts and constitutional scholars have not focused on the prejudicial and unlawful conduct that the DRE blindly permits. Based on blind faith the DRE is permitting Defendant DiFiore to engage in deliberate and malicious misconduct in clear based of state jurisdiction against the Plaintiff's domestic relations rights. She has executed the acts in clear absence of her jurisdiction without a legitimate purpose. She is merely retaliating to defend her misconduct and financial interest. Without the cover provided by the DRE, Defendant DiFiore could not have acted privately and in secret against the Plaintiff or have been able to conceal her actions.

3.      Under the protection afforded by the DRE, Governor Andrew M. Cuomo ("Defendant Cuomo") has ignored the service of documents and information related to the unauthorized acts that Defendant DiFiore has taken to create, control, and operate the PIDRP, and he has knowingly refrained from performing his constitutional duties and the specific duties clearly inherent in the nature of his office to monitor and regulate Defendant DiFiore's individual actions. Attorney General of New York State Barbara Underwood ("Defendant Underwood") acted in the same manner and actually defended Defendant DiFiore's PIDRP actions in the Plaintiff's cases. Defendant DiFiore's direct employees defended Defendant DiFiore when Defendant Underwood declined to do so. This leaves the Plaintiff without recourse against Defendant DiFiore and the PIDRP within the New York State Unified Court System ("UCS") and New York State and without the possibility for redress for his losses and damages.

4.      Under the cover and protection historically provided by the DRE, Defendant DiFiore has taken unlawful control of decision-making and processing of the Plaintiff's actions against Defendant Bosak and against herself. The PIDRP includes these actions along with the following:

    a.)     The PIDRP includes the actions Defendant DiFiore took to sanction New York County Family Court Magistrate Adetokunbo O. Fasanya's ("Defendant Fasanya") violations of New York State statutes and its Rules of the Chief Administrator Part 100 ("Part 100 Rules"), which are the rules that govern judicial

honesty, to conspire, collude, and cooperate with Defendant Bosak and others against the Plaintiffs. Defendant DiFiore is New York State's only official responsible for regulating judicial misconduct in ongoing domestic relations cases and the only state official with jurisdiction over judicial misconduct ***before*** an order or judgment is entered. The Plaintiff has proven that a judgment fabricated by deliberate and malicious judicial misconduct is not reviewable or appealable and that this is a fundamental part of the PIDRP.

b.)   The PIDRP includes the actions Defendant DiFiore took to sanction the executive, administrative, trial, appeal, and Court of Appeals judges that are identified herein to protect Defendant DiFiore against the Plaintiff's actions in all legal, administrative, and appeal processes available in the New York State against Defendant DiFiore and the PIDRP.

c.)   The PIDRP includes Defendant DiFiore's sanctioning of Defendant Fasanya's collusion, conspiracy, and cooperation with Defendant Bosak to take subject matter jurisdiction in the Plaintiff's domestic relations dispute with Defendant Bosak over religious education and worship, as well as moral and political beliefs.

d.)   The PIDRP includes Defendant DiFiore's sanctioning of Defendant Fasanya's ability to assess the "best interest" of the child without standards or codes after having fabricated charges or evidence and baseless custody orders—or so-called "interim" suspension of the Plaintiff's parenting rights.

5.   The Plaintiff commenced his action against the PIDRP and his investigation on May 15, 2014. The Plaintiff holds degrees from Wharton and Harvard and is an expert investigator of systematic fraud with 22 years of experience. He has distinguished record that includes recognition by the National Bureau of Economic Research[2] ("NBER") as the pioneer of a new information discovery process. Notwithstanding the fact that the Plaintiff has been denied his legal discovery rights under New York State's Freedom of Information Law and Civil Practice Law and Rules ("CPLR"), his investigations into the PIDRP have yielded proof of Defendant DiFiore's culpability.

---

[2] The NBER is the nation's leading nonprofit economic research organization with 24 Nobel Prize winners in economics and 13 past chairs of the President's Council of Economic Advisers who have been members.

To date, the Plaintiff has investigated at least 119 senior state officials, including 92 officials and 54 judges employed in 22 units within New York State's Justice Department that are a part of the PIDRP. The Plaintiff has personal knowledge and information concerning the deliberate and malicious conduct of 26 judges that acted in 10 trials and 21 appeal actions against the Plaintiff and in favor of Defendant DiFiore and the PIDRP. In addition, the Plaintiff took 8 constitutional actions at the Court of Appeals against Defendant DiFiore and the PIDRP. These proceedings exhausted the state's administrative, plenary and special trial and appeal processes. The facts in these proceeding prove that justice under the PIDRP is impossible in New York State—that no facts, factors and circumstances will be heard or considered that challenge the PIDRP or its wanton judgments.

6.     A central component of the PIDRP is the imposition of attorney's fees without a budget, discovery, rules, reporting, controls, oversight, or administration, and appointments of unnecessary attorneys for children in simple, routine, normal post-divorce judgment custody violation cases. These appointed lawyers form PIDRP's fundamental core. Defendant DiFiore maliciously uses these private individuals, not only to manufacture fees, which as a matter of facts are the imposition of the impermissible domestic relations "justice" tax, despite commanding statutes that prohibit this practice.   Defendant DiFiore ignores the law to maliciously create income for these judicial appointees that provide the family courts with low-cost services in child abuse, child neglect, child abandonment, and juvenile delinquency cases in other matters as so called "18-b" lawyers. Defendant DiFiore sanctions the collection of these fees through summary contempt and summary arrest warrants with no due process. On May 15, 2014, the Plaintiff accused Defendant Fasanya of colluding with one such 18-b lawyer, Carmen Restivo. The events of May 15, 2014 are at the core of the scheme to fabricate jurisdiction that generates the excessive fees.  Defendant DiFiore simply ignored this plain, hard fact and sanctioned the fabrication of $225,668.22 in punitive fees and the collection of these fees though fabricated contempt and fabricated arrest warrants as part of her retaliation against the Plaintiff. Defendant DiFiore's financial and political interest in the PIDRP is the only reason she is defending Defendant Fasanya from the Plaintiff's May 15, 2014 and subsequent complaints. Based on his investigation, the Plaintiff believes that under Defendant DiFiore's PIDRP, New York citizens are being charged over $350,000,000 in excess fees annually. The $350,000,000 is a product of PIDRP's fabricated jurisdiction, which is a product of the DRE. These fees are—plain and simple—PIDRP's "pay to play" tax on citizens in domestic relations matters as a result of the DRE.

**BASIS FOR JURISDICTION**

7.     This complaint is brought pursuant to 18 U.S.C.A. §241; 28 U.S.C.A. §1443 and 42 U.S.C.A. §1983; §1985; §1988 and Federal Rules of Civil Procedure Rule 9 and Rule 38 and demands a trial by jury on all issues contained herein pursuant to the Seventh Amendment of the U.S. Constitution to recover compensatory and punitive damages from the Defendants for intentionally depriving the Plaintiff of his civil, property and due process rights as provided in the Fourteenth Amendment of the U.S. Constitution and New York State laws including his legal rights to seek protection and redress in the state, and for conspiring and intentionally using prohibited and impermissible processes, false manufactured evidence and prohibited, impermissible and intentional conduct to deny and disparage the Plaintiff's unenumerated rights as provided in the Ninth Amendment of the U.S. Constitution.  Among the Plaintiff's most important federal rights is the right to be protected against an exalted state government using executive power to fabricate subject matter jurisdiction, to fabricate charges that do not exist in the state's law texts, to manufacture evidence to intentionally deprive the Plaintiff of his private property and to conceal their misconduct through  prohibited and impermissible procedural manipulations and brute in-court police force for the sole and intentional purpose of avoiding federal jurisdiction. This action is brought pursuant to 42 U.S.C. §§1983, 1985 and 1986 and Fourth and Fourteenth Amendments.  Jurisdiction is founded on 28 U.S.C.A. §1331 and 1343(1) (2) (3) (4) and the aforementioned statutory and constitutional provisions.

8.     Plaintiff further invokes the pendent jurisdiction of this court to consider claims arising for the denial of rights under state law including New York State's CPLR §136, §600.6, §600.3, §640, §640.10, §640.9, §3016, §3200 and §5015 and Judiciary Law ("JL") §35, §36, §36.2, §604.1, §604.2, §753, §756, § 770, §772, and §773 and Family Court Act ("FCA") §145, §245 and §248 and §424-a, and Domestic Relations Law §245, and New York Penal Code §10 containing the definitions of an offense, crime, felony, public servant and benefit, §15.05 defining culpability and culpable mental states, §20.00 Criminal liability for conduct of another, § culpability, corrupt use of position, public corruption, official misconduct, conspiracy, coercion, scheme to defraud and larceny. New York Constitution Article 6 §23(a) and New York Executive Law Article 5 §63 and §63-a (8) that are applicable to the inherent duties of the state official towards the Plaintiffs.

9.     The Plaintiff is challenging the federal courts' use of the so-called "<u>domestic relations exception to Article III  or federal subject matter jurisdiction</u>" ("DRE") in this case involving

conscious government wrongdoing in a simple, normal, routine, post-divorce judgment child custody dispute exclusively concerning private matters, such as religion and private moral and political beliefs, where government jurisdiction is legally most limited and where there are allegations of government action without subject matter or personal jurisdiction or a legitimate state purpose, or other authority, and without disclosure, notice, process or record to acted for the explicit purpose of fabricating jurisdiction. In effect, the DRE allows New York State to enforce a permanent domestic relations matters jurisdiction rule regardless of how remote the family judge's misconduct lies outside of permissible judicial jurisdiction or how far removed the individual acts are from a permissible state or judicial function. New York State is using the DRE to protect its PIDRP in other to wantonly interfere in the contract between the Plaintiff and Defendant Bosak, which was ratified by New York Supreme Court on April 30, 2103 and was incorporated in full as if it were actually writing into in New York State's Judgment of Divorce on August 13, 2013 ("JOD") without modification, without a legitimate state purpose and based solely on its political and financial interests.

– remainder of page intentionally left blank –

## PARTIES

**A.    PLAINTIFF INFORMATION**

Plaintiff 1:     Manuel            P.                Asensio                          .
                 First Name      Middle Initial        Last Name

                 808 Brickell Key Drive, Apt. 1901                                   .
                 Street Address

                 Miami                          Florida            33131             .
                 County, City                   State              Zip Code

                 (917) 515-5200                 mpa@asensio.com                      .
                 Telephone Number               Email Address (if available)

Plaintiff 2:     Eva               V.                Asensio      ("Plaintiffs Daughter")
                 First Name      Middle Initial        Last Name

                 355 East 72nd Street, Apartment 17C                                 .
                 Street Address

                 New York              New York            10021                     .
                 County, City          State               Zip Code

**B.    DEFENDANT INFORMATION**

Defendant 1:     Janet            M.      DiFiore                                    .
                 First Name    Middle Initial    Last Name

                 Chief Judge of the Court of Appeals, New York State                 .
                 Current Job Title (or other identifying information)

                 Office of Court Administration, 25 Beaver Street, 10th Floor        .
                 Current Work Address (or other address where defendant may be serviced)

                 New York              New York            10004                     .
                 County, City          State               Zip Code

Defendant 2:     Barbara          Underwood                                          .
                 First Name       Last Name

                 Attorney General, New York State                                    .
                 Current Job Title (or other identifying information)

                 Office of the New York State Attorney General, 28 Liberty Street, 15th Floor
                 Current Work Address (or other address where defendant may be serviced)

                 New York              New York            10005                     .
                 County, City          State               Zip Code

Defendant 3:     Andrew           Cuomo                                             .
                 First Name       Last Name

                 Governor of the State of New York                                   .
                 Current Job Title (or other identifying information)

                 NYS Capitol Building                                                .
                 Current Work Address (or other address where defendant may be serviced)

                 Albany                New York            12224                     .
                 County, City          State               Zip Code

Defendant 4:   <u>Adetokunbo              Fasanya</u>                          .
               First Name            Last Name

               <u>Magistrate in the New York County Family Court</u>          .
               Current Job Title (or other identifying information)

               <u>60 Lafayette Street, Part 5, 4th Floor</u>                   .
               Current Work Address (or other address where defendant may be serviced)

               <u>New York              New York            10013</u>         .
               County, City            State              Zip Code

Defendant 5:   <u>Emilie       M.          Bosak</u>                          .
               First Name   Middle Initial   Last Name

               <u>Plaintiff's Former Spouse and Eva Asensio's mother</u>      .
               Current Job Title (or other identifying information)

               <u>355 East 72nd Street, Apt. 17C</u>                          .
               Current Work Address (or other address where defendant may be serviced)

               <u>New York              New York            10021</u>         .
               County, City            State              Zip Code

- remainder of page intentionally left blank --

## FEDERAL SUBJECT MATTER JURISDICTION

10.     None of the facts, factors or circumstances related to this complaint have been listened to, paid attention to, considered, processed, reviewed or decided in any legitimate administrative or legal process in New York State. The state has deliberately suppressed the Plaintiff's allegations against the PIDRP, Defendant DiFiore and Defendant Fasanya's fabrication of jurisdiction since May 15, 2014, charges and evidence, and use of their general administrative powers to fabricate summary contempt and arrest warrants to misappropriate $280,090.22 from the Plaintiff without any process.

11.     The facts, factors and circumstances in the DiFiore-Fasanya Complaints have been deliberately and maliciously concealed under PIDRP by 54 state judges, which includes Defendants DiFiore and Defendant Fasanya, who have acted in violation of law and Part 100. The Plaintiff claims are against the Governor and State Attorney General are cooperating with the Defendant DiFiore to allow her to use the Article VI §28 and §30 powers to sanction Defendant Fasanya's unauthorized conduct. The Plaintiff had no alternative other than to withdraw his voluntary appearance and his domestic relations petitions from state court on April 21, 2015 in order to purse his state claims commenced on May 15, 2014 and constitutional rights in the state.

12.     The Plaintiff claims that Defendant Fasanya ultimately retaliated by grossly fabricating jurisdiction and fabricating a grossly improper custody suspension order in cooperation with Defendant Bosak on January 15, 2016, 19 months after the Plaintiff filed his initial complaint against Defendant Fasanya and 8 months after he withdrew and longer after his May 15, 2014 complaint was filed. Defendant Fasanya then engaged in a prohibited and impermissible cooperation with Defendant Bosak and Mr. Newman to fabricate evidence to support his fabricated suspension.

13.     A letter from Defendant DiFiore dated December 5, 2016 to the Plaintiff capriciously callously and impermissibly "pardons" Defendant Fasanya, and the conduct of 54 judges after Defendant DiFiore issued her "pardon." The evidence also includes Defendant DiFiore's deceitful claim to the Court of Appeals that she took no part in the case against Defendant Fasanya, and the obviousness of the state attorney general and 51 judges' actions to protect Defendant DiFiore and Defendant Fasanya.

**NO POSSIBLE ACCESS TO JUSTICE IN THE STATE**

14.    To defend his grossly improper scheme to fabricate jurisdiction, Defendant Fasanya is using his general powers over his court officers to commandeer his court room and use it for the sole and exclusive unauthorized purpose of fabricating and collecting fees simultaneously to Defendant DiFiore denying the Plaintiff access to the state's only constitutional court, the appellate division and the Court of Appeals.

15.    Defendant Fasanya does not, and cannot, hide his unauthorized behavior from the Plaintiff. Defendant Fasanya simply knows that the Plaintiffs are powerless against him. The facts, factors and circumstances make it perfectly obvious that Defendant Fasanya that he is protected by Defendant DiFiore no matter the seriousness of his unauthorized behavior.

16.    The Plaintiff claims that Defendant Underwood and Defendant DiFiore's sole purpose in cooperating with Defendant Fasanya is to barricade the Plaintiff in the state's justice system where they have abrogated the Plaintiff's right to a cause of action against Defendant Fasanya under New York State's FCA §145.

17.    It is only through the protection of the DRE that New York is able to fabricate on-going jurisdiction for five (5) years in this case involving a normal, common, routine post-divorce judgment enforcement action between two fit, normal parents using PIDRP.

**THE DRE IS NOT APPLICABLE TO THIS COMPLAINT**.

18.    There is no on-going state domestic relations case, nor can there be under Defendant DiFiore's impermissible PIDRP scheme that allows Defendant Fasanya to deliberately violate the law to fabricate evidence and judgments in cooperation with Defendant Bosak. This is a matter of a state angrily flexing its overwhelming executive power against the Plaintiff. The sole purpose of using this power against the Plaintiff is to retaliate against the Plaintiff for refusing to accept Defendant DiFiore's impermissible rule making and conduct. The Plaintiff opposes Defendant Fasanya imposing his own religious, political and personal ideology on the Plaintiffs, and through his judicial appointees, and refuses to accept Defendant Fasanya obvious dishonesty intended to intimidate and instill fear. The Plaintiff is being punished for doing so. Defendant DiFiore knowingly and deliberately is using PIDRP to deny the Plaintiff to right teach his religious and moral beliefs to his own daughter.

19.     Defendants DiFiore and Underwood have been served with advance copies of this complaint and petitions seeking relief.  The Hon. Jonathan Lippman, the former Chief Judge of New York State, and Defendant DiFiore's principle staff members in the Chief Judge's chambers, the Chief Judge's deputies and the Chief Judge's administrative legal and public relations staff have been continuously served with evidence and petitions addressing Defendant Fasanya's unauthorized conduct since May 15, 2014.   All complaints were nullified by the PIDRP.

## A.     FEDERAL QUESTION JURISDICTION

20.     The Plaintiff claims Federal Question Jurisdiction over these pleadings pursuant to 28 U.S.C. § 1331, to address ongoing violations of Federal Law.

21.     Defendant DiFiore has and is continuing to deliberately use her administrative/ministerial powers to engage in grossly improper conduct and to sanction unauthorized acts against the Plaintiffs.  Defendant DiFiore has and is continuing to do so under the protection of Defendant Cuomo and Defendant Underwood. It is patently impermissible for Defendant DiFiore to use the Chief Judge's administrative/ministerial powers to affect the Plaintiff's legal rights and the evidence and judgment in his legal proceedings directly or through the use of PIDRP. It is patently impermissible for Defendant DiFiore to cause other state officials to use their official positions against the Plaintiffs' legal rights, much less to fabricate charges, evidence and judgments.  The Plaintiff complains that Defendant DiFiore has and continues to do so knowingly and without apprehension.

22.     The keystone of Defendant DiFiore's grossly improper conduct is her conspiracy with Mr. Newman.  Mr. Newman's grossly improper cooperation with Defendant Fasanya and Defendant Bosak to fabricate charges and evidence against the Plaintiff is one of this case's single most abominable claims. The charges were dismissed. The charges Mr. Newman and Defendants Fasanya and Bosak fabricated do not exist in the state's law text and are a blunderbuss of meaningless and undefined political and fictitious absurdities.

23.     To protect Mr. Newman and Defendants Fasanya and Bosak against the Plaintiff's defensive actions, Defendant DiFiore, without authority to do so, has used PIDRP to cause the fabrication of sixty-three (63) grossly improper orders in seventeen (17) state proceedings to grossly improperly sanction fifteen (15) acts of fabricating fees totaling $280,090.22, a deliberate false incarceration,

1   all executed in clear absence of jurisdiction without any reason or purpose other than to harass the
2   Plaintiff.

## Primary Federal Question: Lack of Government Jurisdiction
## by State Officials and Judiciary

24.     This complaint does not involve the legitimate use of authorized state executive or judicial power. It is strictly focused on unauthorized, impermissible acts by individual under the cover of their official positions. These acts are not protected under the concepts of judicial or government official immunity.

25.     This complaint does not involve the legitimate use of authorized general administrative powers of a judge in a legal case or acts of a judge engaged in judicial interpretation of facts or law in a domestic relations matter. None of the acts relevant to this pleading involve judicial authority to administer or adjudicate a dispute between the Plaintiff and Defendant Bosak, or the Plaintiff and Defendants DiFiore, Underwood, Cuomo, or Fasanya.

26.     This complaint does not involve the legitimate use of authorized judicial power to make legal and factual determinations nor a judicial function or acts performed by a judge while engaged in a judicial capacity in a subject matter that is under a judge's legal jurisdiction. The acts of the judicial defendants described herein are not protected by the concepts of judicial independence or judicial immunity.  They are malicious wanton acts in clear absence of jurisdiction.

- remainder of page intentionally left blank –

**Secondary Federal Question: Will this court allow the Defendants to use the DRE to violate Plaintiff's rights and emotionally abuse and politically indoctrinate the Plaintiff daughter?**

27.     Defendant DiFiore has used the PIDRP through her administrative/ministerial control of the state judiciary's education, training and supervision of judges for the creation and enforcement of judicial ethics and conduct rules, and rules governing the conduct of court officers.  This insidious administrative/ministerial wrongdoing is done internally within the UCS without public notice, but is observable and self-evident through Defendant DiFiore's sanctioning of Defendant Fasanya's near criminal acts to cooperate with Defendant Bosak and take the Plaintiff's private property and parental rights to retaliate.  Defendant DiFiore used PIDRP to directly sanction Defendant Fasanya's impermissible use of his official position on May 15, 2014, January 15, 2016, September 16, 2016, June 30, 2017, May 12, 2018 and June 8, 2018, and on each court date he held in which he deliberately and maliciously violated New York Statutes.

28.     Defendant DiFiore has defended and protected Defendant Fasanya from the Plaintiff's complaints and denied the Plaintiff access to justice by allowing Defendant Fasanya to first fabricate jurisdiction over his own unilaterally fabricated case, and then deliberately refrained from performing her clear duty to regulate Defendant Fasanya's acts outside of his jurisdiction including fabrication of an impermissible "justice" tax.  Instead, Defendant DiFiore sanctioned Defendant Fasanya's fabricated jurisdiction knowing that his intention is to use the fabricated jurisdiction for the sole purpose of violating the plaintiff's rights and to intimidate, create fear, and control the Plaintiff and manipulate the blameless Plaintiff daughter.

29.     Under the allurement and catalyst of the DRE, Defendants DiFiore has **absolute power** over the state's domestic relations process without any regulation or oversight. Since initiating the Fasanya Complaints on May 15, 2014, under DRE cover, the Defendants have abrogated the Plaintiff's rights under CPLR and left the Plaintiff with no legal rights or protection in New York State.

