drug use, in particular the caption accompanying the photograph depicting Plaintiff guzzling alcohol while dressed in sexual fetish garb which references her abandonment of "rehab," indicates that Plaintiff's alcohol and drug use is uncontrolled and that the Child is at risk because of it.

## PLAINTIFF'S UNLIMITED FINANCIAL SUPPORT

17. The Family Court has moreover never required Plaintiff to submit her financial information to that Court notwithstanding my contention that Plaintiff is culpable for the litigation and always has been the moneyed, more affluent former spouse. Stefano Chitis, her Italian billionaire paramour, has paid for her expensive lawyers for almost 7 years. Mr. Chitis subsidizes her hedonistic lifestyle that includes regular global travel and partying, and promiscuous affairs with other men and women. On information and belief, Plaintiff is have never been gainfully employed. She has no source of support other than Mr. Chitis.

## PLAINTIFF'S DISREGARD FOR THE CHILD'S WELFARE AND HER INTERFERENCE WITH MY RELATIONSHIP WITH THE CHILD

18. Moreover, the Family Court has ignored blatant examples of Plaintiff's disregard for the Child's welfare. The most egregious of these incidents took place in June 2015 when the Child was in Millbrook, New York in violation of the Stipulation. She was at the home of Manfred and Angelica Affenzeller without my knowledge. The Plaintiff was not with her. The Child accidentally broke her right arm in two places while at the Affenzeller's home. The Plaintiff allowed the Affenzellers to take her to a local hospital for treatment while the Plaintiff callously went about her own business, leaving these strangers to care for her injured Child, obviously unconcerned with the Child's medical treatment, standard of care or emotional condition. Plaintiff did not even deign alert me to my daughter's accident notwithstanding her obligation under the Stipulation to do so, and I only learned about it through postings on social media. Plaintiff ultimately allowed the Child to speak to me but she monitored the call. When the Child confided that she was sad and loved me, the Plaintiff grabbed the telephone from her hand and yelled at me. I had to wait until the Wednesday after the Child broke her arm the previous Saturday to take the Child to a specialist who immediately re-set it. The Plaintiff did even

5

buy the Child a plastic cover to keep the cast dry. When I next saw the Child she confessed that she was having nightmares because of this incident. Promptly after the Child broke her arm the Plaintiff sent her to overnight camp without informing me. She also allowed the camp to take the Child to a local doctor without either parent present and I was not aware that she had done so until after the fact.

19. As I stated above, I filed an emergency order to show cause in response to my daughter's accident requesting, inter alia, that the Family Court obligate the Plaintiff to comply with the Stipulation, restrain her from changing the child's name, enjoin Plaintiff from sending the Child to camp with a broken arm, and to include me in all communications with health care professionals concerning my daughter's treatment. The court set it for a hearing on July 15, 2015. I appeared ready for the hearing but the Court adjourned it, presumably because Plaintiff had retaliated by filing a petition in Family Court seeking to reduce my custody and parenting time on July 14, 2015.

20. Plaintiff is also disinterested in the Child's spiritual and academic development and the Family Court has allowed her to act that way. Plaintiff terminated the Child's life long regular church attendance and religious instructions. She has inexplicably removed the Child from her lifetime Kumon lessons, which were a source of sense of accomplishment, discontinued the Child's regular testing at Huntington and her Bright Kids tutoring, even though the Child has struggled in mathematics and requires this tutoring to remain at the same level as her peers. The Plaintiff lacks an understanding or interest in the acquisition of knowledge or academic achievement, or personal betterment.

21. Finally, the Family Court has summarily without a hearing suspended me from all access to and contact with my daughter on the basis of completely defective submissions and hearsay evidence. The first suspension was issued on January 15, 2016 upon Plaintiff's order to show cause, which was based only on the hearsay affidavit of Plaintiff and the hearsay affirmation of her attorney, neither of whom witnessed nor had firsthand knowledge of the events they describe. I have been informed by counsel that the documents were legally insufficient to support the relief requested. That said, the Family Court granted Plaintiff the relief Plaintiff requested and denied me a hearing or a decision on my motion to vacate the suspension and

punish the mother for filing a false claim. The Family Court thereafter converted the suspension order to an order imposing supervised visitation over me. I objected to the Family Court's order for supervised visitation with my daughter and to the supervisor himself based on his conduct. The Family Court denied my objection and continued to deny me a hearing and a decision on my motion. Left without any alternative, I finally saw my daughter for the first time on April 29, 2016 under supervision.

