# EXHIBIT G

NEW YORK STATE SUPREME COURT
CIVIL BRANCH, NEW YORK COUNTY
-----------------------------------------X
In the Matter of a PROHIBITION Petition Pursuant to C7801
**Civil Practice Law and Rules ["CPLR"] ARTICLE 78**

ARTICLE 78 FOR
WRIT OF PROHIBITION
DOCKET: _____
June 27, 2017

MANUEL P. ASENSIO,
               Petitioner.

ADETOKUNBO O. FASANYA,
    A Justice preceding under Family Court Act
    Article 151 as a Magistrate in the New York
    County Family Court, Part 5.
               Respondent.
-----------------------------------------X

I, Manuel P. Asensio, being duly sworn and deposed says that I am the Petitioner and Affiant in support of the above-entitled Petition for a Writ of Prohibition Pursuant to Article 78 of the Civil Practice Law and Rules C7801 against the Hon. Adetokunbo O. Fasanya ["Respondent"]. I am familiar with civil procedures rules and laws, and the facts and circumstances pertaining to this Petition and the related proceedings in New York County Family Court ["Family Court"]. Under the Family Court Act's Article 1 Section 151 Respondent is entitled a "Magistrate." Respondent sits in New York County Family Court's Part 5 located at 60 Lafayette Street on the fourth floor, which is a Juvenile Delinquency Part.

This Writ of Prohibition relates exclusively to Respondent's legal violations and unauthorized administrative acts executed by abusing his Judiciary Law 2-b [3] General Powers related to his unauthorized January 15, 2016 Suspension. The Petition referred to as the "Custody Writ" is legally and factually distinguished and separate from the existing Article 78 Petition described below. This Petitioner

1

humbly files the Custody Writ before the Hon. Supreme Justice E. Drager in New York County Supreme Court's Civil Branch.

On June 14, 2017, the Petitioner filed an Article 78 Prohibition Petition under Docket Number 155447/2017 ["AFC Writ"] in the New York County Supreme Court's Civil Branch against the Hon. Adetokunbo O. Fasanya. The AFC Writ addresses Respondent's legal violations of the Family Court Act's Sections 248 and 245; Judiciary Law 100; contempt statutes contained in Judiciary Law 770, 753 and 604.2 [b]; and Respondent's abuses of Judiciary Law 2-b [3]. Further, the AFC Writ addresses Respondent's refusal to allow discovery and hearing into the value and cost of his administrative orders appointing a 'private-pay' attorney for the child ["AFC"].

Attached as **EXHIBIT 1** is a June 23, 2017 Memorandum of Law and Affidavit in Support of a motion filed under the AFC Writ seeking an order to prohibit Respondent's use of unauthorized contempt orders against me to collect unauthorized fees on behalf of his appointee. Respondent has authorized the AFC to spend 80% of her time on collecting unauthorized fees. There has been no administration of the Respondent's orders without applying UCS rules or any substitute rules. The Court summarily denied this motion without reasoning. A copy of the denial with a transcription of the proceedings are included here as **EXHIBIT 2.** The transcription demonstrates beyond reasonable doubt that the Respondent is operating his own undefined AFC private pay plan outside of the OCA and in clear absence of jurisdiction.

## SUPREME COURT PROCEEDINGS ON RESPONDENT'S ABANDONMENT OF PETITIONER'S FAMILY COURT CASE

1. On June 26, 2017 Justice Drager held custody proceedings under Notice of Motion dated May 10, 2017 in the Supreme Court case entitled Emilie Bosak v. Manuel P. Asensio, Index 300417/11 ["Supreme Court Case"].

2. The Family Court proceedings concern a review of Respondent's handling of the Petitioner's 2013 Family Court case that he authorized the Petitioner to withdraw after the Respondent refused to hear them, notwithstanding his November 2014 order denying Ms. Bosak's Motion to Dismiss and granting Petitioner the right to proceed with a fact-finding hearing to change custody.

3. The Supreme Court Motion relates to Eva Asensio's best interest. Eva

2

is Petitioner's daughter born October 14, 2014. Eva and Petitioner have rights under the custody agreement contained in the Stipulation of Settlement dated April 30, 2013 that is incorporated not merged into the Supreme Court's August 2013 Judgment of Divorce ["JOD"] entered in. Justice Drager presided over the Supreme Court Case and its custody matters that granted us these rights.

