UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Manuel Asensio, individually and as the parent of
Eva Asensio, a minor child,

                Plaintiffs,

           - against -

Janet DiFiore, Chief Judge of New York State;
Barbara Underwood, Attorney General of New
York State; Andrew M. Cuomo, Governor of New
York State; Adetokunbo O. Fasanya, New York
County Family Court Magistrate; and Emilie Marie
Bosak, individually,

                Defendants.

18-cv-10933-RA

---

# MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General of the
 State of New York
Counsel for State Defendants
28 Liberty St.
New York, New York 10005
(212) 416-8108

JONATHAN D. CONLEY
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 5

I.    Asensio's claims are barred under the domestic-relations exception ...................... 9

II.   Asensio's claims are barred by the *Rooker–Feldman* doctrine ............................... 12

III.  Asensio's claims are barred by *res judicata* ........................................................... 13

IV.   Asensio's claims for money damages against the State Defendants
      are barred by the Eleventh Amendment ................................................................ 16

V.    Asensio's claims against Chief Judge DiFiore and Judge Fasanya
      are barred by absolute judicial immunity ............................................................. 17

VI.   Asensio's claims against Governor Cuomo and the Attorney General
      are barred by prosecutorial immunity .................................................................. 19

VII.  Asensio has failed to state a claim on which relief can be granted ...................... 20

VIII. Some of Asensio's claims are barred by the statute of limitations ...................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Anderson v. Modica*,
　　No. 18-CV-6990(WFK), 2019 WL 296770 (E.D.N.Y. Jan. 23, 2019) ................................... 15

*Ankenbrandt v. Richards*,
　　504 U.S. 689 (1992) ........................................................................................................6

*Asensio v. Bannon*,
　　155 A.D.3d 565 (1st Dep't 2017) ..................................................................................2

*Asensio v. Bannon*,
　　30 N.Y.3d 1094 (2018) ..................................................................................................2

*Asensio v. Bannon*,
　　30 N.Y.3d 912 (2018) ....................................................................................................2

*Asensio v. Bosak*,
　　Index No. 153776/2017 (N.Y. Civil Ct. N.Y. Cnty.).........................................................11, 12

*Asensio v. Fasanya*,
　　Index No. 158833/2017 ............................................................................................ 2, 11

*Asensio v. Fasanya*,
　　No. 155833/2017, 2018 WL 746153 (Sup. Ct. N.Y. Cnty. Feb. 07, 2018) ..............................10

*Asensio v. Judge Bannon*,
　　App. Docket No. 124/2017 (1st Dep't 2017) .......................................................................11, 12

*Asensio v. Judge Bannon*,
　　App. Docket No. 125/2017 (1st Dep't 2017) ..........................................................................12

*Asensio v. Judge Marks*,
　　App. Docket No. 130/2017 (1st Dep't 2017) .......................................................................11, 12

*Asensio v. Magistrate Rosario*,
　　158837/2017 (Sup. Ct. N.Y. Cnty.) ................................................................................ 11

*Asensio v. Marks*,
　　157 A.D.3d 456 (1st Dep't 2018)........................................................................................2

*Asensio v. Marks*,
　　30 N.Y.3d 1095 (N.Y. 2018) ..........................................................................................2

*Asensio v Rosario,*
　No. 158837/2017, 2018 WL 1087815 (Sup. Ct. Feb. 28, 2018) ................................................10

*Asensio v. Spitzer,*
　Index No. 159812/2016 (N.Y. Civil Ct. N.Y. Cnty.) ........................................................11, 12

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ....................................................................................................... 4-5

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
　426 F.3d 635 (2d Cir. 2005) ...............................................................................................5

*Awan v. Kramer,*
　No. 12-CV-5092 JG, 2012 WL 5426088 (E.D.N.Y. Nov. 7, 2012) ..........................................7

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ....................................................................................................4, 5

*Bliven v. Hunt,*
　579 F.3d 204 (2d Cir. 2009) ...............................................................................................4

*Bosak v. Asensio,*
　Docket No. F-31461/14A/14B/14C/16D (Fam. Ct. N.Y. Cnty.) .............................................1

*Bradley v. Fisher,*
　80 U.S. 335 (1871) ..........................................................................................................15

*Brady v. Schneiderman,*
　No. 15-CV-9141 (RA), 2016 WL 3906737 (S.D.N.Y. July 13, 2016) .................................4, 16, 17

*Brooks-Jones v. Jones,*
　916 F. Supp. 280 (S.D.N.Y. 1996) .......................................................................................9

*Brown v. City of New York,*
　No. 19CV108BMCRLM, 2019 WL 235642 (E.D.N.Y. Jan. 16, 2019) ..................................7, 9

*Cent. Bank of Denver v. First Interstate Bank of Denver,*
　511 U.S. 164 (1994) .........................................................................................................17

*Chestnut v. Gabler,*
　06-CV-534E(F), 2007 WL 529556 (W.D.N.Y. Feb. 12, 2007) ................................................9

*Coveal v. Consumer Home Mortgage, Inc.,*
　2005 WL 2708388 (E.D.N.Y. Oct. 21, 2005) .......................................................................10

iii

*Dawkins v. Gonyea*,
    646 F.Supp.2d 594 (S.D.N.Y.2009) ........................................................................4

*Donohue v. Pataki*,
    28 F. App'x 59 (2d Cir. 2002) ...............................................................................7

*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005) .................................................................................13

*Eagleston v. Guido*,
    41 F.3d 865 (2d Cir. 1994).....................................................................................18

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)............................................................................................ 8,9

*Fastag v. Kelly*,
    04 Civ. 9037 (SAS), 2005 WL 1705529 (S.D.N.Y. July 19, 2005)...........................9

*Fisk v. Letterman*,
    401 F. Supp. 2d 362 (S.D.N.Y. 2005) ....................................................................17

*Flagler v. Trainor*,
    663 F.3d 543 (2d Cir. 2011) .................................................................................16

*Grigoli v. Child Support Enf't Div.*,
    No. 18-CV-3672 (NSR), 2018 WL 2084172 (S.D.N.Y. May 1, 2018) .......................9

*Gross v. Rett*,
    585 F.3d 72 (2d Cir. 2009) ............................................................................. 14, 15

*Gusler v. City of Long Beach*,
    No. 10-CV-2077, 2015 WL 3796328 (E.D.N.Y. June 18, 2015).................................1

*Hoblock v. Albany Cnty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) ..................................................................................8, 9

*In re Burrus*,
    136 U.S. 586 (1890) ..............................................................................................6

*Keane v. Keane*,
    549 F. App'x 54 (2d Cir. 2014) ..............................................................................6

*Latino Officers Assoc. v. City of N.Y.*,
    253 F. Supp. 771 (S.D.N.Y. 2003) ........................................................................10

iv

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) ....................................................................................................4

