UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Manuel Asensio, individually and as the parent of Eva Asensio, a minor child, Plaintiffs, <br><br> - against - <br><br> Janet DiFiore, Chief Judge of New York State; Barbara Underwood, Attorney General of New York State; Andrew M. Cuomo, Governor of New York State; Adetokunbo O. Fasanya, New York County Family Court Magistrate; and Emilie Marie Bosak, individually, | **Case No. 18-cv-10933-RA** |

**MEMORANDUM OF LAW AND OPPOSITION RESPONSE TO
EMILIE MARIE BOSAK'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Manuel Asensio, ("Asensio") proceeding pro se and does hereby file this Memorandum in Response to Defendant Emilie Marie Bosak's (hereinafter "Defendant") Motion to Dismiss under Federal Rules of Civil Procedure ("F.R.C.P.") 12(b)(1) and 12(b)(6).

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... 3

**RELEVANT FACTS** ........................................................... Error! Bookmark not defined.

**ARGUMENT** .......................................................................................................................... 10

    **STANDARD OF REVIEW** .............................................................................................. 10

    **I. PLAINTIFF'S CLAIMS ARE NOT BARRED BECAUSE THE DOMESTIC-RELATIONS EXCEPTION DOES NOT APPLY** ................................................................ 12

        A. Article III Of The US Constitution Requires Federal Courts To Consider Federal Question Claims Even If Arising Out Of Domestic Relations Disputes .............................. 12

        B. The Supreme Court Has Established That There Is No Mandatory Invocation Of The Domestic Relations Exception To Federal Question Jurisdiction In Cases Involving Family Law ....................................................................................................................................... 13

        C. In The Second Circuit, Claims Arising Out Of Family Law Proceedings That Implicate Federal Questions Are Not Barred By The Domestic Relations Exception .......................... 17

    **II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA** .......................... 21

        A. Plaintiff's Claims Arise Out Of A Different Set Of Transactions Or Occurrences Than The Claims Adjudicated Previously .................................................................................... 22

        B. Alleged Violations Of Federal Rights Have Not Been Adjudicated On The Merits To Warrant Preclusive Effect, Thus Federal Courts Cannot Use Res Judicata To Avoid Addressing Federal Claims .................................................................................................. 23

        C. Plaintiff Had No Full And Fair Opportunity To Litigate The Claims ............................. 25

    **III. PLAINTIFF'S CLAIMS FOR DEPRIVATION OF RIGHTS PURSUANT TO 42 U.S.C.A. § 1983 AGAINST DEFENDANT IS PLAUSIBLY SUFFICIENT TO WITHSTAND MOTION TO DISMISS** ............................................................................... 26

**CONCLUSION** ....................................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) ................................................................ 22

*Alden v. Maine*, 527 U.S. 706 (1999). ........................................................................................ 8

*Allen v. McCurry*, 449 U.S. 90, 96 (1980) ................................................................................ 17

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ............................... 20

*Angel v. Bullington*, 330 U.S. 183 (1947) ................................................................................. 20

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) ............................................................. 8, 9, 10, 11

*Ashcroft v. Iqbal*. 556 U.S. 662 (2009) ....................................................................................... 6

*Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) .............................................................. 15

*Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996) ............................................................. 23

*Bell Atlantic Corp. v. Twombly*, 540 U.S. 544 (2007) ............................................................... 6

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) .................... 23

*Coveal v. Consumer Home Mortgage, Inc.*,
    2005 WL 2708388 (E.D.N.Y. Oct. 21, 2005) ...................................................................... 18

*Davis v. Wechsler*, 263 U.S. 22 (1923) ..................................................................................... 20

*EDP Med. Comput. Sys. v. United States*, 480 F.3d 621 (2d Cir. 2007). ................................. 21

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004). ........................................ 8, 10, 11, 12

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 6

*Estelle v. Gamble*, 429 U.S. 97 (1976)) ................................................................................... 6, 7

*Federated Dep't Stores v. Moitie*, 452 U.S. 394 (1981). ........................................................... 18

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) ............................................. 22, 23, 24

*Gargiul v. Tompkins*, 739 F.2d 34 (2d Cir. 1984) ......................................................... 19, 20, 21

