Here, the Plaintiff has "substantial federal questions" that "exist apart from the family law issue." *Id.* at 13. The domestic relations exception cannot apply given the case before the federal court does not hinge on domestic relations issues as it did in *Newdow*. The issue before the federal court is whether there have been violations of the Judicial Conduct and Disability Act of 1980 and whether there is liability under the Civil Rights Act of 1871. These are indisputably federal questions. The suit here is not founded on state family law rights. Unlike in *Newdow*, on the matter of whether there has been prejudicial judicial conduct or deprivation of the Plaintiff's rights under color of law, both prohibited by federal statutes, "deference to state law" cannot be justified. *Id.* at 12. The federal court doors are closed to the Plaintiff by the dismissal the federal claims merely because the underlying case out of which the violations arose is a family matter governed by state law. The domestic relations exception does not apply here and the Plaintiff is entitled his due process rights and to redress for violations of his federal rights.

### iii. Domestic Relations in Civil Rights Actions before the Supreme Court

Prevailing Supreme Court jurisprudence clearly establishes that the domestic relations exception does not apply to universally bar all claims in federal court because they touch on domestic or family relations matters. Indeed, in *Santosky v. Kramer*, 455 U.S. 745 (1982), the Supreme Court stated that its "duty to refrain from interfering with state answers to domestic relations questions has never required that the Court should blink at clear constitutional violations." From *Loving v. Virginia,* 388 U.S. 1 (1967), where the Court struck down state laws banning interracial marriage to *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), where the Court held that a fundamental right to marry is guaranteed to same-sex couples, federal courts have regularly considered questions involving the family.

16

Historically, federal courts have explored the range of domestic relations liberty matters such as "marriage, procreation, family relationships, child rearing, education, and contraception." *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). , 859 (1992) (internal citations and ellipses omitted). Indeed, as recently as 2016, the Supreme Court held that the Alabama Supreme Court violated the Full Faith and Credit Clause by denying a lesbian woman's right to adopt the children that she raised together with her former partner while living in Georgia. *V.L. v. E.L.*, 136 S. Ct. 1017, 1019 (2016).

In this case, where Plaintiff alleges violations of his federal rights, it appears indefensible to dismiss his Complaint using the domestic relations exception given the long-standing history of federal courts addressing such violations. The Supreme Court has indicated that where constitutional or federal rights are in question, federal jurisdiction is proper.

Therefore, because the Supreme Court makes it clear the Plaintiff's claims are not barred by the domestic relations exception, the Plaintiff is entitled to his claims in the present Complaint being heard in federal court.

## C. In The Second Circuit, Claims Arising Out Of Family Law Proceedings That Implicate Federal Questions Are Not Barred By The Domestic Relations Exception

### i. *Williams v. Lambert*

In *Williams v. Lambert*, the Second Circuit held that the domestic relations exception applies only in cases of diversity jurisdiction. 46 F.3d 1275 (2d Cir. 1995)). The plaintiff alleged New York "statutory scheme" on child support agreements violated of the "equal protection rights of illegitimate children and their parents." *Id.* at 1278. The law provided that a support agreement for illegitimate children once "approved by a judge and

17

is fully performed, … may not be reexamined even if grounds for re-examination would exist for an agreement entered into between the parents of legitimate children." *Id.* The court expressly stated, "[t]his case . . . is before this Court on federal question jurisdiction, not diversity. Therefore, the matrimonial exception does not apply." *Id.* at 1284. Importantly, the court held, "[a]s a policy matter, district courts should abstain from hearing cases only under very unusual or exceptional circumstances and that "[t]he jurisdictional sword that sustains federal rights should not be swiftly sheathed simply because a concurrent parallel attack has been mounted in the state courts." *Id.* at 1281-82, citing *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 595 (2d Cir. 1989). The Second Circuit held that the district court's decision to abstain on grounds of the domestic relations was an abuse of discretion because "the exception is very narrow." *Williams,* 46 F.3d at 1283.

