UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Manuel P. Asensio, individually and as the parent
of Eva Asensio, a minor child,

          Plaintiffs,

-against-                                      18 CV-10933

Janet DiFiore, Chief Judge of New York State; Barbara Underwood, Attorney General of New York State Andrew M. Cuomo, Governor of New York State; Adetokunbo O. Fasanya, New York County Family Court Magistrate; and Emilie Marie Bosak, individually,

          Defendants.

---

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS:
MEMORANDUM OF LAW AND AFFIDAVIT OF MANUEL P. ASENSIO
CONCERNING DEFENDANT FASANYA'S CONSCIOUS WRONGDOING AND
ILLEGALLY ACTS EXECUTED IN CLEAR ABSENSE OF JURISIDICTION TO
HAVE THE PLAINTIFF ARRESTED IN COURT ON
JUNE 30, 2017**

1.    This memorandum of law and affidavit in opposition to dismissal are filed to prove that the State Defendant deliberated fabricated a series of actions commencing in January 2017 to illegally and deliberately execute the Plaintiff's in court arrest as a conscious act of retaliation and in collusion with Defendant DiFiore who then directed the dismiss of the Plaintiff's motions for leave to appeal and special proceedings actions to seeking redress as proven by the attached exhibits.

2. This is filed in further support of the Plaintiff's allegations contained in the complaint and elsewhere in the opposition to the Motions to dismiss that all of the State Defendants' alleged acts are conscious violations of law executed deliberately to engage in wrongdoing and that such action are obviously clearly outside of any state official, judges included and that do not have an iota of judicial function or conduct.

3. I commenced my petition for upwards modification of custody of my daughter, Eva Asensio, on December 2013 based on my former wife's egregious violations of our Stipulation of Settlement, which was incorporated, not merged into our August 2018 Judgment of Divorce. The case was assigned to Defendant Fasanya.

4. My former wife, Defendant Bosak, filed a motion to dismiss my petition. On November 17, 2014 Defendant Fasanya denied this motion to dismiss and its application for legal fees and set a trial date on my petition. This was the only time that Defendant Fasanya ever ruled in any custody matter in which I appeared before him.

5. As fully described in this complaint and its supporting affidavits, on May 15, 2014 Defendant Fasanya colluded Defendant Bosak and attempted to unilaterally appoint Carmen Restivo as the attorney for my daughter on a private pay basis and ruled. I immediately objected vociferously and commenced formal actions for address and correct the May 15, 2014 collusion.

6. In addition to the collusion, I refused to contest to the appointment of a stranger to me and my family in a routine, normal custody violation matter in my daughter had no need and did not require counsel, and based on Ms. Restivo's credentials or expertise had never been examined by me or in open court. I disagreed with Ms. Restivo's principles, manners, values and ethics and that know as a matter of law that if an attorney for the child was to be appointed that appointment could only be made under Rule 18-b and not as a privately paid, this is as required by New York law. Defendant Fasanya ignored all my objections. This illegal appointment of Carmen Restivo, a known 25 year plus denizen of the New York County Family Court system and a Family Court insider, proved to me that Defendant Fasanya was determined to disregard my interest and the law itself to advance his own agenda of colluding with Defendant Bosak and his cronies.

7. I immediately withdrew from the proceedings once Carmen Restivo was appointed. I withdrew repeatedly thereafter. Each time Defendant Fasanya continued the proceedings against me even as he acknowledged my right to withdraw.

8. On November 16, 2015 Defendant Fasanya ruled "You are free to withdraw [your petition]. But if have applications that are pending before me, I will not permit you to withdraw the petition until I address that application…. I say… at this point, Mr. Asensio, there's no pending application before me." That said, Defendant Fasnaya continued the proceedings.

9. On January 21, 2016 Defendant Fasanya entered a fabricated Sua Sponte De Hors Decision and Order for legal fees in favor of Defendant Bosak and her attorneys based on Defendant Bosak's very motion to dismiss that he had denied over a year earlier.

