<table>
Manuel P. Asensio, individually and as the parent of Eva Asensio, a minor child,

Plaintiffs,

- against -

Janet DiFiore, Chief Judge of New York State; Barbara Underwood, Attorney General of New York State; Andrew M. Cuomo, Governor of New York State; Adetokunbo O. Fasanya, New York County Family Court Magistrate; and Emilie Marie Bosak, individually,

Defendants.
</table>

**Case No. 18 CV-10933-RA**

# MEMORANDUM OF LAW AND AFFIDAVIT
## IN OPPOSITION TO MOTIONS TO DISMISS ACCUSING HON. JOHN G. ROBERTS, JR., CHIEF JUSTICE OF THE SUPREME COURT OF THE UNITED STATES, OF COLLUSION WITH THE HON. ROBERT A KATZMANN, CHIEF JUDGE OF THE UNITED STATES CIRCUIT COURT

COMES NOW the Plaintiff, Manuel P. Asensio, proceeding pro se and does hereby file this Memorandum in Response to Defendants' Motions to Dismiss under Federal Rules of Civil Procedure ("F.R.C.P.") 12(b)(1) and 12(b)(6).

May 17, 2019

Manuel P. Asensio, being duly sworn, deposes and says:

1.       This memorandum and affidavit are further to the allegations against complaint filed under Judicial Conduct Act of 1980 20 U.S.C. §§351-364 [Doc 60-1] against the Chief Judge of the United States Court of Appeals for the Second Circuit Hon. Robert A. Katzmann ("Judge Katzmann") Chief Judge Roberts.  This complaint is an exhibit to the Opposition to Motion to Dismiss Doc. 60. It concerns the *Katzmann-DiFiore Agreement*.[1] The exhibit hereto is the Plaintiff's *Asensio et al. v. Roberts et al., 19 CV 03384* (henceforth "Asensio II") complaint and exhibits. The exhibits include the Plaintiff's March 5, 2019 28 U.S.C. §§ 351–364 complaint filed with the Hon. John G. Roberts, Jr., Chief Justice of the Supreme Court of the United States (henceforth "Chief Justice Roberts") against Judge Katzmann. The complaint addressed Judge Katzmann's concealment of complaints against the New York federal judges who planted a story in the New York *Daily News* to defend Defendants in *Asensio et al. v. DiFiore et al., 18 CV 10933* ("henceforth "Asensio I") and their collusion with Defendants to fabricate a dismissal in Asensio I.

2.       The culpability for the Federal judges' conscious wrongdoings and corrupt acts in Asensio I and Asensio II falls squarely and clearly at the feet of Chief Justice Roberts. Without Chief Justice Roberts' concerted effort to deceit the US Congress about the extraordinary harm being done by the federal judges to US citizens' under the cover of the so called "domestic relations exception to federal subject matter [Article III] jurisdiction," the Defendants would not have been able to commit the acts alleged in this complaint.[2]  Chief Justice Roberts is using his capacity as presiding

---

[1] Judge Katzmann has deliberately used his government positions dishonestly for the corrupt purpose of entering into a protection agreement and understanding with Janet Marie DiFiore, New York State's Chief Judge, under which she is operating a completely unconstitutional and illegal organization of judges that are trained to convert post-divorce judgement child custody petitions into an income stream ("Katzmann-DiFiore Agreement").  Under the Katzmann-DiFiore Agreement, Chief Justice Katzmann is obligated to protect Chief Judge DiFiore from having to answer the allegations contained in Asensio v. DiFiore. This is necessary to protect Chief Judge DiFiore from discovery and from being confronted with the evidence before a federal jury. Chief Judge DiFiore herself has agreements with New York State's governor and state attorney general that protect her from state investigations and prosecution.

[2] The Plaintiff alleges that the State Defendants sanctioned Defendant Fasanya's collusion with Defendant Bosak to execute acts that are fraudulent under Civil Practice Law and Rules ("C.P.L.R.") § 3013, § 3016 and § 5015, malicious and deliberate under Family Court Act §145 and criminal under NYC Criminal Court Act§ 59 and NYS Penal Code§ 10 (17), § 95 and§ 496.06. The alleged acts are also violations of Judiciary Law 100 and violations of fundamental jurisprudence prohibiting the use of general administrative and ministerial powers under Judiciary Law 2-b (3) for making judgments or prejudicing rights and denying hearings. The alleged acts include violations of the exact and

judge and chief executive of the United States Judicial Conference[3] to conceal the above referenced complaints and to collude with Judge Katzmann.[4] He used his control over the Judicial Commission[5] to allow the New York Federal judges' unauthorized acts in furtherance of the corrupt motives to dismiss Asensio I and Asensio II. Without the Chief Justice Roberts's acts of omission and control, this level of corruption in New York federal court and New York State would not be possible.

