UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Manuel P. Asensio, individually and as the parent of Eva Asensio, a minor child,<br><br>Plaintiffs,<br><br>- against -<br><br>Janet DiFiore, Chief Judge of New York State; Barbara Underwood, Attorney General of New York State; Andrew M. Cuomo, Governor of New York State; Adetokunbo O. Fasanya, New York County Family Court Magistrate; and Emilie Marie Bosak, individually,<br><br>Defendants. | **Case No. 18 CV-10933-RA** |

**MEMORANDUM OF LAW AND AFFIDAVIT IN OPPOSITION IN RESPONSE TO DEFENDANT GOVERNOR, DEFENDANT STATE ATTORNEY GENERAL AND DEFENDANT EMILIE MARIE BOSAK COLLUSION WITH DEFENDANT FASANAY TO FABRICATE THE JANUARY 15, 2016 SO CALLED 'INTERIM' SUSPENSION**

COMES NOW the Plaintiff, Manuel P. Asensio, proceeding pro se and does hereby file this Memorandum in Response to the Non-Fasanya Defendants use of Defendant Fasanya's January 15, 2016 so called 'interim' suspension in their Motions to Dismiss under Federal Rules of Civil Procedure ("F.R.C.P.") 12(b)(1) and 12(b)(6).

May 17, 2019

1. This memorandum of law addresses Defendants Cuomo, James and Bosak's reliance on Defendant Fasanya's fabricated January 15, 2016 so called "interim" suspension while concealing and ignoring evidence demonstrating their ongoing collusion against the Plaintiff since May 15, 2014 that led up to the January 15, 2016 scheme. The Defendants also concealed the evidence showing the Non-Fasanya State Defendants sanctioning of Defendant Fasanya's collusion with Defendant Bosak to execute acts that are fraudulent under Civil Practice Law and Rules ("C.P.L.R.") § 3013, § 3016 and § 5015, malicious and deliberate under Family Court Act §145 and criminal under NYC Criminal Court Act§ 59 and NYS Penal Code§ 10 (17), § 95 and§ 496.06. The alleged acts are also violations of Judiciary Law 100 and violations of fundamental jurisprudence prohibiting the use of general administrative and ministerial powers under Judiciary Law 2-b (3) for making judgments or prejudicing rights and denying hearings. The alleged acts include violations of the exact and explicit statutory requirements of C.P.L.R. § 5104, and § 5523, NY City Rules of Court § 604.2, F.C.A. §245 and§ 249, D.R.L. § 236 and§ 249, Judiciary Laws § 753, § 756, §770,§772 and § 773 and applicable common law standards governing contempt for the deliberate and malicious purpose of issues a fraudulent commitment order.

2. Defendant Fasanya colluded with Defendant Bosak to fabricate all the allegations and actions related to the January 15, 2016 so called "interim" suspension. Further, based on the facts, factors, circumstance and court records of Defendant Fasanya collusion with Defendant Bosak to fabricate the Restivo *Sua Sponte* summary fee orders without any hearing, discovery, reason, purpose, authority or jurisdiction from May 15, 2015 until January 15, 2016, the January 15, 2016 so called "interim" suspension was a calculated and deliberate act of retaliation against the Plaintiff.

3. It was Defendant Bosak, not the Plaintiff, who committed violations in December 2015, and in November 2015, wherein she denied the Plaintiff access his daughter for his rightful parenting time at Thanksgiving and Christmas and left the child to travel to Mexico without notice to the Plaintiff. This collusion caused greater harm. It has eliminated the Plaintiff's parenting time with his daughter to almost nothing, it placed the Plaintiff under an onerous, unnecessary and draconian fabricated interim order of supervised visitation that is self-defeating and harmful and has driven an almost irreparable wedge in the relationship between the Father and Child. *See Cervara v. Bressler*, 50 A.D.3d 837 (2d Dep't 2008) ("[B]ecause no hearing was ever held on the order to show cause brought by the attorney for the child, … visitation has remained supervised, and telephone contact between father and daughter has been monitored, … based solely on the hearsay allegations of the mother…. [I]t is unacceptable to this Court that the hearing in this matter has not been held, although ordered more than 2½ years ago."); *Matter of Gainza v Gainza,* 24 A.D. 3d 551 (2005) ("Supervised visitation is appropriately required only where it is established that unsupervised visitation would be detrimental to the child"); *Purcell v. Purcell*, 5 A.D.3d 752 (2d Dep't 2004) (denying mother's motion for supervised visitation because it was based solely on unsupported hearsay allegations; the mother failed to establish that unsupervised visitation would be detrimental to the children's well being). *See also (Matter of Joseph A. (Fausat O.)*, 91 A.D.3d 638 (2d Dep't 2012). It is not lost on Petitioner and his counsel that the supervision order imposes a further expense on the already financially-strapped Petitioner. He had no choice but to find the money, or not see his daughter for that one precious hour a week.

