# EXHIBIT 1: LEGAL AUTHORITIES ON CITIZEN'S RIGHTS AGAINST GOVERNMENT INTRUSION

1.  **Evil Decision Making**

"Adjudication is subject to the requirement of reasoned decision making as well. It is hard to imagine a more violent breach of that requirement than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it. Reasoned decision making, in which the rule announced is the rule applied, promotes sound results, and unreasoned decision making the opposite. The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel (notably ALJ's), and effective review of the law by the courts."

Allentown Mack Sales and Service, Inc. v. N.L.R.B., 118 S.Ct. 818, 827, 522 U.S. 359, 374–75 (U.S., 1998)

2.  **Criminal Indifference to Civil Obligations**

"Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignation, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. However, the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations." Id., 62 U.S. (21 How.) at 214. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done willfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case, the jury are authorized, for the sake of public example, to give such additional damages, as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages."

Smith v. Wade, 103 S.Ct. 1625, 1632, 461 U.S. 30, 41 (U.S., 1983)

"Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations."

Philadelphia, W. & B.R. Co. v. Quigley, 62 U.S. 202, 214, 16 L. Ed. 73 (1858)


"Although this rule was announced in an action for libel, it is equally applicable to suits for personal injuries received through the negligence of others. Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case, the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages."

Milwaukee & St. P.R. Co. v. Arms, 91 U.S. 489, 493, 23 L. Ed. 374 (1875)


3.  **Gross Negligence**

" 'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence;' but, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employés of the company did not use the care that was required to avoid the accident. But the absence of this care, whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this, there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences."

Milwaukee & St. P.R. Co. v. Arms, 91 U.S. 489, 495, 23 L. Ed. 374 (1875)

4. **No Man Can Be A Judge in His Own Case and No Man Is Permitted to Try Cases Where He Has an Interest in The Outcome**

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome… 'Every procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.'[1] Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'[2] "

In re Murchison, 349 U.S. 133, 136–37, 75 S. Ct. 623, 625–26, 99 L. Ed. 942 (1955).

5. **Very strange if our system of law permitted a judge … try the very persons accused because of his investigations… that process a judge cannot be, in the very nature of things, wholly disinterested.**

It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused because of his investigations…Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer."

In re Murchison, 349 U.S. 133, 136–37, 75 S. Ct. 623, 625–26, 99 L. Ed. 942 (1955).

---

[1] Tumey v. State of Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749;
[2] Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13.

6. **We are not without tragic proof that the exalted power of some governments to punish manufactured crime dictatorially is the handmaid of tyranny**

"We are not impressed by the argument that law enforcement methods such as those under review are necessary to uphold our laws. The Constitution proscribes such lawless means irrespective of the end. And this argument flouts the basic principle that all people must stand on an equality before the bar of justice in every American court. Today, as in ages past, we are not without tragic proof that the exalted power of some governments to punish manufactured crime dictatorially is the handmaid of tyranny. Under our constitutional system, courts stand against any winds that blow as havens of refuge for those who might otherwise suffer because they are helpless, weak, outnumbered, or because they are non-conforming victims of prejudice and public excitement. Due process of law, preserved for all by our Constitution, commands that no such practice as that disclosed by this record shall send any accused to his death. No higher duty, no more solemn responsibility, rests upon this Court, than that of translating into living law and maintaining this constitutional shield deliberately planned and inscribed for the benefit of every human being subject to our Constitution—of whatever race, creed or persuasion."

Chambers v. State of Florida, 60 S.Ct. 472, 479, 309 U.S. 227, 240–41 (U.S. 1940)

7. **Fraud Upon the Court**

Fraud upon the court embraces only that species of fraud which does or attempts to, defiles the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 781 (9th Cir. 2003)

"Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)

8. **Judicial Conduct higher than society as a whole and more stringent**

"Standards of conduct on a plane much higher than for those of society as a whole, must be observed by judicial officers so that the integrity and independence of the judiciary will be preserved black robe of office devolving upon him standards of conduct more stringent than those acceptable for others…even on the part of a member of the public would have been, at a bare minimum, a flagrant breach of accepted norms. When performed by a Judge, a person required to observe "high standards of conduct so that the integrity of the judiciary may be preserved" (Rules Governing Judicial Conduct, 22 NYCRR 33.1), such conduct is inexcusable." Kuehnel v. State Commission on Judicial Conduct, 403 N.E.2d 167, 168, 426 N.Y.S.2d 461, 463, 49 N.Y.2d 465, 469 (N.Y., 1980)

9. **Protection against deliberate government fabrications**

"There is a clearly established constitutional due process right not to be subjected to … charges on the basis of false evidence that was deliberately fabricated by the government."

Ramirez v. County of Los Angeles, C.D. Cal.2005, 397 F.Supp.2d 1208