# EXHIBIT 2: LEGAL AUTHORITY PROTECTING NATURAL GIVEN PARENTAL POWER AND RIGHTS

## 1. U.S. Supreme Court Opinions of the Constitutionally Protected "Essential" and "Basic Civil Rights" for Parents to Raise Their Children

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,'[1] 'basic civil rights of man,[2] and (r)ights far more precious . . . than property rights.'[3] 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'[4] The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment,[1] the Equal Protection Clause of the Fourteenth Amendment,[2] and the Ninth Amendment.[5] "

Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212–13, 31 L. Ed. 2d 551 (1972).

"Neither decisional rule nor statute can displace a fit parent ... the courts and the law would, under existing constitutional principles, be powerless to supplant parents except for grievous cause or necessity[6] in which the principle is plainly stated and stressed as more significant than other essential constitutional rights."

Bennett v. Jeffreys, 40 N.Y.2d 543, 548, 356 N.E.2d 277, 282–83 (1976)

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements."

Bennett v. Jeffreys, 40 N.Y.2d 543, 548, 356 N.E.2d 277, 282–83 (1976)

---

[1] Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)
[2] Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)
[3] May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953)
[4] Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944)
[5] Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)
[6] Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212–13, 31 L. Ed. 2d 551 (1972)

2.   **U.S. Supreme Court and NY State Opinions of the Constitutional Protection of Parents from being Deprived Custody of their Children**

"No state shall deprive any person of life, liberty or property without due process of law. While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923)

"State may not deprive a parent of custody of a child absent surrender, abandonment, persistent neglect or unfitness or other like extraordinary circumstances; if any such extraordinary circumstances are present, disposition of custody is influenced or controlled by what is in best interest of child….Absent extraordinary circumstances, narrowly categorized, it is not within power of a court, or, by delegation of legislature or court, a social agency, to make significant decisions concerning custody of children, merely because it could make a better decision or disposition; state is parens patriae and always has been, but it has not displaced parent in right or responsibility… neither decisional rule nor statute can displace a fit parent because someone else could do a 'better job' of raising the child in the view of the court (or the Legislature), so long as the parent or parents have not forfeited their 'rights' by surrender, abandonment, unfitness, persisting neglect or other extraordinary circumstance. These 'rights' are not so much 'rights', but responsibilities which reflect the view, noted earlier, that, except when disqualified or displaced by extraordinary circumstances, parents are generally best qualified to care for their own children and therefore entitled to do so."

Matter of Spence-Chapin Adoption Serv. v. Polk, 29 N.Y.2d 196, 204, 324 N.Y.S.2d 937, 944, 274 N.E.2d 431, 436

"The rights of children to exercise their religion, and of parents to give them religious training and to encourage them in the practice of religious belief, as against preponderant sentiment and assertion of state power voicing it, and this Court had sustained the parent's authority to provide religious with secular schooling, and the child's right to receive it, as against the state's requirement of attendance at public

schools. Children's rights to receive teaching in languages other than the nation's common tongue were guarded against the state's encroachment.[7] It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.[8] And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter."

Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944)

"A parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

"Parent's interest in accuracy and justice of decision to terminate parental status is an extremely important one."

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

"The right to be heard is fundamental to our system of justice ... [and p]arents have an equally fundamental interest in the liberty, care and control of their children"

In re Jung, 11 N.Y.3d 365 (N.Y.,2008)

"The right of a parent to the custody and control of a minor child is one of our fundamental rights as United States citizens."

Mark N. v. Runaway Homeless Youth Shelter, 189 Misc. 2d 245, 733 N.Y.S.2d 566 (Fam. Ct. 2001)

("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] ... to direct the education and upbringing of one's children" (citing Meyer and Pierce)). In light of this extensive precedent, it cannot

---

[7] Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446.
[8] Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510 (1925).

now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

Troxel v. Granville, 530 U.S. 57 (2000)

### 3. Custodial Parent's Interference's with Non-Custodial Parents Relationship with Child

"It is firmly established...that...wherever possible, the best interests of a child lie in his being nurtured and guided by both of his natural parents."

Daghir v. Daghir, 92 A.D.2d 191, 193, 441 N.Y.S.2d 494 (2d Dept. 1981)

"Interference with the relationship between the child and the non-custodial parent is 'an act so inconsistent with the best interest of the child that it raises a strong presumption that the offending parent is unfit to act as custodial parent.'[9] "

Prugh v. Prugh, 298 A.D.2d 569 (2nd Dept. 2002).

"The custodial parent's anger, hostility and attitude toward the non-custodial parent can substantially interfere with her ability to place the needs of the children before her own in fostering a continued relationship with then on custodial parent."

Young v. Young, 212 A.D.2d 114, 123 (2nd Dept. 1995).

"Furthermore, the custodial parent's conduct can be so egregious as to warrant a change of custody."

Landau v. Landau, 214 A.D.2d 541 (2nd Dept. 1995)

"The fostering of a relationship with the noncustodial parent is an important consideration in a custody determination."

Matter of Esterle v. Dellay, supra, 281 A.D.2d at 726

---

[9] Gago v. Acevedo, 214 A.D.2d 565, 566 (2nd Dept. 1995);

4.     **New York Jurisprudence, Second Edition. Domestic Relations § 330: Parents' Prima Facie Right to Custody**

"The right of parents to the companionship, care, custody, and management of their children is an important interest that warrants deference and, absent a powerful countervailing interest, protection. Fathers, even unwed fathers, like mothers, have constitutionally protected rights to the care and custody of their children. The State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness, or other like extraordinary circumstances."

"It is well established that a parent has a superior right to custody to that of a nonparent. Thus, as between a biological parent and a third person, parental custody may not be precluded absent a threshold showing of extraordinary circumstances"

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); In re Jung, 11 N.Y.3d 365, 870 N.Y.S.2d 819, 899 N.E.2d 925 (2008); Mark N. v. Runaway Homeless Youth Shelter, 189 Misc. 2d 245, 733 N.Y.S.2d 566 (Fam. Ct. 2001); Felix O. v. Janette M., 30 Misc. 3d 712, 914 N.Y.S.2d 554 (Fam. Ct. 2008); Suarez v. Williams, 128 A.D.3d 20, 5 N.Y.S.3d 759 (4th Dep't 2015); Vazquez v. Velez, 90 A.D.3d 1559, 934 N.Y.S.2d 907 (4th Dep't 2011); Bennett v. Jeffreys, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 356 N.E.2d 277 (1976); Guzzey v. Titus, 220 A.D.2d 976, 632 N.Y.S.2d 872 (3d Dep't 1995).

45 N.Y. Jur. 2d Domestic Relations § 330 Parents' prima facie right to custody

5.     **Study on Joint-Custody Parenting Plans Clearly Indicating Child's Best Interest is to Have a Strong Relationship with Both Parents.**

"One of the most complex and compelling issues confronting policymakers, parents, and professionals involved in making custody decisions is this: What type of parenting plan is most beneficial for the children after their parents separate? More specifically, are the outcomes any better or worse for children who live with each parent at least 35% of the time compared to children who live primarily with their mother and spend less than 35% of the time living with their father? This article addresses this question by summarizing the 40 studies that have compared children in these two types of families during the past 25 years. Overall, the children in shared parenting families had better outcomes on measures of emotional, behavioral, and

psychological well-being, as well as better physical health and better relationships with their fathers and their mothers, benefits that remained even when there were high levels of conflict between their parents."

Nielson, Linda (2014). *Shared Physical Custody: Summary of 40 Studies on Outcomes for Children.* <u>Journal of Divorce & Remarriage</u>, 55:613–635, 2014.