USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANUEL P. ASENSIO, *individually*;
MANUEL P. ASENSIO as the parent of E.A., a minor child,

      Plaintiff,

   v.

JANET DiFIORE, *Chief Judge of New York State*; LETITIA JAMES, *Attorney General of New York State*; BARBARA UNDERWOOD; ANDREW M. CUOMO, *Governor of New York State*; ADETOKUNBO O. FASANYA; *New York County Family Court Magistrate Judge*; EMILIE MARIE BOSAK,

      Defendants.

No. 18-CV-10933 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

  Plaintiff Manuel Asensio, appearing *pro se*, commenced this action on behalf of himself and his minor child, E.A., challenging various state court proceedings relating to E.A.'s custody. He asserts claims under 18 U.S.C. § 241, and 42 U.S.C. §§ 1983, 1985, and 1986, against Defendants Janet DiFiore, Chief Judge of New York State; Letitia James, Attorney General of New York; Barbara Underwood, the former Attorney General of New York; Andrew Cuomo, Governor of New York; Adetokunbo Fasanya, New York County Family Court Magistrate Judge (together, the "State Defendants"); and Emilie Marie Bosak, Asensio's ex-wife.[1] Before the Court

---

[1] As explained further below, the Court assumes for purposes of this Opinion that Asensio brings his claims against the State Defendants in both their official and individual capacities. Because Letitia James succeeded Barbara Underwood as Attorney General of New York after the Complaint was filed, Letitia James is added as a party with respect to Asensio's official capacity claims, pursuant to Fed. R. Civ. P. 25(d). *See, e.g.*, *Correction Officers Benev. Ass'n v. Kralik*, No. 04 Civ. 2199(PGG), 2009 WL 856395, at *5 (S.D.N.Y. Mar. 26, 2009).

are the State Defendants' motion to dismiss, Defendant Bosak's motion to dismiss, and Asensio's renewed requests for the undersigned's recusal. For the following reasons, Defendants' motions to dismiss are granted, and Asensio's motions are denied.

## FACTUAL BACKGROUND[2]

Familiarity with the substance of the underlying state court proceedings and their complicated procedural history is presumed. The Court reviews only those facts necessary to resolving the instant motions.

This case arises from various post-divorce custody proceedings in New York Family Court between Asensio and his ex-wife, Defendant Bosak. Specifically, after the New York Supreme Court granted Asensio and Bosak a judgment of divorce in August 2013, Asensio filed multiple petitions in New York Family Court, seeking, among other things, modifications to the custody arrangements of E.A. *See* Compl. at 6, 38 n. 7; Barnett Aff. ¶ 3. Defendant Magistrate Judge Fasanya, who presided over some of these petitions, issued a number of orders directing Asensio to pay Bosak's attorney's fees, as well as the fees of an attorney who Judge Fasanya appointed to represent E.A. *See* Compl. at 4, 6, 24. Asensio thereafter unsuccessfully appealed many of those orders in the New York State Court System, until he was ultimately barred from bringing any further litigation challenging the propriety of his Family Court proceedings, absent prior permission. *See Asensio v. Fasanya*, Index No. 158837/2017 (Sup. Ct. N.Y. Cnty. June 8, 2018) (Doc. 119). Asensio now comes to this Court essentially alleging that his lack of success in New

---

[2] The facts in this section, which are assumed to be true for purposes of this motion, are drawn from Plaintiff's Complaint, its attachments, and the record in the state court proceedings of which the Court takes judicial notice. *See Roth v. Jennings*, 489 F.3d 499, 509–510 (2d Cir. 2007). In light of Plaintiff's *pro se* status, the Court also considers factual allegations made in Plaintiff's numerous oppositions to Defendant's motion to dismiss. *See* Dkts. 61–71, 73–75, and 78; *Washington v. Westchester County Dep't of Corr.*, No. 13 Civ. 5322(KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015). The Court refers to the ECF pagination of Plaintiff's filings for ease of reference.

York Family Court is the result of a broader conspiracy between Judge Janet DiFiore, Judge Fasanya and Bosak, to violate his constitutional rights—and to which the Attorney General and the Governor have turned a blind eye. The allegations against each of the Defendants, all of which are frivolous, are nonetheless reviewed in further detail below.

