| | |
|---|---|
| Manuel P. Asensio, individually and as the parent of Eva Asensio, a minor child,<br><br>Plaintiffs,<br><br>- against -<br><br>Janet DiFiore, Chief Judge of New York State; Barbara Underwood, Attorney General of New York State; Andrew M. Cuomo, Governor of New York State; Adetokunbo O. Fasanya, New York County Family Court Magistrate; and Emilie Marie Bosak, individually,<br><br>Defendants. | Case No. 18 CV-10933-RA |

**LEGAL AUTHORITIES IN SUPPORT OF PLAINTIFF'S SEPTEMBER 13, 2019 MOTION AND AFFIDAVIT TO REOPEN CASE AND REMOVE JUDGE UNDER FEDERAL RULES OF CIVIL PROCEDURE ("F.R.C.P.") 9(b), (d)(e) and (g) 28 U.S.C.A SHOWING JUDGE RONNIE ABRAMS' PRETENSIONS, CRIMINAL INDIFFERENCE TO FUNDAMENTAL LIBERTY AND CIVIL RIGHTS, FABRICATION OF FICTITIOUS OFFICIAL DOCUMENTS AND OTHER FRAUDULENT CONDUCT AND BAD FAITH ACTS, AND COLLUSION WITH THE DEFENDANTS' FRAUDULENT ACTS RELATED TO THEIR THEFT, THEIR FABRICATION OF THEIR DECEMBER 29, 2015 FICTITIOUS STORY, MARCH FABRICATION OF FALSE CRIMINAL CHARGES AND A PROTECTION ORDER BASED ON THEIR DECEMBER 29, 2015 FICTITIOUS STORY IN RETALIATION TO THE PLAINTIFF'S FILING OF CRIMINAL CHARGES AGAINST FASANYA ON MAY 15, 2014 AND SPECIAL DAMAGES**

**ANNEX I:**     LEGAL AUTHORITY PROTECTING NATURAL GOD GIVEN PARENTAL POWER AND RIGHTS

**ANNEX II:**     LEGAL AUTHORITIES ON CITIZEN'S RIGHTS AGAINST GOVERNMENT INTRUSION

**ANNEX III:**     NY STATE LAWS AND RULES GOVERNING JUDICIAL CONDUCT

**ANNEX IV:**     SUBSTANTIVE DUE PROCESS IN PARENTAL RIGHTS

ANNEX I: LEGAL AUTHORITY PROTECTING NATURAL GOD GIVEN PARENTAL POWER AND RIGHTS

1.   U.S. Supreme Court Opinions of Prohibited Infringement on fundamental liberty interest at all.

"The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068–1069, 117 L.Ed.2d 261 (1992) (Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them' ") (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests. *Reno v. Flores,* 507 U.S. 292, 301–302, 113 S.Ct. 1439, 1446–1447, 123 L.Ed.2d 1 (1993); *Casey,* 505 U.S., at 851, 112 S.Ct., at 2806–2807. Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," *id.,* at 503, 97 S.Ct., at 1938 (plurality opinion); *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). As we stated recently in *Flores,* the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447."

Washington v. Glucksberg, 521 U.S. 702, 719–21, 117 S. Ct. 2258, 2267–68, 138 L. Ed. 2d 772 (1997)

2.   U.S. Supreme Court Opinions of the Constitutionally Protected "Essential" and "Basic Civil Rights" for Parents to Raise Their Children

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' [1] 'basic civil rights of man, [2] and (r)ights far more precious ... than property rights.' [3] 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [4] The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, [1] the Equal Protection Clause of the Fourteenth Amendment,[2] and the Ninth Amendment.[5]"

Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13, 31 L. Ed. 2d 551 (1972).

"Neither decisional rule nor statute can displace a fit parent ... the courts and the law would, under existing constitutional principles, be powerless to supplant parents except for grievous cause or necessity[6] in which the principle is plainly stated and stressed as more significant than other essential constitutional rights."