## B.  FEDERAL FACT ISSUES

### ABROGATION OF LEGAL RIGHTS

30.    The state government has secretly sanctioned Defendant DiFiore to use her administrative powers under New York Constitution Article VI § 28 [Administrative supervision of the courts] and New York Constitution Article VI § 30 [Regulation of jurisdiction, practice and procedure of the courts] to thwart the Plaintiff's actions against Defendant Fasanya.  Together they have acted and continue to act in an impermissibly, dilatory, evasive, obstructive, contumacious and unauthorized manner to conceal and stifle the Fasanya Complaints. No decisive fact, factor or circumstance has been attended or considered and no proceedings on any of allegations, facts or claims in the Fasanya Complaint has been allowed. Defendant DiFiore has manufactured sixty-three (63) orders for the sole and exclusive illegitimate purpose of concealing the Fasanya Complaint from federal jurisdiction using the DRE.

31.    Defendant DiFiore has denied the Plaintiff's rights under FCA § 145, which deliberately, unequivocally and unambiguously abrogates the immunity of family court judges in New York Family Court and under FCA §§ 245 and 248, which is legislation enacted to deliberately, unequivocally and unambiguously command family court magistrates in New York Family Court to charge the state for the cost of an attorney they appoint to represent a child.

32.    By allowing deliberate violations of FCA §§ 245 and 248, Defendant DiFiore not only manufactures taxes without legislation or representation but can make payments to judicial appointees that provide the UCS with services in other matters.

33.    Simply by abusing the discretion on FCA § 1112 under an unpublished administrative order, Defendant DiFiore yields extraordinary power to prolong and complicate simple, routine, private, normal post-divorce judgment custody cases to subsidize the cost of family court cases.

34.    This collusion creates absolute corrupt power within the state government through appointment of the Chief Judge and all of the members of the New York State's Administrative Board of the Courts ("ABC"), controlling a majority of the New York State Commission on Judicial Conduct, the Chief Judge who individually controls UCS' Office of Court Administration ("OCA"), the New York State Judicial Institute, State Advisory Committee on Judicial Ethics ("NYSACJE") and UCS Department of Public Safety ("NYSDPS").

35.     The Plaintiff discovered one case where the NYSCJC started an investigation into a family court judge who deliberately ignored the presence and readiness to proceed of a parent and his counsel and rudely dismissed a parent's petition and enforced by the NYSDPS. The NYSACJE responded with an invective letter to the NYSCJC castigating their action.  The NYSCJC replied with a deferential and apologetic letter and closed the investigation without acting.

## DRE USED TO ALLOW UNAUTHORIZED CONDUCT BY STATE CHIEF JUDGE

36.     Defendant DiFiore continues to take corrupt actions intentionally to allow Defendant Fasanya to cooperate with Defendant Bosak. Further, Defendant DiFiore is using her official position to corrupt 117 other judges and state officials in order to protect Defendant Fasanya from discovery and answering the Fasanya Complaints.

37.     At the same time, Defendants Cuomo and Underwood are maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against the Plaintiffs.

## FASANYA CRUEL INSTRUCTIONS TO SPITZER

38.     This complaint includes a statement of claims that Defendant DiFiore and the Court of Appeals allowed Defendant Fasanya to fabricate jurisdiction after the Plaintiff withdrew solely for the malicious purpose of engaging in retaliation.  The retaliation includes Defendant DiFiore giving instructions to his Sua Sponte judicial appointee, Richard Spitzer. Defendant DiFiore and the Court of Appeals have allowed Defendant Fasanya to destroy court records of the Plaintiff's testimony about the collusion between Defendant Fasanya and Mr. Spitzer in the Plaintiff's March 2016 motion to disqualify Mr. Spitzer and Defendant Fasanya. The Plaintiff affirms that Defendant Fasanya instructed Mr. Spitzer to harass the Plaintiffs. Defendant Fasanya charged the Plaintiff's attorney, Rosemarie Barnett, with contempt when she accused him of colluding with Mr. Spitzer. Ms. Barnett executed an Affidavit recounting her experience in Defendant Fasanya's courtroom, which the Plaintiff has incorporated into these pleadings as indicated above.

39.     . Defendant DiFiore and the Court of Appeals then instructed New York County Supreme Court Justice Nancy Bannon to conceal the entire Fasanya-Spitzer Matter. Finally, Defendant DiFiore herself concealed the Fasanya-Spitzer Matter from her chambers under an administrative complaint at the State Commission on Judicial Conduct.

## STATE ATTORNEY GENERAL ALLOWING MR. NEWMAN AND DEFENDANT FASANYA TO MANUFACTURE EVIDENCE

40.     The New York District Attorney ("NYDA") has two different roles in PIDRP. The NYDA's Public Corruptions Unit is refraining from processing the Fasanya Complaint, and its Domestic Violence Unit ("DVU") has overtly cooperated with Defendant Bosak to manufacture false charges against the Plaintiff. Lawrence Newman is the chief of the DVU and is intimately involved in overt corruption in knowingly processing Defendant Bosak's improper December 29, 2015 report. The report was about alleged events that occurred in New York City. At the time of these alleged events, Defendant Bosak was traveling outside the country and deliberately not complying with her custody obligations while having physical custody of the Plaintiff daughter. The Plaintiff affirms that on December 29, 2015, he only became aware that Defendant Bosak was traveling when he saw Defendant Bosak posting pictures of herself on Instagram of her smoking marijuana and posing naked on a beach in Mexico.

41.     Defendant Fasanya and Mr. Newman are not only automatically adopting Defendant Bosak's false charges but are empathizing with her impermissible conduct to justify isolating and protecting her from the Plaintiff's complaints.

42.     Defendant Fasanya and Mr. Newman not only defend Defendant Bosak but openly display their contempt for the Plaintiff and his complaints by punishing him on her behalf by committing fraud to commit larceny against the Plaintiff.

43.     Defendant Fasanya and Mr. Newman are openly and personally acting as adversaries against the Plaintiff in the state, knowing that Defendants DiFiore, Underwood and Cuomo will commit fraud themselves to sanction any action that Defendant Fasanya and Mr. Newman take, regardless of the extent of harm they cause to the Plaintiffs. They will then use the DRE and state sovereignty arguments to protect themselves from federal jurisdiction. Defendant Fasanya and Mr. Newman know that they are indemnified by the state and feel no fear of harm to themselves and no guilt for the great lifelong harm they are causing a blameless child.

44.     Defendants DiFiore, Underwood and Cuomo have made it obvious to the Plaintiff that they will not restrain Defendant Fasanya for using corruption to commit unconstitutional seizures of

money from the Plaintiff, and they will not restrain other judges from using corruption to restrain, intimidate, and instill fear in the Plaintiff for having filed the Fasanya Complaints.

45.     To date, despite the fact that the Plaintiff withdrew his custody violation petitions to pursue the Fasanya Complaints, Defendant Fasanya has unilaterally manufactured processes sixteen (16) times to commit unconstitutional seizures of money from Plaintiff totaling of $226,090.22. Defendant Fasanya did this through grossly improper unauthorized conduct bearing no resemblance to a judicial function. All sixteen (16) acts of unconstitutional seizure occurred outside of any legal proceeding. The most recent of these occurred on July 16, 2018 when Defendant Fasanya vacated his arrest warrant against the Plaintiff that forced the Plaintiff to pay $62,912.82 to Defendant Bosak's attorneys.

46.     Defendants DiFiore, Underwood and Cuomo using the DRE to commit unconstitutional seizure of private property and to manufacture evidence in cooperation with Defendant Fasanya as well as to avoid complying with the US Constitution and US Supreme Court common law governing the use of state power in custody cases involving normal, healthy parents and their children.

## "CRIMINAL" INDIFFERENCE TO CIVIL AND PARENTAL RIGHTS

47.     Defendant DiFiore used PIDRP, which are Defendant DiFiore's standards and policies that she is responsible for creating and administrating, to convert the Plaintiff's ordinary, commonplace routine, uncomplicated post-divorce judgment custody violation petition against Defendant Bosak into a 5 year and 5 months ordeal that led to this federal civil rights case. The Plaintiff has published articles on PIDRP under the title *"Topsy-Turvy [State] Chief Judges"* and articles that disclose the origins of his investigation. He is a political advocate for federal action to end the deliberate fabrication of subject matter jurisdiction, use of third parties in normal routine post-divorce enforcement of rights to create punitive court fees violations of parental rights using undefined concealed ideology rules against Americans on American soil.

48.     The Plaintiff is not claiming Defendant DiFiore made errors, mistakes or bad judgments against the Plaintiffs. The Plaintiff is affirming that Defendant DiFiore deliberately acted maliciously and clearly outside of her jurisdiction and has no executive or judicial authority, standing, right or power to take any of the actions she has taken against the Plaintiffs. Neither

Defendant DiFiore nor do Defendant Fasanya's actions involve a legitimate state or judicial function or process. They do not involve judicial power to interpret law or real evidence gathered in a trustworthy record. They do not involve conduct that has legitimate state purpose that is within their jurisdiction. On the contrary, the conduct is clearly outside of the jurisdiction of any state official or judge. It is especially outside of Defendant Fasanya's jurisdiction who is obligated to be vigilant of violations of the State's judgements of divorce by the custodial parents and who must preserve family unity. This makes Defendant DiFiore's misconduct utterly intolerable in a civil society.

49.     Each deliberate violation of law, rules, reason, duty and dishonest act perpetrated by Defendant DiFiore, Defendant Fasanya and Lawrence Newman, Chief of the Domestic Violence Unit, New York County District Attorney's Office ("Mr. Newman") in cooperation with Defendant Bosak against the Plaintiffs is Defendant DiFiore's personal individual responsibility. Defendant DiFiore has denied of Plaintiff's discovery rights under New York State's CPLR and its Freedom of Information Law ("FOIL") in his actions against her, Defendant Fasanya and Defendant Bosak and the imposition of a ban on all actions by the Plaintiff against Defendant Fasanya and Defendant Bosak and any judge involved in an action by the Plaintiff them.

50.     An example of the extent of how PIDRP's functions is contained Plaintiff's first formal complaint filed on <u>May 15, 2014</u> against Defendant Fasanya has been treated.

51.     On November 17, 2014 Defendant Fasanya found that Defendant Bosak had materially interfered with the Plaintiffs' custody rights and entered an order a trial in the Plaintiff's favor against Defendant Bosak. In fact this order was a hoax, as time has proven.

52.     The Plaintiff filed his May 15, 2014 immediately after he witnessed Defendant Fasanya role playing with Defendant Bosak's lawyer, Susan Moss, and Carmen Restivo to Ms. Restivo is a private attorney that Defendant Fasanya desired to appoint as the Plaintiff daughter's attorney. Defendant Fasanya acted as if Ms. Moss and Ms. Restivo were saying something of import that he was interested in and annoyed. Defendant Fasanya let Ms. Moss and Ms. Restivo go on and go on with meaningless, petty hearsay while he ignore the Plaintiff's attorney's legal objections.

53.     Immediately after the May 15, 2014 incident the Plaintiff filed formal complaints against Defendant Fasanya and Ms. Restivo. Immediately after the May 15, 2014, the Plaintiff called Ms.

Restivo and clearly, advised Ms. Restivo of his complaint against her collusion with Defendant Fasanya and Defendant Bosak stating he would withdraw his petitions against Defendant Bosak and dedicate himself to pursuing his complaints against Defendant Fasanya, Defendant Bosak, and Ms. Restivo unless she withdrew. Defendant Fasanya ignored the Plaintiff's complaint and acted as if nothing had occurred.

54.     In his investigation the Plaintiff discovered that Ms. Restivo has a 25 year affiliation with New York County Family Court and an intimate relationship with Defendant Fasanya, who was a "green" interim magistrate at the time and needed her guidance. The Plaintiff also discovered that Ms. Restivo professed radical attitudes about masculinity, and the relative value of paternal versus maternal, drug abuse and public exhibitions. These values was in direct conflict with the Plaintiff's conservative traditional family attitudes. The Plaintiff teaches age-old successful traditions of religious worship, independence and male-female cooperation, and Ms. Restivo "identifies" masculinity as a form of tyranny. The Plaintiff holds is against government interference in private matters and is for limited government, free enterprise/capitalism as good, just, proper moral sentiments. Defendant Fasanya knew at the time that he made the November 17, 2014 order that the Plaintiff had filed a complaint against him and Ms. Restivo that he would not contest to Ms. Restivo's appointment or Defendant Fasanya's misconduct.  Defendant Fasanya's acts should be prosecuted under the Penal Code and Part 100 Rules. Instead, Defendant DiFiore has involved the 119 state officials, including herself and at least 53 state judges to engage in a cover up and to retaliate against the Plaintiff.

55.     All of the actions against the Plaintiff since May 15, 2014 has been deliberate and malicious one-sided fabrications executed to retaliate against him, including the fabrication of the arbitrarily and unauthorized appointment of Ms. Restivo and Defendant DiFiore and Defendant Fasanya ignoring the Plaintiff's withdrawal and allow Defendant Fasanya and Ms. Restivo to continue colluding with Defendant Bosak against the Plaintiffs. Defendant DiFiore also allowed Defendant Fasanya to fabricate of arbitrary and unauthorized so called "interim" fees for Ms. Restivo, contempt orders and summary "pay or be arrest" orders to collect these fees by creating fear loss of legal rights and loss of liberty with no recourse since Defendant DiFiore may it clear she was sanctioning Defendant Fasanya's misconduct within the UCS. The "interim" fees orders are not reviewable or appealable under state statute.

56.     On January 16, 2016, Defendant Fasanya escalated his retaliation to include an arbitrarily and unauthorized so called "interim" 2-week suspension, which under state statute are also not reviewable or appealable.   On the April 25, 2016 the Plaintiff requested that the former Deputy Chief Administrative Judge Fern Fisher refer Defendant Fasanya to the New York County District Attorney's Public Corruption Unit or the New York State Attorney General for criminal investigation based on Defendant Fasanya's ongoing fabrication of jurisdiction and fee scheme with Ms. Restivo and his January 15, 2016 malicious fraudulent entry of a "interim" suspension.   On April 25, 2016, the Plaintiff filed a complaint directly with Defendant DiFiore.   On December 5, 2016, Defendant DiFiore arbitrarily and without process or authorization fabricated a blanket protection order that banned all of the Plaintiff's actions against Defendant Fasanya and all actions against Defendant Bosak other than before Defendant Fasanya.   Defendant DiFiore ban includes constitutional rights actions and custody actions in the Supreme Court's Matrimonial Part, plenary, special proceedings and constitutional actions in Supreme Court, normal appellate practice, original proceedings and special original proceedings under Article 10 Defendant DiFiore against at the Appellate Division for the First Department, and actions at the Court of Appeals.

57.     Based upon personal knowledge, information and real evidence, the Plaintiff affirms that Defendant DiFiore has and is continuing to maliciously and deliberately use administrative powers of the chief judge under New York State's Constitution Article 6 §28 illegally in order to sanction Defendant Fasanya's fabrications to prevent the Plaintiffs from enforcing the custody terms of JOD.

58.     The Plaintiff further affirms that the Defendant Cuomo and Defendant Underwood have deliberately and wrongfully abstained from exercising the inherent duties of their official positions under New York Constitution Article 6 §23(a) and New York Executive Law Article 5 §63 and §63-a (8) to monitor, supervise, investigate, regulate and prosecute Defendant DiFiore for her malicious actions against the Plaintiffs.

59.     The Plaintiff incorporates the following affidavits to this pleading that demonstrate that the DRE has allowed state officials to act in clear absence of their jurisdictions:

      I.   Affidavit of Service

      II.   Affidavit Identifying 119 State Officials Participating in PIDRP

      III.   Affidavit Identifying 39 Dismissals of Restraining Actions Against PIDRP

IV. Affidavit of Factual Allegations

V. Affidavit of Eye Witness Judicial Misconduct

VI. Affidavit of Former Attorney

60.     The Plaintiff includes the March 6, 2017 affidavit of Rosemarie A. Barnett, Esq. titled "Affidavit of Former Attorney." The affidavit is based Ms. Barnett's first hand experiences, observations and mental impressions of Defendant Fasanya's conduct and actions. Ms. Barnett made a special appearance in the case to deal with Defendant Fasanya's January 15, 2016 suspension of the Plaintiff's parenting suspension. Ms. Barnett states that that the January 15, 2016 suspension, was "an unsubstantiated, and possibly *illegal*, measure taken by [Defendant Fasanya] against a non-custodial parent, who had actually filed his own violation petition based on the same circumstances, in which he gave a clear account of [Defendant Bosak's] many violations....[which Defendant Fasanya] ignored." Ms. Barnett's affidavit contains her mental impressions of the "puzzling," "disturbing" and "severe" acts by Defendant Fasanya against the Plaintiff that were that occurred during her representation of the Plaintiff. Ms. Barnett affirms that she *"authorize[s] Mr. Asensio to use it in support of his goal to remain connected with his daughter Eva Asensio. I firmly believe that this is a case that cries out for justice and empathy for a child who is slowly losing the emotional connection with her father for no good reason."*

## DAMAGES AND RELIEF SOUGHT

61.     Against Defendant the Hon. Justice Janet Marie DiFiore, Chief Judge of New York State, for breaching a ministerial duty, civil rights violations, due process violations, unauthorized enterprise, obstruction of justice, tampering with evidence and witnesses, conspiracy, malicious abuse of legal process, extortion and subornation. As against Defendant DiFiore, Plaintiff prays to recover $15,000,000.00 in compensatory damages and $30,000,000.00 in punitive damages.

62.     Against Defendant Barbara Underwood, New York State Attorney General, for fraud, civil rights violations, due process violations, criminal enterprise, obstruction of justice, tampering with evidence and witnesses, conspiracy, malicious abuse of legal process, extortion and subornation. As against NYAG Underwood, Plaintiff prays to recover $15,000,000.00 in compensatory damages and $30,000,000.00 in punitive damages.

63.     Against Defendant Andrew Cuomo, Governor of New York State, for fraud, violations of a civil rights violations, due process violations, criminal enterprise, obstruction of justice, tampering with evidence and witnesses, conspiracy, malicious abuse of executive process, and subornation. As against Governor Cuomo, Plaintiff prays to recover $15,000,000.00 in compensatory damages and $30,000,000.00 in punitive damages.

64.     Against Defendant DiFiore for breaching a ministerial duty, civil rights violations, due process violations, unauthorized enterprise, obstruction of justice, tampering with evidence and witnesses, conspiracy, malicious abuse of legal process, extortion and subornation. As against Defendant Fasanya, Plaintiff prays to recover $15,000,000.00 in compensatory damages and $30,000,000.00 in punitive damages.

65.     Against Defendant Emilie Marie Bosak, for conspiracy, malicious abuse of legal process, slander, obstruction of justice, civil rights violations, due process violations, and the intentional infliction of emotional distress. As against Defendant Bosak, Plaintiff prays to recover $15,285,585.00 in compensatory damages and $30,500,000.00 in punitive damages.

## STATEMENT OF CLAIMS FOR THE DAMAGES AND RELIEF SOUGHT

66.     Below is a summary account of the facts contained in the Plaintiff's accompanying Affidavit of Factual Allegations, pertaining to the Plaintiffs' pleadings in this complaint, and adopted in the Statement of Claims sections below.

67.     On May 15, 2014 the Plaintiff was an eye witness to Defendant Fasanya's obvious, malicious conscious wrongdoing as he used his general powers and his in-court police force to direct a rehearsed fictional narrative between himself, Defendant Bosak's attorney, Susan Moss, and a private attorney that Defendant Fasanya was attempting to appoint to be Eva's attorney. Not only did Defendant Fasanya maliciously direct the fabrication of a false nonsensical court record against the Plaintiff, which contained no admissible evidence but Defendant Fasanya deliberately blocked the Plaintiff's counsel from presenting the admissible probable evidence based on Plaintiff's eye witness account that was refutable and materially damaging to Defendant Bosak.

68.    To set up the staged colloquy Defendant Fasanya ignored the proceeding that was actually set for May 15, 2014 on the Plaintiff's petitions, which has been ignored since July 5, 2013. Instead Defendant Fasanya ambushed the Plaintiff without notice and used his in-court officers to block Plaintiff from testifying. Defendant Fasanya acted as if the story told by Defendant Bosak's counsel were real evidence in a real proceeding with real meaning not irrelevant, immaterial and unannounced falsehoods. The Plaintiff and his counsel had no plans to deal with false stories, the business of the day was to move forward to trial in the real proceedings.  It was obvious that Defendant Fasanya had had ex parte communications with Defendant Bosak's counsel prior to the incident and his motives and intentions were even more apparent, to prolong, disturb, delay and disrupt the proceedings in the Plaintiff's case, which was the only matter properly before Defendant Fasanya.

69.    The incident was shocking, however the Plaintiff immediately realized that Defendant Fasanya's in-court officers had been trained to take an active part in Defendant Fasanya's prohibited and impermissible process. Regardless of all other considerations, the Plaintiff immediately understood that Defendant Fasanya had no interest in his case or respect for law and order, much less the sanctity of Defendant Bosak's violation of JOD that were the only issues before Defendant Fasanya on May 15, 2014.

70.    The Plaintiff immediately filed a complaint with Defendant Fasanya personally, and with his supervisors. On April 21, 2015 the Plaintiff withdrew his custody petitions after Defendant Fasanya not only ignored his complaints but threatened the Plaintiff's lawyer for alluding to it in court. The Plaintiff withdrew despite Defendant Fasanya ordering a trial in the Plaintiff's favor based on a finding that Defendant Bosak had materially interfered with the Plaintiff's access to his daughter.  The Plaintiff understood the level of Defendant Fasanya's dishonesty seeing that he believed issuing the trial order in his favor would cause him to not consider his May 15, 2014 conduct and subsequent conduct attempting to cover up his acts that are fatal to justice.

71.    The Plaintiff petitioned Defendant Cuomo under his authority in New York State's Constitution Article 6 §23 to send a message to the New York State senate requesting a trial on the Plaintiff's charges against Defendants DiFiore and Fasanya.  Separately the Plaintiff sought legislative support to remove Defendant Fasanya from the bench and is petitioning AG Underwood

to file criminal charges against Defendant Fasanya under New York Penal Codes governing official misconduct.