22. The Family Court again suspended me from all access to and contact with my daughter on the basis of defective submissions and hearsay evidence on September 23, 2016 upon yet another order to show cause presented by Plaintiff which was also supported only by the hearsay affidavit of Plaintiff and the hearsay affirmation of her attorney. Again, I have been informed by counsel that these documents were legally insufficient to support the relief requested. That said, again the Family Court summarily granted Plaintiff the relief she requested. I have been suspended from all contact with my daughter since September 23, 2016. Because of that suspension, I was unable to celebrate her birthday, Thanksgiving, Christmas, New Year's or Easter with my daughter, let alone see her at all or participate in milestones in her life. All based on temporary unreviewable administrative orders entered without evidence, fact-finding, reasoning or application of law.

23. The foregoing is an example of how the Plaintiff has wrongfully and maliciously interfered with my access to the Child from virtually the day after Plaintiff and I signed the Stipulation. Plaintiff regularly and continuously monitored and interrupted my telephone calls with the Child. She has fabricated incident after incident to disrupt my relationship with the Child with the apparent acquiescence of the Family Court. Finally, empowered by the belief that the Family Court would grant her any relief she requested no matter how defective the basis for it, Plaintiff sought and obtained a total suspension of my contact with my daughter on the basis of her sworn statement and that of her attorney even though neither one had any firsthand knowledge of the incident in question and when the Family Court restored my contact to the Child, albeit under supervision, she did the same thing again, seeking and receiving a complete suspension of all contact between me and my daughter based on Plaintiff's sworn statement and that of her attorney even though neither one had witnessed or had any firsthand knowledge of the incident in question.

## FUTILITY OF FURTHER LITIGATION IN FAMILY COURT AND THE EXISTENCE OF RELATTED MATTERS IN SUPREME COURT

24. Also significant, the Family Court has summarily and without issuing a reviewable order denied my right to file motions or petition. The Family Court instituted an exclusionary rule requiring me to seek all relief by Order to Show Cause, which the Family Court then has the option to grant, reject or simply ignore without a record. This exclusionary rule has effectively barred my access to justice and a legal review.

25. Since it has become painfully evident that the Family Court would consider little, if any, of the evidence I sought to present in favor of my application, I withdraw my petition for an upwards modification in November 2016. I did so again on March 13, 2017, at which time that withdrawal was definitively accepted. Only Plaintiff's applications are pending in the Family Court at this time.

26. I have initiated two Supreme Court actions related to my ongoing dispute with Plaintiff. The first of these actions was captioned Asensio v. Spitzer, Supreme Court of the State of New York, County of New York, Index No. 159812/16 [henceforth the "Spitzer Action"], which I filed against Richard Spitzer, the supervisor appointed by the Family Court after an incident between us on September 17, 2016. A copy of the complaint in that action is annexed hereto as "**Exhibit 5**".

27. The second action which I filed in Supreme Court was captioned Asensio v. Bosak, Supreme Court of the State of New York, County of New York, Index No. 153776/17 [henceforth the "Breach of Contract Action"], which I filed against Plaintiff for breach of numerous provisions of the Stipulation. A copy of the complaint in the Breach of Contract Action is annexed hereto as "**Exhibit 6**".

28. I intend to move shortly to consolidate both of these actions with the present Supreme Court action.

29. It is essential that the Supreme Court, as a Court of unlimited jurisdiction, entertain my application. This matter was initially commenced herein and this Court

8

has retained jurisdiction even while Family Court maintained concurrent jurisdiction of certain elements thereof. It is in the child's best interest and of fundamental fairness, the avoidance of inconsistent determinations and in judicial economy that all issues raised in this motion be adjudicated herein and that anything that remains pending on Family Court be consolidated herein.

Manuel P. Asensio

Sworn to before me this

10th day of May, 2017

NOTARY PUBLIC
Registration Number 02CA6085486
Qualified in New York County
My Commission expires April 8, 2019

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
MARIE EMILIE BOSAK,

                            Plaintiff,

    — against —

MANUEL P. ASENSIO-GARCIA,

                          Defendant.
-----------------------------------------------------------------X

Index No. 300417/2011
Date Summons Filed:

Plaintiff Designates New York
County as the Place of Trial

**SUMMONS**

To the Defendant:

    You are hereby summoned and required to serve on Plaintiff's attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete, if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of the venue designated is: the County within which Plaintiff resides. Plaintiff resides at 52-62 Cooper Square, Unit 10B, New York, New York.