4. Justice Drager's focus was not Respondent's abandonment of Petitioner's Family Court Petitions or Respondent's stonewalling of law and reason pertaining to his handling of the AFC fees. Justice Drager was focused on his Suspension and the history of these events in Family Court, including Respondent's January 21, 2016 de hors comments pertaining to the Petitioner's Family Court Petitions and Family Offense Petition. This Custody Writ addresses Respondent's Suspension and provides this Court with Judicial Notice of the AFC Writ to address Respondent's accusations. <u>The Petition is not and cannot be responsible for the Respondent's decision-making or the Appellate Division for the First Department's ("AD") and New York State Uniform Court System's Office of Court Administration's ("OCA") decision making to allow the Respondent operate a private-pay AFC appointment plan outside of the OCA and without administrative supervision or legal review.</u>

5. Ms. Bosak is Eva's mother. She filed an Order to Show Cause based on events that she alleged occurred on December 29, 2017 that resulted in the Suspension. On March 13, 2017, the Family Court held its first and only custody testimony in four years. The testimony was very brief, 15 minutes but contains the mother's entire testimony concerning events of December 29, 2017. Respondent sustained Petitioner's objection and struck her entire testimony. No other evidence supports the Suspension. No further custody testimony exist.

6. This Court and Respondent have experience and knowledge related to Ms. Bosak's long and harrowing history of making false allegations. The mother's December 2, 2017 reached a level of hysteria that even the liberal New York ridiculed her story running a picture of her smoking marijuana in Mexico when she was supposed to be caring for our daughter contemporaneously with her filing her false notorious "Mexican Marijuana" charges.

## LACK OF ADMINISTRATIVE AND LEGAL REGULATION

7. The OCA does not have an administrative regulation to deal with the matters addressed by this Custody Writ.

8. The OCA has determined as matter of its "unalterable" policy **EXHIBIT 3** not to regulate Respondent's subject administrative acts related to the Suspension or AFC and referred the matter to AD. In accordance to this directive, the Petitioner filed Motions Seeking Leave to Appeal and AD determined to use its 'blind' discretion under Family Law Act ("FCA") Article 11 Section 1112(a) to deny the motions as a matter of policy without reasoning or review.

9. The OCA, Family Court's Manhattan County and New York City Supervisors, and the Commission on Judicial Conduct as a matter of policy do not investigate or regulate judicial administrative conduct. Each of these regulators have advised Petitioner of that their policy is not to regulate administrative conduct and that this policy applies to Judge Fasayna's Suspension and AFC orders. Further, under FCA Article 11 Section 1112(a) only an order of disposition can be appeal as of right so Respondent's Suspension is not acceptable for legal review. Without administrative regulation and not being subject to legal reviews, Respondent has unlawfully used his general judiciary powers under Judiciary Law 2-b [3] to prolong the case by devoting himself exclusively to unauthorized and unreasonable AFC proceedings and support his Suspension. He can act administratively with prejudice taking unlawful discretions with Petitioner's parental rights under the JOD that dramatically affect any trial and Final Judgment.

10. Petitioner has no recourse other legal or administrative than this Petition. Under FCA Article 1 Section 145 the makes Family Court Magistrates liable to parents for deliberate and malicious abuses. New York State decisional law abrogated this statute without legislative notice or authority. The State's <u>Commission on Judicial Conduct</u> does not investigate judicial administrative misconduct. Not coincidentally, the only public record of the Commission attempting to deal with judicial administrative misconduct involves a Family Court judge. In effect, this eye-opening public record shows the Advisory Committee on Judicial Ethics intervening against the Commission going forward with its investigation.

11. For these and the reasons below, under this Petition pursuant to Article 78 the Family Court custody proceedings must be prohibited.

**RESPONDENT'S OPPOSITION OF THE PETITIONER'S MOTION MAY 10, 2017**

4

12. The Petitioner filed after his first formal application to withdraw from Family Court over two years, on April 20, 2015. On May 10, 2017, after Respondent finally authorized the withdrawal and ordered that he would not compel Petitioner to appear in Family Court and ordered Petitioner's Petitions "withdrawn" [See next Section below], in the interest of judicial economy, justice and Petitioner's daughter's welfare I filed a custody motion in Supreme Court.