*Lipko v. Christie*,
    94 F. App'x 12 (2d Cir. 2004) ...................................................................................8

*Mancuso v. Hynes*,
    379 Fed. App'x 60 (2d Cir. 2010) .............................................................................4

*Marino v. City Univ. of N.Y.*,
    18 F. Supp. 3d 320 (E.D.N.Y. 2014) ......................................................................13

*Martinez v. Queens Cnty. Dist. Atty.*,
    596 F. App'x 10 (2d Cir. 2015) .................................................................................7

*Matter of Asensio v. Judge Fasanya, et al.*,
    Index No. 155833/2017 (Sup Ct. N.Y. Cnty.)........................................................11

*Matter of Asensio v. Judge Fasanya, et al.*,
    Index No. 156692/2017 (Sup. Ct. N.Y. Cnty.) ......................................................11

*Matter of Asensio v. Judge Fasanya*,
    Index No. 155447/2017 (Sup. Ct. N.Y. Cnty.) ......................................................11

*Matter of Asensio v. Magistrate Rosario*,
    158837/2017 (Sup. Ct. N.Y. Cnty.) .......................................................................11

*Matter of Asensio v. Magistrate Rosario*,
    Index No. 158837/2017 (Sup. Ct. N.Y. Cnty. June 8, 2018)................................2, 3

*Matter of Donna Marie C. v. Kuni C.*,
    134 A.D.3d 430 (1st Dep't 2015)............................................................................15

*McArthur v. Bell*,
    788 F. Supp. 706 (E.D.N.Y. 1992) ...........................................................................7

*Mireles v. Waco*,
    502 U.S. 9 (1991) (per curiam)...............................................................................14

*Montero v. Travis*,
    171 F.3d 757 (2d Cir. 1999) (per curiam)..............................................................13

*N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys.*,
    25 F. Supp. 3d 459 (S.D.N.Y. 2014) ......................................................................13

*Phillips v. City of New York,*
 453 F. Supp. 2d 690 (S.D.N.Y. 2006) ....................................................................8

*Rabinowitz v. New York,*
 329 F. Supp. 2d 373 (E.D.N.Y. 2004) ...................................................................6

*Raila v. United States,*
 355 F.3d 118 (2d Cir. 2004) ..................................................................................5

*Rameau v. N.Y. State Dep't of Health,*
 741 F. Supp. 68 (S.D.N.Y. 1990) ........................................................................10

*Remy v. N.Y. State Dep't of Tax. & Fin.,*
 507 F. App'x 16 (2d Cir. 2013) .............................................................................9

*Scalpi v. Town of E. Fishkill,*
 No. 14-CV-2126 (KMK), 2016 WL 858955 (S.D.N.Y. Feb. 26, 2016) ...........13, 14

*Schottel v. Kutyba,*
 No. 06-cv-1577, 2009 WL 230106 (2d Cir. Feb. 2, 2009) ..................................6-7

*Shomo v. City of New York,*
 579 F.3d 176 (2d Cir. 2009) ................................................................................18

*Simmons v. Abruzzo,*
 49 F.3d 83 (2d Cir. 1995) ......................................................................................6

*Singleton v. City of New York,*
 632 F.2d 185 (2d Cir. 1980) ................................................................................18

*Sobel v. Prudenti,*
 25 F. Supp. 3d 340 (E.D.N.Y. 2014) .....................................................................7

*Stump v. Sparkman,*
 435 U.S. 349 (1978) .......................................................................................14, 16

*Sullivan v. Xu,*
 No. 10–cv–3626, 2010 WL 3238979 (E.D.N.Y. Aug.13, 2010) ............................7

*Tait v. Powell,*
 241 F. Supp. 3d 372 (E.D.N.Y. 2017) ...................................................................6

*Trammell v. Coombe,*
 No. 95-CV-l145 (LAP), 1996 WL 601704 (S.D.N.Y. Oct. 18, 1996) ....................16

*Triestman v. Fed. Bureau of Prisons*,
    470 F.3d 471 (2d Cir. 2006) ...............................................................................4

*Tucker v. Outwater*,
    118 F.3d 930 (2d Cir. 1997) ........................................................................ 14, 16

*United States v. Cotton*,
    535 U.S. 625 (2002) ........................................................................................ 15

*Wenegieme v. Garrity*,
    No. 17-CV-9714 (RA), 2018 WL 4500873 (S.D.N.Y. Sept. 18, 2018) ..................... 4, 14, 15, 16

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) .......................................................................................... 13

*Yeiser v. GMAC Mortg. Corp.*,
    535 F. Supp. 2d 413 (S.D.N.Y. 2008) ................................................................. 10

**CONSTITUTIONS**

Eleventh Amendment .............................................................................................. 4, 13

New York Constitution ........................................................................................... 12, 16

United States Constitution ........................................................................................... 17

**FEDERAL STATUTES**

18 U.S.C.
    § 241 ................................................................................................................ 17

42 U.S.C.
    § 654(3) ............................................................................................................. 9
    § 1983 ....................................................................................................... *passim*

**STATE STATUTES**

N.Y. Dom. Rel. Law
    § 236(b) ............................................................................................................ 15

N.Y. Fam. Ct. Act
    § 651(b), (e) ...................................................................................................... 15

**RULES**

Federal Rules of Civil Procedure

    Rule 8 ........................................................................................................... 4, 5, 6
    Rule 12(b)(1) ................................................................................................... 1, 5
    Rule 12(b)(6) ................................................................................................... 1, 5
    Rule 25(d) ............................................................................................................ 1

## PRELIMINARY STATEMENT

Defendants Chief Judge Janet DiFiore, Attorney General Letitia James,[1] Governor Andrew M. Cuomo and Judge Adetokunbo O. Fasanya submit this memorandum of law in support of their motion to dismiss the complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This lawsuit emanates from an acrimonious post-divorce custody proceeding pending between Plaintiff Manuel Asensio and his (now) ex-wife in New York City Family Court. *See Bosak v. Asensio*, Docket No. F-31461/14A/14B/14C/16D (Fam. Ct. N.Y. Cnty.). Over the course of the custody proceeding, the Family Court, the Honorable Fasanya, presiding, issued a number of interlocutory orders directing Asensio to pay child-support and attorneys' fees. Believing these orders to be unconstitutional, Asensio has brought (and lost) numerous lawsuits in state court challenging their legality.