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) .................................................................................. 7

*Hyman v. Cornell Univ.*, 721 F. App'x 5 (2d Cir. 2018) .............................................................. 18

*In re Burrus*, 136 U.S. 586 (1890). ............................................................................................... 8

*Latino Officers Assoc. v. City of N.Y.*, 253 F. Supp. 771 (S.D.N.Y. 2003) ................................. 18

*Loving v. Virginia,* 388 U.S. 1 (1967) .......................................................................................... 12

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
   779 F.3d 102 (2d Cir. 2015) ............................................................................................ 17, 18, 21

*Mitchell-Angel v. Cronin*,
   1996 U.S. App. Lexis 4416 (2d Cir. Mar. 8, 1996). ................................................... 14, 15, 16, 17

*NLRB v. United Technologies Corp.*, 706 F.2d 1254 (2d Cir. 1983) ........................................... 19

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ............................................................................. 12

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) ................................................................... 12

*Raila v. United States*, 355 F.3d 118 (2d Cir. 2004) ..................................................................... 7

*Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68 (S.D.N.Y. 1990); .................................. 17

*Santosky v. Kramer*, 455 U.S. 745 (1982) ................................................................................... 12

*Schottel v. Kutyba* 2009 U.S. App. Lexis 1916 (2d Cir. Feb. 2, 2009) .................................. 16, 17

*Schottel v. Kutyba,* No. 05-3759 (S.D.N.Y. Apr. 13, 2005) ......................................................... 16

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ....................................................... 19

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) .............................................. 7

*United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588 (2d Cir. 1989) ............................... 14

*V.L. v. E.L.*, 136 S. Ct. 1017 (2016) ............................................................................................. 13

*Wiley v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015). ......................................................................... 7

*Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995) ................................................................ passim

*Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, (S.D.N.Y. 2008) ........................... 18

**Statutes**

Civil Rights Act of 1871 (42 U.S.C. § 1983) ............................................................... passim

Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 351-364) ....................... passim

Judiciary Act of 1789 ................................................................................................ 8

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................. 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 7

**Constitutional Provisions**

Article III of the United States Constitution ............................................................ 8

Special Notice:

Barber v. Barber, 62 U.S. 582, 602, 16 L. Ed. 226 (1858)

United States Court of Appeals, Second Circuit, case titled "Jeb S. FRIES, Plaintiff-Appellant, v. Dr. James BARNES, Dr. Kang Foo Kim, John A. Kohler, Police Chief, Town of Hanover Police Department, and Unknown Employees of Lake Shore Intercommunity Hospital, Defendants-Appellees. No. 705, Docket 79-2219. Argued Feb. 8, 1980. Decided April 10, 1980.

## **RESPONSES TO THE DEFENDANT'S FALSE FACTUAL STATEMENTS**

Plaintiff Manuel P. Asensio (hereinafter "Plaintiff") filed two affidavits titled "Opposition to motion to dismiss: affidavit of factual responses to State Defendants' false assertions" and "Opposition to motion to dismiss: affidavit of factual responses to Defendant Bosak's false assertions." The relevant facts are contained in them as rebuttals to the Defendants' falsehood statements. These two affidavits demonstrate that the factual allegations that the State Defendants and Defendant Bosak used as the foundation for their legal arguments contained in their Memorandum are false and unresponsive. These affidavits show that the Defendants created their own allegations that do not address any of the allegations, facts, factors or circumstances contained in the complaint. They simply completely ignore the Plaintiff's case and causes of action. Their most important fabrication is that any litigation occurred in New York State that is applicable to this complaint. They show that the actions taken by the State Defendants that are the subject of this complaint are entirely outside of any conceivable authorized judicial or state act, in clear absence of subject matter jurisdiction or personal jurisdiction over the Plaintiff. They are outside of any normal function of a judge or a state official or normal acts performed by a judge or how parties deal with a normal judge. The only reason that the State Defendants' were able to take these illegal actions is that they colluded with Defendant Bosak. The plain and simple fact is that New York State did not allow any kind of due

6

process, opposition or litigation concerning civil rights or domestic relations. The two affidavits provide an accounting of the actions that the State Defendants and Defendant Bosak performed together as acts of collusion against the Plaintiff.