In this case, as discussed above, the Plaintiff's claims arise out of federal question jurisdiction, not diversity jurisdiction. The Plaintiff claims violations of "federal rights" like in *Williams*, and therefore jurisdiction is proper in federal court. For these reasons, to apply the domestic relations exception here would be improper.

    ii.    *Mitchell-Angel v. Cronin*

In *Mitchell-Angel v. Cronin*, the Second Circuit held that the domestic relations "exception has also been applied to federal question jurisdiction" cases. 1996 U.S. App. Lexis 4416, at *4-5 (2d Cir. Mar. 8, 1996). Crucially, the court teased out the difference between particular issues in the case to which the domestic relations exception applied and to the particular issues which it did not apply. The *pro se* plaintiff Mitchell-Angel claimed violation of the First, Fifth, and Fourteenth Amendments, sought the return of her children,

18

in addition to other injunctive and monetary remedies. *Id.* at *2. She alleged "malicious prosecution and abuse of process as part of a conspiracy to deprive her of her children's companionship" but the court held those particular claims relate "solely to the appropriateness of the child custody decree" – and thus within the domestic relations exception. *Id.* at *6. The court stated, "federal courts have discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts." *Id* at *1 (internal quotations and citations omitted). However, Mitchell-Angel's separate claims of "unreasonable search and seizure", being questioned "without providing *Miranda* warnings", and other distinct instances of malicious prosecution did not fall within the domestic relations exception. *Id.* at *6. These claims did not "affect the child custody decree or verge on being matrimonial issues." *Id*. The court however never reached a decision on the merits regarding these non-excepted claims because they were barred by statutes of limitations. *Id*. at *6-7.

Importantly, subsequent to *Mitchell-Angel,* the Second Circuit expressly declined to articulate a bright-line rule forbidding its courts from considering domestic relations matters in federal question actions. *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013). The *Ashmore* ruling clarifies the holding in *Mitchell-Angel* and establishes that the domestic relations exception does not apply in a blanket fashion to all federal question jurisdiction cases.

In this case, analogous to the second set of non-excepted claims in *Mitchell-Angel,* Plaintiff is seeking claiming violations of federal statutory rights. Although the Second Circuit did not expressly address any conflicts between *Mitchell-Angel* with its own holding in *Williams* the year before with regards to the exception under diversity versus

19

federal question jurisdiction, the distinction is irrelevant here in this case. Whether or not there have been violations of the Judicial Conduct and Disability Act of 1980 and the Plaintiff is entitled to relief under Civil Rights Act of 1871 is not a "matrimonial issue" or a "domestic relations issue" as defined by the Second Circuit in both *Mitchell-Angel* and *Williams*. These are clear federal questions distinct from family law matters. Although the claims arise out of a child custody decision, the claims seeking federal judicial redress under federal statutes do not directly rest on a state court's custody decision. Thus, the domestic relations exception does not apply to the Plaintiff's Complaint.

    iii.    ***Schottel v. Kutyba***

In *Schottel v. Kutyba*, the Second Circuit held that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." 2009 U.S. App. Lexis 1916, at *4 (2d Cir. Feb. 2, 2009). The court made it clear that plaintiffs cannot manipulate federal jurisdiction to conceal core domestic relations matters to seek remedy in federal court. The plaintiff, Schlottel, asserted a fraud claim for money damages to which the Second Circuit responded:

> "Her complaint makes clear that her tort claim for monetary damages is, at heart, a dispute surrounding the custody of her child. In particular, the complaint alleges that the defendants (1) fraudulently misrepresented to the court the former couple's residences in order to file divorce proceedings in New York; (2) forged Schottel's signature on documents relating to the divorce proceeding; and (3) coerced Schottel, "a foreign citizen of the Country of Poland . . . without . . . counsel," into signing divorce-related documents whose contents were unknown to her. The complaint states that, as a result of this fraud and coercion, Schottel has been deprived of custody and visitation rights, resulting in emotional distress, expenses arising from her challenges to the divorce decree and "other substantial damages." *Schottel* at *2-3.