10. Six days later, on January 27, 2016, Defendant Fasanya revealed how little he knew or cared about the case when he requested the assistance of both parties to determine what motions were still outstanding. Defendant Fasanya stated on the record that the recent decision was a counsel fee decision. "I want each party and counsel to come back and let me know what they believe is outstanding in this matter. … This court just rendered a decision on the counsel fee application…." This last comment was point blank untrue since Defendant Fasanya had just awarded Defendant Bosak's attorneys counsel fees without an application for them.

11. Later that year, on October 18, 2016, Defendant Fasanya contradicts himself and states that "There's a pending application filed by the respondent [Bosak] seeking a dismissal of the amended petition filed by Mr. Asensio and seeking counsel fees." This was almost 2 years after Defendant Fasanya had ruled that Defendant Bosak's motion to dismiss was denied and over 2 years after I withdrew and commenced actions against Defendant Fasanya for colluding with Defendant Bosak.

12. The record is replete with examples of Defendant Fasanya's contradictions, malicious misstatements and outright falsehoods. On November 4, 2016, Defendant

4

Fasanya stated that "Your presence in this courtroom is a voluntary one ... there's no compulsion for you to be present in this courtroom...I will not...[repeat] I will not take any steps to compel you to come to court....You are free not to come to court". Defendant Fasanya confirmed that the proceedings had concluded when he stated on March 13, 2017 that "All of Mr. Asensio's petitioners are marked withdrawn". Yet, Defendant Fasanya maliciously and without any jurisdiction continued the proceedings in order to generate legal fees for his appointee, Carmen Restivo.

13. Defendant Fasanya dedicated all the time I was order to appear based on his Sua Sponte fabricated order to collect Restivo's fee applications and her contempt applications to enforce payment of those fees under pain of incarceration.

14. On June 1, 2017, seeking to somehow put an end to Defendant Fasanya's constant fabricate of fee orders I demanded a full hearing on Restivo's 11th and 12th fabricated invoices and application to hold me in contempt to compel me to pay her fees. Defendant Fasanya determined from the bench that the hearing on contempt should continue notwithstanding the threshold procedural objections raised by my then trial counsel, Terry Brostowin. These issues were:

> a. (a) I testified that I was never served with a certified copy of the Court Order upon which the contempt is based notwithstanding the requirement of CPLR Section 5104;

5

  b. Carmen Restivo could not seek contempt pursuant to Domestic Relations Law Section 245 since that provision is available only to a party in a domestic relations proceeding, which the she was not, and

  c. Restivo could not seek contempt pursuant to Judiciary Law Section 756 since she was not a party to the proceedings.. A copy of the relevant pages of the transcript of the June 1, 2017 hearing in which Mr. Brostowin raised these issues and in which Defendant Fasanya dismissed them is annexed hereto.

15. According to <u>Lowe's Theatre & Realty Corp. v. 105 Second Avenue Enterprises, Inc.</u>, 31 A.D.2d 628, 296 N.Y.S.2d 15 (1st Dept. 1968), Carmen Restivo, as a non-party to this action, did not have the right to seek enforcement of an order by contempt, even if she were not merely seeking to enforce the payment of alleged financial obligations, which, of course, she was Neither Carmen Restivo nor her client, my daughter were parties to the proceedings. The legal standard as to who may maintain a contempt proceeding is that only a person whose party or estate has sustained injury can bring a proceeding to enforce an order by contempt. It can well be argued that the child is a stranger to these proceedings, let alone her attorney, who has no personal stake in the outcome thereof notwithstanding Defendant Fasanya's blithe observations to the contrary.