3.      The most significant factual allegation in Asensio I and Asensio II is that the New York federal judges have conspired with the New York State Defendants against the People of the State of New York and their legislators, and in turn the Plaintiffs. It is Chief Justice Roberts, in his capacity as presiding judge and chief executive of the Judicial Conference, who illegally circumvented the United States Congress, the President of the United States and the American people in order to  protect his inferiors' conscious wrongdoing by using the Judicial Conference as a substantive cudgel to deprive New York citizens, and the Plaintiffs, of fundamental unilateral and comprehensive civil rights.  Because Chief Roberts takes these actions while acting as the presiding judge and chief executive of the Judicial Conference. He does so privately without notice, under the cover of being an administrator. His actions are unnoticed, concealed, unreviewable and protected by the federal judges that he empowers to collude with the New York

---

explicit statutory requirements of C.P.L.R. § 5104, and § 5523, NY City Rules of Court § 604.2, F.C.A. §245 and§ 249, D.R.L. § 236 and§ 249, Judiciary Laws § 753, § 756, §770,§772 and § 773 and applicable common law standards governing contempt for the deliberate and malicious purpose of issues a fraudulent commitment order.

[3]   https://www.uscourts.gov/about-federal-courts/governance-judicial-conference/about-judicial-conference   The Chief Justice has sole authority to make committee appointments… Judicial Conference committees derive their jurisdiction and legal basis for existence from the Conference itself and the Chief Justice as presiding officer. The committees and their chairs have no independent authority or charge apart from those conferred upon them by the Conference or its Executive Committee.   Also see, "The Chief Justice as Executive: Judicial Conference Committee Appointments" Dawn M. Chutkow. Journal of Law and Courts Vol. 2, No. 2 (September 2014), pp. 301-325

[4]  US Chief Justice Roberts appointed Chief Justice Katzmann to be the Chair of the U.S. Judicial Conference Committee on the Judicial Branch, a member of the Executive Committee of the U.S Judicial Conference and as Chair of the Supreme Court Fellows Commission.

[5]  https://www.uscourts.gov/about-federal-courts/governance-judicial-conference   "The Judicial Conference of the United States is the national policy-making body for the federal courts. The current name took effect when Congress enacted Section 331 of Title 28 of the United States Code. Before that, the body was known as the Conference of Senior Circuit Judges from its creation in 1922."

State Defendants.  Together, Chief Judge Roberts and the federal judges join with the New York State defendants in concealment for New York State and US legislators and citizens.

4.     Asensio I is based-on evidence gathered in an investigation of the processes that New York State uses in routine, simple post-divorce judgement custody petitions. The Plaintiff commenced the investigation on May 15, 2014. He filed Asensio I on November 21, 2018 and Asensio II on April 16, 2019.  The investigation uncovered evidence demonstrating that New York State's governor, state attorney and chief judge have designed and are managing a corrupt post-divorce judgement custody process. Their corrupt process is operated by over 120 senior state officials. This corrupt organization illegally prolongs and complicates simple, normal, routine family matters[6] into over a $350,000,000[7] annual income stream for the courts. Asensio I's opening paragraph is the following:

> The Plaintiff, Manuel P. Asensio, files this pleading individually and on behalf of his daughter, Eva Asensio, born October 14, 2004. It is an indisputable and undeniable fact that New York State Chief Judge Janet Marie DiFiore ("Defendant DiFiore") retaliated against the Plaintiffs as a direct response to the Plaintiff's investigations into Defendant DiFiore's ongoing malicious use of the federal courts' so-called "domestic relations exception to Article III or federal subject matter jurisdiction." The Plaintiffs define the acronym "DRE" as the "domestic relations exception." Defendant DiFiore uses the DRE to protect her ability to use her powers[8]

---

[6] New York State Executive Law Article 49-a §990 requires that the State "ensure the strength and viability of [children's] families" and that the State "maximizes support and strengthen[s] of the family structure," and §991requires that the state "give priority to the prevention of family disintegration" and by "accountable to the people they serve." Instead, the State fabricates jurisdiction over families' most private and unilateral rights for the sole purpose of usurping over $350,000,000 a year from its private citizens.

[7] This amount does not include economic losses due to corruption's disruptions in normal private families that have done no wrong nor imposed themselves on any other citizen and the deliberate accounting of private child support payments improperly in order to usurp funds from the US social security fund.