4. It is particularly concerning that the Plaintiff's parenting time with his daughter Eva was suspended and is now extremely limited based on unsupported hearsay allegations, as in *Purcell*

*v. Purcell* above. Defendant Bosak was *not even present*, yet her word was followed by Defendant Bosak, with no hearing at all. Defendant Bosak was at a beach in Mexico, posting photographs of herself smoking what looked like a "rolled up cigarette" according to a tabloid account of the events. In fact, it was upon being informed of this public media posting that the Plainitff, in concern for his daughter, went to get the Child from her apartment, rather than leave her with a non-parent. The bitter irony was that *he* was the victim of a parenting time violation when Defendant Bosak refused to give him the Child for Christmas day, per the custody provisions in their stipulation (a violation that was the subject of his application filed around that time, which Defendant Fasanya ignored). Furthermore, in an clear act of collusion, Defendant Fasanya used Defendant Bosak's fabricated unsupported allegations and suspended all contact with the child, an order that remains largely in effect today, without the benefit of a full hearing.

5. Defendant Bosak acts, if looked at fairly by Judge Abrams, would certainly find warrant punishment and change in custody. The weight of statutory and case law in support is substantial. "It is firmly established...that...wherever possible, the best interests of a child lie in his being nurtured and guided by both of his natural parents." *Daghir v. Daghir,* 92 A.D.2d 191, 193 (2d Dept. 1981). The extent of deterioration of the relationship between that parties constitutes a sufficient change in circumstances to warrant a modification of an existing custody arrangement. *See Matter of Gaudette v. Gaudette,* 262 A.D.2d 804, 805 (3d Dept. 1999), lv. denied 94 N.Y.2d 790 (1999) ("The record fully supports Family Court's determination that the continued deterioration of the parties' relationship is a significant change in circumstances justifying a change in custody.")

6. *In the Matter of Green v. Gordon,* 7 A.D.3d 528 (2d Dep't 2004) (where the mother was *inter alia*, openly hostile toward the father, deliberately frustrated and interfered with the father's visitation rights, filed petty or baseless violation petitions, and made false allegations of child neglect, the court affirmed a changed of custody to the father on the basis that the mother's conduct was inconsistent with the best interests of the child).

7. Furthermore, Defendant Fasanya must consider which parent is more likely "to assure meaningful contact between the child and the non-custodial parent." *In the Matter of Green v. Gordon,* 7 A.D.3d at 529. Another factor courts consider is which parent can demonstrate a "greater ability to handle the antagonistic nature of the parties' relationship in a positive manner for the welfare of the children." *Matter of Morgan v. Becker,* 245 A.D.2d 889,891 (3d Dep't 1997).

8. Interference with the relationship between the child and the non custodial parent is "an act so inconsistent with the best interest of the child that it raises a strong presumption that the offending parent is unfit to act as custodial parent." *Gago v. Acevedo,* 214 A.D.2d 565, 566 (2d Dep't 1995); *In the Matter of Carl J.B. v. Dorothy T.,* 186 A.D.2d 736 (2d Dep't 1992); *Prugh v. Prugh,* 298 A.D.2d 569 (2d Dep't 2002); *Bobinski v. Bobinski,* 9 A.D.3d 441, 780 N.Y.S.2d 185 (2d Dept. 2004). *See also Young v.Young,* 212 A.D.2d 114, 123 (2d Dep't 1995) (The custodial parent's anger, hostility and attitude toward the non custodial parent can substantially interfere with her ability to place the needs of the children before her own in fostering a continued relationship with then on custodial parent).