**I. Magistrate Judge Fasanya**

Asensio's claims against Judge Fasanya largely arise in the first instance from a May 15, 2014 proceeding the judge held to address certain of Asensio's then-pending custody petitions. *Id.* at 24; *see also* Lipton Aff. Ex. A, *Asensio v. Bosak*, Index No. 153776/2017 (Sup. Ct. N.Y. Cnty. July 29, 2018) (Doc. 83). Asensio alleges that Judge Fasanya deprived him of due process at that hearing by, among other things, "ignor[ing] [his] attorney's legal objections." Compl. at 19. Although not entirely clear from the Complaint, those objections appear to have been directed to Judge Fasanya's appointment of a lawyer, Ms. Restivo, to represent the interests of E.A. in the ongoing custody proceedings. *See id.* Asensio contends that Judge Fasanya lacked "jurisdiction or authority" to appoint Ms. Restivo, and that he did so in cooperation with Bosak and her attorney. *Id.* at 28, 63. Asensio further alleges that "[i]t was obvious"—although he does not explain why—that Judge Fasanya had had "*ex parte* communications with Defendant Bosak's counsel." *Id.* at 24.

Since May 15, 2014, and in response to the alleged collusion that occurred on that date between Judge Fasanya, Bosak, her attorney, and Ms. Restivo, Asensio has "been prosecuting his complaints against Defendant Fasanya," "within the Unified Court System." *Id.* at 34, 62. As a result, Asensio maintains that Judge Fasanya has since retaliated against him in numerous ways. *See id.* at 20, 59 (alleging that Judge Fasanya's "actions against [Asensio] since May 15, 2014 . . . have been deliberate and malicious one-sided fabrications, executed to retaliate against him").

Judge Fasanya's first alleged retaliatory act was his issuance of orders directing Asensio to pay at least a portion of Ms. Restivo's legal fees in connection with her representation of E.A. Asensio further asserts that Judge Fasanya had "no authority, right, or discretion to obligate [him] . . . to agree to Ms. Restivo's hourly rate or the time she spends on the case." *Id.* at 67; *see also id.* at 20 (accusing Judge Fasanya of "fabricat[ing] . . . arbitrary and unauthorized . . . 'interim' fees for Ms. Restivo, contempt orders and summary 'pay or be arrest[ed]' orders to collect these fees"); *id.* at 67 (alleging that Judge Fasanya "use[d] thirteen (13) contempt and arrest orders to force [Asensio] to pay . . . $99,153.22,"). In Asensio's view, Judge Fasanya "is required by law to have New York County pay Ms. Restivo's bill . . . not the Plaintiff." *Id.*

Next, Asensio alleges that Judge Fasanya retaliated against him by issuing a so-called interim custody suspension order on January 15, 2016, which he claims the judge "fabricated" with Bosak. *Id.* at 9; *see also id.* at 68 (asserting that the suspension order was "based on . . . Bosak's false story-telling[.]"). Asensio also alleges that, on the same day, Judge Fasanya forced him "to see his daughter under the supervision of Richard Spitzer," a social worker of "Comprehensive Family Services," pursuant to an alleged plan between Judge Fasanya and Bosak's counsel "to suspend [Asensio's] parenting access without evidence, charges, hearing, decision or reasoning." *Id.* at 62.

Then, as an allegedly "punitive follow-up" to the January 15, 2016 Order, and "retaliatory act" against Asensio's complaints against Fasanya, the judge issued an order requiring Asensio to pay Bosak's legal fees in the amount of $33,000. *Id.* at 74. Asensio acknowledges that the order was "based on a finding that [his] petitions were frivolous," but claims that the finding had "no basis in the record." *Id.* at 74; *see also id.* at 63, 76 (noting that "[t]he UCS and the State of New York have ignored and refused to review Defendant Fasanya's . . . order entered on January 21,

4

2016, granting Defendant Bosak a $33,701.50 legal fee award"). Asensio also asserts that Judge Fasanya has unconstitutionally deprived him of his due process rights by ordering him to pay over $200,000 in fees. *See id.* at 18 ("Fasanya has unilaterally manufactured processes sixteen (16) times to commit unconstitutional seizures of money from Plaintiff totaling . . . $226,090.22."). The most recent order to pay fees (or alleged "seizure") "occurred on July 16, 2018 when Defendant Fasanya . . . forced the Plaintiff to pay $62,912.82 to Defendant Bosak's attorneys." *Id.*