Bennett v. Jeffreys, 40 N.Y.2d 543,548,356 N.E.2d 277, 282-83 (1976)

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest , protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements."

Bennett v. Jeffreys, 40 N.Y.2d 543, 548, 356 N.E.2d 277, 282-83  (1976)

---

[1] Meyer v. Neb raska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)
[2] Skinner v. Oklahoma, 316 U.S. 535, 541 , 62 S.Ct. 111 0, 111 3, 86 L.Ed. 1655 (1942)
[3] May v. Ande rson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953)
[4] Prince v. Massachusetts, 321 U.S. 1 58, 1 66, 64 S.Ct. 438, 442, 88 L.Ed . 645 (1944)
[5] Griswold v. Connecticu t, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 ( 1965)
[6] Stanley v. Illinois, 405 U. S. 645, 651, 92 S. Ct. 1208, 1 21 2- 13, 31 L. Ed. 2d 551 (1972)

## 3.     U.S. Supreme Court and NY State Opinions of the Constitutional Protection of Parents from being Deprived Custody of their Children

The US States and their judges have no right to stick their noses "in[to] the domestic relations of society . . . [and] with a kind of inquisitorial authority, enter the habitations and even into the chambers and nurseries of private families, and inquire into and pronounce upon the morals and habits and affections or antipathies of the members of every household . . . such actions "cannot be recognized as sources of authority by the courts of the United States. The origin and the extent of their jurisdiction must be sought in the laws of the United States"

*Barber v. Barber*, 62 U.S. 582 [1858]


"No state shall deprive any person of life, liberty or property without due process of law. While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923)

"State may not deprive a parent of custody of a child absent surrender, abandonment, persistent neglect or unfitness or other like extraordinary circumstances; if any such extraordinary circumstances are present, disposition of custody is influenced or controlled by what is in best interest of child....Absent extraordinary circumstances, narrowly categorized, it is not within power of a court, or, by delegation of legislature or court, a social agency, to make significant decisions concerning custody of children, merely because it could make a better decision or disposition; state is parens patriae and always has been, but it has not displaced parent in right or responsibility... neither decisional rule nor statute can displace a fit parent because someone else could do a 'better job' of raising the child in the view of the court (or the Legislature), so long as the parent or parents have not forfeited their 'rights' by surrender, abandonment, unfitness, persisting neglect or other extraordinary circumstance. These 'rights' are not so much 'rights', but responsibilities which reflect the view, noted earlier, that, except when disqualified or displaced by extraordinary circumstances, parents are generally best qualified to care for their own children and therefore entitled to do so."

Matter of Spence-Chapin Adoption Serv. v. Polk, 29 N.Y.2d 196,204,324 N.Y.S.2d 937,944,274 N.E.2d 431,436

"The rights of children to exercise their religion, and of parents to give them religious training and to encourage them in the practice of religious belief, as against preponderant sentiment and assertion of state power voicing it, and this Court had sustained the parent's authority to provide religious with secular schooling, and the child's right to receive it, as against the state's requirement of attendance at public

schools. Children's rights to receive teaching in languages other than the nation's common tongue were guarded against the state's encroachment.[7] It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.[8] And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter."

Prince v. Massachusetts, 321 U.S. 158,166, 64 S.Ct. 438,442, 88 L.Ed. 645 (1944)

"A parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

"Parent's interest in accuracy and justice of decision to terminate parental status is an extremely important one."

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

"The right to be heard is fundamental to our system of justice ... [and p]arents have an equally fundamental interest in the liberty, care and control of their children"

In re Jung, 11 N.Y.3d 365 (N.Y.,2008)

"The right of a parent to the custody and control of a minor child is one of our fundamental rights as United States citizens."

Mark N. v. Runaway Homeless Youth Shelter, 189 Misc. 2d 245, 733 N.Y.S.2d 566 (Fam. Ct. 2001)

---

[7] Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446.
[8] Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510 (1925) .