72.     The Plaintiff firmly, without doubts or apprehensions, avers that Defendant DiFiore is using New York State's Constitution Article 6 §28 [Administrative supervision of the courts] and Article 6 §30 [Regulation of jurisdiction, practice, and procedure of the courts] ("Article IV") to abrogate the Part 100 Rules against Defendant Fasanya and the superior judges that have and are continuing to protect Defendant Fasanya against the Plaintiff's legal actions. The Plaintiff's investigation has identified the cooperation between Alphonso David, Counsel to the Governor, and Brian K. Mahanna, Chief of Staff and Deputy AG, with John W. McConnell, Head Counsel in the OCA Counsel's Office and the Hon. Justice Sherry Klein Heitler, New York State's Department of Justice's Chief of Policy and Planning.

73.     The Plaintiff's investigation also Defendant DiFiore using her central family court judicial conduct policies through the Hon. Justice Sharon S. Townsend, Vice Dean, of the Judicial Institute Family and Matrimonial Law, the Hon. Justice George D. Marlow, Co-Chair of the Advisory Committee on Judicial Ethics, Robert H. Tembeckjian, Administrator & Counsel, of the Commission of Judicial Conduct and Michael Magliano, Chief of the UCS Department of Public Safety.

74.     Under the DRE, Defendant Cuomo and Defendant Underwood have been given unrestricted authority to allow the chief judge to violate the Plaintiffs' rights. Together, Defendant Cuomo and Defendant Underwood have refrained and are refraining on an ongoing basis from performing the natural and inherent duties of their offices to investigate and regulate Defendant DiFiore's prohibited and impermissible role in the sanctioning Defendant DiFiore's misconduct and in protecting Defendant Fasanya from discovery and answering in the Plaintiff's actions.

75.     In the ensuing four and half years since the Plaintiff commences his actions against Defendant Fasanya. Defendant DiFiore has personally intervened to defend Defendant Fasanya in administrative and legal proceedings.  Defendant DiFiore intervened in both trial and appeal proceedings to defend Defendant Fasanya. Meanwhile, Defendant DiFiore allowed Defendant Fasanya to continue to claim jurisdiction even though Defendant Fasanya repeatedly acknowledged the Plaintiff's withdrawal and confirmed that he could not and would not compel the Plaintiff to

appear in his courtroom.  Defendant DiFiore allowed Defendant DiFiore to proceed Sua Sponte strictly to fabricate $225,688.25 in fees against the Plaintiff after he withdrew.  Defendant DiFiore allowed Defendant Fasanya to fabricate these fees out of whole cloth without the Plaintiff's participation in any way shape or form and without a scintilla of authority or judicial function. Defendant DiFiore then knowingly and deliberately sanctioned Defendant Fasanya's unauthorized use of contempt to collect these $225,688.25 in fabricated fees and cooperated Defendant Fasanya and two superior trial judges to allow Defendant Fasanya's to deliberately deny the Plaintiff his right to a stay by filing a Notice of Appeal with a Cash Surety Bond and then deliberately denying the Plaintiff's right to purge Defendant Fasanya's fabricated contempt order based on his fabricated fee orders. Defendant DiFiore, two superior judges, the Appellate Division and Court of Appeals deliberately allowed Defendant Fasanya to execute this series of deliberate violations of commanding statutes governing judicial conduct prohibiting the fees and in contempt proceedings in order to have the Plaintiff falsely imprisoned.

76.    Despite Defendant DiFiore's retaliations, the Plaintiff pressed on with an independent investigation of Defendant DiFiore's role and culpability in Defendant Fasanya's conscious wrongdoing. The Plaintiff used the information he acquired to make direct and public accusations and criticism of Defendant DiFiore's prohibited and impermissible supervision and administration of the family court process and judges.  The Plaintiff was denied all discovery requests in litigation against Defendant DiFiore and Defendant Fasanya at all levels and in all types of state proceedings. Defendant DiFiore reached the extent of denying her well documented central role in the litigation between the Plaintiff and Defendant Fasanya to Defendant DiFiore's fellow jurists on the state's court of last resort. The Plaintiff filed an affidavit in opposition to Defendant DiFiore's counterfactual assertion to the Court of Appeals, which the Court of Appeals ignored.

77.    Defendant DiFiore retaliation is ongoing and dangerous to Eva. Defendant Fasanya has allowed Defendant Bosak to expose Plaintiff daughter to drug use and displays of sexual promiscuity and to disrupt the Plaintiff daughter's lifelong religious education and worship. Defendant DiFiore is deliberately denying the Plaintiff's access to any administrative or legal proceeding in his actions against Defendant Fasanya and in his custody petitions. At the same day, Defendant DiFiore is allowing Defendant Fasanya continued ongoing jurisdiction, which Defendant

Fasanya is using to deny the Plaintiff's access to his daughter and take his private property without any judicial function.

78.    The Plaintiff's Factual Allegations contains further testimony on the evidence of the Defendant Fasanya's misconduct and the damages they caused the Plaintiffs. Foremost among the claims are those concerning Defendant Fasanya's major prohibited and impermissible ongoing violations of state and federal law on December 18, 2013, May 15, 2014, October 3, 2014, April 21, 2015, January 15, 2016, September 16, 2016, October 11, 2016. March 13, 2017, June 6, 2017, June 30, 2017, May 12, 2018 and June 8, 2018 ("Fasanya Complaints").

79.    Based upon personal knowledge and information including the information obtained through the DiFiore-Fasanya Investigation, the Plaintiff firmly avers without doubt or apprehension that Defendant DiFiore has consciously used her administrative power under Article 6 in prohibited and impermissible ways to direct the entry of 63 false judgements in the Plaintiff's state actions against Defendant DiFiore's cooperation with Defendant Fasanya and Defendant Bosak. The information includes evidence of Defendant DiFiore's personal action, her intervention in favor of Defendant Fasanya at the State Commission on Judicial Conduct, and her concealed role in the 50 judges absolute and complete refusal to listen to, pay attention to or consider the Plaintiff's facts, factors or circumstance in the Plaintiff's complaints against the Defendants or cause them to answer the complaints and request for discovery. This affirmation is further supported by the Plaintiff's Affidavit Identifying 39 Dismissals of Restraining Actions against the PIDRP, which is filed as part of this complaint.

80.    The Plaintiff claims that Defendant DiFiore is using her official positions as Chief Judge of New York State and Court of Appeals, Chair of the Administrative Board of the Court and by consciously using her control over the Office of Court Administration, the Judicial Institute, the Advisory Committee on Judicial Ethics and the Department of Public Safety and her joint control with Defendant Cuomo over the State Commission on Judicial Conduct and influence with Defendant Cuomo to protect Defendant Fasanya. The Plaintiff alleges that Defendant DiFiore and Defendant Fasanya are maliciously fabricating processes to prevent the Plaintiff from having contact with his daughter to deceive her.

81.     Equally disturbing is Defendant DiFiore's sanctioning of Defendant Fasanya and his judicial appointees, Carmen Restivo and Richard Spitzer, prohibited and impermissible contact and communications with the Plaintiff daughter, Eva. Defendant Fasanya and his judicial appointees are advocates of ideological and political beliefs and forms of expressions and manners that are unacceptable to the Plaintiff and opposite of his beliefs.  Foremost among these beliefs are their views of religion, feminism, masculinity and family and their radical use of government (including fabrications of charges that do not exist in state texts) for so-called "social justice." The facts in this case demonstrate that these beliefs are against traditional family values and religion, and pro-drug use and pro-sexual licentiousness. Both of the appointments were made by Defendant Fasanya without jurisdiction or authority as part of Defendant Fasanya's prohibited and impermissible cooperation with Defendant Bosak.

- remainder of page intentionally left blank-

## FIRST CLAIM FOR DAMAGES AND RELIEF

18 U.S.C.A. §241 – Conspiracy against civil rights
(Against Defendants DiFiore, Fasanya and Bosak)

82.     Plaintiff repeats the foregoing allegations in all preceding paragraphs as if set forth fully at length herein.

83.     The Defendants conspired to violate the Plaintiff's civil and due process rights by deliberately and maliciously refraining for performing duties the are inherent to their official positions and in the case of Defendant Bosak, her natural, inherent and contractual duties as the Plaintiff's custodial parents, the ignoring, disregarding and acting to thwart and stifle the Plaintiff's complaints involving the said contracts and agreements.

84.     WHEREFORE, Plaintiff prays to recover $5,000,000.00 in compensatory damages and $10,000,000.00 in punitive damages.

## SECOND CLAIM FOR DAMAGES AND RELIEF

42 U.S.C.A. §1983; §1985 and § 1986 – Civil action for deprivation of rights protected by 9th and 14th Amendments
(Against All Defendants)

85.     Plaintiff repeats the foregoing allegations in all preceding paragraphs as if set forth fully at length herein.

86.     Acting under color of State law, the Defendants negligently failed to instruct, supervise, control and discipline their employees of their duties to refrain from:

> a.) unlawfully and maliciously harassing citizens and residents who were acting in accordance with their constitutional and statutory rights, privileges and immunities;

> b.) unlawfully and maliciously assaulting citizens and residents who were acting in accordance with their constitutional and statutory rights, privileges and immunities;

> c.) conspiring to violate the rights, privileges and immunities guaranteed to citizens and residents by the Constitution and laws of the United States and the laws of the State of New York; and

        d.) Otherwise depriving citizens and residents of their constitutional and statutory
             rights, privileges and immunities.

87.    Defendants had actual knowledge that its judges and judicial employees had committed acts substantially similar to those described in this Complaint, but failed to diligently exercise their responsibilities to instruct, supervise, control, and discipline its agents and employees. Defendants knew or should have known of deprivations of constitutional rights and violations of laws alleged herein were likely to continue to take place. Defendants had power to prevent or aid in the prevention of the commission of said wrongs, could have done so with reasonable diligence, but grossly and recklessly neglected, failed or refused to do so.

88.    Defendants had authority and were required by statute and ordinance of the State of New York to exercise due diligence to instruct, supervise control and discipline its judges and judicial employees on a continuing basis, but intentionally, recklessly or negligently failed to perform such duties as required by law and ordinance.

89.    Defendants, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless and wanton conduct of defendants' judges and judicial employees and Defendant DiFiore herein by failing to exercise their duties and responsibilities, as aforesaid.

90.    The acts and omissions of defendants constitute intentional conduct or gross negligence under § 1983, §1985 and § 1986 of Title 42 of U.S. Code.

91.    As a direct and proximate result of the acts, conduct and omissions of the Defendants as set forth above, plaintiff suffered physical and verbal abuse, medical and other expenses, severe mental anguish and emotional distress in connection with the deprivation of plaintiff's constitutional and statutory rights guaranteed by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution -of the United States and protected by Title 42 United States Code §1983, § 1985 and 1986 and the Constitution and the laws of the Commonwealth.

92.    WHEREFORE, Plaintiff prays to recover $5,000,000.00 in compensatory damages and $10,000,000.00 in punitive damages.

## THIRD CLAIM FOR DAMAGES AND RELIEF

42 U.S.C.A. §1985 – Conspiracy to interfere with civil rights
(Against All Defendants)

93.     Plaintiff repeats the foregoing allegations in all preceding paragraphs as if set forth fully at length herein.

94.     Some or all Defendants acted together in a conspiracy to violate state and federal law and to harm Plaintiff.

95.     The unlawful actions of the Defendants co-conspirators are continuing and should be enjoined.

96.     The actions of the co-conspirators were willful and malicious and warrant the imposition of punitive damages.

97.     WHEREFORE, Plaintiff prays to recover $5,000,000.00 in compensatory damages and $10,000,000.00 in punitive damage.

## FOURTH CLAIM FOR DAMAGES AND RELIEF

42 U.S.C.A. §1985 – Conspiracy to interfere with civil rights
(Against Defendant Bosak)

98.     Plaintiff repeats the foregoing allegations in all preceding paragraphs as if set forth fully at length herein.

99.     Some or all Defendants acted together in a conspiracy to violate state and federal law and to harm Plaintiff's rights to enforce and protect his rights under his contract with Defendant Bosak.

100.    The unlawful actions of the Defendant Bosak and the Defendants co-conspirators are continuing and should be enjoined.

101.    The actions of Defendant Bosak were willful and malicious and warrant the imposition of punitive damages and have cost the Plaintiff $285,585.

102.    WHEREFORE, Plaintiff prays to recover $285,585 in compensatory damages and $500,000.00 in punitive damage.

## PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

| | |
|---|---|
| November 21, 2018 | |
| Dated | Plaintiff's Signature |

Manuel                          P.                          Asensio
First Name              Middle Initial              Last Name

808 Brickell Key Drive, Apt. 1901
Street Address

Miami                          Florida                          33131
County, City                          State                          Zip Code

(917) 515-5200                          mpa@asensio.com
Telephone Number              Email Address (if available)


I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☒Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



LISENI CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

            Plaintiffs,

      -against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

            Defendants.

CV_____

**AFFIDAVIT IN SUPPORT OF
CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

## PLAINTIFF'S AFFIDAVIT IDENTIFYING STATE OFFICIALS PARTICIPATING IN THE STATE CHIEF JUDGE'S IMPERMISSIBLE CONDUCT

1.      I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited civil rights complaint, and the affiant in this Affidavit dated November 21, 2018, identifying and accounting the state officials known to the Plaintiff that deliberately failed to perform the duties of their office and/or were grossly negligent in their state positions, becoming an integral part of the concealment and dismissal of my complaints against New York County Family Court Magistrate Adetokunbo O. Fasanya's ("Defendant Fasanya") impermissible acts against my person, my family and my private property. I swear that I am fully familiar with the facts, factors and circumstances contained in this affidavit. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

2.      The following is a list of judges categorized by whether they took part in an administrative or legal capacity. This is a difficult categorization since that fundamental issue in the federal complaint is judges taking unauthorized administrative actions that are actually discretionary decisions that affect the Plaintiff's legal rights and the evidence and judgments related to this complaint. The judges officially involved in purportedly legal proceedings are categorized by the court on which they sit, their part within that court and the type of proceeding that they presided over.

3.      Also listed here are judges and non-judicial employees in leadership positions in departments within the Unified Court System ("UCS") that have played and are continuing to play a central role in the Plaintiff's complaint against Defendant Fasanya.

4.      Finally, after the two groups identified above are the individuals in the State Attorney General's Office, the Governor's chambers, the State Inspector General's office, and the New York County District Attorney's Office that have played and are continuing to play a central role in the Plaintiff's complaint.

5.      The Plaintiff has identified each of the one-hundred-and-four (104) individuals and the function they have and are continuing to take in this case. Since May 15, 2014, the Plaintiff has informed each of these state officials with the facts, factors and circumstances of this complaint when attempting to seek redress from Defendant Fasanya's prohibited and impermissible acts.

## PRIVATE INVESTIGATION

6.      The Plaintiff has privately investigated thirty-one (31) trial judges in New York State who have deliberately violated its rules of judicial conduct and laws governing civil procedure including those laws governing citizen's rights to investigate government operations.

7.      The Plaintiff has privately investigated nineteen (19) judges in administrative positions involved in supporting the above deliberate judicial misconduct.

8.      Furthermore, our investigation has uncovered twenty-two (22) non-judicial leaders in New York State's justice department working with these fifty (50) judges that directly govern citizen rights and freedoms and twenty-two (22) state government leaders in the offices of the State Attorney General, the Governor, the State Inspector General, and the New York County District Attorney.

9.      The twenty-two (22) non-judicial government officials does not include all the court lawyers and other employees working directly with and under the direct control of New York County's family court judges.

10.     In total we have discovered one-hundred-and-five (105) government leaders directly and knowingly involved in prohibited and impermissible government conduct for the sole and exclusive purpose of protecting of one family court judge in one city in one county malicious and deliberate conduct against one child, namely New York County Family Court Judge Adetokunbo O. Fasanya.

11.     RightABigWrong.org's DiFiore-Fasanya investigation has unearthed ninety-four (94) individuals in leadership positions within New York State's government that are intimate participants in the chief judge's prohibited and impermissible family court scheme.

12.     These individuals are in the state's highest government positions. They operate the state's judicial and prosecutions policy organizations. They operate the State's Inspector General's office and the Inspector General offices in the justice department. They teach ethics and train judges. They control the conduct of armed court guards.

13.     RightABigWrong.org's investigation is private. We have been denied all our discovery rights New York State.

## ALLEGATION OF VENOMOUS PREJUDICE BY STATE OFFICIALS

14.     The Plaintiff has standing to testify before a jury based upon personal knowledge of facts, factors and circumstances proving that the fifty (50) New York state judges have deliberately and brazenly engaged in dishonest and impermissible conduct to enforce, support and protect Defendant DiFiore's prohibited and impermissible conspiracy with Defendant Fasanya. The Plaintiff has had personal contact with five (5) trial judges and the three (3) appeal judges, and two (2) judges leading Defendant DiFiore's education and training program. Both of the trainers are women. Of the five (5) trial judges, four (4) are women and two (2) of the appeal judges are women. Five (5) of the six (6) women judges showed venomous prejudices towards the Plaintiff.

15.     The Defendants openly hold anti-conservative and radical liberal views. New York City Mayor Bill de Blasio, who proudly calls himself "America's First Marxist Mayor," controls the appointment of judges in the state's family courts located in the New York City. Mayor de Blasio appointed Defendant Fasanya.

16.     Defendant DiFiore's impermissible conduct includes her support and aggressive defense of Defendant Fasanya's use of political radicals as judicial appointees, namely Carmen Restivo and Richard Spitzer. These appointees openly professed their beliefs in feminism, anti-masculinity and the radical use of government for so-called "social justice." Both of the appointments were made as part of Defendant Fasanya's fraudulent cooperation with Defendant Bosak.

17.     Defendant Fasanya's appointees' conduct and behavior demonstrated their anti-religious, anti-paternal, anti-family, anti-independence, pro-drug use and pro-sexual-promiscuity ideologies. The Plaintiff opposes each of these ideologies and his daughter's exposure to these ideologies through government force.

18.     The Plaintiff is a white Christian male. The Plaintiff practices his faith regularly and is has a distinguished record in fraud detection. The Plaintiff hold degrees from Wharton and Harvard and is a Cuban Refugee from the Bay of Pigs Era. The Plaintiff is a Republican Conservative and staunch supporter of capitalism and limited government. The Plaintiff prays for relief in the interest of justice.

I do so swear:

Manuel P. Asensio

Sworn to before me this the 21st Day of November 2018

Notary Public

LISENI CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

## A. STATE JUDGES PARTICIPATING IN LEGAL CAPACITIES

### i. CHIEF JUDGE OF STATE, UCS AND COURT OF APPEALS

1. The Hon. Justice Janet DiFiore, Chief Judge (2016-present)
2. The Hon. Jonathan Lippman, Chief Judge of New York State (2009-2015)

### ii. NEW YORK COURT OF APPEALS

3. The Hon. Justice Leslie Stein[1]
4. The Hon. Justice Jenny Rivera
5. The Hon. Justice Paul G. Feinman[2]

### iii. NEW YORK SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT

6. The Hon. Justice Ronaldo T. Acosta, [3] Presiding Justice
7. The Hon. Justice Peter Tom, former Presiding Justice
8. The Hon. Justice Barbara R. Kapnick[4]
9. The Hon. Justice Sallie Manzanet-Daniels[5]
10. The Hon. Justice Angela M. Mazzarelli[6]
11. The Hon. Justice David Friedman
12. The Hon. Justice Dianne T. Renwick
13. The Hon. Justice Rosalyn H. Richter
14. The Hon. Justice Karla Moskowitz
15. The Hon. Justice Troy K. Webber
16. The Hon. Justice Marcy L. Kahn
17. The Hon. Justice Peter H. Moulton
18. The Hon. Justice Richard T. Andrias

---

[1] Denied the Plaintiff's motion to stay and motion for leave to file a federal complaint in the Southern District notwithstanding the DRE as a matter of necessity.

[2] Acted in the matter as an associate justice of the Appellate Division for the First Department. Deliberately denied the Plaintiff's motion for stay and leave to appeal Defendant Fasanya's decisions on the Plaintiff's legal arguments based on Judiciary Law and the Family Court Act that were decisive and during the Plaintiff's June 2017 proceedings with full knowledge that Defendant Fasanya intended to deny the Plaintiff's right to post a surety bond and stay execution and the Plaintiff's right to purge the alleged contempt and execute an illegal in court arrest.

[3] Former member of the State Commission on Judicial Conduct appointed by Chief Judge DiFiore denied the Plaintiff's CPLR Article 10 action under an original proceeding in the Appellate Division. Member of the Administrative Board of the Courts.

[4] Colluded with Defendant Fasanya and engaged in ex-parte communications with Defendant Fasanya's judicial appointee, Carmen Restivo.

[5] Summarily and angrily denied the Plaintiff's motion to stay and leave in a special proceeding to address Defendant Fasanya's denial of the Plaintiff's right to post a surety bond and stay execution and the Plaintiff's right to purge the alleged contempt and execution of an illegal in court arrest during the June 2018 proceedings against his collusion with Carmen Restivo and her appointment and compensation.

[6] Currently also a member of the State Commission on Judicial Conduct appointed by Defendant DiFiore.

19. The Hon. Justice Judith J. Gische
20. The Hon. Justice Cynthia S. Kern
21. The Hon. Justice Anil C. Singh
22. The Hon. Justice Ellen Gesmer
23. The Hon. Justice David B. Saxe

### iv.   NEW YORK COUNTY SUPREME COURT, MATRIMONIAL PART

24. <u>The Hon. Justice Laura E. Drager</u>[7]

### v.   NEW YORK COUNTY SUPREME COURT, CIVIL PART

25. The Hon. Justice Manuel Mendez
26. The Hon. Justice Barbara Jaffe[8]
27. The Hon. Justice Nancy M. Bannon[9]
28. The Hon. Justice Paul A. Goetz[10]
29. The Hon. Justice Lynn R. Kotler[11]

### vi.   NEW YORK COUNTY FAMILY COURT

30. Gloria Sosa-Lintner, Magistrate, Custody Part[12]
31. Adetokunbo O. Fasanya, Magistrate in Juvenile Delinquency Part[13]
32. Serena Rosario, Support Magistrate[14]

---

[7] Entered the Judgment of Divorce on August 13, 2013 ("JOD") that incorporates the custody, financial and legal terms of two New York contracts dated March 13, 2013 and May 12, 2013 and contract settling the divorce dated April 30, 2013 between the Plaintiff and Defendant Bosak. Refused to take jurisdiction over the Plaintiff's constitutional claims concerning domestic relations matters. Judge threatened the Plaintiff that she would grant Ms. Moss' an order charging the Plaintiff with legal fees as she had done to prevent the Plaintiff from proceedings with a custody trial in 2013. Judge Fasanya ignored evidence that Ms. Moss has had a directly relationship with the Stefano Chitis and Defendant Bosak to pay her fees and deliberately denied the Plaintiff his right to discovery against Defendant Bosak for the explicit purpose of fabricating punitive harmful fee orders against the Plaintiff.