Dated: New York, New York
          January 11, 2011

                                                  Yours, etc.,

                                                  JUDD BURSTEIN, P.C.
                                                  *Attorneys for Plaintiff*

                                                  By: Judd Burstein, Esq.
                                                  1790 Broadway, Suite 1501
                                                  New York, New York 10019
                                                  (212) 974-2400

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
MARIE EMILIE BOSAK,

                      *Plaintiff,*          Index No. 300417\2011

    – against –                              **VERIFIED COMPLAINT**

MANUEL P. ASENSIO-GARCIA,           **ACTION FOR DIVORCE**

                      *Defendant.*
------------------------------------------------------------X

## INTRODUCTION

1. Plaintiff Marie Emilie Bosak ("Plaintiff" or "Bosak"), by her attorneys, Judd Burstein, P.C., complaining of the Defendant Manuel P. Asensio-Garcia ("Defendant" or "Asensio"), hereby alleges as follows:

2. Plaintiff is a resident of the County of New York, State of New York.

3. Defendant is a resident of the County of New York, State of New York.

4. Plaintiff and Defendant were married on May 16, 2003, in the State of New York.

5. At the time of the commencement of this action, Plaintiff and Defendant were both over twenty-one (21) years of age.

6. At the time of the commencement of this action, the parties had been residents of the State of New York for a continuous period of more than two (2) years.

7. There is one issue of the marriage, the parties' daughter, Eva Asensio, born on October 14, 2004.

8. There is no judgment or decree against either party in favor of the other for divorce. Upon information and belief, there is no other matrimonial action against either party pending in a court of competent jurisdiction.

## VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK )

  MARIE EMILIE BOSAK, being duly sworn, deposes and says: I am the plaintiff in the within proceedings. I have read the foregoing Complaint and I know the contents thereof. The allegations in the complaint are true.

                     MARIE EMILIE BOSAK

Sworn to before me this
11th day of January, 2011

Notary Public

JEREMY ATTIE
Notary Public, State of New York
No. 02AT6139722
Qualified in KINGS County
Commission Expires 01/17/2014

17

# EXHIBIT 2

FAMILY COURT OF THE STATE OF NEW YORK     FILE #: 128425

COUNTY OF NEW YORK     DOCKET: ~~X-~~ ~~~~

V- 43839-13/13A

---

In the matter of a Proceeding for Custody/Visitation

Under Article 6 of the Family Court Act

Manuel. P Asensio, Petitioner.     Petition for Enforcement and
Modification of Supreme Court Order of
Custody and Visitation

-Against-

Emilie Marie Bosak, Respondent.

---

**WARNING: THE PURPOSE OF THE HEARING REQUESTED IN THIS PETITION IS TO PUNISH EMILIE MARIE BOSAK FOR CONTEMPT OF COURT, WHICH MAY INCLUDE SANCTIONS OF A FINE OR IMPRISONMENT OR BOTH. YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.**

TO THE FAMILY COURT:

SINCE THE COURT GRANTED A DIVORCE TO THE RESPONDENT BASED ON HER HAVING SOLEMNLY SWORN AND AFFIRMED OF HER OWN FREE WILL THAT SHE UNDERSTOOD EACH AND EVERY PART OF THE PARTIES' EXECUTED AND NOTARIZIED STIPULATION AND THAT SHE WAS SATISFIED WITH IT AND THAT IT RESOLVED ALL HER ISSUES OF CUSTODY AND ACCESS THE RESPONENT HAS CONSTANTLY VIOLATED THE ORDER. THE PETITIONER HAS SERVICED NOTICE AND OFFERED TO NEGOTIATE REMEDIES TO NO AVAIL AND PLED WITH RESPONDENT USING TOLERANCE, EMPATHY AND PATIENCE IN A NON CRITICAL POSITIVE CIVIL MATTER. THE PETITIONER HAS RESPONDED WITH MODERATE joy and has EXHAUSTED ALL REMEDIES AND HAS NO CHOICE BUT TO FILE THIS PETITION.