13. Now, after 4 years of abonnement and his inexplicable adaptation of the "Mexican Marijuana" fraud, and after dismissing the Petitioner and his Petitions from his court, based on the Petitioner's observation of the June 26, 2017 proceeding, the Respondent is private opposing Petitioner's motion to proceed in Supreme Court.

14. Based on Respondent's de hors "harassment" comment on January 21, 2016 Sua Sponte "Decision and Order" [which is discussed below in this section] and information and belief, Petitioner believe that during the lunch break on June 26, 2017 a party communicated information to Supreme Court about Respondent's Suspension and the AFC fee litigation. The argument in this information was that Respondent's administrative Suspension acts were "appropriate" and assessing blame on Petitioner for the AFC litigation and therefore for delaying the Family Court proceedings. The Supreme Court referred to Petitioner's Family Offense Petition, which is the subject of Respondent's "harassment" comment.

15. I have pled to be relieved from Family Court proceedings since October 2014, for good cause based on what I witnessed then and on May 15, 2014 of Respondent's improper conduct in Petitioner's case. I have made these pleadings at all times during the Family Court proceedings including before, during and after each contempt proceeding ordered by Respondent. Petitioner's pleadings were unconditional.

16. Immediately following the Suspension, on January 21, 2016, Respondent entered hybrid Interim and Sanction Sua Sponte "Decision and Order" based entirely on de hors materials having no relationship with the record and unrelated to any motion and without legal authority. In his January 21, 2016 decision, Respondent refer to Petitioner's Petitions and Motions in general as "repeated filing of frivolous applications" even claiming Petitioner's Family Offense petition was intended to "harass' the mother. In fact, Respondent's only legal directive based on a fully briefed motion sequence is Petitioner's favor. This directive granted Petitioner a custody trial that required a finding that the Custody Petition with the merged Family Offense Petition met the burden of showing the Mother's material custody

5

interference thereby denying the Mother's two motions to dismiss.

17. In the January 21, 2016 Decision, Respondent made a severely offensive de hors based characterize Petitioner's Family Offense as harassing without have engaged in the slightest judicial proceedings related to it. The mother's contact on December 5, 2013 that underlie the Family Offense and her conduct on December 29, 2015 alone are in and of themselves good cause for her to loss custody.

**ORDER NOT TO COMPEL PETITIONER TO APPEAR IN FAMILY COURT**

18. I was formerly the Father-Petitioner in a Family Court Custody Modification Petition, a Family Offense Petition, which Respondent authorized to merge with the Custody Modification Petition, and violation petitions filed under Docket No. **V-43839-13/13A** in 2013 related to Petitioner's daughter, Eva Asensio, born October 14, 2014, against the Mother-Respondent Emilie Marie Bosak ["Bosak"]. The Family Court granted Petitioner a trial on Petitioner's Custody Modification Petition in November 2014. Subsequently, in July 2015, Bosak filed a separate Custody Petition under Docket No. **V-38917-15/15A**. Bosak did not appear on the return date. On November 16, 2015, the Hon. Adetokunbo O. Fasanya entered a directive that no applications were pending against the Petitioner.

19. The Family Court cases are entitled: Manuel P. Asensio v. Emilie Bosak, Family Court of the State of New York, County of New York, File No. 128425, Docket No. V-43839-13/13A and Emilie Bosak v. Emilie Bosak, Family Court of the State of New York, County of New York, File No. 128425, Docket No. V-38917-15/15A.

20. I appeared pro se in Family Court after sustaining daily custody violations beginning the day after the entering into the divorce settlement and the mother ignored Petitioner's notices. I did so to avoid cost and complications. As demonstrated below, the suspension is a conscious wrongdoing not a legal error and not an abuse of discretion but a deliberate premediated act done without legal authority or evidence or reason that was immediately followed by a punitive unauthorized "Hybrid" Sua Sponte Legal Fee order clearly intended to cause Petitioner harm that must be prohibited.