While Asensio raises the same claims here as he did in those prior lawsuits, his list of grievances has grown in scope and complexity. Indeed, what began as a lawsuit challenging judicial orders in New York City Family Court has transformed into a full-throated repudiation of New York's entire judicial system, replete with allegations of a conspiracy implicating the highest echelons of New York's executive and judicial branches. Asensio alleges that Governor Cuomo, the Attorney General, and Chief Judge DiFiore have conspired with 119 state officials and 53 New

---

[1] In his complaint, Asensio asserts official capacity claims against Barbara Underwood, Attorney General of the State of New York. Last month, Letitia James succeeded Barbara Underwood as Attorney General. Under Federal Rule of Civil Procedure 25(d), Attorney General James is thus automatically substituted as a party in this action. *See, e.g.*, *Gusler v. City of Long Beach*, No. 10-CV-2077, 2015 WL 3796328, at *1 (E.D.N.Y. June 18, 2015).

York judges to violate his constitutional rights by failing to intervene in his Family Court proceeding. As remuneration for this wrongdoing, Asensio seeks an order awarding him approximately $195,000,000 in compensatory and punitive damages. *See* Compl. ¶¶ 62–65.

Although this appears to be his first foray in the federal courts, Asensio has a long history with the New York State court system. In the last two years, Asensio has commenced at least eight separate state-court actions challenging various aspects of his underlying Family Court proceeding.[2] All were dismissed. Undeterred, Asensio has appealed any decision denying him relief to the Appellate Division and New York Court of Appeals.[3] And each time, Asensio has lost.

After years of being besieged with frivolous claims, the Supreme Court of New York decided last year that enough was enough, and on June 8, 2018, issued an order barring Asensio from bringing any further litigation challenging his underlying Family Court proceeding without prior permission. *See Asensio v. Fasanya*, Index No. 158833/2017, NYSCEF Doc. No. 119 (Sup. Ct. N.Y. Cnty. June 8, 2018).

---

[2] *See Asensio v. Judge Bannon*, O.P. 124/2017 (1st Dep't 2017); *Asensio v. Judge Bannon*, O.P. 125/2017 (1st Dep't 2017); *Asensio v. Judge Marks*, O.P. 130/2017 (1st Dep't 2017); *Asensio v. Magistrate Rosario*, 158837/2017 (Sup. Ct. N.Y. Cnty.); *Matter of Asensio v. Judge Fasanya*, Index No. 155447/2017 (Sup. Ct. N.Y. Cnty.); *Matter of Asensio v. Judge Fasanya, et al.*, Index No. 156692/2017 (Sup. Ct. N.Y. Cnty.); *Matter of Asensio v. Judge Fasanya, et al.*, Index No. 155833/2017 (Sup Ct. N.Y. Cnty.); *Asensio v. Spitzer*, Index No. 159812/2016 (Civ. Ct. N.Y. Cnty.); *Asensio v. Bosak*, Index No. 153776/2017 (Civ. Ct. N.Y. Cnty.).

[3] By Asensio's own count, he has (unsuccessfully) petitioned the Appellate Division 21 times since December 2016 to stay the underlying Family Court proceedings. *See, e.g.*, Aff. of James Cooney Ex. A ¶ 8, NYSCEF Doc. No. 160, *Asensio v. Fasanya*, Index No. 158833/2017. *See also Asensio v. Bannon*, 30 N.Y.3d 1094 (2018); *Asensio v. Marks*, 30 N.Y.3d 1095 (N.Y. 2018); *Asensio v. Fasanya*, 30 N.Y.3d 1095 (2018); *Asensio v. Bannon*, 30 N.Y.3d 912 (2018); *Asensio v. Marks*, 157 A.D.3d 456 (1st Dep't 2018); *Asensio v. Bannon*, 155 A.D.3d 565 (1st Dep't 2017).

Which brings us here. Stymied by a filing injunction at the state level, Asensio has decided to switch forums, and now seeks recourse from this Court.

Lacking any factual or legal support for his claims, Asensio's complaint proceeds on the theory that his reasserted claims—which have already been dismissed on the merits by at least three different courts in eight different lawsuits—can be resurrected simply by heaping imprecations on the defendants.

Asensio alleges that the defendants—in an effort to "maliciously" (32 appearances) "intimidate" (8) and instill "fear" (8)—created "a false nonsensical court record against" him by "fabricating" (28) sixty-three "grossly improper" (8) judicial orders in seventeen separate state proceedings. These orders, which sanctioned Asensio for failing to pay child support and attorneys' fees, are allegedly rooted in "a blunderbuss of meaningless and undefined political and fictional absurdities." Compl. ¶ 23. Asensio laments that the state judiciary is filled with "advocates of ideological and political beliefs … that are unacceptable to the Plaintiff and opposite of his beliefs," including "their views of religion, feminism, masculinity, [] family, and their radical use of government … for so-called 'social justice.'" *Id.* ¶ 81. As Asensio sees it, the defendants' beliefs are "anti-religious, anti-paternal, anti-family, anti-independence, pro-drug use, and pro-sexual-promiscuity." Asensio Aff. in Support of Civil Rights Compl. ¶ 17. Based on these allegations, Asensio posits that Governor Cuomo, the Attorney General, Chief Judge DiFiore, and Judge Fasanya have engaged in "unauthorized, impermissible" acts beyond the scope of their "executive or judicial power[s]," and summarizes the claims set forth in his complaint by posing a rather pointed question to the court: "Will this court allow the Defendants

to … violate Plaintiff's rights and emotionally abuse and politically indoctrinate the Plaintiff [sic]

daughter?" Compl. at p. 14.

Setting aside the wholly fanciful nature of Asensio's allegations—none of which hew to

the pleading standard set forth in *Iqbal* and *Twombly*—the complaint is riddled with substantive

and procedural deficiencies compelling dismissal. As set forth in this memorandum, Asensio's

claims fail for eight principal reasons:

1.  Asensio's claims are barred under the domestic-relations exception.

2.  Asensio's claims are barred under the *Rooker–Feldman* doctrine.

3.  Asensio's claims are barred by *res judicata*.

4.  Asensio's claims for money damages against the State defendants are barred by the Eleventh Amendment.

5.  Asensio's claims against Chief Judge DiFiore and Judge Fasanya are barred by absolute judicial immunity.[4]

6.  Asensio's claims against Governor Cuomo and Attorney General James are barred by prosecutorial immunity.

7.  Asensio fails to state a claim for relief under any recognized legal theory.

8.  Some of Asensio's claims are barred by the statute of limitations.

---

[4] To the extent Asensio seeks equitable relief, he lacks standing to compel the defendants to investigate specific individuals for specific conduct. *See Brady v. Schneiderman*, 2016 WL 3906737, at *2–3 (S.D.N.Y. July 13, 2016). Courts have long recognized that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

## ARGUMENT

### Background

Asensio and co-defendant Emilie Bosak, once married, are the parents of E.A, born in

2004. *See* A. Lipton Aff. Ex. A, *Asensio v. Bosak*, Index No. 153776/2017, NYSCEF Doc. No. 83.[5]

In February 2011, co-defendant Emilie Bosak filed for divorce against Asensio in New York

County Supreme Court. *Id.* After two years of litigation, the parties reached an agreement over

the terms of their divorce in August 2013, and entered into a stipulation of settlement. *Id.* Under

this stipulation of settlement, the parties agreed that Bosak would have legal custody and final

decisionmaking authority for E.A., subject to Asensio's rights regarding consultation, as well as

primary residential custody, subject to Asensio's parenting time. *See id.* Ex. C at 3, NYSCEF

Doc. No. 85. In so-ordering the stipulation, the Supreme Court noted that it "retains jurisdiction

of this matter concurrently with the Family Court for purposes of specifically enforcing" or

modifying its provisions. *Id.* at 2. A few months later, Asensio elected to seek redress in the

Family Court, and filed an application seeking to modify the custody and visitation arrangement

previously agreed to in the August 2013 stipulation. *Id.*

Thus began a torrent of motion practice from Asensio that continues unabated to the

present day.