Since the Defendants' factual foundations are false, their legal arguments have no validity and must be denied.

The Plaintiff also filed an Opposition affidavit based on the pending 28 U.S.C. §§ 351-364 complaints against the Katzmann-DiFiore agreement and resulting dishonest and corrupt acts by Abrams-Failla that demonstrates the motions to dismiss, based solely on arguments of law, beg the issue. Defendants did not so much as file a single affidavit of fact. That is because they are hiding the facts that must ultimately be presented to a jury, just as the presiding judge in this matter, the presiding judge in the related matter of Asensio et al. v. Roberts et al, 19 CV 03384 and just as Chief Judge Robert A. Katzmann of the Second Circuit Court of Appeals. They all are hiding the facts in this matter.

Even though the Defendants' factual foundations are false, and that their legal arguments have no validity and must be denied, the Plaintiff desires to file a legal reply. The Plaintiff desires to highlight two cases, in this opening. They are Barber v. Barber, 62 U.S. 582, 602, 16 L. Ed. 226 (1858) and a United States Court of Appeals, Second Circuit, case titled "Jeb S. FRIES, Plaintiff-Appellant, v. Dr. James BARNES, Dr. Kang Foo Kim, John A. Kohler, Police Chief, Town of Hanover Police Department, and Unknown Employees of Lake Shore Intercommunity Hospital, Defendants-Appellees. No. 705, Docket 79-2219. Argued Feb. 8, 1980. Decided April 10, 1980.

Barber v. Barber the 1858 US Supreme Court case claimed to be the origins of the domestic relations exception to federal subject matter jurisdiction, contains a clear and

stern warning to federal judges against the disclaiming of jurisdiction over the design and operation of a state's custody process: "It is not in accordance with the design and operation of a [state] Government . . . [to] assume to regulate the domestic relations of society . . . [to take an] inquisitorial authority, [in order to] enter the habitations and even into the chambers and nurseries of private families, and inquire into and pronounce upon the morals and habits and affections or antipathies of the members of every household . . . [this is the case] whether [a state statute] expressly conferred upon the State courts, or tacitly assumed by them, their example and practice cannot be recognized as sources of authority by the courts of the United States. The origin and the extent of their jurisdiction must be sought in the laws of the United States. Barber v. Barber, 62 US 582 (1858)

The concepts espoused by Barber v. Barber are clear and explicit. The basic rule is that any domestic relations state process, whether it exists under a state statute or whether it has been tacitly assumed by the state, **cannot be recognized by the courts of the United States if it does not comply with US law**. Yet the DRE policy has been used in New York state to create the reverse. It has been used as protection for state and state judges to abrogated constitutional liberty and freedom, civil rights and legal rights in the processing of post-divorce judgment petitions filed by non-custodial parents.

FRIES v. BARNES dramatically illustrates New York State's federal courts' disregard for parent rights. It reverses a dismissal of a state prisoner's pro se civil rights action complaint alleging that the defendants, two physicians, the town police chief, and unknown hospital employees, conspired to violate his constitutional rights by turning over surgically removed shotgun fragments, tissue and blood, as well as his clothing and personal effects to the police at the request of chief of town police while he was being

treated for gunshot wound sufficiently alleged state action and stated a claim under section of Civil Rights Act providing for civil action for deprivation of rights.

FRIES v. BARNES finds that prisoner's "complaint was sufficient to withstand a dismissal on its face. The allegation that the police officers acted under state law is not controverted. Although the complaint does not allege in detail a conspiracy between the police and hospital employees who removed and turned over Fries' property to the police, it does allege that the "employees . . . acting under color of State law, aided and abetted the other Defendants in the concerted action that Plaintiff contends deprived him of his constitutional rights" (Par. 12), that the police "aided and abetted the other Defendants, and . . . directed the concerted action that Plaintiff contends deprived him of his constitutional rights" (Par. 14), that the employees "in acting to help the Town of Hanover Police to gather evidence . . . were acting under color of State law . . . requiring complicity with the Town of Hanover Police Department's wishes in conducting an investigation," (Par. 16), that the defendants "in concert acted to deprive Plaintiff of rights secured to him under the United States Constitution," (Par. 22), that all defendants "conspired to seize property and effects of Plaintiff, as well as personal bodily effects indigenous to Plaintiff's body, contrary to his wishes, while he was in a helpless condition, and before he had been lawfully arrested," (Par. 23). These allegations meet the test laid down by Adickes, and are inconsistent with the district court's mistaken impression that there was no allegation of a conspiracy between the police and doctor."