The court affirmed the district court's holding that "the gravamen of her claim involves a dissolution of marriage--an area at the core of the domestic relations exception." *Id.* at *2 citing *Schottel v. Kutyba,* No. 05-3759 (S.D.N.Y. Apr. 13, 2005) (order of dismissal).

20

In this case, the Plaintiff is alleging violations of the Judicial Conduct and Disability Act of 1980 and asking for corresponding relief. Unlike in *Schottel*, the Plaintiff's claims are not singularly directed at present or former members of his family household. His Complaint is not an attempt to drag a family dispute out of state court into federal court. His Complaint alleges judicial misconduct and a deprivation of his federal civil rights.

Therefore, under the Second Circuit holdings in *Williams*, *Mitchell-Angel*, and *Schottel*, neither abstention nor dismissal are proper and the Plaintiff is entitled to a decision of his claims on the merit. His federal claims do not fall under the domestic relations exception and the court should consider the substance of his Complaint.

## II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA

Defendant argues wrongly that Plaintiff's claims are barred by the doctrine of res judicata. Under the doctrine of res judicata, a final judgment on the merits in an initial case "forecloses successive litigation of the very same claim" including "claims that might have been raised in the prior litigation but were not." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107-08 (2d Cir. 2015) (internal quotation marks omitted). Movants seeking dismissal under claim preclusion must establish that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc.* at 108. (internal citations and quotations omitted)

To determine the preclusive effect of New York state court decisions in federal litigation, federal courts must look to New York law. *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 70 (S.D.N.Y. 1990); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Defendant

21

recognizes that under New York law, "a party is precluded from relitigating an issue in a subsequent action that was clearly raised in a prior state-court proceeding and decided against that party or those in privity with that party." *See* Defendant's Motion to Dismiss, Page 15, citing *Latino Officers Assoc. v. City of N.Y.*, 253 F. Supp. 771 (S.D.N.Y. 2003).

Here, the scope of the claim Defendant believes should be given preclusive effect does not encompass the claims or issues raised in Plaintiff's Complaint. A final decision on the merits of Plaintiff's domestic relations matter did not involve any adjudication on the matters at issue in the present Complaint. Defendant inaccurately argue that the substance of the Complaint has been adjudicated on the merits. This is not true: the claims and issues named in the Complaint arise out of the manner in which the state court proceeded itself. The issues in the Complaint simply could not "have been raised in the prior litigation," *Marcel Fashions Grp., Inc.* at 108, because they arise out of a different set of facts.

## A. Plaintiff's Claims Arise Out Of A Different Set Of Transactions Or Occurrences Than The Claims Adjudicated Previously

For preclusive purposes claims are barred only if they "arise from the same transaction or occurrence" giving rise to the first case; this is the standard courts use to determine whether a claim or issue was clearly addressed on the merits in a prior-state court proceeding. *Hyman v. Cornell Univ.*, 721 F. App'x 5, 6 (2d Cir. 2018). For preclusion to apply in a subsequent case, there must have been a "final judgment on the merits in the first suit." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981). To "determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 424–25 (S.D.N.Y. 2008)

(citing *Coveal v. Consumer Home Mortgage, Inc.*, 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)). However, to determine whether the transaction or occurrence is the same, courts will look to see "where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1464 (2d Cir. 1996).