16.     Perhaps even more significantly, Restivo in both her February 16, 2017 Order to Show Cause and in her supplemental May 12, 2017 Order to Show Cause based her authority to seek contempt to enforce payment of her fees on Domestic Relations Law Section 245.  Domestic Relations Law Section 245 ONLY allows a **spouse** to enforce contempt in an action for divorce, separation or annulment.  As Mr. Brostowin argued before Defendant Fasanya, Restivo was certainly not a spouse, let alone a party to these proceedings and underlying petition before Defendant Fasanya was and is a petition for the modification of custody, not one for divorce, separation or annulment.  Consequently, Defendant Fasanya had **<u>no jurisdiction</u>** to enter a contempt order against Petitioner in favor of Carmen Restivo to compel the payment of her fees based on Domestic Relations Law Section 245.  More importantly, Defendant Fasanya has no basis to order Restivo as there as no petition existed and I had withdrawn, and he had confirmed I had a right to withdraw.

17.     Finally, Defendant Fasanya egregiously violated my civil rights by finding me in contempt of court on June 30, 2017 without first issuing a written judgment in favor of Restivo in the amount of the fees that Restivo had sought which I could have appealed and stayed pursuant to CPLR Section 5519 by the tender of the surety bond that I unsuccessfully attempted to present to Defendant Fasanya.  Since Restivo sought only the payment of money, proper practice would have been to issue a judgment which could have been appealed and stayed by virtue of the surety bond.

I may well have even been able to recover any funds ultimately paid after a successful appeal pursuant to CPLR Section 5523.

18. Instead, Defendant Fasanya ran roughshod over proper procedure and incorrectly transformed Restivo's application for fees into a contempt proceeding. Defendant Fasanya thereupon on June 30, 2017 found me in contempt from the bench without ever issuing a written order of contempt and moved directly to the penalty phase. This was abominable.

19. Judiciary Law 770, which sets the parameters for the final order directing punishment for contempt, clearly states that when a court finds that the accused has committed the offense charged, it must "make a final order directing that he or she be punished by fine or imprisonment or both, as the nature of the case requires." It has been the law of the State of New York for over one hundred and twenty-five years that when no final order was issued, a person was not in custody by virtue of a mandate, and was entitled to his discharge. In re Crosher, 11 N.Y.S. 504 (1890). Furthermore, the final order must contain both findings of fact and a determination of willfulness. Elliot v. Marble, 49 A.D.3d 923, 854 N.Y.S. 2d 548 (3rd Dept. 2008).

20. Notwithstanding the foregoing, on June 30, 2017, at the close of a monthlong series of hearings as to whether I should be held in contempt of court to enforce payment of Restivo's fees, Defendant Fasanya found me in contempt of court from the bench and thereupon issued a written order of commitment remanding me to the NYC Department of Correction. A copy of transcript of the proceedings of June 30,

2017 in which Defendant Fasanya found Petitioner in contempt of court is annexed hereto as one of the exhibit and a copy of the June 30, 2017 Order of Commitment remanding Petitioner to the NYC Department of Correction.

21. Once Defendant Fasanya found me to be contempt of court, I volunteered to tender a surety bond in the amount Restivo requested but Defendant Fasanya refused to accept the surety bond and required me to make immediate payment.

22. Although I offered to pay, I told Defendant Fasanya that "I will pay" and that "I can purge it this afternoon", Defendant Fasanya did not allow me to purge the contempt before remanding me to the NYC Department of Corrections for incarceration. Defendant Fasanya to allow him to purge the contempt are set forth in the transcript of the proceedings of June 30, 2017 at page 31, line 20, page 32, line 14 and page 33, line 14.

23. I was in fact remanded to the NYC Department of Correction on the Friday afternoon before the beginning of the long July 4 holiday weekend for a period not to exceed 150 days and was not released from incarceration until my life partner, Hatun Aytug, returned to the court with certified checks in the amount of $45,000 which Defendant Fasanya accepted as substantial compliance with his directive.

24. Had Hatun Aytug not returned to the court with enough funds in certified checks to constitute substantial compliance with Defendant Fasanya's order, Defendant Fasanya would have held the next court hearing on July 4, 2017, thereby incarcerating over the long weekend.