[8] Defendant DiFiore is the Chief Judge of the State and the Court of Appeals. She is also the Chair of the Administrative Board of the Courts, which sets the state's judicial standards and policies, the Head of the Office of Court Administration, and the sole state official responsible for the supervision of the Justice Department's ethics and judicial conduct education. She holds the state's only power under Judiciary Law §212(1) (h) to directly investigate

wantonly, as she has done in the Plaintiff's post-divorce judgment actions against Emilie Marie Bosak ("Defendant Bosak") and to protect her impermissible 'use tax' scheme and her malicious <u>domestic relations process</u>. The process is entirely based on deliberate and malicious fabrications that are created without legitimate jurisdiction, rules, controls, standards, or codes. The process' central purpose is the fabrication of charges, evidence, fees and judgments based on concealed impermissible ideological rules. The Plaintiff defines the acronym "PIDRP" to mean Defendant DiFiore's "<u>prohibited and impermissible domestic relations process</u>." The DRE is a counterintuitive, counterfactual, prejudicial and unsupported blind sanctioning of Defendant DiFiore's wanton crimes against the public.

5.     Plaintiff filed Asensio I to address egregious civil rights violations he suffered in the New York State Courts.  These civil rights violations were initially perpetrated by a New York City Family Court Magistrate Judge and included, inter alia, the use of fabricated criminal proceedings to trap him in both the criminal justice and Family Court systems,  illegal contempt orders that unconstitutionally forced him to pay large sums of money to opposing counsel and to an unvetted court operative or lose his liberty, and illegal and unjustifiable suspensions of his parental rights in contradiction of nearly a century of New York jurisprudence built on the sanctity of the parent-child bond in order to alienate him from his daughter.

6.      It ultimately became clear to Plaintiff however that the New York State Defendants in Asensio I were in fact overseeing and protecting a pervasive Family Court-based fraudulent scheme. They operate by fabricating jurisdiction and petitions in private cases, against non-custodial parents, who are primarily fathers, to eliminate the cases while generating funds to support the Family Court's system cost of processing public cases.  In Asensio I this was done by Defendant Bosak colluding with the corrupt Family Court judge, Defendant Fasanya who operated in tandem with corrupt Family Court appointees who redirect a portion of their inflated fees back

---

judicial misconduct, while controlling, along with the governor, the state's commission for the adjudication of judicial misconduct.

into the system, all under the watchful and approving eyes of New York State appellate judges and of the Chief Judge of the New York Court of Appeals, Defendant DiFiore. It was for this reason that the Plaintiff withdrew from New York's domestic relations process on May 15, 2014 and commenced his actions against Defendant Fasanya. Defendant DiFiore retaliated and the Plaintiff filed Asensio I.

7.      The Hon. Ronnie Abrams, United States District Judge for the Southern District of New York (henceforth "Judge Abrams") was assigned as the presiding judge in Asensio I.   Since Plaintiff filed Asensio I, Judge Abrams has demonstrated that she is as dedicated to protecting the New York State Defendants named in that action as the New York State Defendants have been in protecting their corrupt Family Court scheme.  And Judge Abrams has been able to do so by plain corruption going as far as colluding with Defendant DiFiore to plant negative a negative new story. Judge Katzmann then protected Judge Abrams against the Plaintiff's complaints at the Judicial Council by simply concealing them.  This act required the consent and approval of Chief Judge Roberts who is personally responsible for overseeing the handling of complaints. The entire scheme is based on a coordinated and concerted effort by Chief Judge Roberts to manipulate the US Congress and conceal his actions from the American people and their President.

8.      In *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court actually flaunt their scheme to deceive the US Congress fabricating the ideas that bases for the domestic relations exception is  **Congress's apparent acceptance** of it for over 100 years following the exception's original pronouncement in *Barber v. Barber,* 62 U.S. 582, 21 and Congress's **failure to mention the exception** in 28 U.S.C. § 1332. *Ankenbrandt,* 112 S.Ct. at 2213.

9.      *Ankenbrandt* further asserts that the Supreme Court's 1859 decision in *Barber v. Barber,* 21 How. at 582, 16 L.Ed. 226 (1859), that "Given the long passage of time **without any expression of congressional dissatisfaction**, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders." *Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206.