9. *See Matter of Lukaszewicz v. Lukaszewicz,* 256 A.D.2d 1031,1032-1033 (3d Dep't 1998) (The best interests of the children is paramount in custody determinations and a court must base its decision on the totality of the circumstances including the ages of the children, fitness of the parents, quality of the home environment, each parent's ability to provide for the child's intellectual and emotional development, and *the effect of the award of custody on one parent would have on the child's relationship with the other*) (emphasis supplied).

10. It is clear from the facts that Defendant Fasanya colluded with Defendant Bosak and from the case law that by not giving the slightest attention to all of the Plaintiff's motions and applications and examined Defendant Bosak's conduct in blocking the Father from access to their child, in literally hiding important facts from the Plaintiff like the broken arm, in leaving the child with third parties on multiple occasions without notice or giving right of first refusal to the Plaintiff, in blocking his telephone access to Eva and numerous other violations of their custody contract, that Defendant Fasanya if he were not colluding with Defendant Bosak would be obligated by reason and law to modified custody to transferred full custody to the Plaintiff. Instead, the Plaintiff and the child has been badly damaged, indeed, almost severed because of the numerous fraudulent and illegal acts of collusion that have nothing to do with jurisdiction or law or any legitimate state function.

11. Interference with the relationship between the child and the non-custodial parent is "an act so inconsistent with the best interest of the child that it raises a strong presumption that the offending parent is unfit to act as custodial parent." *Gago v. Acevedo,* 214 A.D.2d 565, 566 (2d Dep't 1995); *In the Matter of Carl J.B. v. Dorothy T.,* 186 A.D.2d 736 (2d Dep't 1992); *Prugh*

*v. Prugh,* 298 A.D.2d 569 (2d Dep't 2002); *Bobinski v. Bobinski,* 9 A.D.3d 441, 780 N.Y.S.2d 185 (2d Dept. 2004). *See also Young v. Young,* 212 A.D.2d 114, 123 (2d Dep't 1995) (The custodial parent's anger, hostility and attitude toward the non custodial parent can substantially interfere with her ability to place the needs of the children before her own in fostering a continued relationship with then on custodial parent).

12. *See Matter of Lukaszewicz v. Lukaszewicz,* 256 A.D.2d 1031,1032-1033 (3d Dep't 1998) (The best interests of the children is paramount in custody determinations and a court must base its decision on the totality of the circumstances including the ages of the children, fitness of the parents, quality of the home environment, each parent's ability to provide for the child's intellectual and emotional development, and *the effect of the award of custody on one parent would have on the child's relationship with the other*) (emphasis supplied).

13. Litigants have the right to have their applications heard promptly and to be given a final reviewable order. A wealth of case law supports this doctrine. *See Grisi v. Shainswit,* 119 A.D.2d 418 (1st Dep't 1986) (the practice of conditioning the making of a formal motion upon prior judicial approval tends to frustrate a litigant's statutorily provided right of appeal from an intermediate order); *People v. Herrara,* 571 N.Y.S.2d 63 (2d Dep't 1991) (when the judge refused to sign an order on a decision he delivered from the bench, the party had the right to bring an Article 78 proceeding to compel the judge to issue a written, appealable order); *Lipson v. Dime Sav. Bank, FSB,* 203 A.D.2d 161 (2d Dep't 1994) (While it is true that each court has inherent power to control its own calendar and the disposition of business before it, no matter how pressing the need for expedition of cases, the court may not deprive the parties of the fundamental rights to

which they are entitled); *Herbert v. New York,* 126 A.D.2d 404 (1st Dep't 1987) ("[T]he fundamental right of a litigant to pursue an appeal pursuant to CPLR 5701 (a) (2) should not be frustrated by judicial resort to expedients, even when a court's use of expedients stems from its very legitimate concerns with calendar control and the discouragement of excessive motion practice."). It is particularly important in any matter that involves children and their relationships within their families. Justice delayed is truly justice denied in family law matters. Petitioner has lost valuable time with his daughter and their relationship has been put under enormous strain by this Court ignoring all his applications and petitions based on Respondent Mother's repeated alleged violations.

14. The Plaintiff swears that he is fully familiar with the facts, factors and circumstances contained in this affidavit and that the statements I make are complete and true to the best of my knowledge including any matters stated upon personal information and belief.

_____
Manuel P. Asensio
Plaintiff