Asensio further asserts that Judge Fasanya unlawfully incarcerated him on June 30, 2017, for failing to comply with the judge's fee orders. *See id.* at 75 (describing the incarceration as "deliberately and maliciously in derogation of New York State law."). Asensio maintains that Judge Fasanya held him "in contempt of court at the conclusion of a contempt hearing on . . . orders to show cause to enforce payment of Ms. Restivo's fees." *Id.* at 74. He further claims that he had secured the necessary surety bond to "secure an automatic statutory stay" of the contempt order, but that he was precluded from filing a notice of appeal of the order. *See id.* (accusing Judge Fasanya of denying Asensio's purported "right for an automatic stay and right to purge the alleged contempt . . . and order[ing] [that] the Plaintiff be turned over to the department of corrections."). Asensio then alleges that "the Appellate Division for the First Department . . . and the Court of Appeals refused to entertain [his] application for leave to appeal the contempt and incarceration order[.]" *Id.* at 75.

Lastly, Asensio refers to the Judge Fasanya's May 2, 2018 "Decision and Order on Default." *Id.* at 69. Although Asensio does not articulate the basis or contents of the order, he states that it "can only be viewed as a fraud on the court and the judicial system[.]" *Id.* at 77.

5

## II. Emilie Bosak

Asensio's allegations against Bosak, which are stated in less detail than those against Judge Fasanya, arise from the purported "collusion" between the two in connection with the May 15, 2014 hearing, the January 15, 2016 interim suspension order, and Judge Fasanya's numerous attorney's fees orders discussed above. In essence, Asensio alleges that Judge Fasanya's actions taken against him in his post-divorce proceedings is the result of a broader conspiracy between the judge and Bosak to violate his civil rights. Asensio asserts, for instance, that Bosak colluded with Judge Fasanya to "fabricate evidence, charges, and records, [and] to make fraudulent calendaring decisions[.]" Pl's Mem. Opp. at 1 (Dkt. 71). In addition, although he does not mention it in his Complaint, Asensio later alleges that Defendant Bosak conspired with Judge Fasanya at a much earlier date—December 13, 2013—to cause Asensio to be falsely arrested. *See* Pl's Aff. at 2 (Dkt. 62). The details of the purported conspiracy and the arrest are not specified.

## III. Chief Judge DiFiore

Asensio's claims against Judge DiFiore are similarly predicated on Judge Fasanya's alleged misconduct, and Judge DiFiore's purported failure to remedy such harm. More broadly, Asensio claims that Judge DiFiore's alleged conspiracy with Judge Fasanya—to permit the entry of the various fee orders against Asensio, among other things—is a component of what he dubs Judge DiFiore's "prohibited and impermissible domestic relations process." Compl. at 1. As part of this so-called "process," Asensio alleges that Judge DiFiore has "ignore[d] the law" to "maliciously create income" for lawyers appointed by New York judges ("18-B lawyers"). *Id.* at 4 (asserting that "the imposition of attorney's fees . . . and appointments of unnecessary attorneys for children in . . . post-divorce judgment custody violation cases" is a "central component" of DiFiore's "domestic relations process"). Other components of this process, Asensio contends,

include DiFiore's "sanctioning" of Fasanya's "collusion" with Bosak, by permitting Fasanya to issue the interim suspension order. *Id.* at 3; *see also id.* at 14 (alleging that Judge DiFiore "has protected Defendant Fasanya from the Plaintiff's complaints," including by "deliberately refrain[ing] from . . . regulat[ing] Defendant Fasanya's acts[.]").

According to Asensio, the reason Judge DiFiore has been able to engage in this purported "domestic relations process" is because of the domestic relations exception to the federal courts' subject matter jurisdiction under Article III of the U.S. Constitution—which he refers to as the "DRE" and which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "Without the cover provided by the DRE," Asensio posits, DiFiore could not have "conceal[ed]" her supposedly unlawful conduct. Compl. at 2. In other words, Asensio argues that DiFiore has been relying on the DRE as a shield to protect her from liability for her acts. Asensio thus purports to challenge "the federal courts' use of the so-called domestic relations exception." *Id.* at 5. It might seem, then, that Asensio is asking this Court to overturn the domestic relations exception as a legal doctrine. In Asensio's view, the doctrine has emboldened Chief Judge DiFiore to unconstitutionally permit family court judges to appoint attorneys for children in post-custody proceedings, and to order parents to pay for those attorneys' fees. The Complaint, however, makes no such request—instead, it seeks millions of dollars in punitive and compensatory damages against Defendants for allegedly violating Asensio's constitutional rights.