## 4. Custodial Parent's Interference's with Non-Custodial Parents Relationship with Child

"It is firmly established...that...wherever possible, the best interests of a child lie in his being nurtured and guided by both of his natural parents."

Daghir v. Daghir, 92 A.D.2d 191,193,441 N.Y.S.2d 494 (2d Dept. 1981)

"Interference with the relationship between the child and the non-custodial parent is 'an act so inconsistent with the best interest of the child that it raises a strong presumption that the offending parent is unfit to act as custodial parent.' [9] "

Prugh v. Prugh, 298 A.D.2d 569 (2nd Dept. 2002).

"The custodial parent's anger, hostility and attitude toward the non-custodial parent can substantially interfere with her ability to place the needs of the children before her own in fostering a continued relationship with then on custodial parent."

Young v. Young, 212 A.D.2d 114, 123 (2nd Dept. 1995).

"Furthermore, the custodial parent's conduct can be so egregious as to warrant a change of custody."

Landau v. Landau, 214 A.D.2d 541 (2nd Dept. 1995)

"The fostering of a relationship with the noncustodial parent 1s an important consideration in a custody determination."

Matter of Esterle v. Dellay, supra, 281 A.D.2d at 726

## 5. New York Jurisprudence, Second Edition. Domestic Relations § 330: Parents' Prima Facie Right to Custody

"The right of parents to the companionship, care, custody, and management of their children is an important interest that warrants deference and, absent a powerful countervailing interest, protection. Fathers, even unwed fathers, like mothers, have

---

[9] Gago v. Acevedo, 214 A.D.2d 565, 566 (2nd Dept. 1995);

constitutionally protected rights to the care and custody of their children. The State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness, or other like extraordinary circumstances."

"It is well established that a parent has a superior right to custody to that of a nonparent. Thus, as between a biological parent and a third person, parental custody may not be precluded absent a threshold showing of extraordinary circumstances"

Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); In re Jung, 11 N.Y.3d 365, 870 N.Y.S.2d 819, 899 N.E.2d 925 (2008); Mark N. v. Runaway Homeless Youth Shelter, 189 Misc. 2d 245, 733 N.Y.S.2d 566 (Fam. Ct. 2001); Felix 0. v. Janette M., 30 Misc. 3d 712, 914 N.Y.S.2d 554 (Fam. Ct. 2008); Suarez v. Williams, 128 A.D.3d 20, 5 N.Y.S.3d 759 (4th Dep't 2015); Vazquez v. Velez, 90 A.D.3d 1559, 934 N.Y.S.2d 907 (4th Dep't 2011); Bennett v. Jeffreys, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 356 N.E.2d 277 (1976); Guzzey v. Titus, 220 A.D.2d 976, 632 N.Y.S.2d 872 (3d Dep't 1995).

45 N.Y. Jur. 2d Domestic Relations § 330 Parents' prima facie right to custody

**6.   Study on Joint-Custody Parenting Plans Clearly Indicating Child's Best Interest is to Have a Strong Relationship with Both Parents.**

"One of the most complex and compelling issues confronting poli cymakers, pare nts , and professionals involved in making custody decisions is this: What type of parenting plan is most beneficial for the children after their parents separate? More specifically, are the outcomes any better or worse for children who live \Vith each parent at least 35% of the time compared to children who live primarily with the ir mother and spend less than 35% of the time living with their father? Th is article addresses this question by summarizing the 40 studies that have compared children in these two types of families during the past 25 years. Overall, the chil dren in sha red parenting families had better outcomes on measures of emotionaL behavioraL and psychological well-being, as well as better physical health and better relationships with their fathers and their mothers, benefits that remained even when there were high levels of conflict between their parents."

Nielson, Linda (2014). *Shared Physical Custody: Summary of 40 Studies on Outcomes for Children.* Journal of Divorce & Remarriage, 55:613-635, 2014.