[8] AAG Cooney, D. Fasanya's counsel and AAG Coleen K. Faherty, directedly and explicitly represented to Judge Jaffe that D. Fasanya would not make order the Plaintiff's arrest on June 30, 2017. After D. Fasanya deliberately and malicious ordered the Plaintiff's incarceration on June 30, 2017 Judge Jaffe ignored the Plaintiff's motion to renew and reargue the events on June 30, 2017.

[9] On the Plaintiff's first appearance Judge Bannon's Law Clerk, Lawrence Goldberg, Esq., advised that there was "no way that Judge Bannon is going to allow you to put [Defendant] Fasanya on the witness stand in her court room."

[10] Acted in accord with D. DiFiore's December 5, 2016 unauthorized dismissal of the Fasanya Complaints and in concert with Judge Acosta and Judge Bannon's treatment of the matter in D. Fasanya's fraudulent proceedings spanning from April to July 2018 on his fabrication of a $47,885.50 payment order in Susan Moss' favor.

[11] Dismiss the Plaintiff's action against Richard Spitzer in a clear dishonest act to protect D. Fasanya and D. DiFiore's unauthorized rules.

[12] Retired. Ordered Defendant Bosak to appearance under petition addressing her December 5, 2013 false police report made as part of a scheme and executed in Eva's school cafeteria.

[13] Plaintiff filed a complaint against Defendant Fasanya on May 15, 2014 and the superior judges allowed his to fabricate jurisdiction. fabricate $225,668.22 in fees order and collect these fees using fabricated contempt and arrest warrant. All of Defendant Fasanya's action against the Plaintiff, his daughter and his private property have been executed in clear absence of jurisdiction.

[14] Cooperate with Defendant Fasanya to deliberately violate FCA 424-a that is a mandatory required that neither the parties nor the court can waive that is imposed on Defendant Bosak to disclose her financial ***statement before any proceedings can occur.*** The deliberate violation of the statute was part of an intentional fraud to commit larceny and prevent the Plaintiff from accessing justice.

## B. JUDGES PARTICIPATING IN ADMINISTRATIVE POSITIONS

### i. UCS ADMINISTRATIVE BOARD OF THE COURTS[15]

1. The Hon. Justice Ronaldo T. Acosta, Presiding Justice of the Appellate Division, First Dept.[16]
2. The Hon. Justice Peter Tom, former Presiding Justice of the Appellate Division, First Dept.[17]
3. The Hon. Justice Alan D. Scheinkman, Presiding Justice of the Appellate Division, Sec. Dept.
4. The Hon. Justice Elizabeth A. Garry, Presiding Justice of the Appellate Division, Third Dept.
5. The Hon. Justice Gerald J. Whalen, Presiding Justice of the Appellate Division, Fourth Dept.

### ii. UCS OFFICE OF POLICY AND PLANNING

6. The Hon. Justice Sherry Klein Heitler, UCS Chief of Policy and Planning

### iii. UCS STATE ADMINISTRATIVE JUDGE

7. The Hon. Justice Lawrence K. Marks, UCS Chief Administrative Judge[18]

### iv. UCS NEW YORK CITY ADMINISTRATIVE JUDGES

8. The Hon. Justice George J. Silver, Deputy Chief Administrative Judges for NYC Courts[19]
9. The Hon. Justice Fern A. Fisher, former Deputy Chief Administrative Judges for NYC Courts[20]
10. The Hon. Justice Jeanette Ruiz, Administrative Judge of the New York City Family Courts[21]

---

[15] The Plaintiff has personally notified the staff of each member of the Board of developments in this case continuous since January 2018 and has personal confirmed their receipt of a copy of this complaint.

[16] Former member of the State Commission on Judicial Conduct appointed by Chief Judge DiFiore denied the Plaintiff's Article 10 action under an original proceeding in the Appellate Division.

[17] Denied Plaintiff's complaint against Hon. Justice Sallie Manzanet-Daniels for colluding with Defendant Fasanya and engaging in ex-parte communications with Carmen Restivo.

[18] The Fasanya Complaint involved serious criminal allegations that the chief judge acted upon directly with Mr. McConnell without delegation to Administrative Judge Marks.

[19] Assigned the Plaintiff's 2nd and 3rd Article 78 Special Proceedings to Judge Bannon who sits in New York City Housing Court and is well known to be specially trained in creating unauthorized dismissals at the bequest of the attorney general.

[20] Directed her deputy, Linda Miller, to meet with Defendant Fasanya and then adopted Defendant Fasanya's self-serving defense that his actions were appealable. This same false claim was entered by Defendant DiFiore on December 5, 2016.

[21] Served with a copy of the May 15, 2014 complaint and all subsequent complaints against Defendant Fasanya, and refrained from responding.

### v.   UCS NEW YORK COUNTY ADMINISTRATIVE JUDGES

11. <u>The Hon. Justice Deborah Kaplan</u>, Administrative Judge, NY County Supreme Court, Civil[22]
12. The Hon. Justice Karen Lupuloff, Supervising Judge of the NY County Family Court
13. The Hon. Justice Douglas E. Hoffman, former Supervising Judge of the New York County Family Court[23]

### vi.   UCS ADVISORY COMMITTEE ON JUDICIAL ETHICS

14. The Hon. Justice George D. Marlow, Co-Chair
15. The Hon. Justice Margaret T. Walsh, Co-Chair
16. The Hon. Justice Betty Weinberg Ellerin, Vice Chair
17. The Hon. Justice Jerome C. Gorski, Vice Chair

### vii.   UCS JUDICIAL INSTITUTE

18. The Hon. Justice Juanita Bing Newton, Dean
19. The Hon. Justice Sharon S. Townsend, Vice Dean, Family and Matrimonial Law[24]

### viii.   NEW YORK CITY MAYOR'S ADVISORY COMMITTEE ON THE JUDICIARY

20. The Hon. Carmen Beauchamp Ciparick, Chair
21. The Hon. Barry A. Cozier, Vice Chair
22. Desirée Kim, Executive Director[25]

- remainder of page intentionally left blank -

---

[22] Dismiss the action against D. Fasanya for his unauthorized fabrication of his 14th arrest warrant to collect money on D. Bosak's behalf in direct violation of F.C.A. 424-a through Susan Moss.

[23] Dismissed the Plaintiff's May 15, 2014 complaint without process and the deliberately assigned the Plaintiff's June 2015 to Defendant Fasanya in directly violation of the conditions of the Plaintiff's strictly voluntary filing that prohibited the assignment of the petition to Defendant Fasanya due to the lack of process of the May 15, 2014 complaint.

[24] Refused to provide the Plaintiff with information on Defendant Fasanya's certification and training. Also refused to provide any information on the training of family court judges to teach that deliberate violations of Part 100 Rules that include a lack of patience and deliberate, overt and obvious acts to show bias and a lack of impartiality, to manipulate the family court's calendar to defeat petitions and to improperly handle court record.

[25] The Plaintiff communicated with Ms. Kim to inquire whether the PIDRP was used when presenting the Mayor with Judicial Candidates. Ms. Kim became agitated and hung up on the Plaintiff.

## C. <u>PARTICIPANTS WITHIN THE JUSTICE DEPARTMENT</u>

### i. OFFICE OF COURT ADMINISTRATION

1. <u>John W. McConnell</u>, Head Counsel, OCA Counsel's Office[26]
2. <u>Pedro Morales</u>, Deputy Counsel, OCA's Counsel's Office
3. Lee Adlerstein, Deputy Counsel, OCA's Counsel's Office
4. Shawn Kerby, FOIL Officer, Assistant Deputy Counsel, OCA's Counsel's Office[27]
5. <u>Lucian Chalfen</u>, Spokesperson for Defendant DiFiore and the UCS[28]
6. Robert J. Wolf, Deputy Director of Public Affairs[29]
7. Kerry Ward, Chief of Staff, Office of Policy and Planning
8. Linda Miller, Assistant Deputy to Chief Deputy Administrator for New York Courts[30]

### ii. COURT OF APPEALS

9. John P. Asiello, Legal Counsel and Chief Clerk to the Court of Appeals
10. Rachel MacVean, Chief Civil Motions Dept Clerk
11. Heather A. Davis, Deputy Motion Clerk
12. Susan S Dautel, Assistant Deputy Clerk
13. Margaret N. Wood, Assistant Deputy Clerk
14. James A. Costello, Assistant Deputy Clerk

### iii. STATE COMMISSION ON JUDICIAL CONDUCT[31]

15. Robert H. Tembeckjian, Administrator & Counsel
16. The Hon. Justice Angela M. Mazzarelli, Justice of the Appellate Division for the First Department, Appointed to the SCJC by Defendant DiFiore
17. Mark Levine, Deputy Administrator in the New York City Office
18. Pamela Tishman, Principal Attorney in the New York City Office
19. Melissa DiPalo, Special Counsel in the New York City Office
20. Ryan T. Fitzpatrick, Senior Investigator in the Albany Office
21. Betsy Sampson, Investigator in the Rochester Office
22. John J. Postel, Deputy Administrator in the Rochester Office

---

[26] Acted on behalf of the chief judge in her December 5, 2016 unauthorized and fraudulent dismissal of the Fasanya Complaints.

[27] Ignored the Plaintiff's FOIL request on the UCS' records for interim suspension and private payments to judicial appointees.

[28] Refrained from responding to the Plaintiff's request of information concerning the chief judge's policies and standards and requests of comment on the claims against the chief judge after confirming that he was the chief judge's spokesperson.

[29] Refused to provide comments on this complaint.

[30] Ms. Miller refrained from referring Defendant Fasanya to the New York County District Attorney's Public Corruptions Unit based on his own claim that his conduct was reviewable by the appellate division. In fact, Defendant Fasanya's conduct was outside of his jurisdiction and the law and could not be review. Further, as claimed in this Complaint, Defendant DiFiore sanctioned his conduct.

[31] The Commission is under the joint control of the chief judge and governor, judges and lawyers. The evidence in this case shows Defendant DiFiore intervene with an investigation in Defendant Fasanya's conduct against the Plaintiff and the Advisory Committee on Judicial Ethics control of the Commission in family court matters.

### iv.   UCS DEPARTMENT OF PUBLIC SAFETY

23. Michael Magliano, Chief of the UCS Department of Public Safety[32]
24. Chris Mangan, Lieutenant[33]
25. Michael DeMarco, Court Officer[34]

### v.   UCS INSPECTOR GENERAL'S OFFICE[35]

26. Sherrill Spatz, UCS Inspector General
27. Carol M. Hamms, Deputy UCS Inspector General
28. Kay-Ann Porter, Managing Inspector General for Bias Matters
29. Grant Cosmo, Investigator

### vi.   UCS JUDICIAL APPOINTEES

30. Carmen Restivo, Private-Pay 18-b Judicial Sua Sponte Appointed Attorney for the Child[36]
31. Richard Spitzer, Private Pay Social Worker Judicial Sua Sponte Appointed Supervisor of Visitation, Owner of Comprehensive Family Care[37]

### vii.   UCS REGULATED COOPERATING ATTORNEYS

32. Susan Moss, Partner, Chemtob, Moss, Forman & Beyda, LLC
33. Alexis Wolf, Associate, Chemtob, Moss, Forman & Beyda, LLC
34. Siobhan Stewart, Associate, Chemtob, Moss, Forman & Beyda, LLC
35. Alexandria Lipton, The Law Office of Alexandria Lipton

### viii.   UCS ATTORNEY GRIEVANCE COMMITTEES- FIRST DEPARTMENT

36. Ernest J. Collazo, Chair
37. Charlotte Moses Fischman, Esq., Chair
38. Jorge Dopico, Chief Counsel

---

[32] Appointed by Defendant DiFiore. Refused to process complaints against the conduct of court offices in Defendant Fasanya's court room including their material cooperation with Defendant Fasanya's fraudulent conduct on March 13, 2017 to prevent the Plaintiff from appearing in AD to stay the proceeding, for finality and to enforce Defendant Fasanya's orders confirming the Plaintiff's withdrawal and confirmation that the Plaintiff was free not to appear in his court and that he would not compel the Plaintiff to appear.

[33] Refrained from regulating Major DeMarco and the court officers under his charge.

[34] Acted with Defendant Fasanya to direct and orchestrate court dates in accordance to Defendant Fasanya's interest and objectives to avoid recognizing the Plaintiff, his attorney and his motions as part of his scheme to cooperate with D. Bosak.

[35] Because the New York Unified Court System has an internal Inspector General's Office, they are waived from state jurisdiction by the New York Inspector General. As noted in Footnote Number 38 herein, according to the State Inspector General's website, its jurisdiction is limited to investigate "any entity of State government headed by an appointee of the Governor that does not have its own statutory Inspector General." The UCS has its own internal IG but it does not investigate judges including administrative judges.

[36] The Plaintiff filed an action against Defendant Fasanya for cooperating with Ms. Restivo and Defendant Bosak on May 15, 2014 and withdrew his petition as a result of the UCS' refusal to process his complaint. Chief DiFiore has deliberately and malicious allowed Defendant Fasanya to continue the case unilaterally and refused to provide the Plaintiff with a process against Defendant Fasanya, Ms. Restivo or Defendant Bosak.

[37] As shown herein, Judge Bannon and Judge Kotler dismissed a Special Proceedings and a plenary proceeding against Mr. Spitzer in cooperation with Chief Judge DiFiore and Defendant Fasanya using deliberate dishonest acts as evidenced herein.

## D. <u>STATE PARTICIPATING OFFICIALS OUTSIDE OF DEPARTMENT OF JUSTICE</u>

### i. STATE SENATE[38]

1. Terrence Murphy, Chairman, Committee on Investigations & Government Operations
2. Brad Hoylman, Ranking Member, Committee on Investigations & Government Operations and Judiciary Committee
3. John J. Bonacic, Chair, Judiciary Committee

### ii. OFFICE OF THE STATE ATTORNEY GENERAL

4. Barbara Underwood, New York State Attorney General
5. Eric T. Schneiderman, former New York State Attorney General[39]
6. Brian K. Mahanna, Chief of Staff and Deputy State Attorney General
7. Janet Sabel, Chief Deputy State Attorney General
8. Kent T. Stauffer, Executive Deputy State Attorney General of State Counsel
9. Arlene Smoler, Deputy Attorney General of the State Counsel Division
10. Monica Connell, Bureau Section Chief
11. Lisa R. Dell, Head of New York City Counsel Division[40]
12. Mark Shawhan, Assistant New York State Solicitor General[41]
13. James Cooney, Assistant New York State Attorney General[42]
14. Jonathan Conley, Assistant New York State Attorney General
15. Coleen K. Faherty, Assistant New York State Attorney General

### iii. OFFICE OF THE GOVERNOR

16. Andrew Cuomo, Governor of New York State
17. Alphonso David, Counsel to the Governor, Office of Counsel to the Governor[43]
18. Lauren Russo, Assistant Counsel, Office of Counsel to the Governor
19. Leigh Frany, Executive Assistant, Office of Governor
20. Tracy Goodman, Office of the Secretary to the Governor

---

[38] The New York State Senate held hearing on Defendant DiFiore's nomination and a vote, and has the authority to investigate her handling of the legal and administrative proceedings against Defendant Fasanya' and hold a trial on any judge in the state on a report from the Governor.

[39] Refrained for acting on his clear official duties in the Fasanya Complaints.

[40] Refrained from communicating with the Plaintiff on the AG's determination to defend D. Fasanya in the Fasanya Complaint

[41] Appeared at the Court of Appeals purported on behalf of Defendant Fasanya. As a matter of fact and law, his position was in support of the chief judge, Defendant Bosak, Ms. Restivo and Mr. Spitzer.

[42] Appeared as defense counsel for Defendant Fasanya and Serene Rosario, Support Magistrate in New York County Family Court, against the Plaintiff the state Court of Appeals seeking to prohibit collusion between Defendant Fasanya and Defendant Bosak, and criminal conduct by Defendant DiFiore, Defendant Fasanya, and Defendant Bosak.

[43] Mr. David functions as the Governor's chief counsel and principal legal advisor, and oversees all significant legal and policy deliberations affecting New York State, including evaluating proposed legislation; implementing laws and policies and formulating the State's posture in both affirmative and defensive litigation. Prior to his appointment as the Governor's Chief Counsel, Mr. David served for four years in the Governor's cabinet as the Deputy Secretary and Counsel for Civil Rights, the first position of its kind in New York State.

### iv.    OFFICE OF THE STATE INSPECTOR GENERAL[44]

21. Catherine Leahy Scott, New York State Inspector General

### v.    OFFICE OF THE DEPARTMENT OF STATE

22. Rosana Rosado, Secretary of State
23. Jane Hamm, Publications Production Supervisor, Division of Administrative Rules[45]

### vi.    OFFICE OF THE NEW YORK COUNTY DISTRICT ATTORNEY

24. Cy Vance Jr., New York County District Attorney
25. Lawrence Newman, Chief of the Domestic Violence Unit
26. Luke Rettler, Chief of the Public Corruptions Unit[46]
27. Steve MacArthur, Assistant New York County District Attorney[47]

- remainder of page intentionally left blank -

---

[44] According to the Inspector General's website: "[t]he Office of the State Inspector General operates under the authority of New York State Executive Law Article 4-A. Our mission is to detect, investigate, deter and eliminate corruption, fraud, criminal activity, conflicts of interest, abuses of office, and waste in the State entities under our jurisdiction. These include executive branch agencies, departments, divisions, offices, boards, commissions, public authorities and public benefit corporations -- any entity of State government headed by an appointee of the Governor that does not have its own statutory Inspector General. Our jurisdiction encompasses more than 150 entities employing the vast majority of New York State's nearly 190,000 public servants, as well as private entities doing business with the State." https://ig.ny.gov/content/message-inspector-general **This excludes the UCS from the State Inspector General's jurisdiction.**

[45] Confirmed that there were no judiciary rules that authorize any of Defendant Fasanya's alleged acts that are the subject of these pleadings.

[46] Refrained from investigation the Fasanya Complaints.

[47] Met with the Plaintiff, his counsel and D. Newman to discuss D. Newman's cooperation with D. Bosak in fabricating charges based on D. Bosak's allegation of purported events that occurred on December 29, 2015. Chief Judge DiFiore personally and through unauthorized interventions and directions Justices Acosta and Bannon to refrain from reviewing the facts, factors and circumstances in this matter.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

Plaintiffs,

    -against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

Defendants.

CV_____

**AFFIDAVIT IN SUPPORT OF
CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

### AFFIDAVIT OF THE PLAINTIFF'S EYEWITNESS AND PERSONAL KNOWDLEDGE OF JUDICIAL MISCONDUCT

1.    I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited civil rights complaint, and the affiant in this Affidavit dated November 21, 2018. I swear that I am fully familiar with the facts, factors and circumstances contained in this affidavit. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

2.    Based on personal knowledge and information the Plaintiff swears that the following list of 26 judges including judges holding senior administrative the positions such as New York State's Chief Judge, justices of the Court of Appeals ("COA"), members of the Administrative Board Court ("ABC"), justices on the Appellate Division for the First Department and administrative judges in the New York City and for New York County Supreme Court, Civil Part. They are identified herein as having deliberately and maliciously acted in clear absence of their jurisdiction for the sole and explicit purpose of colluding with the Defendants and conspire with them to take jurisdiction over the Plaintiff's actions to defend his rights against the Defendants. These acts are the following:

    a.)  Deliberately and maliciously engage in ex parte communications involving material information, decisions and rights to fabricate plans, schemes and make agreements to make orders, decisions and judgments without jurisdiction or evidence

b.) Deliberately and maliciously violate laws governing civil contempt to exhort private property from the Plaintiffs

c.) Deliberately and maliciously use calendaring decisions to wrongfully deny and dismiss pleadings, petitions, motions and actions

d.) Deliberately and maliciously give directions to the parties, their legal representatives, their judicial appointees, court guards and court reporters to deliberately create false records and orders

e.) Deliberately and maliciously avoid hearing, considering, paying attention to, questioning, understand and use reason on meaningful, material, decisive facts, factors and circumstances that are necessary for a decision.

I do so swear:

Manuel P. Asensio

Sworn to before me this the 21st Day of November 2018

Notary Public

LISENI CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

**CLASS ONE - CHIEF JUDGE OF STATE, UCS AND COURT OF APPEALS**

 1.  The Hon. Justice Janet DiFiore, Chief Judge

**CLASS TWO – ADMINISTRATIVE BOARD OF THE COURTS**

 2.  The Hon. Justice Ronaldo T. Acosta, Presiding Justice of the Appellate Division, First Dept.
 3.  The Hon. Justice Peter Tom, former Presiding Justice of the Appellate Division, First Dept.
 4.  The Hon. Justice Alan D. Scheinkman, Presiding Justice of the Appellate Division, Sec. Dept.
 5.  The Hon. Justice Elizabeth A. Garry, Presiding Justice of the Appellate Division, Third Dept.
 6.  The Hon. Justice Gerald J. Whalen, Presiding Justice of the Appellate Division, Fourth Dept.