1

Petition for Enforcement and Modification of

Order of Custody and Visitation Supreme Court

The undersigned Petitioner respectfully shows that:

1.  I am seeking to enforce a custody/visitation order. I am the legally-established and conceiving father of the only child affected by this order, Eva Asensio. My home address is 400 East 54th Street, New York, NY 10022.

2.  The Respondent is the mother of Eva Asensio. The Respondent's home address is 355 East 72nd Street, Apartment 17C, New York, NY 10022.

3.  I am not in the military service. Respondent is not in the military service.

4.  The custody/visitation judgment was from **New York County Supreme Court with Index No. 300417/2011.**

5.  An Order dated August 20, 2013 was entered in the above action directing the Respondent as the custodial party and me to visitation. The general terms of the visitation order are as follows:

Alternative weekends from pickup on Friday at school to drop off Monday at school; Wednesday visitation after school pick-up until 7 P.M.; Christmas and New York's shared alternatively; Birthdays shared alternatively with visitation by other the parent; two weeks and one extended week in summer for Petitioner and equal sharing of Holidays and School Recesses; consultation on all matters with requirement to "endeavor to maintain and facilitate open communication;" to "adjust amicably, compromise and settle" all custody and access differences; to maintain "open lines of communications;" to "not intentionally obstruct or impede" access; to "not interfere with or disrupt communication;" that it is in Eva's "best interest to maintain frequent and regular contact" with us; to "cooperate with and support one another" in Eva's upbringing; to "make a good faith effort to resolve" matters of the child such as the Respondents inability and unwillingness to speak with the Petitioner about the child for even the most basic humane reason or to allow the child and the Petitioner to speak with "no time limitation."

A true copy of the New York County Supreme Court s' Judgment of Divorce is attached and made a part of this Petition. **[Exhibit E]** The order of the Supreme Court did not retained exclusive jurisdiction to modify the order.

2

6. The name, addresses and dates of the birth of the child affected by this order are:

Date of Birth: October 14, 2004, Name: Eva Veronica Asensio; resides while with the Respondent at her home at 355 East 72nd Street, Apt. 17, New York, NY 10022 and at the Petitioner's address listed above while with the Petitioner.

### Procedural: History

On July 5th, 2013 Petitioner filed a "Petition for Enforcement of Order of Custody and Visitation made by the Supreme. [Exhibit A] Pursuant to this Petition for Enforcement this Court issued an Order to Show Cause dated July 5th, 2013. [Exhibit B] This Order required that there be a Judgment of Divorce and personal service of the Order and petition on the Respondent. On July 8th, 2013 the Petitioner filed a "Petition for Order of Contempt ordering that the Respondent's Visitation be Suspended, A Return of the Child and an Arrest Warrant" attaching two (2) Notices of Defaults. [Exhibit C] This petition noted that the Petitioner was had traveled to St. Maarteen with child and that the Supreme Court had not yet issued a Judgment of Divorce. The Court didn't accept email service or hand delivery to your attorney, or our executed Stipulation and the transcript of hearing. Consequentially, the petitions were dismissed without prejudice by an Order of Dismissal dated July 8th, 2013. [Exhibit D] The Judgment of Divorce was signed on August 13, 2013 and filed on August 20, 2013. No appeal was entered.

The Petitioner is child's father. The Respondent is the child's birth mother and has not consented to the modification of the custody order to award custody to the Petitioner.

This Petition sets forth the extraordinary circumstances that support Petitioner's standing to seek custody of the child that include the Respondent's violations that include her constant hostility to the child's request to spend more time with and have a greater connection with the Petitioner, the constant access violations and conduct with reckless abandonment to the child's best interest for instance denying access to the child to attend her aunt's funeral after the child learned to recite a prayer in preparation, denying the child access to her home to get a costume at Halloween and to retrieve a homework assignment she left behind, having the child take French tutoring [the child has lost her ability to speak the Petitioner's native tongue Spanish, the Respondent had agreed that the child's native tongue would be Spanish and agreed the child would not go to a French school] and acting classes over academic tutoring when the highly intelligent child is scoring below average in reading and mathematics performance declines that have occurred since the stipulation; refusal to discuss enrolling the child in Kumon or Bright Kids tutoring and rejecting my offers to fund cost of summer camp or any alternatives.