On November 16, 2015, Respondent order that I was "free to

6

withdraw [your petition]. But if I have applications that are pending before me, I will not permit you to withdraw the petition until I address that application. ... I say ... at this point, Mr. Asensio, there's no pending application before me."

On November 4, 2016 he ordered that my "presence in this courtroom is a voluntary one.... There's no compulsion for you to be present in this courtroom.... I will not...[repeat] I will not take any steps to compel you to come to court.... You are free not to come to court."

On March 13, 2017, Respondent ordered that "All of [Petitioner's] petitions are marked withdrawn."

21.     Despite Respondent's orders that he would not compel Petitioner to appear in Family Court or his courtroom Respondent has subsequently issued two new Orders appointing the AFC and two Orders to Show Cause seeking contempt.

22.     This Article 78 Special Proceeding filed in Supreme Court addresses Respondent's use of the AFC fee litigation to explain and justify the existing Suspension and delays in the Family Court proceedings.

**PROHIBITED ADMINISTRATIVE CHANGE OF CUSTODY**

23.     This Petition is strictly limited to address Respondent's January 15, 2016 Order on Motion ordering "All visits between [the Petitioner] and Eva Asensio are suspended. Mr. Asensio is ordered to stay away from Eva Asensio's school. This Order will remain in effect until January 27, 2016." On that day, Respondent also signed an Order to Show Cause suspending "all phone calls" with the child "pending a hearing and determination on this motion." I refer to these two orders and the orders of supervision derived from it and a suspension of this supervision order as the "Suspension."

24.     The Petitioner filed a Cross Motion to vacate and to punish the mother for her custody violations on during the Holiday Season and on December 29, 2017. Respondent denied the Petitioner a hearing on the return date. On February 8, 2016 he refused to offer any explanation or reasoning for the Suspension and has given none since. Respondent directed the Petitioner to AD to appeal the Suspension. The AD denied Petitioner's Motion for Leave to Appeal Suspension. **[EXHIBIT 4]**

7

25. There was no basis in law or fact for the Suspension. From July 5, 2013 when I filed Petitioner's first violation petition to January 15, 2016, the Family Court has ignored the mother's violations. Instead, as demonstrated below, Respondent deliberated used his Judiciary 2-b [3] administrative powers to engage in a series of acts to prolong the case, cause Petitioner financial harm and then enter and work to justify the Suspension.

26. On Friday, September 16, 2016, Respondent served email notice of his decision to charge Petitioner's former attorney with contempt and on September 23, 2016, he entered a Sua Sponte motion seeking contempt. At the contempt hearing Respondent charged the former attorney had "accused [him] of colluding with Mr. Spitzer." Petitioner's former attorney accused Respondent of alarming disrespect for Petitioner-daughter's welfare. Faced with the facts that showed he in fact colluded with Richard Spitzer, Respondent dismissed his own motion. He colluded with the individual he appointed to supervise Petitioner's time with Petitioner's daughter without fact-finding, reasoning or authority. **EXHIBIT 5** is an affidavit from Petitioner's former attorney without the exhibits.

27. On September 15, 2016, two days before the incident that gave rise to the mother's second Order to Show Cause to suspend Petitioner's supervised parenting time, Petitioner's former attorney advised Respondent that Mr. Spitzer had put his hands on Petitioner in the presence of Petitioner's child and requested that Respondent select another supervisor. The attorney noted that Respondent was apparently in regular communication with Mr. Spitzer. There is ample evidence that Respondent colluded with Mr. Spitzer to allow the mother to violate Petitioner's first ordered visitation in April 2016 and in fabricating a letter blaming Petitioner. Respondent refused to provide Petitioner with an alternative to Mr. Spitzer or to recuse himself.

28. At the very least Respondent's misconduct contributed to Mr. Spitzer's assault on the Petitioner and his daughter on Saturday, September 17, 2017, which is the basis of a civil action the Petitioner filed against Mr. Spitzer under New York County Supreme Court Index Number 159812/2016.

29. On March 13, 2017, Respondent struck the mother's entire testimony from the record that she had used to seek the Suspension. Pictures entered as evidence in opposition to her application include one contemporaneously showing the mother smoking marijuana on a beach in Mexico when she swore to events that allegedly

8

occurred in New York. Respondent ignored this contemporaneous evidence when he entered the suspension. Yet he continues to deny Petitioner's motion to vacate.