---

[5]The Court may take judicial notice of Asensio's litigation history. "[I]n considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records." *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) (citations omitted). The Court may also "take judicial notice of documents filed in related litigation by a plaintiff." *Id.*; *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss").

In his first application to the Family Court, Asensio alleged that Bosak had committed 24 violations of the stipulation of settlement, and sought custody over E.A. for purposes of her education and religion. *Id.* While this application was pending before the court, Asensio filed numerous other applications for relief: in December 2013, he filed five separate family offense petitions and an order to show cause, each essentially alleging that Bosak had falsely accused him of criminal activity, resulting in him being arrested on multiple occasions. *See id.* Ex. A at *3.

In early 2014, Asensio voluntarily withdrew his family offense petitions, advising the Family Court, the Honorable Fasanya, presiding, that he wished to focus solely on his request to modify the custody agreement for E.A.. *Id.* In March 2014, the Family Court assigned an attorney, Carmen Restivo, Esq., to represent the interests of E.A, and in May 2014, held that the parties would be responsible for paying Restivo's counsel fees, with Asensio bearing 90% of the cost, and Bosak responsible for 10%. *Id.* at 4.

Over the next two years, Asensio repeatedly refused to pay his share of these fees—as well as child-support payments owed to Bosak—until confronted with the prospect of sanctions or possible incarceration. *Id.* at 11. On numerous occasions, the Family Court would adjourn a court appearance to later in the day to allow Asensio the opportunity to obtain the money he was obligated to pay. And each time, "Asensio was able to come up with the funds when the court indicated that if he did not provide payment he could be held in contempt and possibly incarcerated." *Id.*

In early 2016, Bosak's counsel sought interim attorney's fees on account of the time and resources that were expended in responding to Asensio's numerous motions and applications. By

decision and order dated January 21, 2016, the Family Court agreed that Asensio's conduct had

been inappropriate, and concluded the only reason it could "find for the filing of multiple

frivolous dockets and motions in this matter by Mr. Asensio is to harass the other party." *Id.* at 11.

Citing Asensio's long record of filing frivolous motions, engaging in obstructionist conduct,

defying court orders, and failing to conduct himself with decorum at several court appearances,

the Family Court granted Bosak's motion for interim counsel fees, and ordered Asensio to pay

her counsel $33,701.50.

In early 2017, the Family Court set a trial date—March 13, 2017—to hear, among other

things, Asensio's petition to modify the custody provisions set forth the August 2013 stipulation

of settlement. *See Id.* Ex. D, NYSCEF Doc. No. 23 (Mar. 13, 2017 Ct. T.). On the first day of

trial, however, Asensio decided that he no longer wished to pursue his claims in Family Court,

and abruptly withdrew his petitions. *Id.*

Around this time, Asensio began commencing lawsuits in New York County Supreme

Court and the Appellate Division seeking to collaterally challenge the orders issued by the Family

Court. The complaint identifies over *two dozen* separate occasions where Asensio has challenged

and sought a stay of his underlying custody proceeding, including:

- 6 Article 78 proceedings in New York County Supreme Court;[6]

---

[6] *See Matter of Asensio v. Judge Fasanya*, Index No. 155447/2017 (Sup. Ct. N.Y. Cnty.); *Matter of Asensio v. Judge Fasanya, et al.*, Index No. 156692/2017 (Sup. Ct. N.Y. Cnty.); *Matter of Asensio v. Judge Fasanya, et al.*, Index No. 155833/2017 (Sup Ct. N.Y. Cnty.); *Matter of Asensio v. Magistrate Rosario*, 158837/2017 (Sup. Ct. N.Y. Cnty.). *See also Asensio v. Spitzer*, Index No. 159812/2016 (N.Y. Civil Ct. N.Y. Cnty.). *Asensio v. Bosak*, Index No. 153776/2017 (N.Y. Civil Ct. N.Y. Cnty.).

- 3 Article 78 proceedings in the Appellate Division;[7]

- 18 Applications to the Appellate Division seeking leave to appeal and a stay;

- 7 Motions to the New York Court of Appeals seeking "review of specific deficiencies in the New York Constitution regarding the state attorney general, family court['s] concurrent jurisdiction with supreme court, assigned attorneys for children under private pay compensation, and prosecutions of allegations made by a citizen exposing the system['s] deliberate denial of process of the administration of justice."[8]

Asensio lost every challenge.

In July of 2018, the Supreme Court for the State of New York entered a filing injunction against Asensio barring him from bringing any further motions or lawsuits challenging the Family Court proceeding absent prior permission from the Appellate Division or the Administrative Judge of the New York County Supreme Court. *See Asensio v. Fasanya*, Index No. 158833/2017, NYSCEF Doc. No. 119 (Sup. Ct. N.Y. Cnty. June 8, 2018).

A few months later, Asensio commenced this lawsuit.

## Standard of Review

In considering this motion, the Court must construe Asensio's *pro se* submissions liberally and interpret them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original). Even so, *pro se* litigants must

---

[7] *See Asensio v. Judge Bannon*, App. Docket No. 124/2017 (1st Dep't 2017); *Asensio v. Judge Bannon*, App. Docket No. 125/2017 (1st Dep't 2017); *Asensio v. Judge Marks*, App. Docket No. 130/2017 (1st Dep't 2017).

[8] In addition to these state-court proceedings, Asensio claims to have also filed: 12 complaints with Governor Cuomo; 12 complaints with Chief Judge DiFiore; 10 complaints with "UCS Deputy Chief Administrative Judges and Supervising Judges"; 7 complaints with the Clerk and Counsel of the New York Court of Appeals; 5 complaints with the New York State Attorney General's Office; 6 complaints with the New York County District Attorney; and 1 complaint with the President of the Conference of Chief Justices. Asensio's Lit. Aff. ¶¶ 2–5.

still "'state a claim to relief that is plausible on its face.'" *Wenegieme v. Garrity*, No. 17-CV-9714 (RA), 2018 WL 4500873, at *3 (S.D.N.Y. Sept. 18, 2018) (quoting *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citations omitted)); *see also Dawkins v. Gonyea*, 646 F.Supp.2d 594, 603 (S.D.N.Y. 2009).