Here in this case, the state has stolen at gun point $444,688.22 from the Plaintiff who is a father that has done no wrong, broken no law, imposed himself on no other citizens' rights. The theft was executed through actions taken in collusion with Defendant

9

Bosak, a mother, that were clearly outside of any jurisdiction, truly without the slightest iota of personal or subject matter jurisdiction and falsely arrested 3 times all in retaliation for having done his paternal and civic duty. Namely, the Plaintiff refused to expose his daughter to New York's judicial and state corruption, he exercised his right to withdraw notwithstanding the fact that he had won the right to trial for full custody in his favor. Instead, he dedicated himself to gain legal knowledge and then applied his well-recognized investigative expertise for 5 years to investigate New York State's processing of post-divorce judgment petitions filed by non-custodial parents. He was successful in gathering hard evidence, information and knowledge on the 120 senior state officials that operate the corrupt system and then file this civil rights action. He did all this only to see New York's federal judges collude with the state to slander him in the New York Daily News using the same 3 and half year-old charges that were dismissed in criminal court and stricken from the record in family court.  Yet for no reason at all, without any justification, process or authority, solely through collusion with Defendant Bosak, and solely to retaliate against the Plaintiff's efforts to expose state corruption, the Plaintiff was separated from his daughter since January 15, 2016 and has had to suffer knowing she has been taught her love of her father, and her faith in God and lifelong religious studies and worship were wrong.

## ARGUMENT

## STANDARD OF REVIEW

Plaintiffs must plead the detail necessary to give a defendant notice of the claims to plausibly show that plaintiffs are entitled to relief. *Bell Atlantic Corp. v. Twombly*, 540

U.S. 544, 553 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" however detailed factual pleadings are not required "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009)(internal citations omitted).

The Supreme Court requires that "a *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court went so far as to say "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" and "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle* at 106 (internal citations and quotation marks omitted).

The Second Circuit has held that *pro se* litigants are "entitled to special solicitude" and that their "submissions must be construed liberally." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Even after *Twombly*, the courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Submissions by *pro se* litigants must be construed "to make the strongest arguments they suggest." *Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015).

In this case, therefore, the court must examine Plaintiff's *pro se* arguments in a manner that raises them "to the strongest arguments they *suggest*." *Triestman* at 474 (emphasis in original). To determine whether Plaintiff's Complaint can withstand a Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6) motion, "the court must take all facts

alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

## I. PLAINTIFF'S CLAIMS ARE NOT BARRED BECAUSE THE DOMESTIC-RELATIONS EXCEPTION DOES NOT APPLY

### A. Article III Of The US Constitution Requires Federal Courts To Consider Federal Question Claims Even If Arising Out Of Domestic Relations Disputes

Article III of the United States Constitution states: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."

The plain text of the Constitution must be the starting point of inquiry into the scope of federal judicial power. *Alden v. Maine*, 527 U.S. 706, 719 (1999). The operative language in Article III is "*all* Cases, in Law and Equity, arising under this Constitution, the Laws of the United States..." US Const. Art. III, § 2, Cl 1. (emphasis added). As such, *all* challenges based on federal statutes, by provenance, arise under the Laws of the United States. The Judiciary Act of 1789 of the first official United States Congress established that a right of appeal lies in Article III courts when state courts decide on federal questions generally. Thus, federal courts have review over all federal questions – regardless of whether a case originates in a state court over a domestic relations matter.

At present, some federal courts apply the domestic relations exception to exclude cases under federal question jurisdiction, while others hold the exception only applies to diversity jurisdiction cases. Understandably, federal courts cannot engage the gamut of domestic relation actions without confounding the structural balance between federal power and state power. Domestic relations litigants seeking to get into federal court under

diversity jurisdiction are only met with reticence because the "subject of the domestic relations of husband and wife, parent and child … belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890). But as in this case, domestic relations cases sometimes involve "substantial" constitutional or other federal rights issues. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004). In such cases, the Supreme Court has held federal question jurisdiction is properly invoked. *Id.* In those cases, federal courts cannot shy away from their Article III duty to redress violated federal rights. *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992).