In this case, the claims and issues raised in Plaintiff's Complaint were not decided on the merits in prior proceedings. Plaintiff complains of federal violations in the nature of criminal activity and ultra vires actions. The "transactions or occurrences" in question here involve facts that are distinct from the facts involved in the domestic relations matter. Plaintiff is bringing suit under federal question jurisdiction, claiming violations of federal rights. There has been no "adjudication on the merits" warranting preclusive effects of these claims within the meaning required under the Second Circuit's precedent: the evidentiary record needed for the claims alleged in the Complaint are distinct from the domestic relations matter and not of the variety that would "support both claims." *NLRB* at 1260. Moreover, "the facts essential to the second" claim are certainly not "present in the first" and arise out of the judicial process itself, not the domestic affairs matter. *Id.*

**B. Alleged Violations Of Federal Rights Have Not Been Adjudicated On The Merits To Warrant Preclusive Effect, Thus Federal Courts Cannot Use Res Judicata To Avoid Addressing Federal Claims**

The Second Circuit held, "a prior state court proceeding does not bar federal court consideration of constitutional claims not actually litigated and determined in the state court proceeding." *Gargiul v. Tompkins*, 739 F.2d 34, 36 (2d Cir. 1984). In *Gargiul*, like

23

the present case, plaintiff brought claims under 42 U.S.C. 1983 and the court found that some of her claims that were "never considered on the merits in any prior proceeding -- judicial or administrative" were "not barred." *Id.* Federal courts "should not give the state-court decision any greater preclusive effect than the courts of that state would give it." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012).

It is established that federal courts cannot disclaim authority over unaddressed federal issues in a prior state-law state-court proceeding by invoking res judicata. Writing for a unanimous Supreme Court, Justice Holmes stated, "[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis v. Wechsler*, 263 U.S. 22, 24 (1923). "A State court cannot sterilize federal claims by putting on the adjudication a local label." *Angel v. Bullington*, 330 U.S. 183, 190-91 (1947). Indeed, where "resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State." *Id.* at 192. After all, "state courts may deal with that as they think proper in local matters but they cannot treat it as defeating a plain assertion of federal right." *Davis* at 24. Federal courts cannot "put a federal claim aside, as though it were not in litigation, by the talismanic word "jurisdiction"." *Angel* at 189.

Here, the issue before the court is whether there have been violations of federal law. In this case, none of the federal or constitutional or federal claims have had the opportunity to be litigated. Defendant essentially argues that because the domestic case out of which the alleged violations emerged was adjudicated on the merits, the present claims of federal

24

violations are barred from federal court consideration. As in *Gargiul*, where federal claims are not actually considered in a prior state court proceeding, federal courts cannot use res judicata to circumvent dealing with federal claims.

**C. Plaintiff Had No Full And Fair Opportunity To Litigate The Claims**

The central tenant around which the doctrine of res judicata pivots is fairness and the operative question to determine fairness is whether the "party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Med. Comput. Sys. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007). ) The third prong of the test to invoke res judicata requires "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc.* at 108.

In this case, as discussed above, Plaintiff simply has not had an opportunity to litigate the matters alleged in his Complaint in any previous action. While it is recognized that full-fledged litigation itself is not required, an invocation of res judicata demands that the party "against whom the doctrine is asserted had a full and fair *opportunity*" to have his matter addressed before a competent tribunal. *EDP Med. Comput. Sys.* at 626 (emphasis added). As such, because Plaintiff has been denied that opportunity, res judicata cannot apply.

Although Defendant argues that Plaintiff's claims should be barred under res judicata, as examined above, the factors required for them to establish preclusion are not met. Therefore, the Defendant's invocation of the doctrine and motion to bar the claims should be denied.

### III. PLAINTIFF'S CLAIMS FOR DEPRIVATION OF RIGHTS PURSUANT TO 42 U.S.C.A. § 1983 AGAINST DEFENDANT IS PLAUSIBLY SUFFICIENT TO WITHSTAND MOTION TO DISMISS

Defendant argues that Plaintiff's claim under § 1983 must be dismissed because the Complaint does "not sufficiently allege that the defendants acted under color of state law" as required by the statute. Defendant Bosak's Motion to Dismiss, page 19. This is wholly incorrect. Under established state action doctrine, the engagements between Defendant Magistrate Judge Adetokunbo O. Fasanya and Defendant Emilie Bosak in the domestic relations proceeding constitute state action to qualify for relief under § 1983.

The Supreme Court held, "a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. Private persons, jointly engaged with state officials in the prohibited action are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).