25. Contempt is a draconian sanction that should never be used to enforce the payment of financial obligations, particularly herein where Plaintiff has repeatedly withdrawn in direct response to Defendant Fasanya's collusion with Restivo and my other objections argued to Defendant Fasanya on a dozen occasions.

26. My due process rights were grossly infringed by my loss of liberty on June 30, 2017 based on illegal collusion, that was retaliatory and a procedurally defective and unsupported application for and determination of contempt. Any penalty that can give rise to a loss of liberty requires procedural due process safeguards far in excess of those required when only property is at stake.

27. Defendant Fasanya egregiously violated my civil rights by essentially allowing Carmen Restivo to resurrect debtor's prison to force me to pay her fees. Such a procedure violates all the Constitutional guarantees of due process and of fundamental fairness.

28. Defendant Fasanya called Ms. Restivo and the Plaintiff's lawyer into his chambers and threatened him with a grievance complaint unless I changed my testimony. I refused and was left without counsel when Defendant Bosak executed his June 30, 2107 orders his court officers to arrest me and deliver me to a van to take me deliberate to jail, knowing that I have a fully bonded Notice of Appeal and the ability to make payment as I had 11 times before.

29. I recap the list of laws that Defendant Fasanya deliberately violated for the purpose of engaging in wrongdoing and his fabrication of jurisdiction even after acknowledging my withdraw:

> Magistrate Fasanya's acts are fraudulent under Civil Practice Law and Rules ("C.P.L.R.") § 3013, § 3016 and § 5015, malicious and deliberate under Family Court Act §145 and criminal under NYC Criminal Court Act § 59 and NYS Penal Code § 10 (17), § 195 and § 496.06;
>
> The alleged acts are also violations of Judiciary Law 100 and violations of fundamental jurisprudence prohibiting the use of general administrative and ministerial powers under Judiciary Law 2-b(3) for making judgments or prejudicing rights and denying hearings;
>
> The alleged acts include violations of the exact and explicit statutory requirements of C.P.L.R. § 5104, and § 5523, NY City Rules of Court § 604.2, F.C.A. § 245 and § 249, D.R.L. § 236 and § 249, Judiciary Laws § 753, § 756, §770, § 772 and § 773 and applicable common law standards governing contempt for the deliberate and malicious purpose of issues a fraudulent commitment order;
>
> contempt unavailable to enforce the AFC fees under DRL 245 since contempt pursuant to DRL 245 is available only to a spouse, not a third party service provider like the AFC its available only to a party in a domestic relations proceeding;
>
> the AFC cannot seek contempt pursuant to Judiciary Law Section 756 since she is not a party to the proceedings
>
> the unavailability of contempt to enforce any money judgment under the doctrine of <u>Lowe's Theatre & Realty Corp. v. 105 Second Avenue Enterprises, Inc.</u>, 31 A.D.2d 628, 296 N.Y.S.2d 15 (1st Dept. 1968);
>
> the obligation of Judge Fasanya pursuant to CPLR Section 5519 to accept the surety bond offered by Petitioner and to have stayed the underlying proceedings;

the failure of Judge Fasanya to issue a written order finding Petitioner in contempt as required by Judiciary Law 770 before imposing a penalty for said contempt;

Petitioner testified that he was never served with a certified copy of the Court Order upon which the contempt is based notwithstanding the requirement of CPLR Section 5104

November 16, 2015 Transcript of Proceedings

THE COURT: You are free to withdraw …there's no pending application before me.

Nov. 4, 2016 Transcript of Proceedings


THE COURT: "Your presence in this courtroom is a voluntary one.... There's no compulsion for you to be present in this courtroom…. I will not…[repeat] I will not take any steps to compel you to come to court…. You are free not to come to court."


March 13, 2017 Transcript of Proceedings

THE COURT: "All of Mr. Asensio's petitions are marked withdrawn."