10.     In fact, *Barber v. Barber* the 1858 US Supreme Court case claimed to be the origins of the domestic relations exception to federal subject matter jurisdiction, does the opposite. It decrees a

clear and stern warning to federal judges against the disclaiming of jurisdiction over the design and operation of a state's custody process:

> It is not in accordance with the design and operation of a [state] Government . . . [to] assume to regulate the domestic relations of society . . . [to take an] inquisitorial authority, [in order to] enter the habitations and even into the chambers and nurseries of private families, and inquire into and pronounce upon the morals and habits and affections or antipathies of the members of every household . . . [this is the case] whether [a state statute] expressly conferred upon the State courts, or tacitly assumed by them, their example and practice cannot be recognized as sources of authority by the courts of the United States. The origin and the extent of their jurisdiction must be sought in the laws of the United States. *Barber v. Barber*, 62 US 582 (1858)

11.     The DRE is diametrically opposed to Americans' widely held beliefs of the government's role in domestic relations and the federal court's role in protecting their liberty and constitutional rights from state government interference.

12.     The concepts espoused by *Barber v. Barber* are clear and explicit. The basic rule is that any domestic relations state process, whether it exists under a state statute or whether it has been tacitly assumed by the state, cannot be recognized by the courts of the United States if it does not comply with US law. Yet the DRE policy creates the reverse. *It creates a free for all for state judges and lawyers.*

13.     In the early part of this year Judge Abrams revealed her determination to dismiss Asensio I by imposing a one-sided stay to deny the Plaintiff the right to narrow the issues of a motion to dismiss.  Judge Abrams then added insult to injury by cooperating with the New York State Defendants to issue derogatory comments about Plaintiff to the New York Daily News for an article which was published on January 21, 2019. Plaintiff filed a complaint against Judge Abrams with Judge Katzmann who concealed it.  Plaintiff's motions for Judge Abrams to recuse herself and further complaints naming both Judge Abrams and Judge Katzmann were also concealed.  It is for this reason that Plaintiff filed Asensio II.

14.     Asensio II, which named Judge Abrams, Judge Katzmann and Chief Justice Roberts as defendants was assigned to Hon. Katherine Parker Failla, United States District Judge for the Southern District of New York (henceforth "Judge Failla"). Judge Failla issued a Sua Sponte

dismissal days after it was filed and order that the clerk restrict access to the complaint to protect herself, Judge Abrams, Judge Katzmann and ultimately, Chief Judge Roberts.

15.     Judge Failla's most obvious corrupt motive is to give cover for Judge Abrams' to continue to preside over Asensio 1.  Judge Abrams is obligated under 28 U.S.C section 455(b)(iii), Canon 3(C)(1)(d)(i) and (iii) of the code of Conduct for United States Judges of the Judicial Conference and Advisory Opinion 103 of the Committee on Codes of Conduct of the Judicial Conference to recuse herself as a party defendant.  Asensio II was dismissed on April 26, 2019.  Plaintiff consequently filed a formal complaint against Judge Failla for doing so on May 10, 2019.

16.      Chief Justice Roberts has allowed the Judge Katzmann to orchestrate misconduct on the part of Judge Abrams and Judge Failla and to vitiate plaintiff's formal complaints to the Judicial Conference against him, Judge Abrams and Judge Failla by intentionally concealing them.  The purpose of his concealment is to avoid referring them to a special committee of the Judicial Council for the Second Circuit, thereby making them a matter of public record.

17.     Chief Justice Roberts is directly responsible for the Judicial Conference's concerted efforts to deceive the US Congress.

18.      Plaintiff has raised fundamental questions of both substantive and procedural due process involving his rights as a parent to freedom of thought, speech, religion and association.  He is at the very least entitled to a full and fair hearing on these allegations before a jury of his peers.  Chief Justice Roberts and Judge Katzmann cannot dispose of these allegations by using opaque and arcane administrative practices to allow Judges Abrams and Failla to silence Plaintiff and dismiss Asensio I and Asensio II for the purpose of denying him access to justice.

19.     Plaintiff does not make these allegations lightly.  Yet at the same time he is unable to acquiesce in pervasive and egregious corruption or suffer the loss of his daughter.  As the highest judicial officer in the country, it is the responsibility and duty of Chief Justice Roberts to provide a full and thorough review of Plaintiff's allegations and complaints, to chastise Judges Abrams, Failla and Katzmann in the strongest  and to reinstate Asensio II which Judge Failla wrongfully

and maliciously dismissed.  Anything less is an miscarriage of justice of the highest order and a first and frightening step towards tyranny of an uncontrolled and unprincipled judiciary.

20.   The Plaintiff swears that he is fully familiar with the facts, factors and circumstances contained in this affidavit and that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

Manuel P. Asensio
Plaintiff