Separately, Asensio alleges that, on December 5, 2016, DiFiore improperly dismissed his prior complaint against Judge Fasanya and directed him "to the normal appellate practice . . . without any review or consideration." *Id.* at 66; *see also id.* at 21 (noting that on December 5,

7

2016, "Defendant DiFiore arbitrarily . . . fabricated a blanket protection order that banned all of the Plaintiff's actions against Defendant Fasanya.").

**IV. The Attorney General, the Governor, and Underwood**

With respect to Defendants James, Underwood, and Cuomo, Asensio alleges that they have been "maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against" Plaintiff and E.A. *Id.* at 16; *see also id.* at 21 (stating that these defendants have "deliberately and wrongfully abstained from exercising the inherent duties of their official positions . . . to monitor . . . and prosecute Defendant DiFiore for her malicious actions against . . . Plaintiff"). As with Judge DiFiore, Asensio blames the domestic relations exception to federal subject matter jurisdiction for giving these defendants "unrestricted authority to allow the [C]hief [J]udge to violate [his] rights." *Id.* at 25.

## PROCEDURAL BACKGROUND

Asensio commenced this action on November 21, 2018. On December 14, 2018, he filed a letter requesting, among other things, that the Court schedule a pre-trial conference and hold oral argument on Defendants' then-anticipated motions to dismiss. *See* Dkt. 12. After granting Defendants' subsequent requests for extensions of time to file the motions—which contest in part the Court's subject matter jurisdiction to hear Asensio's claims—the Court stayed the remainder of the case pending resolution of the motions and denied the requests in Asensio's December 14, 2018 letter. *See* December 17, 2018 Order (Dkt. 24). For the reasons provided in the Court's January 18, 2019 Order, Dkt. 31, the Court also denied Asensio's subsequent requests that the Court vacate its prior orders and that the undersigned recuse herself.

On February 1st and again on February 13, 2019, the Court denied Asensio's renewed requests for recusal. *See* Dkts. 40, 42. The Court then granted Asensio's first request for an

extension to file his opposition to Defendants' motions to dismiss. Dkt. 52. On April 17th, Asensio filed a complaint against Chief Justice Roberts of the United States Supreme Court, Chief Judge Katzmann of the United States Court of Appeals for the Second Circuit, and the undersigned, based in part on this Court's management of the case. *See* Dkt. 53-1. On the same day, Asensio again requested that the undersigned recuse herself. *See id.* The Court denied the request in its April 18, 2019 Order. Dkt. 55. As explained in that Order, it is well-established that "a judge is not required to recuse . . . herself simply because a litigant before the judge has filed suit or made a complaint against . . . her." *Jenkins v. Sladkus*, No. 04 Civ. 1595(LAK), 2004 WL 1238360, at *1 (S.D.N.Y. June 3, 2004). Otherwise, litigants would be given carte-blanche to engage in endless "judge-shopping." *See Salten v. Cty. of Suffolk*, No. 08-CV-5294 (SJF)(AKT), 2012 WL 3260266, at *2 (E.D.N.Y. Aug. 6, 2012). The Court subsequently granted Asensio's multiple requests for additional time to oppose Defendants' motions. *See* Dkts. 56, 58, 72.

On June 5, 2019, nearly two weeks before the State Defendants had filed their June 17th reply to Asensio's opposition, he requested leave to file a sur-reply. Despite the Court not having ruled on the request, Asensio filed a sur-reply on June 17th. On July 8th, the Court declined to exercise ancillary jurisdiction over a separate fee dispute that had arisen between Defendant Bosak, who is now proceeding *pro se*, and her former counsel. On July 9th, July 18th, August 20th, August 21st, and September 11th, Asensio filed additional letters requesting that the undersigned recuse herself.

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction

9

has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

An action is frivolous when either: "(1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").

## DISCUSSION

### I. Claims on Behalf of E.A.

As a threshold matter, Asensio's *pro se* status precludes him from asserting claims on behalf of E.A. in this action. "[B]ecause *pro se* means to appear for one's self, a person may not

appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). It follows that a non-attorney parent cannot bring a *pro se* case on behalf of his or her child in federal court. *See, e.g.*, *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Given that Asensio does not purport to be an attorney, his claims asserted on behalf of E.A. are dismissed without prejudice.