# ANNEX II: LEGAL AUTHORITIES ON CITIZEN'S RIGHTS AGAINST GOVERNMENT INTRUSION

1. **Evil Decision Making**

"Adjudication is subject to the requirement of reasoned decision making as well. It is hard to imagine a more violent breach of that requirement than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it. Reasoned decision making, in which the rule announced is the rule applied, promotes sound results, and unreasoned decision making the opposite. The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel (notably ALJ's), and effective review of the law by the courts."

Allentown Mack Sales and Service, Inc. v. N.L.R.B., 118 S.Ct. 818, 827, 522 U.S. 359, 374-75 (U.S., 1998)

2. **Criminal Indifference to Civil Obligations**

"Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignation, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. However, the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations." Id., 62 U.S. (21 How.) at 214. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done willfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case, the jury are authorized, for the sake of public example, to give such additional damages, as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages."

Smith v. Wade, 103 S.Ct. 1625, 1632, 461 U.S. 30, 41 (U.S., 1983)

**3.     No Man Can Be A Judge in His Own Case and No Man Is Permitted to Try Cases Where He Has an Interest in The Outcome**

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome ... 'Every procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.' [1] Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'[2]"

In re Murchison, 349 U.S. 133, 136-37, 75 S. Ct. 623, 625-26, 99 L. Ed. 942 (1955).

**4.     Very strange if our system of law permitted a judge ... try the very persons accused because of his investigations... that process a judge cannot be, in the very nature of things, wholly disinterested.**

It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused because of his investigations... Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer."

In re Murchison, 349 U.S. 133, 136-37, 75 S. Ct. 623, 625-26, 99 L. Ed. 942 (1955).

**5.     We are not without tragic proof that the exalted power of some governments to punish manufactured crime dictatorially is the handmaid of tyranny**

"We are not impressed by the argument that law enforcement methods such as those under review are necessary to uphold our laws. The Constitution proscribes such lawless means irrespective of the end. And this argument flouts the basic principle that all people must stand on an equality before the bar of justice in every American court. Today, as in ages past, we are not without tragic proof that the exalted power

---

[1] Tumey v. State of Ohio, 273 U.S. 510, 532, 47 S.Ct. 437,444, 71 L.Ed. 749;
[2] Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13.

of some governments to punish manufactured crime dictatorially is the handmaid of tyranny. Under our constitutional system, courts stand against any winds that blow as havens of refuge for those who might otherwise suffer because they are help less, weak, outnumbered, or because they are non-conforming victims of prejudice and public excitement. Due process of law , preserved for all by our Constitutio n, commands that no such practice as that disclosed by this record shall send any accused to his death. No higher duty, no more solemn responsibility, rests upon this Court, than that of translating into living law and maintaining this constitutional shield deliberately planned and inscribed for the benefit of every human being subject to our Constitution- of whatever race, creed or persuasion."

Chambers v. State of Florida, 60 S.Ct. 472,479, 309 U.S. 227, 240-41 (U.S. 1940)

### 6. Fraud Upon the Court

Fraud upon the court embraces only that species of fraud which does or attempts to, defiles the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

Appling v. State Fann MUt. Auto . Ins. Co., 340 F.3d 769, 781 (9th Cir. 2003)

"Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements  or pe1jury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function -·-- thus where the impartial functions of the court have been directly corrupted."

In Bulloch v. United States, 763 F.2d 1115, I 1 21 (l 0th Cir.  1985)

### 7. Judicial Conduct higher than society as a whole and more stringent

"Standards of conduct on a plane much higher than for those of society as a who le, must be observed by judicial officers so that the integrity and independence of the judiciary will be preserved black robe of office devolving upon him standards of conduct more stringent than those acceptable for others... even on the part of a member of the public would have been, at a bare minimum, a flagrant breach of accepted norms. When performed by a Judge, a person required to observe "high standards of conduct so that the integrity of the judiciary may be preserved" (Rules Governing Judicial Conduct, 22 NYCRR 33.1), such conduct is inexcusable." Kuehnel v. State Commission on Judicial Conduct, 403 N.E.2d 167, 168, 426
N.Y.S.2d 461,463, 49 N.Y.2d 465,469 (N.Y., 1980)

# ANNEX III: NY STATE LAWS AND RULES GOVERNING JUDICIAL CONDUCT

## Administrative Rules of the Unified Court System & Uniform Rules of the Trial Courts: Rules of the Chief Administrative Judge
## Part 100 titled "Judicial Conduct"

The rules governing judicial conduct are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law. They are not designed or intended as a basis for **civil liability or criminal prosecution.** It is not intended that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the text and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.