**CLASS THREE – CONSTITUTIONAL ORIGINAL PROCEEDING**

 7.  The Hon. Justice Dianne T. Renwick, Justice, Appellate Division, First Department
 8.  The Hon. Justice Sallie Manzanet-Daniels, Justice, Appellate Division, First Department
 9.  The Hon. Justice Judith J. Gische, Justice, Appellate Division, First Department
 10.  The Hon. Justice Marcy L. Kahn, Justice, Appellate Division, First Department
 11.  The Hon. Justice Anil C. Singh, Justice, Appellate Division, First Department

**CLASS FOUR – APPELLATE DIVISION (EX PART COMMUNICATIONS)**

 12.  The Hon. Justice Paul G. Feinman, Justice of the Court of Appeals[1]
 13.  The Hon. Justice Barbara R. Kapnick, Justice, Appellate Division, First Department[2]

**CLASS FIVE – SUPREME COURT ADMINISTRATIVE DECISIONS**

 14.  The Hon. Justice George J. Silver, Deputy Chief Administrative Judges for NYC Courts
 15.  The Hon. Justice Fern A. Fisher, former Deputy Chief Administrative Judges for NYC Courts
 16.  The Hon. Justice Jeanette Ruiz, Administrative Judge, New York City Family Courts
 17.  The Hon. Justice Deborah Kaplan, Administrative Judge, NY County Supreme Court, Civil
 18.  The Hon. Justice Karen Lupuloff, Supervising Judge, NY County Family Court
 19.  The Hon. Justice Douglas E. Hoffman, former Supervising Judge, NY County Family Court

**CLASS SIX – SUPREME COURT, MATRIMONIAL PART**

 20.  The Hon. Justice Laura E. Drager, Justice of the Supreme Court, Matrimonial Part

---

[1] Twice acted in the matter as an associate justice of the Appellate Division for the First Department. Deliberately denied the Plaintiff's motion for stay and leave to appeal Defendant Fasanya's decisions on the Plaintiff's legal arguments based on Judiciary Law and the Family Court Act that were decisive during the Plaintiff's June 2017 proceedings with full knowledge that Defendant Fasanya intended to deny the Plaintiff's right to post a surety bond with a Notice to Appeal for a stay execution and to deny the Plaintiff's right to purge the alleged contempt and deliberately and maliciously execute an illegal in court arrest to collect illegal, unauthorized fees for his judicial appointees Carmen Restivo.

[2] Colluded with Defendant Fasanya and engaged in ex-parte communications with Defendant Fasanya's judicial appointee, Carmen Restivo.

**CLASS SEVEN – SUPREME COURT, CIVIL PART SPECIAL PROCEEDINGS**

21. The Hon. Justice Barbara Jaffe, Justice of the Supreme Court, Civil Part
22. The Hon. Justice Nancy M. Bannon, Justice of the Supreme Court, Civil Part
23. The Hon. Justice Paul A. Goetz, Justice of the Supreme Court, Civil Part

**CLASS EIGHT – SUPREME COURT, CIVIL PART TORT ACTIONS**

24. The Hon. Justice Lynn R. Kotler, Justice of the Supreme Court, Civil Part

**CLASS NINE – LIMITED JURISDICTION INFERIOR FAMILY COURT**

25. Adetokunbo O. Fasanya, Magistrate, NY County Family Court, Juvenile Delinquency Part
26. Serena Rosario, Support Magistrate, Queens County Family Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

                    Plaintiffs,

        -against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

                    Defendants.

CV_____

**AFFIDAVIT IN SUPPORT OF
CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

## AFFIDAVIT IDENTIFYING PROHIBITED AND IMPERMISSIBLE JUDICIAL PROCEEDINGS AND DECISIONS AND ORDERS

1.     I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited civil rights complaint, and the affiant in this Affidavit dated November 21, 2018, demonstrating judges taking jurisdiction for no authorized state purpose and to use this unauthorized jurisdiction for the impermissible and prohibited purpose of fabricating processes and orders to defend and protect Defendant Fasanya, the other defendants, and themselves, from federal subject matter jurisdiction under the Domestic Relation Exception. I swear that I am fully familiar with the facts, factors, circumstances and records of contained in this affidavit of the legal actions and administrative and executive complaints that I have filed in New York State's judiciary department and with its governor, state attorney and New York County's district attorney. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

2.     I further swear that in legal proceedings filed in the New York State Unified Court System, I was the:

    i.) the Petitioner in a New York County Family Court custody disputes
        under docket no. V-43839-13/13A and its supporting violation petitions
        and have no knowledge of an alleged Petition docket no. V-38917-
        15/15A that was dismissed in November 2015 ("Family Court
        Actions");

ii.) Defendant-Movant in a New York County Supreme Court, Matrimonial Part normal routine post-judgment-of-divorce custody dispute, which has escalated to challenging the constitutionality of the New York Supreme Court, Matrimonial Part's denial of its superior jurisdiction over the Family Court regarding deliberate denial of process and access to justice, under index 300417/2011 ("S.C.M. Dispute");

iii.) Plaintiff in the New York County Supreme Court, Civil Part seeking to prohibit the use of deliberate denial of process and access the administration of justice in the above referenced C.P.L.R. Article 78 Special Proceeding and those under indexes 155447/2017, 155833/2017 and 156692/2017, as well as in Breach of Contract and Intentional Tort actions under indexes 156422/2015, 159812/2016 and 153776/2017 ("S.C.C. Actions");

iv.) Petitioner in the Appellate Division for the First Department for two (2) C.P.L.R. Article 78 Original Proceedings ("O.P.") seeking to prohibit the use the denial of state's denial of due process and access to justice under indexes O.P. 124/2017 and O.P. 125/2017;

v.) Plaintiff in the Appellate Division for the First Department for Article 78 Original Proceedings under Article 10 against Chief Judge Janet DiFiore's ("Defendant DiFiore") deliberate violations of Judicial Law O.P. 130/2017;

vi.) The Movant in eighteen (18) applications seeking leave to appeal and a stay. Together the Article 78, Article 10 and Motions seeking leave to appeal are referred to herein as the "AD Actions;"

vii.) Appellant in seven (7) motions to the Court of Appeals seeking review of specific deficiencies in the New York Constitution regarding the state attorney general, family courts concurrent jurisdiction with supreme court, assigned attorneys for children under private pay compensation, and prosecutions of allegations made by a citizen exposing the system deliberate denial of process of the administration of justice, and the Movant in one (1) Order to Show Cause seeking leave to file a complaint in the United States District Court for the Southern District of New York against the use of deliberate denial of process in the administration of justice to affect New York State Court Decisions, Judgments, and citizen's federally protected rights ("COA Actions"); and

viii.) Investigator in: twelve (12) verified complaints filed with Chief Judge Janet DiFiore in the Office of Court Administration against the

Deliberate denial of process in the state's Administration of Justice, twelve (12) verified complaints filed with the Governor against the Deliberate denial of process in the state's Administration of Justice, one (1) verified complaint filed with the New York State Senate and Assembly Judiciary committees against the Deliberate denial of process in the state's Administration of Justice, five (5) verified complaints filed with the New York Attorney General's Office against the Deliberate denial of process in the state's Administration of Justice, six (6) verified complaints filed with the New York County District Attorney against the Deliberate denial of process in the state's Administration of Justice, one (1) verified complaint filed with the State Commission on Judicial Conduct against the Deliberate denial of process in the state's Administration of Justice, ten (10) verified complaints filed with UCS Deputy Chief Administrative Judges and Supervising Judges against the Deliberate denial of process in the state's Administration of Justice, one (1) verified complaint filed with the UCS Inspector General against the Deliberate denial of process in the state's Administration of Justice, one (1) verified complaint filed with the Appellate Division presiding Judges against the Deliberate denial of process in the state's Administration of Justice, seven (7) verified complaints filed with the Clerk and Counsel of the Court of Appeals against the Deliberate denial of process in the state's Administration of Justice, and one (1) verified complaint filed with the President of the Conference of Chief Justices ("Administration of Judicial Misconduct Complaints").

3.     The current New York State Chief Judge, her predecessor, the governor, the state attorney general and the State Commission on Judicial Conduct, as well as the members of the state Unified Court System's ("UCS") Administrative Board of the Courts, its Advisory Committee on Judicial Ethics, its Judicial Institute, its Department of Public Safety, and its three highest ranking administrative judges, have united as a monolithic unmovable power to consciously ignore the facts, factors and circumstances contained in this complaint. This is despite the fact that the Plaintiff personally warned and/or received a copy of the Plaintiff's federal civil rights complaint months before its filing on September 28, 2018.

4.     The Plaintiff has undeniably and fully exhausted any and all State remedies that can provide redress from New York State's deliberate denial of process for the purpose of denying the Plaintiff's access to justice.

5.     In each of the above actions, the Plaintiff has continuously plead and alleged participation in fraud, conspiracy, deliberate denial of process by public officers, obstruction of justice, tampering with evidence and witnesses, and extortion by judges, officers of the court, and non-judicial personnel within the UCS and the State. All of the S.C.C. Actions, the S.C.M. Dispute, the AD Actions, the COA Actions and the Administration of Judicial Misconduct Complaints were either dismissed or ignored in clear absence of jurisdiction through deliberate and malicious abuses of discretion by individuals using their official positions.

## I.     EXHAUSTION OF ALL NEW YORK STATE PROCESSES

### The Plaintiff's Exhaustion of the UCS' Administrative Complaint Processes

6.     Since May 15, 2014, the Plaintiff has submitted thirty (30) administrative complaints continuously up the UCS' Administrative Structure on the use of prohibited processes and gross misconduct by New York County Family Court Defendant Adetokunbo O. Fasanya ("Defendant Fasanya"). Further, the Plaintiff filed one (1) complaint against Defendant Fasanya with the New York State Commission on Judicial Conduct ("NYSCJC"). The Plaintiff's administrative complaints within the UCS and the complaint to the NYSCJC were ignored or dismissed under the claim of lack of jurisdiction and/or being ethically barred from investigating misconduct executed in the UCS while the case is ongoing. The Plaintiff was forced to escalate the administrative complaints to Defendant DiFiore on November 28, 2016 under her own "Excellence Initiative."

7.     On December 5, 2016, John. W. McConnell, Head of the Office of Court Administration's Counsel's Office, advised the Plaintiff on behalf of Defendant DiFiore and Chief Administrative Judge Lawrence Marks, acknowledging in writing the Plaintiff's "serious concerns over the conduct of a Family Court Judge, as well as various administrative judges, in the handling of a child custody matter in which you are a party" but directed that the Plaintiff's "recourse in this matter is through normal channels of appellate practice, and not through extraordinary administrative action by the Chief Judge."

8.     In fact and in law, Defendant DiFiore has the sole administrative authority within the UCS to investigate and prosecute complaints of deliberate denial of process and access to justice through the administration of the judiciary, but instead pointed the Plaintiff to the Appellate Division and the UCS' legal appeal process to remedy complaints against Defendant Fasanya of deliberate

violations of statutory mandates that protect citizen's federally protected rights and complaints of systemic deliberate denial of process and access to justice through the state's administration of justice by those Administrative Judges and non-judicial personnel who acted outside the powers of their official positions to protect Defendant Fasanya.

9.      Since May 15, 2014, the Plaintiff has made twelve (12) administrative complaints to Defendant DiFiore and the Office of Court Administration alone alleging systemic deliberate denial of process and access to justice through the administration of the UCS, the most recent being September 14, 2018.

### The Plaintiff's Exhaustion of the UCS' Legal Proceeding Processes

10.     Following Defendant DiFiore's December 5, 2016 determination, the Plaintiff has continuously petitioned to the UCS' Constitutional Courts and its legal appeal process against the deliberate and prohibited use of state processes and gross misconduct by Defendant Fasanya. The Plaintiff escalated these allegations up the UCS' Legal Structure to include Administrative Judges, Supreme Court Trial Judges, Appellate Division judges and various State officials and bodies with interest in and who participated in the deliberate denial of process and access to justice against the Plaintiff's legal proceedings throughout the state's Administration of Justice.

11.     Since May 15, 2014, the Plaintiff has accumulated a total of sixty-three (63) legal decisions and orders from twenty (28) UCS judges dismissing his applications and proceedings against the individuals with interest and who participated in the systemic deliberate denial of process and the Plaintiff's access to New York's administration of justice **[EXHIBIT A]**.

12.     These adjudicators acted outside of the authority granted to their judicial positions by dismissing the Plaintiffs applications and proceedings without considering the facts, factors and circumstances of the allegations. This constitutes deliberate and malicious abuses of discretion for:

> a.) Six (6) Decisions from the New York County Supreme Court, Matrimonial Part **dismissing** the Plaintiff's applications to address the constitutional violations of permitting concurrent jurisdiction with the family court and the use of prohibited process in the Plaintiff's family court proceedings;

b.) Twenty-Eight (28) Decisions from the New York County Supreme Court, Civil Part **dismissing** the Plaintiff's special proceedings and motions against the use of deliberate denial of process to make prohibited judgements and taking unauthorized jurisdiction over citizen's in order to use deliberate denial of process to violate federally protected rights;

c.) Twenty-One (21) Decisions from the NY Supreme Court, Appellate Division for the First Department **dismissing** the Plaintiff's Original Special Proceedings and Motions for leave to appeal prohibited judgments by Defendant Fasanya which included allegations of fraud, conspiracy, deliberate denial of process, obstruction of justice, tampering with evidence and witnesses, and extortion; and

d.) Eight (8) Decisions from the New York Court of Appeals that includes seven (7) decisions **dismissing** the Plaintiff's motion for leave to appeal prohibited judgments by Defendant Fasanya, and New York County Supreme Court Trials judges, which included allegations of fraud, conspiracy, deliberate denial of process, obstruction of justice, tampering with evidence and witnesses, and extortion, as well as one (1) deliberate **declination** to sign the Plaintiff's application for leave to file a complaint in the US District Court for the Southern District of New York against the deliberate denial of process in New York State's administration of justice.

13.    <u>The UCS has not entered a single judgment in the Plaintiff's favor</u>. All orders were made to benefit the individuals that the Plaintiff has is continuing to allege have interest and be direct participants in systemic prohibited and impermissible denial of process and access to the state's administration of justice, which includes the UCS officials and judges who have entered the decisions against the Plaintiff.

14.    Thus, the Plaintiff has been pleading deliberate denial of process in the processes and administration of the state's judiciary in legal proceedings, to the state's judiciary. The result is the fabrication of the above mention sixty-three (63) dismissal orders that have no precedential value to the merits of the action. The most recent UCS legal **dismissal** decision came on September 11, 2018 in this action by the Hon. Justice Deborah A. Kaplan.

**The Plaintiff's Exhaustion of the State's Executive, Legislative and
Administrative Complaint Processes**

15.     The Plaintiff began and in total filed twenty-five (25) executive, legislative and administrative complaints with the State's highest ranking elected and prosecutorial authorities simultaneously to following the Chief Judge's December 5, 2016 determination directing the Plaintiff to the UCS' legal appeal process to remedy deliberate denial of process in the state's administration of justice. This includes twelve (12) complaints with Governor Cuomo, one (1) complaint with the New York State Senate and Assembly Judiciary Committees, six (6) complaints with the New York County District Attorney's Public Corruptions Unit, one (1) complaint with the UCS Inspector General, and five (5) complaints with the State Attorney General who is actually defending as representation for Defendant Fasanya and Defendant DiFiore against the Plaintiff's special proceedings in the New York County Supreme Court, the Appellate Division for the First Department and the New York Court of Appeals.

16.     Similar to the Plaintiff's Administrative Complaints within the UCS, the above prosecutorial authorities and the state Legislative Branch ignored or dismissed the Plaintiff's allegations of deliberate denial of process in the state's administration of justice.

17.     Between April 3, 2018 and April 23, 2018, the Plaintiff pleaded with representatives in Governor Cuomo and his Counsel, Alphonso David's, Offices to advise on the complaint against Defendant DiFiore, Defendant Fasanya, the State Attorney General, and the New York County District Attorney's Office interest and participation in systemic deliberate denial of process and access to justice throughout the state's administration of justice. Specifically, the Plaintiff provided Lauren Russo, Assistant Counsel, Leigh Frany, Executive Assistant to the Governor, and Tracy Goodman, Office of the Secretary to the Governor, with specific factual allegations pertaining to the party's interest in and participation with Defendant Emilie Bosak in the Plaintiff's Family Court Custody and Child Support actions where Defendant Fasanya, as the adjudicator, was permitted to commit acts that the Plaintiff alleged were fraud, conspiracy, deliberate denial of process, obstruction of justice, tampering with evidence and witnesses, falsifying court documents, and extortion against the Plaintiff.

18.     On April 24, 2018, Leigh Frany, Executive Assistant to Governor Cuomo, wrote the Plaintiff on Governor Cuomo and Mr. David's behalf claiming lack of jurisdiction over charges against state officials and members of the judiciary of fraud, conspiracy, deliberate denial of process by public

officials, obstruction of justice, tampering with evidence and witnesses, falsifying court documents, and extortion or over the deliberate denial of process throughout the state's administration of justice as a whole. Ms. Frany directed the Plaintiff to file a complaint with the NYSCJC. As indicated above, the NYSCJC dismissed the Plaintiff's complaint against Defendant Fasanya under the claim of being ethically barred from investigating misconduct in the judiciary while the case is ongoing.

19.     Thus, no New York State official or member of the judiciary processed the Plaintiff's allegations against the state's officials and members of the judiciary of conspiracy to deny process, obstruction of justice, tampering with evidence and witnesses, falsifying court documents, and extortion or over deliberate denial of process in the state as a whole.

## I.     *EN ARGUENDO* ANALYSIS OF:
## ALLEGATIONS OF PROHIBITED AND IMPERMISSIBLE DOMESTIC RELATIONS PROCESSES
### -and-
## EXHAUSTION OF STATE PROCESSES AND AUTHORITIES THAT CAN REMEDY ALLEGATIONS OF PROHIBITED AND IMPERMISSIBLE DOMESTIC RELATIONS PROCESSES

20.     As clearly indicated herein, the Plaintiff has been alleging deliberate and malicious non-judicial misconduct (conduct in clear absence of jurisdiction) by Defendant Fasanya that is sanctioned by Defendant DiFiore and those justices who acted in the Plaintiff's state case against Defendant Fasanya and Defendant DiFiore at the Court of Appeals, the Appellate Division for the First Department, the New York County Supreme Court, Civil and Matrimonial Parts, and administrative judges within the UCS.

21.     The Plaintiff has continuously plead, both in the UCS' legal proceeding processes and administrative complaints, for a review of the Constitutionality of having the New York State Attorney General, as the state's prosecutor, blindly representing the chief judge ***and*** members of the judiciary who are alleged to be engaged in systemic deliberate denial of process in the state's judiciary with the chief judge's knowledge and authorization. These pleadings were all ignored or dismissed without consideration.

22.     Further, the Plaintiff has continuously plead that Governor Cuomo, the state Attorney General, the New York County District Attorney's Office, the State/UCS Inspector General, and the

New York State Commission on Judicial Conduct have all been influenced and directed by Defendant DiFiore to protect the unauthorized impermissible denial of process and fee scheme imposed on the Plaintiff and citizens in the state's Family Courts, and are deliberately refusing to process the Plaintiff's allegations in order for the state to claim immunity from the Plaintiff's complaints in the state and in federal court under the guise of the Domestic Relations Exception to Federal subject matter jurisdiction.

23.     Thus, en arguendo, **even if** the Plaintiff's allegations **are not true;** that Governor Cuomo and the State Attorney General have **NOT** cooperated with Defendant DiFiore in a matter that impacted all sixty-three (63) legal decisions and fifty-seven (57) administrative and executive decisions made in the Plaintiff's case is undisputable that jurisdiction was not taken by the state for any authorized state purpose that the **facts, factors and circumstances alleged by the Plaintiff were NOT answered , were NOT listened or attended to and were NOT tried before a jury** thus are within the jurisdiction of the US District Court for the Southern District of New York with a plead for remedy to the deliberate denial of that is affecting the Plaintiff and his daughter and over 3,000,000 state citizen's a year for over $350,000,000.00 in estimated unauthorized fees collected.

24.     Finally, en arguendo, **if** the Plaintiff's allegations **are true** that Governor Cuomo and the State Attorney General cooperated with Defendant DiFiore to engage in and permit other judges and non-judicial personnel in the UCS to deliberately deny the Plaintiff process d have and are consciously continuing to commit acts of wrongdoing against the Plaintiff that form the factual and legal basis of a federal civil rights complaint that affects over 3,000,000 citizen's a year for over $350,000,000.00 in estimated unauthorized fees collected and that is within the jurisdiction of the US District Court for the Southern District of New York seeking punitive damages and prospective relief .

I do so swear:

Manuel P. Asensio

Sworn to before me this the 21st Day of November 2018

Notary Public

LISENI CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

Plaintiffs,

    -against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

Defendants.

**CV**_____

**AFFIDAVIT IN SUPPORT OF
CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

### AFFIDAVIT OF FACTUAL ALLEGATIONS

1.    I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited civil rights complaint, and the affiant in this Affidavit dated November 21, 2018. I swear that I am fully familiar with the facts, factors, circumstances and records contained in this affidavit of the legal actions and administrative and executive complaints that I have filed in New York State's judiciary department and with its governor, state attorney general and New York County's district attorney. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

2.    The Plaintiffs' principle allegation is that Janet DiFiore ("Defendant DiFiore"), New York State's Chief Judge, has and is continuing to act with malice against the Plaintiffs' constitutional rights to be free from her deliberate violations of law against them, her political ideology, and free to practice their religion and express their political beliefs and protect their private property. Defendant DiFiore has deliberately and maliciously fabricated a "prohibited and impermissible domestic relations process" ("PIDRP") in New York State that has and is continuing to allow Adetokunbo O. Fasanya ("Defendant Fasanya"), a New York County Family Court Magistrate, to cooperate with Emilie Bosak ("Defendant Bosak"), a private citizen, and Lawrence Newman, the Chief of the New York County District Attorney ("NYCDA") Domestic Violence Unit, and his two judicial appointees, to deliberately and maliciously fabricate preposterously counterfactual stories,

so called "narratives," about the Plaintiff as retaliation against his actions against the PIDRP, Defendant DiFiore and Defendant Bosak.

3.      Since May 15, 2014, the Plaintiff has been focused on his investigation and actions against Defendant Fasanya's dishonesty and fabrications. All of the actions against the Plaintiff since May 15, 2014 have been deliberate and malicious one-sided fabrications, executed to retaliate against him. These include the fabrication of the arbitrarily and unauthorized appointment of Carmen Restivo, a private attorney, to collude with Defendant Bosak against the Plaintiffs and the fabrication of arbitrary and unauthorized so called "interim" fees for Ms. Restivo, contempt orders and arrest orders to collect these fees by creating the fear of losing liberty and intimidation. The "interim" fee orders are not reviewable or appealable under state statute. On January 16, 2016, Defendant Fasanya escalated his retaliation to include an arbitrarily and unauthorized so called "interim" 2-week suspension, which under state statute are also not reviewable or appealable.  As part of his investigation and actions against Defendant Fasanya, the Plaintiff had already established a relationship with former Deputy Chief Administrative Judge for NYC Courts, Fern Fisher, and her deputy Linda Miller.  On April 25, 2016, the Plaintiff filed his first complaint with the Governor, Andrew Cuomo ("Defendant Cuomo"). By April 26, 2016, the Plaintiff determined that Fern Fisher and Linda Miller, were not going to take any action to restrain Defendant Fasanya and he filed a complaint directly with Defendant DiFiore.  On December 5, 2016, Defendant DiFiore arbitrarily and without process or authorization fabricated a blanket protect order that banned all of the Plaintiff's actions against Defendant Fasanya and all actions against Defendant Bosak other than before Defendant Fasanya.  Defendant DiFiore arbitrarily and without process or authorization included constitutional rights and custody actions in the Supreme Court's Matrimonial Part, plenary, special proceedings and constitutional actions in Supreme Court, normal appellate practice, original proceedings and special original proceedings under Article 10 Defendant DiFiore against at the Appellate Division for the First Department, and actions at the Court of Appeals.  As a result, Defendant DiFiore has allowed $--- of the Plaintiff's private property, false in-court arrests, and the January 15, 2016 so called "interim" 2-week suspension to remain in place until today.