### Relief sought by the Petitioner.

Because of this change of circumstances, the order should be modified as follows:

3

1. Custody to Petitioner over education and religion with consultation rights for the Respondent on all other matters. In the event of disagreement both parties can select intermediaries to write reports that can be submitted to court.
2. Mutual first rights of refusal for babysitting.
3. Equally 50-50 time sharing as follows:
   Petitioner shall have the child Wednesday after school through Friday morning drop off at school.
   Respondent shall have the child Monday through Wednesday morning drop off at school.
   Weekend will be alternating.
   Summer vacations and holidays equally shared.

### Change of Circumstances

The Respondent has exhibited an absolute inability to comply with her Court Ordered obligations. She refuses to abide by mutual contractual promises Ordered by the Court. Since the entry of the order, there has been a change of circumstances in that the Respondent has repeatedly shown an inability to allow the Petitioner and the child to maintain the connection they joined and to comply with the terms of the Stipulation requiring her to:

1. to "foster respect for one another in Eva's eyes;"
2. to "endeavor to maintain and facilitate open communication;"
3. to "adjust amicably, compromise and settle" all custody and access differences; to maintain "open lines of communications;"
4. to "not intentionally obstruct or impede" access;
5. to "not interfere with or disrupt communication" during the conversations;
6. that it is in Eva's "best interest to maintain frequent and regular contact" with us;
7. to "cooperate with and support one another" in Eva's upbringing;
8. to "make a good faith effort to resolve" the personal property dispute within 90 days
9. to Eva to call me with "no time limitation" and access to the cell phone that I provide;
10. to obtain consent for international travel;
11. to provide flight and accommodation information;
12. to ensure the child speaks with the other parent with they are on vacation;
13. to conduct the Petitioner with opportunities to spent additional time;

Instead, in addition to the below mentioned violations, the Respondent:

1. refuses to discuss reports from Eva's school teacher of misconduct and strategies to make corrections to Eva's behavior;
2. teaches Eva to distance herself from me
3. acts without consultation, sharing information and ignoring my request to "bury the hatchet" meet;
4. refuses to engage in any much less meaningful dialogue about the child's upbringing;

4

5. denies my access;
6. yells and hangs up on me in front of Eva;
7. speaks in French to Eva in front of me about matters being discussed between us;
8. Harasses and intimate Eva into fearing using her phone to communicate with me;
9. openly and constantly demonstrate to Eva that the Respondent don't want her to speak to me or spend time with me or know about her daily activities;
10. to unilaterally without consultation for instance refusing to have Eva learn Spanish while having a French tutor for her and putting her in acting lessons;
11. ignores my pleads to have Eva join Kumon while Eva's learning habits and skills have declined (this is particular disturbing given the Petitioner's caring for scholastic and professional education and the educational benefits he offered the Respondent during the marriage);
12. interfere with Eva's religious education;
13. let my payment for gym classes Eva wants go to waste;
14. refused to return a single of the items you took from me without my knowledge and against our marriage contract;
15. telling the superintend at your building not to let me walk Eva to the elevator causing the doorman to have to tell me in front of Eva;
16. Intercepting my deliveries to Eva and then returning them to me;
17. repeatedly threatens to interfere with my pick up by using a protective order to harass and intimidate me at pickup at Eva's school **[Exhibit F]**;
18. denying access to the child to attend her aunt's funeral after the child learned to recite a prayer in preparation;
19. denying the child access to her home to get a costume at Halloween,
20. having the child take French tutoring [the child has lost her ability to speak the Petitioner's native tongue Spanish, the Respondent agreed the child would not go to a French school];
21. have the child take acting classes over academic tutoring when the highly intelligent child is scoring below average in reading;  **[Exhibit G]**
22. recent incidents of Respondent's callously ignoring the Petitioner's pleads for access even on the anniversary of his father's death **[Exhibit H]** and to speak to the child and child's own pleads for peace and to spend Thanksgiving Day with the Petitioner **[Exhibit I]**;
23. general insensitive treatment of the child's welfare and interest in cultivating the child's connection with the Petitioner as ordered demonstrated by her repetitive violations; and
24. general attitude that demonstrates an inability to work with the Petitioner in raising the child and discussing her upbringing as ordered and an unwillingness to invest the time necessary to make corrections peacefully.

5