### RELATED ARTICLE 78 ON AFC APPOINTMENT AND ALLEGATIONS AGAINST PETITIONER

30.     On June 14, 2017, I filed an Article 78 Prohibition Petition under Docket Number 155447/2017 to seeking to prohibition entered against Petitioner to pay Carmen Restivo, the Attorney for the Child ["AFC"]. Respondent appointed the AFC in May 15, 2014. I have opposed the AFC appointment Order since 2014 and the AFC fees originating therefrom. Respondent has refused to grant Petitioner relief and has refused to issue an appealable order that I can take to the AD.

31.     This Petition seeks to prohibit Respondent from the following:

1. Violating FCA Part 4 Article Section 248 and Section 245[a] and New York County Law § 722-e obligating Family Court judges to bill society and not the parties for the AFC's Fees;
2. Violating Judiciary Law 770 and 753 that limits contempt to parties to the litigation where one party acts "to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to an action;
3. Denying the Petitioner's right to file motions in opposition to the AFC's fees;
4. Denying discovery against the AFC and the Mother Bosak pertaining to the AFC Orders;
5. Allowing the AFC to over 80% of her time bills;
6. Failing to hold a required 'Plovnick' hearing on the value of the attorney for the child fees; and
7. Discarding UCS 87 and 872 forms and the OCA's rules contained in its General Plan and Operation for judicial appointee without creating alternative standards, norms, limits, cap, and administrative terms and conditions that give Respondent the power order the Petitioner to make payment capriciously and arbitrary without any controls and without a right to appeal.

32.     In Family Court, I have no remedy for denial of discovery rights. This is not the case in Supreme Court where I have a right to take an appeal from an intermediate order under NYCPLR 5701[a] [2] and a right to full disclosure of all material and necessary evidence. Under NYPCLR 3101 et seq. a party cannot be

deprived of his right to be heard on a substantive matter not involving a trial ruling by the simple expedient of denying him the right to make a written motion or a record, thereby foreclosing the opportunity for appellate review.

## STATUS OF FAMILY FORMER CUSTODY CASE

33. The Petitioner has sought to approval to withdraw his petitions from Family Court since October 2014 when Respondent determined to focus exclusively on collecting fees through contempt hearings on behalf of the attorney for the child. The Petitioner and is counsel withdrew in April 2014. In July 2015, Respondent denied the Petitioner's withdrawal. As stated above, on November 16, 2015 the Hon. Adetokunbo O. Fasanya entered a directive that no applications were pending against the Petitioner. On November 4, 2016 and March 13, 2017, Hon. Adetokunbo O. Fasanya entered directives authorizing the withdrawal of Petitioner's Custody Petitions and related motions ruling that from the Family Court. The directives have the same effect as orders of the Court. The Judge entered the directives under the Petitioner's numerous motion to withdraw dating back to October 3, 2014 including a Notice of Withdrawal filed and entered on the record on April 20, 2015.

34. November 16, 2015: You are free to withdraw [your petition]. But if I have applications that are pending before Petitioner, I will not permit you to withdraw the petition until I address that application. ... I say ... at this point, Mr. Asensio, there's no pending application before Petitioner.

35. November 4, 2016: "Your presence in this courtroom is a voluntary one.... There's no compulsion for you to be present in this courtroom.... I will not...[repeat] I will not take any steps to compel you to come to court.... You are free not to come to court."

36. March 13, 2017: "All of Mr. Asensio's petitions are marked withdrawn."

## DENIAL OF RIGHT TO MAKE A RECORD OF CONSCIOUS WRONG DOING

37. On June 6, 2017, I testified in the AFC contempt hearing. At the close of my direct examination, I was asked if there was anything further that I believed the record require. I made an application to Respondent for permission to make a

record supporting Petitioner's deliberate wrongdoing charge that he has consciously used the AFC contempt charges in using the AFC fees create undue burdens on Petitioner to conceal and protect his deliberate wrongdoing in suspending Petitioner. Petitioner's application and the Judge's denial is as follows:

THE COURT: Do me a favor please. Turn the chair this way so I can see your face when you testify. Turn the chair please. Thank you.