While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any conclusory statements in a complaint, *see id.* at 679.

*Pro se* litigants "also must assert a basis for, and ultimately prove, that this Court has subject matter jurisdiction." *Id.* (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). When assessing a motion made under Rule 12(b)(1) or 12(b)(6), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004)). And in cases, like this one, where the Court "'lacks the statutory or constitutional power to adjudicate' a case, dismissal is proper.'" *Id.* (quoting *Aurecchione*, 426 F.3d at 638).

## I.    Asensio's claims are barred under the domestic-relations exception.

The domestic-relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The exception "springs from the Supreme Court's century-and-a-quarter-old recognition that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws

of the states, and not to the laws of the United States.'" *Tait v. Powell*, 241 F. Supp. 3d 372, 376 (E.D.N.Y. 2017) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890)). Thus, "[f]ederal courts will dismiss actions aimed at changing the results of domestic proceedings, including orders of child custody." *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004).

A "plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Schottel v. Kutyba*, No. 06-cv-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009). *See also Keane v. Keane*, 549 F. App'x 54, 54 (2d Cir. 2014) (holding that the domestic-relations exception barred federal jurisdiction over an action seeking damages for tortious conduct in state divorce proceedings). When claims for monetary damages "begin and end in a domestic dispute," the domestic relations exception still applies. *Id.*

Here, the domestic-relations exception plainly divests this Court of jurisdiction over Asensio's claims. The gravamen of Asensio's complaint is that Judge Fasanya's decisions in his custody proceeding were prejudicial to him, and violated his constitutional rights. Compl. ¶¶ 4, 6, 10, 12, 14–15, 18, 27, 45, 82–102. Asensio may not "rewrite [his] domestic dispute as a tort claim," or a civil rights action by simply seeking monetary damages. *See Schottel* 2009 WL 230106, at * 1; *Brown v. City of New York*, No. 19CV108BMCRLM, 2019 WL 235642, at *1 (E.D.N.Y. Jan. 16, 2019) (in applying the domestic relations exception, noting that the plaintiff's "request for monetary damages does not salvage his case"); *Awan v. Kramer*, No. 12-CV-5092 JG, 2012 WL 5426088, at *3 (E.D.N.Y. Nov. 7, 2012) ("[d]istrict courts in this Circuit have held that the exception includes civil rights actions directed at challenging … domestic relations proceedings."). Courts reject such actions where, "[i]f the Court were to consider the [relief]

request[ed], it would have to wade into a domestic dispute and review state court custody determinations – a role that is wholly inappropriate for a federal court." *Brown*, 2019 WL 235642, at *2. And courts in this Circuit have consistently applied the domestic-relations exception to dismiss Section 1983 actions where, like here, the plaintiff is essentially "challenging the results of domestic relations proceedings." *Martinez v. Queens Cnty. Dist. Atty.*, 596 F. App'x 10, 12 (2d Cir. 2015) (summary order).[9] Although Asensio urges the Court to ignore the domestic relations exception—and repeatedly questions its value as a doctrine 4complaint[10]—he fails to articulate a single reason why it does not apply here. Because Asensio's claims seek to challenge the results of

---

[9] *See also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (affirming "district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision [regarding] ... child support payments"); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 354 (E.D.N.Y. 2014) ("under the domestic relations exception, this Court cannot and will not provide the relief Plaintiff seeks ... [because] Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support"); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (if allegations regarding constitutional rights "are directly related to" domestic relations proceedings, the Court must dismiss the claims because, otherwise, the "Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," and "[t]hat is the role of the Appellate Division"); *Lally v.* Leff, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018) (dismissing complaint on the ground that the plaintiff was barred by the domestic relations exception from challenging the results of her underlying post-judgment divorce proceeding); *Awan v. Kramer*, No. 12-CV-5092 JG, 2012 WL 5426088, at *3 (E.D.N.Y. Nov. 7, 2012) (applying domestic relations exception where the plaintiff "is not technically challenging a divorce or child custody decree, ... [b]ut the gravamen of his complaint is a dispute over the ongoing child custody proceeding"); *Sullivan v. Xu*, No. 10–cv–3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug.13, 2010) ("[P]laintiff challenges child support and child custody orders. Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic matters," and are thus "barred by the domestic relations exception").

[10] Asensio describes the domestic-relations exception as a "counterintuitive, counterfactual, prejudicial and unsupported blind sanctioning of Defendant DiFiore's wanton crimes against the public." Compl. ¶ 1.

his underlying custody proceeding, they are barred by the domestic relations doctrine, and should be dismissed.

## II.   Asensio's claims are barred by the *Rooker–Feldman* doctrine.

The *Rooker–Feldman* doctrine deprives federal courts of "jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "The doctrine derives from the mandate that under statutes governing the federal judiciary, district courts are 'empowered to exercise original, not appellate jurisdiction.'" *Phillips v. City of New York*, 453 F. Supp. 2d 690, 713 (S.D.N.Y. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)).

In *Exxon Mobil*, the Supreme Court specified that the doctrine should be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. Therefore, "a district court cannot 'entertain constitutional claims attacking a state-court judgment, even if the state court has not passed directly on those claims, when the constitutional attack [is] 'inextricably intertwined' with the state court's judgment." *Fastag v. Kelly*, 04 Civ. 9037 (SAS), 2005 WL 1705529, at *3 (S.D.N.Y. July 19, 2005). Relatedly, "[a] plaintiff ... may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Id.* at *5 (citation and internal quotation marks omitted).

After *Exxon Mobil*, the Second Circuit held that *Rooker–Feldman* barred cases satisfying four requirements:

1. the federal-court plaintiff must have lost in state court;
2. the plaintiff must complain of injuries caused by a state-court judgment;
3. the plaintiff must invite district court review and rejection of that judgment; and
4. the state-court judgment must have been rendered before the district court proceedings commenced.

*See Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005).

These requirements are plainly met here. Although the allegations in the complaint are unclear, the thrust of Asensio's claims is that certain orders issued in his underlying custody proceeding violated his constitutional rights. *See* Compl. ¶¶ 3, 5, 11, 13, 22. He complains at length in the complaint of being injured by these judgments, (*see id.* ¶¶ 82–97; Asensio Aff. ¶¶ 60, 77), and asks this Court to reject their legitimacy, (*id.*). These claims are thus squarely barred under *Rooker–Feldman*.[11]

### III.    Asensio's claims are barred by *res judicata*.

Federal courts look to New York law to determine the preclusive effect of a New York State court judgment in subsequent federal litigation. *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 70 (S.D.N.Y. 1990). Under New York law, a party is precluded from relitigating an issue in a subsequent action that was clearly raised in a prior state-court proceeding and decided against that party or those in privity with that party. *Latino Officers Assoc. v. City of N.Y.*, 253 F.