Here, Plaintiff's claims present cognizable federal questions pursuant to the Judicial Conduct and Disability Act of 1980 and the Civil Rights Act of 1871. Such claims arise plainly under "the Laws of the United States." The domestic relations doctrine cannot be used in such a manner that divests the federal judiciary of Article III-mandated jurisdiction and thus divest citizens – in this case, Plaintiff -- of a right of redress for federal rights violations in federal court.

Thus, because the Plaintiff's claims present federal questions, Article III requires that his Complaint not be dismissed.

**B. The Supreme Court Has Established That There Is No Mandatory Invocation Of The Domestic Relations Exception To Federal Question Jurisdiction In Cases Involving Family Law**

    i.    *Ankenbrandt v. Richards*

In *Ankenbrandt v. Richards*, the Supreme Court unequivocally held that "domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." 504 U.S. 689, 704 (1992). A mother brought suit under diversity jurisdiction, on behalf of her daughters who she shared with her ex-husband, claiming that

he and his girlfriend physically and sexually abused the children. *Id.* at 691. The district and appellate courts found dismissal of the case was proper, claiming lack of jurisdiction because of the domestic relations exception. The Supreme Court reversed, holding that the "invocation of the domestic relations exception" was erroneous. *Id.* at 704. The Court held the exception only "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703. The Court further emphasized that none of those matters were at play here: the issue in this case was tortious misconduct against the children, and thus federal subject matter jurisdiction was proper. *Id.* at 704.

The Court also rejected the lower courts alternative claim that abstention was proper for the sake of "federalstate [sic] comity." *Id.* The Court held, [a]bstention rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 705 (internal citations omitted). Abstention is not proper unless there are pending "state proceedings" or sufficient "unusual circumstances." *Id.*

In this case, the Plaintiff is claiming violations of his federal rights during the judicial proceedings of a family relations matter. The issue before the federal court is whether the Plaintiff has rights under Judicial Conduct and Disability Act of 1980 and the Civil Rights Act of 1871. The domestic relations exception simply cannot apply here because this case before the federal court is not about a "divorce, alimony, or child custody decree." *Ankenbrandt.* at 704. The claims set forth in Plaintiff's Complaint invoke federal question jurisdiction, i.e., the alleged violations of federal statutory rights, and does not require the federal courts to issue judgment on the underlying family law matters.

14

Therefore, the domestic relations exception cannot apply and the federal courts must consider the Plaintiff's claims.

### ii. *Elk Grove Unified Sch. Dist. v. Newdow*

In *Elk Grove Unified Sch. Dist. v. Newdow*, the Supreme Court recognized that while it is generally "appropriate for federal courts to leave delicate issues of domestic relations to the state courts", "rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue." 542 U.S. 1, 13 (2004). *Newdow* involved Establishment and Free Exercise Clauses challenges brought by a father against his daughter's school for morning recitations of the Pledge of Allegiance. *Id.* at 5-9. The mother intervened, declaring exclusive legal custody over the daughter pursuant to a state-court order, and stated she had no First Amendment objections to the school's policy – amounting to a "tie-breaking vote". *Id.* at 14 n.6. The father argued he "retains an unrestricted right to inculcate in his daughter his beliefs." *Id.* at 4. But the Court held that his position "fails because his rights cannot be viewed in isolation" given his "parental status is defined by state law" and that the "Court customarily defers to the state-law interpretations of the regional federal court." *Id.*

The Supreme Court held that Article III "case-or-controversy" standing requirement was insufficient alone for the father's claim to be proper in federal court. *Id.* at 11-12. The father lacked "prudential standing" – i.e. the "judicially self-imposed limits on the exercise of federal jurisdiction" – because the suit itself was founded on disputed state family law rights regarding competing parental authority. *Id.* Citing *Ankenbrandt* and the "domestic relations exception", the Court reemphasized its strong "deference to state law" in matters of family relations. *Id.* at 12.

15