"A private individual may be subject to § 1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005)(internal citations and quotations omitted). Indeed, "[p]rivate parties act under the color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights. *Id.*

A claim of conspiracy under § 1983, "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Relevantly, "[a] plaintiff is not required to

26

list the place and date of defendants meetings and the summary of their conversations when he pleads conspiracy but the pleadings must present facts tending to show agreement and concerted action." *Fisk*, 401 F. Supp. 2d at 376.

Ultimately, the Supreme Court has recognized that civil rights claims might entangle state action doctrine in a manner that does not narrowly fit within the commonly articulated tests to determine whether private action establishes state action:

> "From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001).

Moreover, the line between state and private action for civil rights claims may be ethereal enough to escape state action jurisprudential capture for purposes of ensuring the guarantees of the Fourteenth Amendment. *Id.* at 296 ("its ambit cannot be a simple line between States and people operating outside formally governmental organizations"). The Court held, the determination of "constitutional claims on the basis of such formal distinctions, which can be manipulated largely at the will of the government agencies concerned ... is an enterprise that we have consistently eschewed." *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 679 (1996)(internal citations and quotations omitted).

Here, Defendant Bosak "collaborated" with state official Defendant Judge Fasanya in a manner that resulted in the "deprivation" of Plaintiff's rights "under color of law" sufficient to establish her liability under § 1983. *Fisk*, 401 F. Supp. 2d at 372. In two Orders to Show Cause to deprive Plaintiff of his parental rights, Defendant Bosak filed supportive statements that were defective as a matter of law that were simply accepted by Judge Fasanya.

The first Order to Show Cause dated January 15, 2016 resulted in the suspension of Plaintiff's visitations rights. Plaintiff originally was supposed to have custody over his daughter when Defendant Bosak was out of town. Plaintiff went to Bosak's apartment after learning Bosak was in Mexico via social media Bosak's mother answered the door, and Plaintiff requested to see his daughter but Bosak's mother refused. Upon returning to New York, Bosak filed the Order supported by an affidavit signed by herself and an affirmation from her attorney, claiming that Plaintiff broke into the apartment and physically assaulted Bosak's mother. Neither Bosak nor her attorney were present during the facts alleged. Despite the fact that neither affiant had personal knowledge and the affidavit was defective on its face, Judge Fasanya ratified the Order.

The relevant facts were similar in the second Order to Show Cause filed by Bosak in September 2016. Plaintiff attended a supervised visitation and Bosak alleged a similar altercation, supported solely by a signed affidavit by Bosak and affirmation by her attorney although neither party was present at the visitation. Again, Judge Fasanya ratified the Order despite the fact that all the supportive statements were defective as a matter of law.

The ongoing nature of this interaction is enough to demonstrate a concerted effort by Defendants Bosak and Fasanya to cause Plaintiff an "unconstitutional injury", namely the loss of his parental rights. *Ciambriello* at 325. This "collaboration" with a state official is sufficient to establish that Defendant Bosak may be liable under § 1983. *Fisk,* 401 F. Supp. 2d at 372. Therefore, dismissal of the Plaintiff's Complaint is noIf you want you can just copy and paste this at the end on page 24: "Therefore, dismissal is improper because there are plausible facts to show that Defendant Bosak is liable

28

## **CONCLUSION**

For the foregoing reasons, Plaintiff's claims are valid and it is requested that this Court deny Emilie Marie Bosak's Motion to Dismiss in its entirety, together with such other and further relief as this Court deems just, proper and equitable.

I, Manuel P. Asensio, swear that I am the Plaintiff in the above cited complaint, and the affiant in this Affidavit. I swear that I am fully familiar with the facts, factors and circumstances contained in this affidavit. I solemnly swear that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

I do so swear:

_____
Manuel P. Asensio
Plaintiff, Pro Se
400 E. 54th Street, 29B
New York, NY 10022
(917) 515-5200 mpa@asensio.com

May 10, 2019