**The First Disposition of the Motion to Dismiss**

In November 17, 2014 Defendant Fasanya denied Defendant Bosak's motion to dismiss and application for legal fees and a trial date was set.

**The Second Disposition of the Motion to Dismiss**

On July 15, 2015 Defendant Fasanya declined to allow the Petitioner to withdraw his petition due to the motion to dismiss being outstanding.

**The Third Disposition of the Motion to Dismiss**

On November 16, 2015, Judge Fasanya ruled: "You are free to withdraw [your petition]. But if I have applications that are pending before me, I will not permit you to withdraw the petition until I address that application. … I say … at this point, Mr. Asensio, there's no pending application before me."

**The Fourth Disposition of the Motion to Dismiss**

On January 21, 2016, Defendant Fasanya entered a fabricated *Sua Sponte* De Hors Decision and Order for legal fees based in the motion to dismiss that he had denied and restricted and denied again.

**The Fifth Disposition of the Motion to Dismiss**

The sixth disposition of the motion to dismiss occurred on January 27, 2016, only six days after Judge Fasanya issued the order of January 21, 2016. On this day, the Judge Fasanya requested the assistance of both parties to determine what motions were still outstanding. The Court stated on the record that the recent decision was a counsel fee decision.

THE COURT: … I want each party and counsel to come back and let me know what they believe is outstanding in this matter.

13

>THE COURT: This court just rendered a decision on the counsel fee application. …
>
>Thus, Judge Fasanya's own statements show entered the counsel fee application without a counsel fee request.

### The Sixth Disposition of the Motion to Dismiss

>On October 18, 2016, Defendant Fasanya again fabricates an over 2 years after he issued denied Defendant Bosak's motion to dismiss:
>
>THE COURT: "There's a pending application filed by the respondent seeking a dismissal of the amended petition filed by Mr. Asensio and seeking counsel fees."

30. During the hearing that ended on June 30, 2017 I once again testified directly to Defendant Fasanya that he was acting dishonestly, deliberately engaging in wrong doing, as follows:

>THE COURT: Do me a favor please. Turn the chair this way so I can see your face when you testify. Turn the chair please. Thank you.
>
>THE WITNESS: I have told the Judge, and I [would] like to testify today […based on the] evidence [as to] his conscious wrongdoing against me and my daughter. A deliberate intentional wrongdoing which is utterly intolerable in a civilized society. […] I have the case law that supports my right to be able to put testimony [in to] the record that [the Judge has…] deliberately […] created burdens against me so I cannot prosecute my case. That did not work.

14

[…] Then [the Judge] suspended me wrongfully for no reason, and then [the Judge] intensified the amount of [the] burdens that [the Judge is] creat[ing] [against] me [with] the attorney for the child fees. I have evidence that support[s] th[is] clearly. I presented it to [the Judge] and [the Judge did] not allow […] me to testify to it. It's an essential and fundamental part of this case. [The Judge is] guilty in my view, and I have the evidence to show that [the Judge is] consciously and deliberately maliciously prosecuting the attorney for the child's fees against me, and that the Judge suspended me in the same way, and those things are wrong, and I need to make a re[cord] of them. There's a Court of Appeals Case [Rotwein v Sunharbor Manor Residential Health Care Facility, 181 Misc.2d 847 (Misc 2d,1999)]… that specifically says that [even] when a Judge won't refra[in] from doing bad acts [even if the testimony is futile and that] it [will] not help the individual to try argue to [with a] Judge who won't refra[in] from and won't abstain from [wrongdoing]. In any case, [I am] entitled to make a record of the Judge's deliberate and conscious wrong[doing…] in order to be able to make a record for appeal. And I'd like to do that. It's my right under [rules of reason and this] Court of Appeals Case.

    THE COURT: Next question, Mr. Browstowin.

    (To the Witness) Turn the chair back, Mr. Asensio.

31. I swear that I am fully familiar with the facts, factors and circumstances contained in this affidavit and that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

_____
Manuel P. Asensio

Plaintiff