## II. Claims under 18 U.S.C. § 241

Asensio's first cause of action is brought against Defendants DiFiore, Fasanya, and Bosak, pursuant to 18 U.S.C. § 241, for allegedly conspiring to violate his "civil and due process rights[.]" Compl. at 29. But "nothing in the language or structure of § 241 suggests that Congress intended to create a private right of action under that section[.]" *Storm-ggink v. Gottfried*, 409 Fed. App'x 426, 427 (2d Cir. 2011) (citing cases). Indeed, 18 U.S.C. § 241 is a criminal statute and a private citizen, like Asensio, "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981). Asensio's claims under 18 U.S.C. § 241 are, therefore, dismissed for lack of standing. *See id.*

## III. Claims under 42 U.S.C. §§ 1983, 1985, 1986

Asensio's remaining claims seek compensatory and punitive damages from all Defendants for alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986. With respect to the State Defendants, it is not clear to the Court whether Asensio intends to bring these claims against them in their official, as opposed to individual, capacities. On the one hand, the conduct for which Asensio seeks to hold them liable largely (if not entirely) occurred in the context of their official functions; on the other, Asensio is seeking punitive damages from each of them which are only available in individual capacity suits, and Defendants have raised both official and individual capacity defenses. *See Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) (concluding that defendant

officials were being sued in their individual capacities because the complaint sought punitive damages, "which are not available against the state," and the defendants had asserted a qualified immunity defense which is "unavailable in an [an] official capacity suit[]"). Out of deference to Asensio's *pro se* status, the Court will construe his claims as being asserted against Defendants in both their official and individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993). In any event, Asensio's claims must be dismissed in their entirety.

### A. Official Capacity Claims

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The immunity "extends beyond the states themselves to state agents . . . that are, effectively, arms of a state." *Id.* Such state agents include the New York Attorney General, the New York Governor, and New York state judges when acting in their official capacities. *See Abdullah-Sadiq v. Behringer*, No. 17-CV-0270(TPG), 2017 WL 5508478, at *2 (S.D.N.Y. Feb. 27, 2017); *New York State Court Clerks Ass'n. v. Unified Court System of the State of New York*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014).

Here, New York has not waived its Eleventh Amendment immunity to being sued in federal court. Nor did Congress abrogate the state's immunity in enacting 42 U.S.C. §§ 1983, 1985, or 1986. *See Gasparik v. Stony Brook Univ.*, No. CV-05-3817(SJF)(ARL), 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007) (citing cases), *appeal dismissed*, 296 Fed. App'x 151 (2d Cir. 2008). And Asensio's allegations against the State Defendants concern conduct occurring in their official capacities—namely, the entry of judicial orders by Judge Fasanya (and at least one by Judge DiFiore), as well as the alleged failure of the Attorney General and Governor "to abstain[] from

12

exercising the inherent duties of their official positions." Compl. at 2. Accordingly, Asensio's official capacity claims against the State Defendants are barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction. *See Graziosac v. New York City*, 29 Fed. App'x 691, 693 (2d Cir. 2002).

### B. Individual Capacity Claims

To the extent Asensio's claims against the State Defendants under 42 U.S.C. §§ 1983, 1985, and 1986 can be construed to be seeking damages from them in their individual capacities, those claims also fail. The claims against Judges DiFiore and Fasanya are barred by the doctrine of judicial immunity; the claims against former Attorney General Underwood are barred by the doctrine of prosecutorial immunity; and the claims against Governor Cuomo are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

#### 1. Chief Judge DiFiore and Judge Fasanya

"As early as 1872, the Supreme Court recognized that it was a general principle of the highest importance . . . that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). Were judges required to face the fear "that unsatisfied litigants may hound [them] with litigation charging malice or corruption[,]" this would result in "intimidation" rather than "principled and fearless decisionmaking," *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, for decades courts have held that judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity can only be overcome when a judge takes actions "in the complete absence of all jurisdiction" or when the judge's actions are "nonjudicial." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). When a judge,

13

however, has taken "the challenged action [when] he had jurisdiction over the subject matter before him," and the "action in question" was "judicial in nature," he—or she—is immune from liability for damages. *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005).