1. A judge does not violate this Rule to make reasonable efforts to facilitate the ability of unrepresented litigants to have their matters fairly heard;

2. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary;

3. A judge shall be faithful to the law and maintain professional competence in law by requiring order and decorum in proceedings, being patient, dignified and courteous to litigants who subject to the judge's direction and control and accord to every person who has a legal interest in a proceeding the right to be heard according to law;

4. A judge shall perform judicial duties without bias or prejudice against or in favor of any person or by words or conduct, manifest bias or prejudice, including but not limited to bias or prejudice based upon race, age, sex, religion, national origin, or socioeconomic status.

5. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending proceeding.

6. A judge will give no party a procedural or tactical advantage as a result of the ex parte communication.

7. A judge shall dispose of all judicial matters promptly, efficiently and fairly.

8. A judge shall not make pledges or promises of conduct that are inconsistent with the impartial performance of the adjudicative duties or make commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.

9. A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

10. A judge shall not make unnecessary appointments and shall exercise the power of appointment impartially and on the basis of merit, shall avoid favoritism; shall not approve compensation of appointees beyond the fair value of services rendered.

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge has a personal bias or prejudice concerning a party or the judge has personal knowledge of disputed evidentiary facts concerning the proceeding. To the extent that any provision of the Code of Judicial Conduct as adopted by the New York State Bar Association is inconsistent with any of these rules, these rules shall prevail.

https://www.nycourts.gov/rules/chiefadmin/100.shtml

# ANNEX IV: SUBSTANTIVE DUE PROCESS IN PARENTAL RIGHTS

**1.    10 Due Process Rules for Conducting Fair Trial**

From: "Some Kind of Hearing" by Henry J. Friendly. 123 U. Pa. L. Rev. 1267 (1975)

1. An unbiased tribunal.
2. Notice of the proposed action and the grounds asserted for it.
3. Opportunity to present reasons why the proposed action should not be taken.
4. The right to present evidence, including the right to call witnesses.
5. The right to know opposing evidence.
6. The right to cross-examine adverse witnesses.
7. A decision based exclusively on the evidence presented.
8. Opportunity to be represented by counsel.
9. Requirement that the tribunal prepares a record of the evidence presented.
10. Requirement that the tribunal prepares written findings of fact and reasons for its decision.

**2.    Court Decisions on Protecting Due Process for Parental Rights**

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *See e.g. Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 847-49, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992)"

Sanchez Ramos *v.* Puerto Rico Police Dept., 392 F. Supp. 2d 167 (D.P.R. 2005)

"Statute did not consider parent's fundamental right to raise his children, as required by due process."

Mark N. v. Runaway Homeless Youth Shelter, 189 Misc.2d 245 (200 I ), 733 N.Y.S.2d 566, 2001 N.Y. Slip Op. 21420

"We held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'"

Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)


"Appellant does not stand on freedom of the press. Regarding it as secular, she concedes it may be restricted as Massachusetts has done. Hence, she rests squarely on freedom of religion under the First Amendment, applied by the Fourteenth to the states. She buttresses this foundation, however, with a claim of parental right as secured by the due process clause of the latter Amendment."

Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.LR. 1446.


"There is a clearly established constitutional due process right not to be subjected to ... charges on the basis of false evidence that was deliberately fabricated by the government."

Ramirez v. County of Los Angeles, C.D. Cal.2005, 397 F.Supp.2d 1208