4.      This affidavit is intended to make a record of certain events that occurred between July 5, 2013 and July 17, 2018.  The fact of the matter is quite simple.  Defendant DiFiore has personally and deliberately sanctioned and coordinated deliberate and malicious actions against the Plaintiffs.

The facts of the malicious, senseless and deliberate damages have been done to the Plaintiff are undeniable. The record makes what Defendant DiFiore knew, when Defendant DiFiore knew, and what Defendant DiFiore did plain and obvious. All the information necessary to determine and judge Defendant DiFiore's conduct is available in the record and can be reasonable found to be unconscionable and utterly intolerable in a civilized society and even to the extent of meeting the standards of criminal difference to the Plaintiff's civil rights and misuse of official public office.

5.     The Plaintiff has been sustaining Defendant Fasanya's unjustifiable, lawless retaliation of personal angry attacks on him and his attorneys, Sua Sponte Orders filled only with total fabrications, fabricate of fees without authority, a purpose, reason or foundation merely to retaliated and intimidate and cause harm to the Plaintiff so that he would cease his actions against Defendant Fasanya, first, and then Defendant DiFiore and finally against Defendant DiFiore's PIDRP. The fabrication of fees was followed up with fabrication of contempt orders based on fabricated fees, and fabrication of arrest orders based on fabricate contempt on top of fabricated fees taking his private property.  These completely fabricated actions having on state or judicial purpose were all sanctioned under the PIDRP directly by Defendant DiFiore.

6.     The Plaintiff prays that this court pardon his grammatical, word usage and spelling errors in this affidavit and prays this Court the conduct the Plaintiff attempts to demonstrate in this writing is the unfortunate result of the DRE that has provided Defendant DiFiore with absolute power to operate the PIDRP and act under its unauthorized, unpublished rules and impermissible standards or policies over the Plaintiffs.

7.     The Plaintiff has requested that the Hon. Chief Justice Maureen O'Connor, President of the Conference of Chief Justices and Chief Judge of the Ohio Supreme Court, create a commission to investigate Defendant DiFiore's actions in the matters involving her use of the PIDRP against the Plaintiffs.

8.     The Plaintiff's request was intended to make the Conference aware of Defendant DiFiore's PIDRP and the extraordinary harm it has done to the Plaintiffs. In the request the Plaintiff included two quotes from Sir John Dalberg-Acton's April 5, 1887, letter to Archbishop Mandell Creighton, which in part addresses the question of whether it is right to criticize the popes of the thirteenth and

fourteenth centuries for their conduct. The Plaintiff believes that Sir Dalberg-Acton's reasoning is applicable to the situation that Defendant DiFiore's conduct has created for this court.

9.      It is in this letter, Sir Dalberg-Acton famously wrote, "Power tends to corrupt and absolute power corrupts absolutely." By violating the New York Rules of the Chief Administrator Part 100 Rules ("Part 100 Rules") herself to in using her many official positions' administrative power granted under the New York Constitution to take actions against the Plaintiff, without any due process, reason, right, authority, notice, disclosure, or the slightest hint of a legally authorization, and allowing other judges to do the same to protect her, Defendant DiFiore has established herself as an absolute power in the state.

10.     In his request to Chief Judge O'Connor, the Plaintiff included a second quote from Sir Dalberg-Acton's April 5, 1887 letter to the Archbishop, which states, "man is hanged not because he can or cannot prove his claim to virtues, but because it can be proved that he has committed a particular crime."

11.     Allowing Defendant DiFiore to allow Defendant Fasanya to judge without authorized and published standards or policy and to violate laws and conduct rules based on concealed prohibited and impermissible rules of what is virtuous is to allow her to abrogate law and rules of reason, fairness, and due process. The risks of such allowances are clearly presented in this case centered on the manufacturing of retaliatory fabricated suspensions of child custody and fabrication of suspension orders long after the Plaintiff began to challenge Defendant DiFiore's power to allow Defendant Fasanya to fabricate charges, evidence and false judgments.

12.     As Sir Dalberg-Anton wrote, "There is no worse heresy than that the office sanctifies the holder of it." Permitting Defendant DiFiore's use of concealed rules against the Plaintiffs is heresy.

## I.      NEW YORK'S GOVERNOR AND ATTORNEY GENERAL'S DELIBERATE FAILURE TO PERFORM INHERENT DUTIES OF OFFICE

13.     The Plaintiff affirms that between April 3, 2018, and April 24, 2018, Alphonso David, chief counsel and Lauren Russo, assistant counsel, in the Office of Counsel to the Governor, Arlene Smoler, the deputy attorney general of the State Counsel Division, Lisa R. Dell, head of the New York City Counsel Division, Mark Shawhan, an assistant New York State solicitor general, and

James Cooney, an assistant attorney general and John W. McConnell, head counsel of the Office of Court Administration's Counsel's Office deliberately refrained from exercising their official duties to pay attention to and to cooperate with Plaintiff concerning his verified written reports and complaints concerning Defendant DiFiore's use of the PIDRP; that Defendant DiFiore had interfered in the Plaintiff's actions against her, PIDRP and Defendant Fasanya in the New York County Supreme Court and the Appellate Division for the First Department; Defendant DiFiore has deliberately refused restrain Defendant Fasanya from acting without authority and maliciously against the Plaintiffs; that Defendant DiFiore had made material false representations to her fellow judges on the Court of Appeals concerning her active part in sanctioning Defendant Fasanya's wrongful actions against the Plaintiff; and Defendant DiFiore conduct in sanctioning Defendant Fasanya willful and active cooperation with Defendant Bosak to fabricate false evidence, charges, fees, contempt, arrest  warrant and unreviewable custody orders without jurisdiction, authority, legitimate purpose or process and only for the sole purpose of retaliating against the Plaintiff for his litigation against Defendant DiFiore, Defendant Fasanya  and PIDRP.

## II.     FABRICATION OF JANUARY 15, 2016 SUSPENSION AND COLLUSION WITH RICHARD SPITZER

14.     The Plaintiff has been prosecuting his complaints against Defendant Fasanya since May 15, 2014. The Plaintiff accusations are that Defendant Fasanya had colluding with Defendant Bosak and his judicial appointee Carmen Restivo on May 15, 2014 and his continuing collusion with them. During all of this time Defendant Fasanya allowed Defendant Bosak to violation the Plaintiff's custody rights at will.  Based upon information and belief, between September 2015 and January 15, 2016 Defendant Fasanya met with Defendant Bosak's counsel, Susan Moss, and created a plan identical to the scheme they executed on May 15, 2014.  Their new plan was to suspend the Plaintiff's parenting access without evidence, charges, hearing, decision or reasoning and to then force the Plaintiff to see his daughter under the supervision of Richard Spitzer of Comprehensive Family Services.  This is actually what Defendant Fasanya did on January 15, 2016.

15.     The Plaintiff has not seen his daughter normally since January 15, 2016, almost 3 years, even though it is an established law in New York State, and in every other state in the United States, for parents to have regular and continual access to their children such that even persons convicted of

the most egregious crimes are granted access to their children as a fundamental and sacred right, unless there are strong reasons to the contrary.

## III. DEFENDANT DIFIORE'S DELIBERATE INTEREFERENCE IN SPITZER MATTER

16.     The Plaintiff avers that Defendant DiFiore under her PIDRP directed, New York County Supreme Court Judge Lynn R. Kotler entered a Decision and Order dismissing the Plaintiff's Intentional Civil Tort Complaint against Mr. Spitzer, the founder and director of Comprehensive Family Services ("CFS"). CFS is a private company that provides social workers, who serve as supervisors under orders entered by judges in NYC Family Court and Supreme Court, Matrimonial Part. The Plaintiff declined to see his daughter under the Supervision Order on the grounds that it was prejudicial, and Defendant Fasanya refused to hold a hearing or enter a reviewable order on the Plaintiff's motion to vacate.

17.     The action Judge Kotler dismissed regarded Mr. Spitzer's collusion with Defendant Fasanya to authorize Mr. Spitzer to yell and grasp the Plaintiff's chin during a supervised visit with Plaintiff's daughter on June 11, 2016, in addition to Mr. Spitzer's pushing and yelling on September 17, 2016 within hours of Defendant Fasanya charging Rosemary Barnett with contempt for accusing Defendant Fasanya of colluding with Mr. Spitzer.

18.     Before the dismissal, Judge Kotler repeatedly refused to order Mr. Spitzer to produce records concerning CFS's communications with Defendant Bosak, Defendant Fasanya, and Ms. Restivo, and concerning the events and CFS's financial relationship with the NYC Family Court.

## IV. DEFENDANT FASANYA'S SILENCING OF PLAINTIFF'S LAWYERS

19.     Defendant Fasanya repeatedly threatened the Plaintiff's attorneys from the bench to intimidate the Plaintiff and prevent his facts from appearing in the record. These lawyers understood they were not allowed to represent the Plaintiff and that they had to remain silent and not to challenge Defendant Fasanya's direction. with filing grievance complaints against two of his attorneys, Chris Battagalia and Terry Brownstein, and filed a motion to hold Rosemarie Barnett in contempt for charging Defendant Fasanya with colluding with Richard Spitzer. Defendant Fasanya was forced to withdraw his contempt motion when he was faced with the truth of the matter. Defendant Fasanya

cut off and threatened Christopher Battaglia when he attempted to address the events of May 15, 2014 and his conscious wrongdoing; sought to hold Rosemarie Barnett in contempt through a Sua Sponte motion alleging she accused him colluding with Mr. Spitzer to deny the Plaintiff's access to her daughter, ignored Mr. Spitzer misconduct. Defendant Fasanya withdrew the motion when faced with the facts of the matter; Ordered Terry Brostowin to join him and Ms. Restivo in his chambers. Mr. Brostowin told the Plaintiff that Defendant Fasanya had threatened to refer Mr. Brostowin to the Attorney Grievance Committee off-the-record and demanded that the Plaintiff change his testimony; and Refuse to allow Mitchell Cantor to make legal arguments or adequately represent the Plaintiff in any way

## V.   DEFENDANT DIFIORE'S INTERFERENCE WITH DISCIPLINARY PROCEEDINGS

20.    Defendant DiFiore under the PIDRP has defended Defendant Fasanya against the Plaintiff, and to protect herself by denying the Plaintiff his legal rights to discovery under the state's CPLR, and §124 of the Chief Administrator's Rules and Public Officer Law, Article VI titled Freedom of Information Law ("FOIL").

21.    The evidence further proves that Defendant DiFiore is also protecting Defendant Fasanya and herself from investigation by the New York State Commission on Judicial Conduct. Defendants Cuomo and DiFiore appoint a majority of the NYSCJC members, and Defendant DiFiore controls the judiciary's Advisory Committee on Judicial Ethics, which effectively governs the NYSCJC's ability to regulate judicial conduct. Defendant DiFiore also controls the Judicial Institute and Department of Public Safety, where Defendant DiFiore promulgates her secret rules to teach judicial misconduct against the Plaintiff and other state citizens. Defendant DiFiore's action in protecting Defendant Fasanya provide her with a shield from the federal jurisdiction under the DRE, while she literally holds the Plaintiff's daughter as her hostage.

## VI.   DEFENDANT DIFIORE'S INTERFERENCE WITH LEGAL PROCEEDINGS

22.    Based upon real, demonstrative, and verified documentary evidence, the Plaintiff complains that Defendant DiFiore directed her deputies, the chief administrative judge the Hon. Justice Lawrence K. Marks, her former deputy chief administrative judge for New York City Courts, Hon. Justice Fern A. Fisher, her current deputy chief administrative judge for New York City Courts,

Hon. Justice George J. Silver, and the current and former presiding justices of the Appellate Division for the first department, the Hon. Justice Rolando T. Acosta and the Hon. Justice Peter Tom respectively, to cooperate with her to protect Defendant Fasanya by deliberately and maliciously fabricating sixty-three (63) orders dismissing the Plaintiff's actions against Defendant Fasanya. None of the dismissal orders were entered with a legitimate reason, review, nor consideration of facts, factors, or circumstances.

23.     Based upon real, demonstrative, and verified documentary evidence, the Plaintiff complains that the aforementioned sixty-three (63) fabricated orders in Defendant Fasanya's favor were entered in accord with Defendant DiFiore's political calculations and personal interest in protecting, preserving, and perpetuating her ability to allow family court judges to act with criminal indifference to citizens' civil rights, and her financial interest in charging citizens fees that she can control internally without state control. It must be noted that the state's family court is partially funded by federal payments from Social Security administrated by Defendant DiFiore. This federal funding contains no consideration to assure that New York State's processes uphold the rights of both parents and conform to and do not violate federal law pertaining to child custody. Citizens voluntarily appear in New York State's civil courts based on the belief and expectation that the honesty of a judge to be strictly regulated by the state's government.

## VII.    DEFENDANT DIFIORE SANCTIONING OF JUDICIAL MISCONDUCT

24.     Defendant DiFiore is responsible for the training and supervision of the UCS's Family Law judges. They are trained under a dedicated Vice Dean at the New York State Judicial Institute ("NYSJI"). The Plaintiff has personal knowledge of how Defendant DiFiore trains judges to violate law and reason and the Part 100 Rules, to be rude, impatience to parents, dismissive and manipulative, insensitive to their concerns, disrespectful of their rights and person, and uncivil affects family court officers, court clerk, part clerks, court reporters and law secretaries dedicated to family law courts.

25.     Defendant DiFiore controls the following state officials:

        i.)     The NYSJI Dean the Hon. Juanita Bing Newton;

ii.)    NYSJI Vice Dean for Family and Matrimonial Law the Hon. Sharon S. Townsend;

iii.)   The UCS's Chief of the Department of Safety, Michael Magliano;

iv.)    The UCS's internal Inspector General ("IG"), Sherrill Spatz;

v.)     The OCA and counsel, including John McConnell, the Head of the OCA Counsel's Office, and nonjudicial attorneys Lee Alan Adlerstein, Pedro Morales and Shawn Kerby;

vi.)    The Administrative Board of the Courts ("ABC") as its Chair; and

vii.)   The Court of Appeals ("COA"), as its Chief Judge.

26.     By executing the above control over family law judiciary policies standards, Defendant DiFiore has political influence over New York State's:

viii.)  Governor, Andrew M. Cuomo;

ix.)    Attorney General, Barbara D. Underwood, and Assistant AGs James Cooney and Jonathan Conley;

x.)     NYCDA Vance Jr., and Assistant NYC DA's Lawrence Newman, Chief of the Domestic Violence Unit and Assistance DA Stephen MacArthur;

xi.)    NYCDA Chief of the Public Corruptions Unit Luke Rettler; and

xii.)   New York State Assistant Solicitor General, Mark H. Shawhan.

## VIII.  DEFENDANT DIFIORE'S IMPERMISSIBLE DECEMBER 5, 2016 DISMISSAL

27.     On December 5, 2016, Defendant DiFiore personally dismissed the Plaintiff's complaint against Defendant Fasanya and directed the Plaintiff to the normal appellate practice. She dismissed it without any review or consideration other than to acknowledge that the Plaintiff's allegations against Defendant Fasanya and his supervising judges are "serious." During 2017 and 2018 the Appellate Division and the Court of Appeals refused to review these serious charges in special, plenary and appellate proceedings.  They did so by abusing their administrative power to enter orders without consideration of the law nor the facts, factors and circumstances presented.

## IX.     IMPERMISSIBLE FEES TOTALING $99,153.22

28.     Under Defendant DiFiore's PIDRP Defendant Fasanya has been allowed to use thirteen (13) contempt and arrest orders to force the Plaintiff to pay restitution totaling $99,153.22 without the slightest trace of legitimate reason or purpose. Unequivocally, as a matter of fact and law, Defendant Fasanya has no authority, right, or discretion to obligate the Plaintiff to consent to Ms. Carmen Restivo's appointment or to agree to Ms. Restivo's hourly rate or the time she spends on the case, much less allow Ms. Restivo unfettered, unsupervised time with the Plaintiff's daughter.

29.     On the contrary, Defendant Fasanya is obligated by statute to closely monitor and report the amount of money Ms. Restivo is paid as his judicial appointee per case, and in total, per year. This information is used to verify that Defendant Fasanya is complying with the law and not overpaying Ms. Restivo in any one case or over a period of time. These regulations are designed to prevent kickbacks to judges in any form and undue influence by appointees. Defendant Fasanya is required by law to have New York County pay Ms. Restivo's bill at low 18-b rates, not the Plaintiff. In any case, the Plaintiff never consented to Ms. Restivo's appointment and Defendant Fasanya appointed Ms. Restivo over the Plaintiff's opposition. The Plaintiff's withdrawal was deliberated to protect his daughter from having any contact with Ms. Restivo and to eliminate the Plaintiff's exposure to Ms. Restivo's fees.

## X.     DEFENDANT DIFIORE'S USE OF PIDRP IN MATRIMONIAL PART

30.     The Plaintiff filed actions in New York County Supreme Court, Matrimonial Part after exhausting his administrative and legal remedies in NYCFC and the OCA. The Plaintiff filed the first post-JOD motion with New York County Supreme Court, Matrimonial Part Justice Laura E. Drager on May 12, 2017, and appeared before Justice Drager for the first time on June 26, 2017.

31.     Judge Drager dismissed the Plaintiff's May 12, 2017 motion (Mot. Seq. No. 24) and four others (Mot. Seq. Nos. 25, 26, 27 and 28) without authority or consideration of the facts, factors and circumstances.

32.     As a Justice in the state's Matrimonial Part of the Supreme Court, Judge Drager has a higher obligation than those Supreme Court Judges in the Civil Part. It is a far more serious transgression when a family law judge conforms to concealed policies and agreements executed against parents

and their rights. Family law judges must by nature respect and honor family unity, and respect the U.S. Supreme Court law governing state interference with parental rights in any determination of the best interest of the child.

33.     Nonetheless, Judge Drager conformed to the PIDRP to trap the Plaintiff under Defendant Fasanya without considering the facts, factors and circumstances included in Defendant Fasanya's almost five-year record of conscious wrongdoing.  This misconduct by Judge Drager directly denied the Plaintiff and his daughter access to justice and a fair judicial review of circumstances and directly lead to the now grave child custody violations.

## XI.    MR. NEWMAN'S FABRICATIONS

34.     Mr. Newman, as Chief of the NYCDA Domestic Violence Unit, has extensive personal knowledge and experience with Defendant Bosak's history of making false, lurid and repugnant charges dating back to September 13, 2010 at 8:30 A.M. that the fact that all of her charges have been dismissed.  These include Defendant Bosak's horrific December 5, 2013 that were dismissed by Mr. Newman himself in the interest of justice.  Further, Mr. Newman has personal knowledge and experience with Defendant Bosak's improper conduct with one of his Assistant District Attorney's that led to his being fired.

35.     Shortly after Defendant Fasanya entered his unauthorized custody suspension order on January 15, 2016, which is the Plaintiff filed a criminal complaint against Defendant Fasanya. The Plaintiff had filed his first complaint against Defendant Fasanya on May 15, 2014 and had withdrawn on April 21, 2015 due to the UCS's refusal to process the complaint.

36.     Defendant Fasanya's unauthorized so called "interim" January 15, 2016 custody suspension order was purportedly based on Defendant Bosak's false story-telling (she was not a witness) of certain meaningless events that occurred December 29, 2015. The details of what occurred in Defendant Fasanya's court room on January 15, 2016 and the events of December 29, 2015 are detailed below. The December 29, 2015 events are not only meaningless under law or fact against the Plaintiff but preposterous because the proven facts show that if any party acted wrongfully it was Defendant Bosak and not the Plaintiff.

37.    Mr. Newman is fully aware of the irregularities that the Plaintiff has suffered under Defendant Fasanya. Mr. Newman is also aware of Defendant Fasanya's January 15, 2016 conduct and his refusal to recuse himself and the UCS' refusal to process the Plaintiff's May 15, 2014 complaint.

38.    Mr. Newman's conduct before, during and after the events of December 29, 2015 and January 15, 2016 clearly appear to be deliberate and malice acts to protect Defendant Fasanya from the Plaintiff's charges and to support Defendant Fasanya's unauthorized custody suspension order on January 15, 2016 led based on false hearsay that led to charges that have been dismissed.

## XII.    MAY 15, 2014 EVENTS AND COMPLAINT AGAINST DEFENDANT FASANYA

39.    On May 15, 2014, the Plaintiff witnessed Defendant Fasanya intentionally orchestrating a staged exchange between himself, Moss, and Ms. Restivo. The Plaintiff has never consented to and, in fact, has always objected to Ms. Restivo's appointment based on her child-rearing ideology and her religious, political, moral, ethical, cultural, and family beliefs. In addition, the Plaintiff, on principle, objected to Ms. Restivo's conduct on May 15, 2014.

40.    Immediately after that court appearance, the Plaintiff asked Mr. Barics to join him in a conference room outside the courtroom. In that conference room, Mr. Barics and the Plaintiff called Ms. Restivo's cell phone. Plaintiff and Mr. Barics left Ms. Restivo a specific message accusing her of fraud and requesting that she withdraw from the case. The Plaintiff then entreated Mr. Barics to demand a full hearing on the matter. Ms. Restivo ignored the message. Defendant Fasanya ignored Mr. Barics' motion. The Plaintiff submitted Mr. Barics with an attorney specially retained to deal directly with Defendant Fasanya to address his misconduct in cooperating with Ms. Restivo and Defendant Bosak.