THE WITNESS: I have told the Judge, and I [would] like to testify today […based on the] evidence [as to] his conscious wrongdoing against me and my daughter. A deliberate intentional wrongdoing which is utterly intolerable in a civilized society. […] I have the case law that supports my right to be able to put testimony [in to] the record that [the Judge has…] deliberately […] created burdens against me so I cannot prosecute my case. That did not work. […] Then [the Judge] suspended me wrongfully for no reason, and then [the Judge] intensified the amount of [the] burdens that [the Judge is] creat[ing] [against] me [with] the attorney for the child fees. I have evidence that support[s] th[is] clearly. I presented it to [the Judge] and [the Judge did] not allow […] me to testify to it. It's an essential and fundamental part of this case. [The Judge is] guilty in my view, and I have the evidence to show that [the Judge is] consciously and deliberately maliciously prosecuting the attorney for the child's fees against me, and that the Judge suspended me in the same way, and those things are wrong, and I need to make a re[cord] of them. There's a Court of Appeals Case [Rotwein v Sunharbor Manor Residential Health Care Facility, 181 Misc.2d 847 (Misc 2d,1999)] … that specifically says that [even] when a Judge won't refra[in] from doing bad acts [even knowing it will] not help the individual to try argue to [with a] Judge who won't refra[in] from and won't abstain from [wrongdoing]. In any case, [I am] entitled to make a record of the Judge's deliberate and conscious wrong[doing…] in order to be able to make a record for appeal. And I'd like to do that. It's my right under [rules of reason and this] Court of Appeals Case.

THE COURT: Next question, Mr. Browstowin. (To the Witness) Turn the chair back, Mr. Asensio.

## CONCLUSION

38.     Respondent's directive contained in the transcription of proceedings held on November 17, 2014 stated back then that it was "late in the day" that the case was "way pass standards and goals" that there was no "justification for what we're

11

doing now." What Respondent was doing then in November 2014 is what he is doing today in late June 2017: Devoting himself and his courtroom solely to collecting fees on behalf of the attorney for the child ["AFC"], which is why over 80% of the AFC fees are billed for time spend collecting her fees. Then the only case that existed was Petitioner's petition seeking full custody and greater parenting time. Suddenly out-of-the-blue on January 15, 2016 Respondent suspended all Petitioner's contact with Petitioner's daughter without reason or evidence based on Ms. Bosak's "Mexico Marijuana" fraud. On January 21, 2016, he immediately followed this up by entering an unauthorized "Hybrid" sanction and Interim legal fee Sua Sponte Decision and Order based entirely on de hors materials having no relationship with the record and unrelated to any motion without legal authority. In this decision, Respondent referred to Petitioner's Family Court Petitions and Motions in general as "repeated filing of frivolous applications" without ever having held a fact-finding hearing without justification based on the record. <u>The Respondent referred to the AFC's fees 29 times in the interim decision and cannot be responsible for the Respondent, the OCA and the AD's decision-making.</u>

39. Respondent is conscious of the OCA's "unalterable" policy that will not investigate his violations of <u>New York State Judiciary Law 100</u> or administrative abuses. The fact that Respondent did not allow testimony pointing to his conscious wrongdoing creates the appearance of guilt. It shows that Respondent is consciously aware that Petitioner's testimony against him is creditable. Respondent denied a motion to disqualify him is based evidence of conscious wrongdoing and unlawful conduct not on the appearance of a lack of impartiality or bias. <u>Reason and fairness dictated that Respondent not continue his administrative Suspension making him judge and fact finder without a jury of his own case. This Petition is the only venue available to Petitioner to seek redress.</u>

40. I have not made a Petition to any other Court in connection with the issues raised herein. I certify that this Petition is not frivolous. I swear the statements contained herein are true and correct to the best of Petitioner's own personal knowledge, expect as to matters stated based on knowledge and belief and as to those I solemnly swear that I believe them to be true. I make this Petition under oath under penalty of perjury.

                                                                                                               Manuel P. Asensio
                                                                                                               Petitioner

June 27, 2017