---

[11] *See, e.g., Remy v. N.Y. State Dep't of Tax. & Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013) ("*Rooker–Feldman* doctrine barred father's § 1983 action challenging state court's child support orders and state agencies' enforcement efforts arising from those orders...."); *Brown*, 2019 WL 235642, at *2; *Grigoli v. 42 U.S.C. §654(3) Child Support Enf't Div.*, No. 18-CV-3672 (NSR), 2018 WL 2084172, at *4 (S.D.N.Y. May 1, 2018) (*Rooker–Feldman* bars suit because "Plaintiff cannot ask this Court to review and reject the child support order."); *Chestnut v. Gabler*, 06-CV-534E(F), 2007 WL 529556, at *3 (W.D.N.Y. Feb. 12, 2007) (applying *Rooker–Feldman* where the "Plaintiff is apparently unhappy with the results of the Family Court proceedings which occurred prior to the commencement of this action and complains that he suffered some type of injury as a result of those proceedings," holding that "to the extent the complaint alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings at issue herein, this Court lacks subject matter jurisdiction over said claims.")

13

Supp. 771, 783 (S.D.N.Y. 2003). This holds true regardless of "whether or not the tribunals or causes of action are the same." *Id.* (citation omitted). "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 424–25 (S.D.N.Y. 2008) (citing *Coveal v. Consumer Home Mortgage, Inc.*, 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) ). "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Id.* Subsequent litigation of related claims is precluded "even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label Inc.,* 548 F.3d 191, 194 (2d Cir. 2008) (citation omitted).

As the complaint makes clear, Asensio vehemently objects to certain judicial orders issued by the Family Court in a post-divorce custody proceeding pending in New York City Family Court. Since late 2016, Asensio has commenced at least 8 separate actions and proceedings in the New York State Civil Court, New York County Supreme Court, and the New York Appellate Division, First Department, seeking to challenge these orders. *See supra* n.2.

Asensio has lost every challenge. Although some of these lawsuits were dismissed on procedural grounds, several have been decided on the merits. *See, e.g.*, *Asensio v. Fasanya*, No. 155833/2017, 2018 WL 746153, at *2 (Sup. Ct. N.Y. Cnty. Feb. 07, 2018) (rejecting claim that "the Family Court lacks jurisdiction or authority to enter orders in custody and visitation proceedings, including the orders challenged by Asensio," and dismissing action seeking "to review several non-dispositional orders issued by Adetokunbo O. Fasanya in two custody and

14

visitation proceedings" for failure to state a cause of action); *Asensio v Rosario*, No. 158837/2017, 2018 WL 1087815, at *2 (Sup. Ct. Feb. 28, 2018) ("by imposing counsel's fees in her January 27, 2016, order, Magistrate Rosario did not exceed her statutory authority under the Family Court Act").[12]

In dismissing these lawsuits, New York State courts have consistently rejected Asensio's claims that the Family Court lacked the jurisdiction or authority to issue orders in the underlying custody proceeding. *Id.* Although Asensio appears to believe that his unsuccessful track record in state court permits him to raise the same claims here, the exact opposite is true. Because Asensio's claims in this action are founded upon the same claims rejected by those courts, Asensio is collaterally estopped from raising them here.

It makes no difference that Asensio now brings these claims under the guise of a civil rights action. Asensio may not assert the same claims in a new action by recharacterizing them as constitutional violations. The claims Asensio raises here are unquestionably based on the same underlying conduct and transactions at issue in his prior lawsuits, and it is clear that the claims Asensio raises here were or could have been raised in his proceeding before the Family Court, his state-court appeals, and his multiple collateral actions in the Supreme Court and the Appellate Division. His claims are thus barred by the doctrine of *res judicata*.

---

[12] Over the same period, Asensio has also petitioned the First Department 21 times seeking to challenge and stay the underlying Family Court proceedings. *See, e.g.*, Aff. of James Cooney Ex. A ¶ 8, *Asensio v. Fasanya*, Index No. 158833/2017, NYSCEF Doc. No. 160 ( Jan. 18, 2018 Letter from M. Asensio to N.Y. State Court of Appeals). And on every occasion, the First Department has rejected Asensio's claims.

IV.     **Asensio's claims for money damages against the State Defendants are barred by the Eleventh Amendment.**

Asensio's claims for money damages against the State Defendants must be dismissed for lack of subject matter jurisdiction because they are shielded by sovereign immunity. U.S. Const., amend. XI; *N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys.*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014) ("[T]he doctrine of sovereign immunity enshrined in the Eleventh []Amendment bars [the plaintiffs'] claims against the State Judges for damages and for retrospective injunctive and declaratory relief."); *Citizens Union v. Attorney Gen. of N.Y.*, 2017 WL 2984167 ("It is 'well settled that the ambit of the Eleventh Amendment's immunity includes a governor, in his official capacity.'" (quoting *Steinberg v. Elkman*, 2016 WL 796870, at *3 (S.D.N.Y. Feb. 22, 2016)); *Moore v. N.Y. State Attorney General*, 89 F. App'x 308 (2d Cir. 2004) (summary order) (Attorney General is immune from suit under Eleventh Amendment).  The Eleventh Amendment bars all suits against a state in federal court unless the state consents to be sued or Congress abrogates the immunity from suit.  That immunity limits this Court's jurisdiction and extends "not only [to] the United States but also [to] its agencies and officers when the latter act in their official capacities." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005). Congress did not abrogate state sovereign immunity for claims arising under 42 U.S.C. § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989), where, as here, New York State has not waived its immunity, *see Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014). Because the challenged

conduct of the State Defendants all occurred in their official capacities, the claims are barred by the Eleventh Amendment and must be dismissed.

### V.    Asensio's claims against Chief Judge DiFiore and Judge Fasanya are barred by absolute judicial immunity.

Asensio's claims against Chief Judge DiFiore and Judge Fasanya must be dismissed under the doctrine of judicial immunity. Courts have routinely held "that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126 (KMK), 2016 WL 858955, at *7–8 (S.D.N.Y. Feb. 26, 2016) (quoting *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam)). "This immunity is 'from suit, not just from ultimate assessment of damages.'" *Id.* (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam)).