That is the case here. Asensio's allegations against Judge Fasanya are predicated on his conduct at the May 15, 2014 proceeding over which he presided, his appointment of E.A.'s attorney and social worker, his January 15, 2016 suspension order, and his orders requiring Asensio to pay the legal fees of E.A.'s and Bosak's attorneys. Despite Asensio's repeated assertions that Judge Fasanya "fabricated" these proceedings and orders, Asensio makes no plausible argument that Judge Fasanya lacked subject matter jurisdiction over Asensio's petitions against Bosak. In particular, Judge Fasanya clearly had jurisdiction to issue the January 15, 2016 suspension order, *see* N.Y. Fam. Ct. Act § 651(b), N.Y. Dom. Rel. Law § 240; to appoint E.A.'s attorney and social worker, *see id.* §§ 241–249, N.Y. Fam. Ct. Act § 651; and to order Asensio to pay E.A.'s and Bosak's attorneys' fees, *see* N.Y. Dom. Rel. Law § 237.

Asensio similarly fails to adequately allege that these acts were not judicial in nature. An act is judicial in nature when "it is a function normally performed by a judge," and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Each of Judge Fasanya's orders that Asensio addresses in his Complaint are the result of quintessential judicial acts—namely, the application of law and the exercise of judgment. *See Tarter v. State*, 68 N.Y.2d 511, 518–19 (1986).[3] The same goes for Asensio's allegations against Judge DiFiore with respect to her December 5, 2016 Order purportedly prohibiting him from filing further petitions against Judge Fasanya. Likewise, the allegations regarding Judge Fasanya's conduct over proceedings

---

[3] The Second Circuit also looks to state law to determine whether an act is judicial in nature. *See Huminski*, 396 F.3d at 76.

where Asensio appeared constitute judicial acts. *See Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (citing cases recognizing that presiding over hearings is a judicial act), *appeal dismissed*, No. 19-365, 2019 WL 3774562 (2d Cir. 2019). This result remains the same even in the face of Asensio's allegations that Judge Fasanya, Bosak, her counsel, and E.A.'s counsel colluded during the custody proceedings because "[t]he cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). Asensio's claims against Judge Fasanya are thus dismissed as barred by the doctrine of judicial immunity, as are Asensio's claims against Judge DiFiore.[4]

Moreover, Asensio's allegations that DiFiore and Fasanya conspired with Bosak—to the extent such conduct could be considered "non-judicial" in nature and thus outside the scope of judicial immunity—do not suffice to state a conspiracy claim under § 1985(2) or § 1985(3).[5] *See L.K. v. Sewanhaka Central High School Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016). To support a claim for a conspiracy under section § 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Rodriguez v. City of New York*, No. 05 Civ. 10682(PKC)(FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). Asensio's conclusory and vague allegations that Judge DiFiore "direct[ed] the entry of 63 false judgments" in state actions that he filed against the

---

[4] Even assuming, *arguendo*, that Judge DiFiore's purported "sanctioning of," or "failure to supervise," Judge Fasanya's allegedly unlawful conduct could be considered administrative as opposed to judicial acts, those allegations are frivolous. They also fail to state a claim for relief under § 1983, because (1) Asensio has not plausibly alleged that Judge Fasanya acted unlawfully in the first place, for the reasons explained above, and (2) "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam)).

[5] Although Asensio does not specify what provision of § 1985 he seeks to invoke, the Court does not construe his Complaint as asserting a claim under § 1985(1), because that provision "only applies to conspiracies intended to interfere with . . . federal officers, not state officers." *Cobbs v. City of Newburgh – City Council*, No. 09 Civ. 3800 (LMS), 2012 WL 12884367, at *9 (S.D.N.Y. Nov. 19, 2012), *aff'd*, 546 Fed. App'x 34 (2d Cir. 2013).

Chief Judge based on her alleged "cooperation" with Fasanya and Bosak—and that Judge DiFiore and Fasanya conspired to "maliciously fabricat[e] processes to prevent the Plaintiff from having contact with his daughter," Compl. at 27—lack the requisite factual basis to state a § 1985 claim. *See Dubois v. City of White Plains*, No. 16-cv-0771 (NSR), 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018). Finally, because "a § 1986 claim must be predicated on a valid § 1985 claim," Asensio's § 1986 claim against DiFiore and Fasanya also fails. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Thus, to the extent they are not barred by judicial immunity, Asensio's §§ 1985 and 1986 claims against the two judges are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### 2. Former Attorney General Underwood