41.    After leaving the message for Ms. Restivo, the Plaintiff preceded to the office of Judge Hoffman, the NYC Family Court supervising judge. The Plaintiff lodged a complaint with the Supervising Judge's office and filed the same complaint with the New York City Supervising Judge and the State Supervising Judge for New York City courts. No one listened, cares, or reviewed the complaint and no one took corrective or disciplinary action.

## XIII. APRIL 21, 2015 WITHDRAWAL AND CONFIRMATIONS BY DEFENDANT FASANYA

42.     On April 21, 2015 the Plaintiff withdrew his custody violation and custody modification petitions and surrendered the trial dates that were scheduled in those proceedings by Defendant Fasanya. The Plaintiff did so by serving a withdrawal notice affirmed by his counsel, Christopher Battaglia, on Defendant Fasanya and Defendant Bosak on April 20, 2015, and by filing the notice with the Chief Clerk of the NYCFC.

43.     The Plaintiff's withdrawal came after his administrative complaint alleging Defendant Fasanya colluded with Ms. Restivo and Defendant Bosak on May 15, 2014 was ignored by the Hon. Justice Fern Fisher, the former Deputy Chief Administrative Judge for New York City Courts, and the Hon. Justice Douglas E. Hoffman, the former Supervising Judge of the New York County Family Court.

44.     On October 3, 2014, the Plaintiff's counsel, Mr. Battaglia, attempted to raise the issues of collusion and the Plaintiff's fears directly to Defendant Fasanya. The following is a transcript excerpt of the exchange between Mr. Battaglia and Defendant Fasanya that occurred on October 3, 2014:

> Defendant Fasanya: Before I adjourn, is there anything you would like to add to this calendar, Mr. Battaglia?
>
> Mr. Battaglia: Yes, Judge. My client wanted to inform the Court through me that he is seriously contemplating -- he will do so over the weekend -- seriously contemplating withdrawing his petition in this court --
>
> Defendant Fasanya: That application is not before me, I'm not -- there is no need to address it. If it's done [I will] address it then. Anything else?
>
> Mr. Battaglia: He feels that any and every discretionary action that your Honor --
>
> Defendant Fasanya: You have to proceed carefully at this point.
>
> Mr. Battaglia: Well, your Honor, my client feels he is not getting a fair shake here. I think your Honor understands that what we earlier were attempting to say--
>
> Defendant Fasanya: Thank you, that's your client's feeling. The Court takes that information for whatever it's worth.
>
> Mr. Battaglia: My client is afraid to be in your court --

> Defendant Fasanya:  Mr. Battaglia, this is a courtroom, your client's fear is your client's business, it's not my business…

45.     Between October 3, 2014 and the Plaintiff's April 20, 2015 withdrawal, Mr. Battaglia continued his attempts directly with Defendant Fasanya to rectify the adverse effects of the events of Defendant Fasanya's May 15, 2014 collusion with Susan Moss, Defendant Bosak's attorney, and Ms. Restivo and to address the Plaintiff's complaint. Mr. Battaglia advised the Plaintiff that Defendant Fasanya scheduled an attorney only conference for February 24, 2015 and that Defendant Fasanya had demanded that he withdrew the Plaintiff's motion dealing with the May 15, 2014 incident.

46.     On April 20, 2015, the Plaintiff and Mr. Battaglia withdrew due to the Plaintiff's fears and Defendant Bosak's collusion with Ms. Restivo to maliciously use the AFC fees against the Plaintiff as the basis for the withdrawal. Defendant Fasanya verbally re-confirmed this in court on April 20, 2015, and followed this by scheduling a court date the following day to ensure all outstanding fees were paid to Ms. Restivo. The following is a transcript excerpt of the exchange between Mr. Battaglia and Defendant Fasanya that occurred on April 20, 2015:

> Mr. Battaglia:  Ms. Restivo received a letter and Ms. Moss received letter from my respective offices and after consultation with my client we've decided that the petition is going to be withdrawn. Having trouble meeting the AFC's bills and based on that Mr. Asensio has decided to withdraw his petition.

> Defendant Fasanya:  Solely based on the fact that you are having trouble meeting the AFC's fee, is that it?

> Mr. Battaglia:  Yes, judge, based on the content of the letter spells out pretty well.

> Defendant Fasanya:   Did the letter emanates from your office, Mr. Battaglia?

> Mr. Battaglia: …Yes, sir, signed by myself, and signed by Mr. Asensio.

> Defendant Fasanya:  And the reason for the withdrawal is the inability to pay the fees of the attorney for the child?

> Mr. Battaglia:  Yes, judge, that is the main crux of the letter.

> Defendant Fasanya:  So that's the answer to the first question, I mean to the second question actually as to whether or not this petition is being withdrawn. What is the answer to the first question?
>
> Mr. Battaglia:  Yes, judge, the petition is being withdrawn.

47.    The retaliations did not cease.  Defendant Fasanya attempted to cause agitation by angrily directing and cutting off Mr. Battaglia during a court date held on April 21, 2015. The following is a transcript excerpt of the exchange between Mr. Battaglia and Defendant Fasanya that occurred on April 21, 2015:

> Mr. Battaglia:  May Mr. Asensio address the Court?
>
> Defendant Fasanya:  No, he may not. You're his attorney. You can address me. Is he withdrawing his petition or not?
>
> Mr. Battaglia:  If the attorney for the child's fees were to continue, then he has to withdraw the petition, Judge.
>
> Defendant Fasanya:  Stop, stop.
>
> Mr. Battaglia:  So the --
>
> Defendant Fasanya:  Is he withdrawing his petition or not?
>
> Mr. Battaglia:  If the --
>
> Defendant Fasanya: Nothing is conditional upon anything. As long as this case continues, Ms. Restivo remains on the case, my order continues, that's not changing.

48.    To eliminate any confusion or doubt, on May 21 and 27, 2015, the Plaintiff and his counsel filed verified copies of their April 20, 2015 withdrawal with the NYCFC Chief Clerk's office.

49.    The Plaintiff's withdrawal was confirmed by Defendant Fasanya on numerous occasions from May 2015 thru July 2017:

> On November 16, 2015 Defendant Fasanya confirmed:
>
> > Defendant Fasanya:  You are free to withdraw (your petition). But if I have applications that are pending before me, I will not permit you to withdraw the petition until I address that application. ... I say ... at this point Mr. Asensio, there's no pending application before me. [Transcript of Proceedings];
>
> On November 4, 2016 Defendant Fasanya confirmed:

> Defendant Fasanya: Your presence in this courtroom is a voluntary one.... There's no compulsion for you to be present in this courtroom...you are free to stay away...I will not...(repeat) I will not take any steps to compel you to come to court...You are free not to come to court. [Transcript of Proceedings];

On March 13, 2017 Defendant Fasanya confirmed:

> Defendant Fasanya: All of Mr. Asensio's petitions are marked withdrawn. [Transcript of Proceedings]; and

On July 5, 2017 Defendant Fasanya confirmed:

> Defendant Fasanya: As I indicated to you in the past, Mr. Asensio, the choice to appear before this court is yours. This court will not issue warrants to compel you to come and defend your petition. This court will not issue you a notice to compel you to come and defend a petition. [Transcript of Proceedings].

50.     Notwithstanding all of the above, Defendants Governor Cuomo, Defendant Underwood and Defendant DiFiore have allowed Defendant Fasanya to ignore both his own four confirmations of the Plaintiff's withdrawal and that he would not be compelled to return to Defendant Fasanya's courtroom. Since May 15, 2014 Defendant Fasanya has executed 13 OTSC's for contempt compelling the Plaintiff to appear in his court to pay his unilateral judicial appointee, Carmen Restivo, $99,503.22 under the threat of actual summary incarceration.

## XIV.   JANUARY 21, 2016 DE HORS ORDER

51.     On or around January 21, 2016, Defendant Fasanya issued a Sua Sponte Order granting a legal fee award of $33,000 ("January 2016 Legal Fee Order") to Defendant Bosak. It was in the form of a hybrid interim and sanction based on a finding that the Plaintiff's petitions were frivolous. Defendant Fasanya issued the January 2016 Legal Fee Order after the Plaintiff had defeated Defendant Bosak's motion to dismiss. The finding was dehors, having no basis in the record. Defendant Fasanya has actually granted the Plaintiff's application based on merit and dismissed Defendant Bosak's motion to dismiss. Thus, the January 2016 Legal Fee Order is a total fiction authored by Defendant Fasanya.

52.     The January 2016 Legal Fee Order was, in effect, an extrajudicial windfall granted to Defendant Bosak. Defendant Fasanya has never allowed the Plaintiff to obtain discovery on Defendant Bosak's finances or ordered her to provide a financial statement, notwithstanding his obligation under law and reason to do so.

53.     Defendant Fasanya's January 21, 2016, order can only be viewed as a punitive follow-up to his January 16, 2016, "interim" suspension order and a retaliatory act against the Plaintiff's May 15, 2014, complaint, which qualifies as a clear and undeniable indication of his contempt for the Plaintiff and his cause. It contains Defendant Fasanya's personal feelings, which are slanderously aggressive, and completely fabricated statement having on bearing or relationship with the record.

## XV.    JUNE 30, 2017 WRONGFUL ARREST

54.     On June 30, 2017, Defendant Fasanya held the Plaintiff in contempt of court at the conclusion of a contempt hearing on the 11th and 12th orders to show cause to enforce payment of Ms. Restivo's fees against the Plaintiff. Defendant Fasanya subsequently incarcerated the Plaintiff. This was done notwithstanding the Plaintiff's repeated offers to alleviate the contempt by offering either a surety bond and a notice of appeal for the amount Ms. Restivo requested or the actual payment of the amount she requested later that day (as Defendant Fasanya had allowed previously). The Plaintiff secured a surety bond that was required to secure an automatic statutory stay. This law is designed to secure the funds while an order is under appeal. Despite having the legal obligation to do so, Defendant Fasanya denied the Plaintiff's right for an automatic stay and right to purge the alleged contempt. He immediately entered an order of commitment and ordered the Plaintiff be turned over to the department of corrections.

55.     The Plaintiff was deprived of his liberty for almost fifteen (15) hours and held in detention. Defendant Fasanya must have identified Ms. Restivo as party to the litigation, which Ms. Restivo is not and cannot be. Defendant Fasanya needed to identify the actual right that Ms. Restivo had to state in writing that:

> i.)    The prohibited and impermissible relationship existed between Ms. Restivo and the Plaintiff after his April 21, 2015 withdrawal based on the events of May 15, 2014 and the Plaintiff's rights to end that relationship;

ii.) Exactly the act that the Plaintiff had committed and how it defeated, impaired, impeded, or prejudiced Ms. Restivo's rights or remedies as a party and the offense charged;

iii.) the Plaintiff's offense was deliberately designed to defeat, impair, impede, or prejudice Ms. Restivo's rights or remedies as a party; and

iv.) The offense actually did defeat, impair, impede, or prejudice Ms. Restivo's rights or remedies as a party.

56. The Plaintiff had a right to purge the contempt and a right to an automatic stay with the filing of a notice of appeal and a surety bond. New York State law also clearly states that contempt can never be used to compel payment of money. Defendant Fasanya deliberately denied the Plaintiff the right to seek a motion to stay by deliberately refusing to order the transcript where Defendant Fasanya denied the Plaintiff's legal arguments.

57. New York State law clearly states a nonparty to a proceeding; such as a judicial appointee, including an attorney for a child or guardian ad litem; is not a party and cannot enforce payment through contempt of court. Giving a judicial appointee in a routine parental disagreement this sort of power would have a minor child suing his parents over custody issues, which are the sole and strict right of the parents.

58. Defendant Fasanya clearly acted deliberately and maliciously in derogation of New York State law in incarcerating the Plaintiff on June 30, 2017.

59. Moreover, although the Plaintiff sought review of Defendant Fasanya's June 30, 2017, contempt and incarceration order from the Appellate Division for the First Department, through proper judicial channels. The Appellate Division and the Court of Appeals refused to entertain the Plaintiff's application for leave to appeal the contempt and incarceration order, thereby leaving the Plaintiff without any opportunity to review Defendant Fasanya's taking of both the Plaintiff's property and liberty.

60. The Plaintiff has consequently been injured in the amount of $96,248.02, plus $10,000 per incident for filing frivolous motions, equaling $130,000. This totals $226,248.02.

61.     The UCS and the State of New York have ignored and refused to review Defendant Fasanya's decision and the order entered on January 21, 2016, granting Defendant Bosak a $33,701.50 legal fee award.

62.     It cannot be reasonably denied that this order is a Default Decision based on its own dehors facts, findings, and unauthorized Sua Sponte actions. Defendant Fasanya's January 21, 2016, decision makes his opinions, disposition, intentions, and beliefs concrete and incontrovertible. Defendant Fasanya's dehors fact-finding and Sua Sponte actions, and the UCS's refusal to review them without considering the facts, is demonstrably a clear, systematic abuse of discretion. The five (5)-year record of facts demonstrates the state's actions against the Plaintiff's due process rights are standard procedures created to deny the Plaintiff's property and parenting rights.

## XVI.   MAY 2, 2018 FABRICATED DEFAULT DECISION

63.     For all intents and purposes Defendant DiFiore is the de facto executor of Defendant Fasanya's purported "Decision and Order on Default," which was executed on May 2, 2018, and mailed to the Plaintiff on July 2, 2018 ("Default Decision"). Defendant Fasanya's Decision and Order on Default is allegedly based on a July 10, 2015 filing by Defendant Bosak. In fact, Defendant Bosak defaulted on the return date and on November 16, 2015 Defendant Fasanya confirmed that it had been withdrawn and that there was no pending application against the Plaintiff.

64.     On its front cover, the Default Decision alleges that the Plaintiff voluntarily withdrew his petitions from Family Court on March 13, 2018. Defendant Fasanya knows the Plaintiff and his counsel formally filed a letter of withdrawal, appeared with the letter on April 21, 2015, and withdrew. To avoid any confusion and eliminate any doubt, the Plaintiff's counsel filed a verified withdrawal notice with the clerk and a motion of withdraw.

65.     Defendant Fasanya himself entered orders confirming the Plaintiff's withdrawal. On November 4, 2016, Defendant Fasanya claimed the Plaintiff's presence in his courtroom was voluntary, that he would not compel the Plaintiff to be present and would not take any steps to compel the Plaintiff to come to court.

66.     On November 17, 2014, Defendant Fasanya denied Defendant Bosak's motion to dismiss the Plaintiff's custody modification petition and granted the Plaintiff a trial on his petition.

Defendant Fasanya also denied Defendant Bosak's request for legal fees based on her allegation that the Plaintiff's petition was frivolous. The decision required Defendant Fasanya to determine that there was sufficient evidence in the record demonstrating a substantial change of circumstances related to custody and that Defendant Bosak had materially interfered with the Plaintiff's custody rights under the JOD.

67.     By November 17, 2014, Defendant Fasanya and the Plaintiff were engaged in litigation. Defendant Fasanya had already removed one of the Plaintiff's attorneys and threatened to sanction a second of the Plaintiff's attorneys. Later, Defendant Fasanya filed contempt charges against the third and threatened the fourth with a grievance complaint unless the Plaintiff changed his testimony. Defendant DiFiore has consciously sanctioned all of these acts.

68.     Based on the weight of circumstantial evidence, knowledge, and belief, including

     i.)     the profound link between Defendant DiFiore's December 5, 2016 Determination and the Default Decision;

    ii.)     the December 5, 2016, Determination's acknowledgement that the Plaintiff's allegations against Defendant Fasanya are serious and dismissal of these alleged serious violation by fifty (50) judges;

    iii.)     the Default Decision's denial of the Plaintiff's numerous withdrawals beginning on October 3, 2014 and Defendant Fasanya's orders confirming the withdrawals;

    iv.)     Defendant Fasanya use of contempt to collect fees for his judicially appointee under 13 Sua Sponte orders;

    v.)     Defendant Fasanya's instructions to Mr. Spitzer to deny the Plaintiff even the ordered supervised access, ignoring complaints of Mr. Spitzer's touching the Plaintiff's chin and other gross conduct that cannot be authorized and then denying discovery against Mr. Spitzer;

69.     The Plaintiff Defendant Fasanya's Default Decision can only be viewed as a fraud on the court and the judicial system based on Defendant DiFiore's December 5, 2016 and the subsequent events in the state.

## XVII.   SUMMATION OF DEFENDANT DIFIORE'S USE OF PIDRP

70.     The Plaintiffs complain that PIDRP and its use:

a.) have not been proposed to the Administrative Board of the Courts;

b.) have not been approved by Court of Appeals;

c.) have not been published or otherwise disclosed and instead have be promulgated exclusively within the UCS;

d.) are based on undefined ideological beliefs that could never be proposed as law or rules;

e.) allow judges in NYCFC to disregard and ignore certain the post-divorce judgement petitions made by non-custodial parents thus function as the equivalent of a dismissal through calendar control and to prolong to generate fees for judicial appointees;

f.) allow family law judges to violate New York State rules, statutes and common law including laws governing discovery and contempt;

g.) allow superior judges in trial courts over special Writ of Prohibition or Mandamus and plenary proceedings and appeal judges presiding over actions by parents against in NYCFC Judges to dismiss without considering any of facts, factors or circumstances that merit review and consideration in a decision;

h.) allow judges the Appellate Division deny motion for leave to appeal without considering any of facts, factors or circumstances that merit review and consideration in a NYCFC decision;

i.) allowed Defendant Fasanya to take actions against the Plaintiff to deliberately violate the Part 100 Rules for the purpose of colluding with Respondents Moss, Wolf and Bosak, and his two judicial appointees, Ms. Restivo and Richard Mr. Spitzer, to tamper with evidence and fabricate charges, which are unauthorized and effectively meaningless, and to manufacture evidence and fees against the Plaintiff;

j.) allowed Support Magistrate Rosario and Defendant Fasanya that are in clear absence of their jurisdiction.

k.) allowed Defendant Fasanya to appoint Ms. Restivo, unilateral Sua Sponte, as his appointed attorney for the child and to then order the Plaintiff to pay Ms. Restivo;

l.) allowed Defendant Fasanya to collude with Ms. Restivo and Defendant Bosak to fabricate jurisdiction over religious, character, moral, and political subjects that Defendant Fasanya has no right to influence;

m.) colluded with Ms. Restivo and Defendant Bosak to fabricate jurisdiction over nonexistent charges created without evidence that Defendant Bosak is legally and naturally obligated to handle privately with the Plaintiff without involving government;

n.) allowing Ms. Restivo to denigrate the Plaintiff's character and beliefs, including his political belief in a small, limited government;

o.) suspending the Plaintiff without authority; and

p.) Instructing Mr. Spitzer to harass, intimidate, scream at, and threaten the Plaintiff and to grab his chin and body block him in front of his daughter.

71.     The complaint and accompanying affidavits concern evidence demonstrating Defendant DiFiore's unauthorized use of <u>nonjudicial</u> government positions in the judiciary. These positions are given to her under New York Constitution Article 6 §28. These positions provide Defendant DiFiore with managerial and administrative authority that cannot be used to make or affect legal judgments. However, there is no at the supervision within the UCS or state to monitor and regulate an act under this authority that in fact does affect the Plaintiff's rights and a judgment.

72.     The Plaintiff alleges that the power that Defendant Fasanya has used to abrogate his Denied Rights are derived from Defendant DiFiore's Article 6 §28 authority. Defendant DiFiore has declined to discuss this matter with the Plaintiff in any legal or administrative process. In the same manner, Defendant Fasanya has not been required to answer the Plaintiff's charges against him.

73.     To defend Defendant Fasanya against the Plaintiff, Defendant DiFiore has involved the state Attorney General's office, who appeared to defend Defendant Fasanya without first conducting any due diligence, as well as involving members of her staff who are attorneys, and judiciary personnel in the Department of Public Safety and NYSJI.

74.     It would be impossible to protect Defendant Fasanya in any other way but through concealment within the judiciary by the judiciary. As a matter of fact, Defendant DiFiore is a commanding influence, alongside the governor and the legislatures, both in the state and in the judiciary.

75.     Defendant Fasanya has removed four of the Plaintiff's attorneys from his courtroom who attempted to address Defendant Fasanya's misconduct directly with him. The first attempt occurred

on May 15, 2014. The Plaintiff and his second attorney withdrew on April 20, 2015. This left Eva in Defendant Fasanya's courtroom without her father, however, the Plaintiff had no other choice in the UCS.

76.     Defendant DiFiore and the fifty (50) other judges refused to act against Defendant Fasanya for impermissibly suspending the Plaintiff's parenting rights without authority, cause, or hearing on January 15, 2016, almost two (2) years after the Plaintiff commenced his complaint against Defendant Fasanya. Again, the refusal was done without considering facts.

77.     The effect of Defendant DiFiore's conduct in concealing and defending Defendant Fasanya is to allow him to tamper with court records, direct argument and testimony, and create a Default Decision that cannot be factually reviewed or legally appealed for the exclusive purpose of oppressing, injuring, and depriving the Plaintiff of his liberty, property rights, and parental rights.

78.     All of Defendant DiFiore's acts against the Plaintiff and in favor of Defendant Fasanya are part of retaliation against the Plaintiff's administrative complaints that date back to May 15, 2014, which ultimately reached Defendant DiFiore on April 26, 2016. The complaints were not only issued against Defendant Fasanya but also challenged Defendant DiFiore's standards and policies.

79.     The Plaintiff had no choice except to withdraw his child custody applications on April 21, 2015, because Defendant Fasanya was exclusively devoted to fabricating legal fee orders against him in favor of Bosak and Ms. Restivo without any regard to the Plaintiff's financial circumstances, without allowing discovery against Defendant Bosak to determine her ability to pay her own fees, without allowing discovery against Ms. Restivo to challenge the value of her services, and then using contempt and summary arrest orders to collect these fees. After five (5) years of constantly repeating this process, it is unreasonable to believe this process will end.

I do so swear:

_Manuel P. Asensio_

Manuel P. Asensio

Sworn to before me this the 21st Day of November 2018

_Liseni Castro_

Notary Public

LISENI CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT
----------------------------------------------------------------------x

MANUEL P. ASENSIO,

**AFFIDAVIT OF FORMER
ATTORNEY**

Petitioner-Appellant,

-against

File No. 128425

EMILIE BOSAK,

Docket No. V-43839-13/13A

Respondent-Respondent.