The judicial immunity doctrine shields "judges from claims for damages 'arising out of their judicial acts.'" *Wenegieme*, 2018 WL 4500873, at *3 (quoting *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997)). "Even when judicial immunity creates some unfairness in a particular case, it serves the interests of justice by empowering judicial officers to exercise the authority vested in them while being 'free to act upon [their] own convictions, without apprehension of personal consequences.'" *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 363–64 (1978)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (quoting *Stump*, 435 U.S. at 356–57.)  As this Court recently recognized in a similar suit brought against two federal bankruptcy judges, "there is a difference

'between exceeding jurisdiction and acting in the absence of jurisdiction.'" *Id.* The Supreme

Court addressed this important distinction in *Stump*, explaining that:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal
> case, he would be acting in the clear absence of jurisdiction and would not be
> immune from liability for his action; on the other hand, if a judge of a criminal court
> should convict a defendant of a nonexistent crime, he would merely be acting in
> excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7. Courts have consistently held that "the scope of the judge's

jurisdiction must be construed broadly when the issue is the immunity of the judge." *Tucker*, 118

F.3d at 932 (internal quotation marks and citation omitted). To receive immunity, a judge must

also be acting in his or her "judicial capacity" performing a "judicial act." *Stump*, 435 U.S. at

362. An act is judicial when it is "normally performed by a judge" and is performed in a context

where the parties "dealt with the judge in his judicial capacity." *Id.*

Here, Asensio takes issue with various interlocutory orders issued by Judge Fasanya in the

underlying custody proceeding regarding holiday visitation, appointment of an attorney for

Asensio's child, suspension of Asensio's visitation, and enforcement of Asensio's obligation to

pay a share of the fees owed to the attorney for the child. *See* Compl. ¶¶ 4, 6, 10, 12, 14, 18, 22, 23.

"Making rulings is a paradigmatic function performed by judges." *Anderson v. Modica*, No. 18-

CV-6990(WFK), 2019 WL 296770, at *2 (E.D.N.Y. Jan. 23, 2019). Moreover, at all times relevant

to this action, Asensio was dealing with Judge Fasanya in his capacity as the judge presiding over

his state-court custody proceeding.

Although Asensio alleges that Judge Fasanya "fabricat[ed] jurisdiction" over his state-

court custody proceeding, Compl. ¶¶ 10, 12, 14, 18, 28, he does not—and cannot—allege facts

supporting that claim. *See Bradley v. Fisher*, 80 U.S. 335, 351 (1871) (describing what it means for a

18

judge to act "in clear absence of" jurisdiction). A court acts within its jurisdiction for purposes of judicial immunity unless it lacks "any 'statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). And here, Judge Fasanya—a Judge of the Family Court of the State of New York— plainly has jurisdiction and authority to enter orders in custody and visitation proceedings, including those Asensio seeks to challenge here. *See* N.Y. Const. art. VI, § 13; N.Y. Fam. Ct. Act §§ 467; 651(b), (e); 652; N.Y. Dom. Rel. Law § 236(b); *Matter of Donna Marie C. v. Kuni C.*, 134 A.D.3d 430 (1st Dep't 2015).

Even accepting Asensio's assertions that Judge Fasanya and Chief Judge DiFiore committed procedural or substantive errors of law by improperly issuing orders, and, in the case of Chief Judge DiFiore, failing to supervise Judge Fasanya, such "errors" did not deprive them of subject-matter jurisdiction or strip them of judicial immunity. *See Wenegieme*, 2018 WL 4500873, at 4 (citing *Tucker*, 118 F.3d at 936). That holds true "even if the errors were committed maliciously, corruptly, or in excess of the judges' authority." *Id.* Nor does "[d]isagreement with the action taken by the judge ... justify depriving that judge of his immunity." *Stump*, 435 U.S. at 363. Judge Fasanya and Chief Judge DiFiore are thus immune from suit, and Asensio's claims against them must be dismissed.

### VI.   Asensio's claims against Governor Cuomo and the Attorney General are barred by prosecutorial immunity.

To the extent that the complaint can also be read to seek Section 1983 damages from Governor Cuomo and the Attorney General in their individual capacities insofar as their inaction "resulted in the damages" to Asensio, Compl. ¶¶ 1 n.1, 58, 74, such claims fail because both are

absolutely immune from suit. *See, e.g.*, *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 (S.D.N.Y. July 13, 2016), *aff'd*, 714 F. App'x 60 (2d Cir. 2018). Absolute prosecutorial immunity "'attaches to prosecutorial functions that are intimately associated with initiating or presenting the State's case.'" *Id.* Put differently, "'[p]rosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion.'" *Id.* Courts have held "a prosecutor's decision not to investigate is entitled to absolute immunity because 'the decision not to investigate is so closely intertwined with the decision not to prosecute that to deny immunity for failure to investigate would offer an obvious means to circumvent the doctrine of prosecutorial immunity.'" *Id.*

Thus, to the extent Asensio's claims against Governor Cuomo and the Attorney General are based on their purported failure to investigate or prosecute Chief Judge DiFiore and Judge Fasanya, they are absolutely immune from suit. *Brady*, 2016 WL 3906737, at *3.

### VII.    Asensio has failed to state a claim on which relief can be granted.

The complaint is also subject to dismissal because it fails to state a claim on which relief can be granted. The complaint does not come close to alleging the personal involvement needed to state a Section 1983 claim. It is well settled that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). The same is true under New York Law. *See Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 132–33 (1st Dept. 1999).

Asensio fails to assert a single specific factual allegation of wrongdoing by any of the State Defendants. For example, Asensio alleges that the Governor and Attorney General "are

20

maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against the Plaintiffs," Compl. ¶ 37, but does not provide any factual support explaining how Chief Judge DiFiore has personally acted against him, or how the Governor and Attorney General failed to "perform[] their inherent duties" to stop those acts. Moreover, a "defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003)). Thus, to the extent Asensio's claims are premised on Chief Judge DiFiore's purported failure to supervise Judge Fasanya, and the Attorney General and Governor's purported failure to supervise Chief Judge DiFiore, those claims, without more, fail as a matter of law. To state a viable Section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1948). Asensio has not done that here.[13]

Although the nature of the constitutional violations alleged by Asensio in this case is unclear, it appears he intends to claim violations of his procedural and substantive due process rights. *See* Compl. ¶¶ 2, 5, 6.

These claims fail as a matter of law because Asensio has not alleged any facts that

---

[13] Asensio similarly alleges in conclusory fashion that Chief Judge DiFiore has "breached a ministerial duty," and committed "civil rights violations, due process violations, unauthorized enterprise, obstruction of justice, tampering with evidence and witnesses, conspiracy, malicious abuse of legal process, extortion, and subornation." *Id.* ¶ 64. But the complaint contains no specific, plausible allegations of fact identifying what, exactly, Chief Judge DiFiore personally did, or did not do, and how those acts, or failures to act, harmed Asensio. Asensio's allegations against the other State Defendants are similarly lacking in both specificity and plausibility.

plausibly demonstrate he was deprived of a constitutionally or federally protected right. To the contrary, Asensio presents only legal conclusions and implausible, speculative allegations lacking any factual support. Asensio's litigation history reflects that ample judicial process has been accorded to him, and he has not alleged any facts plausibly suggesting a violation of his or his daughter's procedural due process rights. Nor has Asensio alleged facts showing that the defendants took any action against him that was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 94 (N.D.N.Y. 2013) (citations omitted). Consequently, Asensio fails to state a claim that his substantive due process rights were violated.