It is well-settled that "prosecutors are entitled to absolute immunity when accused of a failure to investigate." *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 n.1 (S.D.N.Y. July 13, 2016) (citing cases), *aff'd*, 714 Fed. App'x 60 (2d Cir. 2018). The claims against Underwood are exclusively premised on such accusations, specifically, her asserted decision to "abstain[] from exercising the inherent duties of [her] official positions . . . to prosecute Defendant DiFiore for her malicious actions against . . . Plaintiff," and thereby "permit[ting] other judges and non-judicial personnel . . . to deny the Plaintiff process." Compl. at 21, 57. Underwood is thus immune from Asensio's claims arising from those decisions, which are, accordingly, dismissed.

### 3. Governor Cuomo

Asensio's allegations against Cuomo also fail state a claim for relief under 42 U.S.C. §§ 1983, 1985, and 1986. Asensio alleges that Cuomo ignored twelve of Asensio's complaints concerning Judge DiFiore's December 5, 2016 Order; and, as with Underwood, that he abstained

"from exercising the inherent duties of [his] official positions," and cooperated with Judge DiFiore to permit other judges to "commit acts of wrongdoing" against Asensio. These allegations "rise to the level of the irrational" and plainly fall short of stating a claim for a deprivation of Asensio's constitutional rights. *Abdullah-Sadiq*, 2017 WL 5508478, at *2. The claims against Cuomo are thus dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### C. Claims Against Emilie Bosak

Finally, Asensio's claims against Defendant Bosak similarly fail. To state a claim under 42 U.S.C. § 1983, a plaintiff must first show that "the defendant was a state actor, i.e., acting under color of state law," when she committed the alleged constitutional violation. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). The actions of a private citizen, like Bosak, may constitute state action only when "there is such a close nexus between the State and the challenged action that . . . private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009). This nexus may exist where, as Asensio alleges, the private actor "conspire[d] . . . with a state official to violate the plaintiff's constitutional rights." *Osipova v. Dinkins*, 907 F. Supp. 94, 96 (S.D.N.Y. 1995).

But to state a claim against a private party on a such a § 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Asensio's conclusory allegations that Bosak engaged in "collusion, conspiracy, and cooperation" with Judge Fasanya to "fabricate charges and evidence against [him]," so as to have Ms. Restivo and Mr. Spitzer appointed as E.A.'s attorney and social worker, are plainly insufficient to support a finding that Bosak has acted under "color of state law." *See Jae Soog Lee v. Law Office of Kim & Bae*,

*PC*, 530 Fed. App'x 9, 10 (2d Cir. 2013). For that same reason, any allegations that Bosak conspired with any of the State Defendants to violate Asensio's constitutional rights cannot state a claim under § 1985, and Asensio's § 1986 claim against Bosak fails as a result. *See Brown*, 221 F.3d at 341. Asensio's claims against Bosak are, therefore, dismissed.

**IV. Recusal**

As previously noted, the Court has denied Plaintiff's multiple prior requests for the undersigned's recusal. *See* Jan. 18, 2019 Order (Dkt. 31); Feb. 01, 2019 Order (Dkt. 40); Feb. 13, 2019 Order (Dkt. 42); April 18, 2019 Order (Dkt. 55). Because Plaintiff has identified no new legal or factual basis warranting recusal in his renewed recusal requests of June 12th, July 9th, July 18th, August 20th, August 21$^{st,}$ and September 11th (*see* Dkts. 94, 102, 103, 106, 107, 108) those requests are also denied.

**V. Leave to Amend**

"District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at *5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill*, 657 F.3d at 122–24). Where, as here, "[t]he problem with [a plaintiff's] causes of action is substantive," such that "better pleading will not cure it," amendment is futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to replead is thus denied.[6]

---

[6] Defendants also moved to dismiss the Complaint on grounds that the claims were barred by the domestic relations exception, the doctrines of *res judicata* and *Rooker-Feldman*, and that some claims were barred by the statute of limitations as well. In light of the Court's dismissal of Asensio's claims on the grounds cited above, the Court need not address Defendants' alternative grounds for dismissal.

18

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiff's requests for the undersigned's recusal are DENIED. The Clerk of Court is directed to terminate all pending motions, to close this case, and to mail a copy of this Order to Plaintiff and Defendant Bosak.

SO ORDERED.

Dated: September 13, 2019
New York, New York

Ronnie Abrams
United States District Judge