----------------------------------------------------------------------x

STATE OF NEW YORK   )
                            ) ss:
COUNTY OF NASSAU   )

I, ROSEMARIE A. BARNETT, an attorney duly licensed to practice law and the former attorney of the Petitioner, Manuel P. Asensio, submit this affidavit in support of Petitioner's further motions under penalty of perjury and after being duly sworn, deposes and says:

1.    I have personal knowledge related to the Petitioner in a custody/visitation matter in New York County Family Court that is currently in its fourth year, captioned *Asensio v. Bosak*, V-43839/13/13A.

2.    I represented Mr. Asensio briefly in February 2016 and then on a *pro bono* basis from late May, 2016 to October 4, 2016. This affirmation is based

1

upon my first-hand experiences and observations during that time. Where I have reported non-firsthand facts for the sake of narrative, I have made every attempt to make a clear distinction between the two. Finally, this affirmation also contains my mental impressions, i.e., my opinion and not facts.

3.     When I met Mr. Asensio, Judge Fasanya, the Family Court judge presiding over his matter, had suspended all contact between him and his daughter, Eva Asensio. I believed this was an unsubstantiated, and possibly illegal, measure taken by a Family Court judge against a non-custodial parent, who had actually filed his own violation petition based on the same circumstances, in which he gave a clear account of the Respondent Mother's many violations, including leaving the child in the care of a non-parent (in violation of their stipulation of settlement in the divorce case). His petition was ignored and the mother's motion for interim suspension (based on non-firsthand evidence, because the mother was not even present at the time of the alleged violation, she was on a beach in Mexico) was granted without hearing.

4.     When I first appeared at the next court date of February 8, 2016, I requested that parenting time between Mr. Asensio and his daughter be resumed after having reviewed the papers and finding the facts upon which the suspension was based flimsy at best. Judge Fasanya refused. When I asked him for a reason, Judge Fasanya responded, "You may ask, but I'm not responding to that. It's a

temporary granting of the request that was made, and I reviewed all the paperwork, and I had an *in camera* session with the child, and I suspended your client's visitation, and that's it. That's as much as you are going to get." See **Exhibit 1**, February 8, 2016 transcript of proceedings, at 18.

5.     Out of respect for the Court, I did not push the issue, but I was still extremely puzzled and disturbed at the severity of the parenting time suspension and the air of animosity that existed in the courtroom that day.

6.     I attempted to engage in conversation with opposing counsel, Alexis Wolf, and the Attorney for the Child (AFC) Carmen Restivo, but they too were quite cold and unwilling to discuss any matter with me in a reasonable way. In fact, Ms. Restivo went to so far as refuse to shake hands with my client, Mr. Asensio, prior to the hearing.  It was an unusual display of rudeness by an AFC to a parent of her client.

7.     Another extremely unusual incident occurred that morning: prior to my arrival at the courthouse, Mr. Asensio informed me that his 11-year old daughter had created a profile for herself on Twitter.  I was shocked to see the profile photo: this 11-year old was posed half-clothed with her back arched, midriff bared, with extremely short shorts and a bikini-type top.  Not only was it an extremely inappropriate photo of such a young girl, but she was clearly not being adequately supervised by her mother, if she was allowed to open a Twitter account

3

at the age of 11 (Twitter is open to users 13 years and above). When I brought this to the attention of Judge Fasanya, he did not turn to the Mother or her counsel for an explanation of this lapse in parenting and supervision; his only reaction was to state that anyone could have opened that account, even Mr. Asensio, himself! *See* **Ex. 1** at 12. Again, I was nonplussed. I have never experienced a Family Court judge simply not give any credence to an issue like this in a custody matter where adequate supervision of the child is highly relevant.

8.     The primary tenet of family courts and family law in general is that the best interests of the child are paramount. How then, could this judge not spend any time to investigate the circumstances surrounding the existence of a Twitter account under a child's name, with an inappropriate photograph of the child available in the public domain? Judge Fasanya merely turned to the AFC who said she would look into it, but to this date, no one has ever followed up on this matter, as far as I know.

9.     When I raised this issue to both opposing counsel and the AFC, *both* attorneys acted as if this occurrence was entirely normal. Neither Ms. Wolf, nor Ms. Restivo stated they found the photo and existence of the Twitter account inappropriate, to my surprise.

10.     Over a month after my first experience in this case, parenting time was finally granted, but under extremely onerous, and in my opinion, unnecessary,

conditions. Parenting time was reduced to two hours a week under supervision of a supervising agency, Comprehensive Family Services, and to daily phone calls. *See* **Exhibit 2**, March 17, 2016 Order.

11.    I returned to this case on a *pro bono* basis towards the end of May 2016. The mother of the child had filed an order to show cause to allow her to send Eva away to sleepaway camp in Canada for 4-5 weeks and Mr. Asensio asked for my help.

12.    Mr. Asensio updated me on the case, and informed me that while he did see his child weekly, there were numerous issues with the visitation. One, it took several weeks for visitation to commence, with the Mother of the child taking the child away on at least one weekend without the Court's permission, and also taking the child away on Easter (with the Court's permission. Moreover, the supervisor of the visitation, Mr. Richard Spitzer, according to Mr. Asensio, was interjecting himself too far into the visits between father and daughter, and was causing many unnecessary issues.

13.    On June 2, 2016, Judge Fasanya ordered that the Child, could attend camp in Canada over my strong objection. During that hearing, opposing counsel tried to pin the blame for the missed visitations on Mr. Asensio, but I made it clear that many of the missed visitations were on account of the mother. See **Exhibit 3**, June 2, 2016 transcript of proceedings, at 11-12.

14.     From early June into July, Mr. Asensio and Eva met weekly for

parenting time.  Mr. Asensio updated me weekly on these visits, explaining to me

how inappropriately Mr. Spitzer handled these visits.  For one, according to Mr.

Asensio, Mr. Spitzer was constantly whispering to Eva, almost "coaching her"

according to Mr. Asensio.  Second, he told me that Mr. Spitzer continually

interfered with the visits, preventing them from having a free flow of conversation.

Third, and most egregiously, on at least one occasion, Mr. Asensio told me that

Mr. Spitzer actually put his hands on him in the presence of Eva.  He has also

shaken papers in Mr. Asensio's face and banged his umbrella against a garage

doorway in a show of aggression, according to Mr. Asensio.

15.     Although I attempted on many occasions to intervene with Mr. Spitzer

and ask him to modify his supervision style and improve the quality of the

parenting time between the Petitioner and his daughter, matters came to a head

when Mr. Spitzer, in an attempt to get Mr. Asensio to stop making a statement,

actually put his hands on Mr. Asensio's face by grabbing his chin.  After this

incident, I spoke with Mr. Spitzer.  He did admit in a very roundabout way that he

touched Mr. Asensio "to get his attention."  Mr. Spitzer and I came to an

agreement that he was not to approach Mr. Asensio's personal space in the

remaining one or two visits.  It was clear to me that the situation had reached a

point where both Mr. Spitzer and the Petitioner Father would find it impossible to

remain in the supervisor-supervised roles with each other. Attached hereto as **Exhibit 4** is my letter to Mr. Spitzer memorializing our discussion.

16.     Eva was away at camp for several weeks, returning to the custody of the Respondent Mother on or about August 20, 2016. At the time of the June 2, 2016 order, the Court and all parties were under the belief that we would be in Court on August 3, 2016 to commence trial and address any outstanding matters prior to trial. Therefore, the order was silent on the subject of visitation upon the return of Eva from camp. The supervisor from CFS, Mr. Rick Spitzer, was also under a Court order to provide supervision until Eva went to camp and no further. *See* **Exhibit 5,** June 3, 2016 Order.

17.     Due to personal circumstances, I requested an adjournment, which was originally set for September 8, 2016. However, the Court informed all parties that that date was no longer available. After trying to agree on several dates, all parties, counsel and this Court found a date and time agreeable to all, namely, October 11, 2016.

18.     Because of this adjournment to October 11, 2016, Mr. Asensio and Eva had no order or arrangement for parenting time in place upon Eva's return from camp.

19.     Therefore, in late August, I requested counsel for the Respondent and the Child for interim parenting time between then and October 11, 2016 in light of

7

the fact that the Father and the Child had not seen each other, spoken to each other, or had any contact whatsoever since July 2016. A copy of this email string is attached hereto as **Exhibit 6.**

20.    The only change I requested was to select someone other than Mr. Spitzer to supervise these visits. I requested counsel for the Respondent, Alexis Wolf, to agree to another supervisor, be it a mutually agreed-upon family member or even another supervising agency of her choice.

21.    Respondent's counsel refused to agree to another supervisor, and in effect, refused the parenting time.

22.    Although email communications to Court are not allowed in this matter, I even contacted the Court on Friday, August 26, 2016, to seek the Court's permission to have Eva meet with her father at some point over the weekend of August 27-28, 2016, I continued to ask Ms. Wolf and Ms. Restivo for a way to get some parenting time over the weekend. My request was ignored. This email string is attached hereto as **Exhibit 7.**

23.    I tried very hard to obtain some sort of parenting time over the weekend. My efforts were not successful, and for the fifth week in a row, the father and the child could not see each other.

24.    Again, on August 31, 2016, I asked Respondent's counsel for a resumption of parenting time, in order to avoid unnecessary motion practice. Again, she refused.  This email string is attached hereto as **Exhibit 8**.

25.    I pled with all parties involved to make a commonsense adjustment to the March 17, 2016 order of supervised parenting time, attached hereto as **Exhibit 9**, to allow for parenting time to continue between the Petitioner Father and the Child, but without the harmful presence of Mr. Spitzer in the room.  CFS is Mr. Spitzer's business, and Mr. Spitzer informed me on numerous occasions that he was the "only one" who could work on this case and he would not allow any of his other workers to supervise.  I wanted to ask the Court to select another supervising agency to facilitate parenting time until the next Court date.

26.    Ms. Restivo reported to me that Eva told her that she liked Mr. Spitzer and wanted him to supervise.  I told her that for a child to begin "liking" or "disliking" the supervisor, it is clear that this supervisor had impermissibly injected himself enough into the visits for his personality to actually become something that the child observed and passed judgment upon.  His role was to be supervisor and nothing else; not a therapist, not a counselor, just a supervisor.  Second, I told Ms. Restivo that the strength of his presence in the room actually harmed the father and daughter's ability to reconnect in a meaningful way, by causing an uncomfortable polarization in Eva's heart: she would observe these two men confronting each

9

other and would be placed in the uncomfortable position of siding with one or the

other. Would she choose her dad, whom she loved but whom she saw being

chastised by the supervisor, or would she choose the man with the apparent

authority in the room, namely the supervisor? Her actual choice to me, was not as

relevant as that fact that she felt she had to make one, *and* verbalize it to the AFC.

I conveyed this to Ms. Restivo.

27.     While a child's wishes are one factor in custody matters, it is not

dispositive. If a child's opinion is taken into account but is not entirely dispositive

as to which parent should have custody, then it should certainly not be dispositive

on the subject of which supervising agency was used. I said as much to Ms.

Restivo.

28.     In light of opposing counsel's refusals to allow parenting time *unless*

Mr. Spitzer was the supervisor, I began to prepare an interim application to the

Court. When I informed the Court and counsel of my intention to bring this order

to show cause, the Court *sua sponte* issued an order on August 30, 2016, allowing

for visitation between the father and the child, with Mr. Spitzer supervising. *See*

**Exhibit 10**, August 30, 2016 Order. I was shocked that the Court appeared to

completely ignore all of my efforts to secure some contact between Mr. Asensio

and Eva without the contaminating and polarizing effects of Mr. Spitzer's

presence. It seemed almost malevolent to subject my client to the intense distress

of having Mr. Spitzer, a man who has shown no respect for Mr. Asensio's person

or his parenting time, remain as supervisor. However frustrated I felt with

opposing counsel and the AFC's positions on this matter, I thought the Court

would order a change in supervisor. But Judge Fasanya simply ignored everything

I begged for and assigned Mr. Spitzer. Ultimately, Mr. Asensio was desperate to

see Eva and decided to submit to Mr. Spitzer's supervision just to see his daughter.

29.     Furthermore, in my opinion, there was no need for Judge Fasanya to

rely on Mr. Spitzer to provide supervision since he had already submitted his

voluminous report to this Court and had intimated to me that he expected to be

called at trial as a witness. Therefore, at this point, it should not have mattered

who supervised the parenting time. It seemed to me that the only reason to keep

Mr. Spitzer in this case was to somehow "stick it" to my client.

30.     I realized how impossible it would be for the Father to be supervised

by the very same man who had made unauthorized physical contact in the child's

presence (grabbing the Father's chin) and had inappropriately injected himself into

the visits on many occasions by acting overly friendly with the 11-year old girl,

touching her and whispering in her ear.

31.     So again, I turned to the Court for some help in addressing this

problem. I wrote emails to the Court, which were ignored. I wrote two letters to

the Court, one dated Sept. 9, 2016, received by the Court on Sept. 14, 2016, and

the second dated Sept. 15, 2016, received by the Court on Sept. 16, 2016.  They are

attached hereto as **Exhibits 11** and **12**. In both letters, I used strong language to

bring the Court's attention to the blatant violation of the current visitation order: on

September. 3, 2016, CFS/Mr. Spitzer decided that visitation would not take place

that weekend and on Sept. 10, 2016, the Mother also violated the order by simply

refusing to make the child available for the visit.

32.    I chose to write letters instead of filing applications, because Judge

Fasanya had created a special "rule" to deter the Father from filing motions.  Some

time previously, on the pretext that the Father filed too many papers, Judge

Fasanya created a special "rule" that any motion he wanted to make would have to

be by order to show cause to give the Judge an opportunity to *review it first* to see

if it should be calendared.  If Judge Fasanya deemed it unmeritorious, then it

would never be signed. *See* **Exhibit 13**, March 17, 2016 transcript of proceedings,

at 28-29.  Judge Fasanya made himself the gatekeeper for all the Father's motions,

contrary to a wealth of case law that found that while judges and courts had the

right to control their calendars and case flow, such administrative actions should

not take away litigant's rights.  This gatekeeping rule created by Judge Fasanya did

exactly that, in my opinion.

33.    Shortly after receipt of the last letter, I received an email from the

court attorney stating: "In light of the latest communication from Ms. Barnett, this

12

matter is being calendared for September 20, 2016 at 12:00 P.M.  All counsel are
to be present on that date and at that time.  The Court is going to be issuing an
Order to Show Cause to Ms. Barnett asking her to show cause as to why she should
not be sanctioned and/or held in contempt and why she should not be reported to
the appropriate disciplinary committee." *See* **Exhibit 11**, September 20 ,2016
email from Brittany DeWire.

34.     Imagine my shock.  I retained counsel for my own defense against
Judge Fasanya's motion to impose sanctions, find me in contempt, and/or referral
for discipline.  Again, it struck me that this Court always focused on the wrong
thing, to the detriment of Mr. Asensio.   Instead of devoting some time to looking
at the serious problem of appointing Mr. Spitzer as supervisor, Judge Fasanya
decided to spend the court's time of disciplining Mr. Asensio's counsel.

35.     I felt like Judge Fasanya's dislike towards Mr. Asensio extended to
me.  I do not say this lightly.  I have been counsel in many hotly contested cases,
and I have taken my knocks, like any other attorney.  But this felt different.  This
felt personal.

36.     This was particularly striking in light of the fact that the Judge was so
deferential to other counsel on the case, even when they were caught red-handed
committing a blatant ethical violation (sending and using the inadvertently-
produced privileged email).  On a previous occasion, Mr. Asensio uncovered the

13

truth in open court that opposing counsel Susan Moss received an inadvertently-sent privileged email between him and his then lawyer.  Ms. Moss, in complete violation of her ethical duties, sent this email to the AFC.  The AFC then made reference to one phrase in the email in court, completely twisted out of context. When Mr. Asensio protested that it was a privileged email, Judge Fasanya mildly said to the AFC, you shouldn't have done that, it was privileged.  *See* **Exhibit 14**, [date] transcript of proceedings, at ___.  Judge Fasanya did not report this violation to any disciplinary authority as was his duty under N.Y. Comp. CODES R. & REGS. tit. 22, § 100.3(D)(2) (1995), nor did he move for contempt or sanctions against them.

37.    I had filed a motion to be relieved as counsel some weeks previously, because my elderly mother, who lives with me, became very ill.  At the hearing for the motion for sanctions, contempt and discipline, Judge Fasanya dismissed the entire motion and relieved me as counsel, with Mr. Asensio's consent, on October 4, 2016..

38.    But before these actions of the Court against me, Judge Fasanya granted the Mother's order to show cause suspending all visitation again, on or about September 23, 2016, on the basis of events as alleged by the Mother that occurred at the last visit between Mr. Asensio and his daughter on September 17, 2017.  Without hearing or affidavits by individuals with first-hand knowledge,

14

Judge Fasanya suspended all contact, and that interim order remains firmly in place to this date, according to Mr. Asensio, almost six months later.

39. Except for a handful of visits supervised by Mr. Spitzer, Mr. Asensio has not spent time with his daughter in a calm and relaxed atmosphere for over a year. It was this unfair situation that caused to me sign on to this case pro bono and try to bring some resolution. Despite my best efforts, nothing seemed to sway the Court's negative treatment of the Father and positive treatment of the Mother despite numerous instances of terrible parenting on the Mother's part. The Court has seemingly ignored all the Mother's deficiencies and focused entirely on punishing the Father.

40. The sheer passage of time in this case continues to cause great harm to the Child, the Petitioner Father and their relationship. *See Matter of Joseph A. (Fausat O.)*, 91 A.D.3d 638 (2d Dep't 2012) ("With regard to the prolonged delays that occurred in the conduct of these proceedings, we recognize the burdens under which the judiciary operates. Yet, the fact-finding issues in this case were not complicated…. [I]t took an inordinate amount of time to commence and complete the fact-finding hearing.") In *Matter of Joseph A.*, the Appellate Division noted that the delays in Family Court caused the mother to be separated from her children for three years, and ordered Administration for Children Services to facilitate reunification by offering appropriate services to the parent and children.

41.     I am writing this Affirmation based on personal knowledge as far as possible, and when I rely on second-hand accounts for the sake of narrative, I have tried to make that clear.  This Affirmation also contains my opinion and mental impressions and I have tried to clarify the difference between fact and opinion throughout.

42.     I authorize Mr. Asensio to use it in support of his goal to remain connected with his daughter Eva Asensio.  I firmly believe that this is a case that cries out for justice and empathy for a child who is slowly losing the emotional connection with her father for no good reason.

Dated: March 5, 2017

Rosemarie A. Barnett

Signed before me this 6th day of March 2017

Notary public.

MARY ANN OJEDA
Notary Public, State of New York
No. 01OJ6307527
Qualified in Nassau County
Commission Expires July 07, 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

                    Plaintiffs,

          -against-

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

                    Defendants.

CV_____

**AFFIDAVIT OF SERVICE OF**
**CIVIL RIGHTS COMPLAINT**

**JURY TRIAL DEMANDED**

---

**AFFIDAVIT OF SERVICE**

1.      I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited civil rights complaint, and the affiant in this Affidavit dated November 21, 2018. I swear that I am fully familiar with the facts, factors, circumstances and records contained in this affidavit of the service of civil rights complaints and violations in New York State's judiciary department and with its governor, state attorney general. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

2.      All of the 20 individuals identified herein below have been served with copies of this Federal Civil Rights Complaint commencing September 14, 2018. Each of the parties served perform a specific function in the PIDRP that is causing harm to the Plaintiffs on an ongoing basis.

3.      The Plaintiff has regularly communicated with the Defendants and their representatives and associates in an attempt to seek a resolution or at least to be provided with a process to do so.

4.      The Defendants have deliberately and malicious ignored all of the matters contained in this Federal Complaint as part of their plan to deny the Plaintiff his rights.

5.      A central part of the Defendant's malicious scheme is based on abuse of their official positions and greater resources to frustrate and exhaust the Plaintiff and use the Plaintiff daughter

to harm the Plaintiff's emotional status.  This is proven by their fabrication of jurisdiction for no legitimate purpose since May 15, 2014.

6.      As identified in the Affidavit titled "Affidavit Identifying Prohibited and Impermissible Judicial Proceedings and Decisions and Orders," all of the issues contained in this Federal Civil Rights Complaint are well known to the Defendants and they have determined to rely on the DRE to protect their ability to pay no attention to the Plaintiff's pleadings.

I do so swear:

Manuel P. Asensio

Sworn to before me this the 21st Day of November 2018

Notary Public

LISENi CASTRO
Notary Public - State of New York
NO. 01CA6377964
Qualified in New York County
My Commission Expires Jul 16, 2022

**Served On:**

i.)      Alphonso David, Counsel to the Governor, Office of Counsel to the Governor;

ii.)     Lauren Russo, Assistant Counsel, Office of Counsel to the Governor;

iii.)    Leigh Frany, Executive Assistant, Office of Governor;

iv.)     Tracy Goodman, Office of the Secretary to the Governor;

v.)      Mark Shawhan, Assistant New York State Solicitor General;

vi.)     James Cooney, Assistant New York State Attorney General;

vii.)    Brian K. Mahanna, Chief of Staff and Deputy State Attorney General;

viii.)   Lucian Chalfen, Spokesperson for Defendant DiFiore and the UCS;

ix.)     John P. Asiello, Legal Counsel and Chief Clerk to the Court of Appeals;

x.)      Rachel MacVean, Chief Civil Motions Dept Clerk, Court of Appeals;

xi.)     Heather A. Davis, Deputy Motion Clerk, Court of Appeals;

xii.)    Susan S. Dautel, Assistant Deputy Clerk, Court of Appeals;

xiii.)   Margaret N. Wood, Assistant Deputy Clerk, Court of Appeals;

xiv.)    John W. McConnell, Head Counsel, OCA Counsel's Office;

xv.)     Hon. Justice George J. Silver, Deputy Chief Administrative Judges for NYC Courts;

xvi.)    Hon. Justice Jeanette Ruiz, Administrative Judge of the New York City Family Courts;

xvii.)   Hon. Justice Deborah Kaplan, Administrative Judge, NY County Supreme Court, Civil;

xviii.)  Hon. Justice Karen Lupuloff, Supervising Judge of the NY County Family Court;

xix.)    Hon. Justice Sharon S. Townsend, Vice Dean, Family and Matrimonial Law, NYS Judicial Institute;

xx.)     Hon. Justice George D. Marlow, Co-Chair, UCS Committee on Judicial Ethics.