In the same vein, Asensio makes numerous conclusory allegations that do not support a claim under any legal theory. For example, he alleges that the defendants "negligently failed to instruct, control, and discipline their employees of their duties to refrain from … unlawfully and maliciously harassing … and assaulting citizens and residents." Compl. ¶ 86. But "[h]arassment is not a cognizable claim under § 1983." *Santos v. Keenan*, 2019 WL 315326 (W.D.N.Y. Jan. 23, 2019). And to the extent Asensio seeks to bring an assault claim, it fails on its face because he has not alleged that the State Defendants used force, let alone excessive force, against him or anyone else. *See Humphrey v. Landers*, 344 F. App'x 686 (2d Cir. 2009) (elements of Section 1983 excessive-force claims and assault claims under New York law essentially the same). Asensio also appears to assert claims under the Fourth, Fifth, and Ninth Amendments, (Compl. ¶¶ 7, 91) but there are no allegations in the complaint that could plausibly fall in the ambit of the protections outlined in those amendments.

Asensio's claims of conspiracy fare no better. Asensio purports to assert conspiracy claims against all of the defendants under Sections 1983, 1984, and 1986, but his threadbare and implausible allegations fail as a matter of law. Asensio fails to allege specific facts demonstrating an improper relationship existed between any of the named defendants. For example, Asensio alleges that Judge Fasanya conspired with "Defendant Bosak … to take subject matter jurisdiction in the Plaintiff's domestic relations dispute with Defendant Bosak over religious education and worship, as well as moral and political beliefs." Compl. ¶ 4(a). But as the presiding judge in Asensio's custody proceeding, Judge Fasanya—a Judge of the Family Court of the State of New York—has always had the jurisdiction and authority to issue orders in that proceeding. *See* N.Y. Const. art. VI, § 13; N.Y. Fam. Ct. Act § 651(b), (e); N.Y. Dom. Rel. Law § 236(b). So to allege that Judge Fasanya somehow conspired with Bosak "to take subject matter jurisdiction" in that proceeding is not just conclusory and speculative—it also makes no sense.

Such conclusory and speculative allegations are insufficient to state a conspiracy claim under Section 1983, 1985, or 1986.[14]

It bears emphasis that, just as this Court is not bound to accept as true allegations that are "fanciful," "fantastic," or "delusional," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (internal

---

[14] Under his First Claim for Damages and Relief, Asensio cites 18 U.S.C. § 241 as the basis for his conspiracy claims against Chief Judge DiFiore, Judge Fasanya, and Bosak. That statute criminalizes the deprivation of civil rights under color of state law and any conspiracy to deprive someone of rights protected under the United States Constitution or federal law. Private individuals may not prosecute others for alleged crimes, and the Supreme Court has not recognized a private right of action from the existence of a criminal statute. *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) ("we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions") Liberally construing Asensio's *pro se* complaint, the State Defendants interpret his conspiracy claims as being made under Section 1985.

quotation marks and citation omitted), the Court need not accept legal conclusions couched as factual assertions, *see Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) ("bald assertions and conclusions of law are insufficient" to survive a motion to dismiss). Simply put, Asensio's factually bald assertions are insufficient to withstand the State Defendants' motion to dismiss. Moreover, just as a court would not be required to accept as true allegations such as "the world is flat," or "the defendant is a Martian," *see, e.g., Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994), this Court is not required to accept claims that are just as preposterous, such as Asensio's accusation that 119 state officials (including at least 53 state judges) have conspired to retaliate against him for investigating Judge Fasanya's alleged wrongdoing, *see* Compl. ¶ 54, or his claim that Chief Judge DiFiore retaliated against him after he investigated her "ongoing malicious use of the federal courts' so-called "domestic relations exception …." *Id.* ¶ 1. Such claims cannot be considered sufficiently plausible to withstand a motion to dismiss.

At bottom, Asensio's claims appear to be based on the theory that the state court lacked subject matter jurisdiction to preside over his underlying state-court custody proceeding because New York's judiciary and executive branches have turned a blind eye to the purported wrongs committed against him. *See, e.g.*, Compl. ¶¶ 1, 5, 30, 35–39. Because these allegations are illogical, vague, conclusory, and implausible on their face, Asensio's claims must fail.

### VIII.   Some of Asensio's claims are barred by the statute of limitations.

The statute of limitations for claims brought pursuant to Section 1983 is determined by state law, and in New York, the statute of limitations for Section 1983 claims is three years. *Shomo*

*v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the relevant limitations period is determined by state law, federal law governs the accrual date of a Section 1983 claim. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). And under federal law, a claim accrues when the plaintiff "knows or has reason to know" of the injury that forms the basis of the claim. *Id.* This does not require the plaintiff's awareness of all consequences of an action, but merely knowledge "that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton*, 632 F.2d at 192.

Asensio filed his complaint on November 21, 2018, *see* ECF No. 1, so any Section 1983 claims that accrued before November 21, 2015, are time-barred. *See Shomo*, 579 F.3d at 181. While the precise bases for Asensio's claims are not entirely clear from the complaint, it is evident that some of his claims arise from events that occurred before November 21, 2015. *See, e.g.*, Compl. ¶6 ("On May 15, 2014, the Plaintiff accused Defendant Fasanya of colluding with … Carmen Restivo. The events of May 15, 2014 are at the core of the scheme to fabricate jurisdiction that generates excessive fees."); ¶ 66 ("On May 15, 2014, the Plaintiff was an eye witness to Defendant Fasanya's obvious, malicious, conscious wrongdoing …."); ¶ 78 (referring to defendant's violations of state and federal law in 2013 and 2014).

In light of Asensio's extensive record of complaints about these events in 2013, 2014, and 2015, it appears that he knew or had reason to know of these acts when they happened. And given these acts occurred before November 21, 2015, any claim based on them is time-barred. Accordingly, to the extent Asensio's Section 1983 claims rely on alleged acts committed by the State Defendants before November 21, 2015, those claims are time-barred.

## CONCLUSION

For the reasons set forth above, the State Defendants respectfully request that the Court

dismiss Asensio's complaint with prejudice.

Dated: New York, New York
       February 14, 2019

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York
Counsel for State Defendants
By:

Jonathan D. Conley
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty St.
New York, New York 10005
Tel: (212) 416-8108
Fax: (212) 416-6075
Jonathan.Conley@ag.ny.gov

26